MITCHELL SANDLER LLC
Arielle Stephenson (SBN 336434)
1120 20th Street NW, Suite 725
Washington, DC 20036
Telephone: (202) 886-5267
astephenson@mitchellsandler.com

David M. Greeley, Esq. (SBN 198520)
GREELEY LAW, APC
1350 Columbia Street, Suite 403
San Diego, California 92101
Telephone: (619) 658-0462
dave@greeley.law

*Attorneys for Defendant NEXA Mortgage LLC*

# UNITED STATE DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

DAMIAN DIAZ, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

NEXA MORTGAGE, LLC, et al.

Defendants.

Civil Action No. **'24CV0873 MMASBC**

**DEFENDANT NEXA MORTGAGE LLC'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C §§ 1332, 1441, 1446, AND 1453**

**TO THE CLERK OF THIS HONORABLE COURT:**

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant NEXA Mortgage LLC ("NEXA" or "Defendant"), by and through its undersigned counsel, hereby provides notice of removal of this action from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California. In support thereof, NEXA states as follows:

**THE STATE COURT ACTION**

1.     On or about August 3, 2022, Plaintiff Damian Diaz, individually and on behalf of all others similarly situated, commenced an action against NEXA in the Superior Court of the State of California for the County of San Diego, captioned *Damian Diaz v. NEXA Mortgage, LLC*, Case Number 37-2022-00031816-CU-OE-NC.

2.     On August 12, 2022, Plaintiff and a group of the putative class members sent a "PAGA Notice Pursuant to California Labor Code §2699" to NEXA and California Labor and Workforce Development Agency, informing Defendant of the allegations at issue, their requested relief, and requesting that the Agency "investigate the above allegations and provide notice of the allegations pursuant to PAGA's provisions" or inform Plaintiffs if it does not intend to investigate.

3.     On October 31, 2022, Damian Diaz, on behalf of himself and all others similarly situated ("Plaintiffs") filed a First Amended Class Action Complaint against NEXA in the Superior Court of the State of California for the County of San Diego, captioned *Damian Diaz v. NEXA Mortgage, LLC, et al.*, Case Number 37-2022-00031816-CU-OE-NC (the "State Court Action").

4.     As required by 28 U.S.C. § 1446(a), attached hereto are true and correct copies of all process, pleadings, and orders served upon NEXA in the State Court Action, which consist of the following:

   a.   Attached hereto as Exhibit 1 is a true and correct copy of the Register of Actions Notice ("ROA") reflecting all docket entries and documents filed in the State Court Case. While the ROA notes a docket entry for some case related information such as case assignment and case management conference date, there are no associated documents for such entries.

   b.   The ROA for the state court also includes misnumbered entries, in which it erroneously skips number 33 and jumps from number 54 to 59. *See* Ex. 1. There are no corresponding docket entries or case records for those omitted numbers. Therefore, for clarity's sake a revised ROA is attached

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

as Exhibit 2 reflecting all state court docket entries with the corresponding numerical exhibits in which they appear as exhibits for this removal.

c.  All docket entries denoted in the ROA are attached hereto as Exhibits 3–53 in numerical order by their date of entry on the ROA. This includes Exhibit 3, a true and correct copy of the Class Action Complaint filed on August 3, 2022 (the "Original Complaint") and Exhibit 6, a true and correct copy of the Class Action Complaint filed on October 31, 2022 (the "Amended Complaint"). The Notice of Intent to File PAGA Action dated May 5, 2022 is incorporated as Ex. 1 to the Amended Complaint. These continue sequentially through the most recent filing, Exhibit 53, a true and correct copy of the Declaration filed by Damian Diaz on May 13, 2024.

5.     The Amended Complaint asserts claims under the California Labor Code, California Business and Professions Code ("UCL"); and the Private Attorney General Act of 2004 ("PAGA"). *See* Ex. 6 (Amended Complaint). The Amended Complaint seeks certification of a class defined as "[a]ll current or former employees of NEXA who worked in California as mortgage salespersons or loan officers or similar position, and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial." *See id.* at ¶ 30.

6.     The Amended Complaint seeks the following forms of relief: an order certifying the class; injunctive relief, attorneys' fees and costs; disgorgement and restitution; statutory and civil penalties; damages for unpaid compensation, including interest and liquidated damages; an award of civil penalties pursuant to PAGA; and such further relief as the Court deems necessary. *See id.* at Prayer for Relief.

7.     The Original Complaint's civil cover sheet reflects that it was filed as an unlimited case, which means the amount demanded exceeds $25,000. *See* Ex. 3. Both the

original and Amended Complaint fail to specify an amount sought by the Plaintiff or the putative class. *See* Ex. 3; Ex. 6.

8.     On December 1, 2022, Defendant Moved to Remove this case to the United States District Court for the Southern District of California on the basis of 28 U.S.C. § 1332(a)(1) alleging Plaintiff and NEXA were citizens of different states, and the amount in controversy exceeded $75,000, exclusive of interest and costs. *See* Ex. 6.

a.   Attached hereto as Exhibit 54 is a true and correct copy of the federal docket for this case reflecting all docket entries and documents filed in the previously assigned federal case number for this matter 3:22-cv-01895. While the federal docket notes a docket entry for the Court approving a Pro Hac Vice application (#19), there is no associated document for such entry.

b.   Attached hereto as Exhibit 55 is a renumbered copy of the federal docket to correspond with the sequentially continuing exhibits as attachments to this notice.

c.   All federal docket entries are then attached hereto as Exhibits 56–77 in numerical order by their date of entry on the docket.

9.     On July 10, 2023, this Court remanded the case back to the Superior Court of the State of California for the County of San Diego on the basis that the amount in controversy was not sufficiently met. (See Ex. 77.)

10.    By removing the State Court Action to this Court, NEXA is not waiving any defenses it has to the Amended Complaint, all of which defenses are expressly preserved, including those raised in its responsive pleadings.

## THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER
## 28 U.S.C. §§ 1332(d); 1453(b)

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the class of Plaintiffs identified in the Complaint and NEXA are citizens of different states, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

12. Removal of this class action is appropriate pursuant to the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1453(b).

13. First, there is diversity of citizenship. According to the Amended Complaint, Plaintiff is a citizen and resident of California. *See* Ex. 6 (Amended Complaint) ¶ 4. NEXA is an Arizona limited liability company with its main headquarters and "nerve center" and, thus, principal place of business in Arizona. *See* Ex. 78 (California Secretary of State record showing NEXA's principal place of business is in Arizona). All members of the LLC are domiciled in the State of Arizona.

14. Second, the amount in controversy for the putative class exceeds $5,000,000, exclusive of interest and costs, assuming Plaintiffs allegations in the Amended Complaint as true. The class alleged by Plaintiff includes "[a]ll current or former employees of NEXA who worked in California as mortgage salespersons or loan officers or similar position, and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial." *See* Amended Complaint, Ex. 6 at ¶ 30.

15. Plaintiff alleges that all such employees were classified as exempt from various wage and hour laws pursuant to an "outside salesperson" exemption, which they do not actually meet the requirements for under 29 C.F.R. § 541.502. *See* Ex. 6 at ¶ 14. For all such putative class members, Plaintiff asserts causes of action for (1) Failure to Reimburse and Unlawful Deductions; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Rest & Meal Breaks; (5) Failure to Maintain and Furnish Accurate Records; (6) Failure to Timely Pay Wages; (7) Violation of B&P Code §§ 17200 et seq.; (8) Declaratory Relief, and (9) Enforcement of Labor Code Section 2698 et seq. ("PAGA") with corresponding damages. *See* Ex. 6.

16. Defendant recently conducted a review of available employment records related to Plaintiff's class claims. "§§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013).

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

Neither of those windows was triggered in this case, since no pleading or "amended pleading, motion, order or other paper" revealed on its face that there was diversity of citizenship or an amount in controversy sufficient to confer subject-matter jurisdiction under CAFA. 28 U.S.C. § 1446(b)(1), (3). Therefore, Benchmark was free to seek removal outside of the 30-day windows. *Roth*, 720 F.3d at 1126. And, because Benchmark removed this case under CAFA, its removal notice was timely even though it was filed more than one year after Rascon filed the complaint. *See* 28 U.S.C. § 1453(b).

*Rascon v. Benchmark Elecs., Inc.*, 843 F. App'x 968, 969–70 (9th Cir. 2021).

17.    Plaintiff's Amended Complaint estimated that the alleged class would only include thirty to fifty employees and previously denied that the amount in controversy for the class representative, Mr. Diaz, exceeded $75,000. *See* Ex. 6 at ¶ 30; Plaintiff's Motion to Remand attached as Exhibit 60. However, Defendant's review of employment records revealed for the first time that in 2024 it had 224 employees working in California who would potentially encompass Plaintiff's putative class, 379 such employees working during 2023, and 413 such employees working during 2022. In total, there are 619 employees, assuming the validity of Plaintiff's allegations, who could purportedly be considered class members Plaintiff's who have worked at the company from 2019 – present. No document, including the Complaint or Amended Complaint, served by Plaintiffs in this matter previously indicated that the $5,000,000 amount in controversy for CAFA was potentially exceeded by their claims and, as such, Defendant's investigation presents the first opportunity at which removal became appropriate in accordance with *Roth* and *Rascon*.

18.    Plaintiff's first count on behalf of these purported class members alleges a failure to reimburse their necessary business expenses and unlawful deductions from the individuals' earnings. *See* Ex. 6 at ¶¶ 33–38. Plaintiffs identify this includes expenses for the class such as "home office expenses, including a printer, fax machine, internet, phone and other office-related products; and other loan servicing related expenses." *Id.* at ¶ 19. Plaintiff alleges the improper deductions for the class stemmed from "'fees', costs and expenses that were part of the general overhead of the Defendants. These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing

System & Registry Fees, 'Technology' fees, 'NXAtouch (BNTouch)' fee, credit report costs, NEXA Accounting Fees, and other 'miscellaneous' fees." *Id.* at ¶ 20.

19.     Defendant's records identify that the deductions its employees agreed should be made from their paychecks, which Plaintiff now alleges to be inappropriate for the purported class members, totaled $1,364.633.29 during the year 2022, $3,917,100.47 during the year 2023, and $1,501,171.83 during the year 2024. This equals $6,782,905.59 in alleged damages before factoring in deductions for years 2019, 2020, and 2021, for which data is not readily available, or any other category Plaintiff alleges for damages.

20.     Plaintiff in both the Complaint and Amended Complaint neglects to provide a calculation for any of the unreimbursed business expenses he alleges all class members incurred at the time of their hiring and during the course of their employment. However, even two of the categories identified, cell phone bills and internet services, entail substantial tabulations given the amount of potential class members. The average cell phone bill in the United States is $144 per month and the average monthly cost of internet service is $36.33.[1] For Mr. Diaz as an example, this would generate approximately $3,697 in unreimbursed business expenses for the 20.5 months that he worked for Nexa. His length of employment, as the class representative, can be used as a reasonable average of the 619 employees comprising the putative class. Therefore, if Plaintiffs' claims for this count were proven accurate it could account for $2,288,443 in alleged damages for the class before considering the many other types of unreimbursed expenses Plaintiff claims the class incurred.

21.     Plaintiffs' sixth cause of action alleges that for every class member whose employment has been terminated, they were not provided the appropriate compensation within 72 hours pursuant to California Labor Code § 203 and, as such, are entitled to thirty days' compensation at their usual rate. *See* Ex. 6 at ¶¶ 67–72. That applies to 168 potential

---

[1] *See* https://www.cnbc.com/select/how-to-cut-your-cell-phone-bill-costs/ (average monthly cell phone bill in United States); https://www.forbes.com/home-improvement/internet/internet-cost-per-month/ (average monthly internet cost in the United States).

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

class members whose employment ended in 2022, 187 whose employment ended in 2023, and 37 whose employment ended thus far in 2024. At the applicable minimum wage rates for thirty days for each employee for eight hours of work per day, this equates to $604,800 for the employees resigning in 2022, $695,640 for those resigning in 2023, and $142,080 for those resigning in 2024. In total, this claim, if proven true, could establish $1,442,520 in damages.

22.     Plaintiff alleges damages associated with intentionally inaccurate wage statements pursuant to California Labor Code §§ 226, 1174, and 1175. *See* Ex. 6 at ¶ 59–66. Section 226(e)(1) provides for $50 in damages for the initial pay period and $100 for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 dollars (plus reasonable attorney's fees). Cal. Labor Code § 226(e)(1). California courts have held that it may be assumed that there was one violation per pay period considering the volume of violations alleged. *See Nunes v. Home Depot U.S.A., Inc.*, 2019 U.S. Dist. LEXIS 156261, *8 (E.D. Cal. Sept. 11, 2019); *Cabrera v. South Valley Almond Co., LLC*, 2021 U.S. Dist. LEXIS 240881, *31–32 (E.D. Cal. Dec. 16, 2021); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JC), 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015). Using this accepted method of estimation and assuming Plaintiff's allegations are accurate for purposes of determining an amount claimed, Plaintiff has plead over $4,000 in damages for intentionally inaccurate wage statements related to Mr. Diaz for the 41 pay periods at issue during his 20.5 months of employment (41 times 100 equals $4,100).[2] Using this purportedly representative class member as an appropriate average for the class would mean this claim, if legitimate, could establish $2,476,000 in damages (619 purported class members times $4,000).

23.     The amount in controversy far exceeds the necessary minimum for CAFA of $5,000,000 before even factoring the most individualized and highest value element of Plaintiffs' claim. That is the allegation that class members' were not accurately recorded

---

[2] NEXA typically pays employees bi-weekly. *See* Ex. 3.

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

as exempt and the compensation they received relative to their hours worked failed to meet California's minimum wage requirements or the obligation to pay overtime rates for hours worked in excess of forty hours per week. The Amended Complaint alleges that "Plaintiffs regularly worked overtime including working days that were 10 hours or more, and weeks that were 50 hours or more." Ex. 6 at ¶ 21.

24. Plaintiffs further allege that they were denied meal and rest periods during these shifts in which they worked the requisite hours. *See id.* at ¶¶ 54–58. Plaintiff fails to identify how often these alleged violations occur, but if class members regularly worked fifty hours or more per week, a violation would occur every day of their employment. Plaintiffs claim for each date on which there was such a violation, it would carry a penalty of one additional hour of pay at the employee's regular rate of pay for each workday where a meal or rest period was not provided. *See id.* at ¶ 55.

25. Calculating these damages at the extremely conservative rate of only a single work week each year for these alleged class members at the prevailing minimum wage rate for 2024 ($16/hour), would entail $17,920.00 in damages. A week of violations at the 2023 minimum wage rate ($15.50/hour) for the class would equate to $29,372.50 and a week's worth of violations at the 2022 minimum wage rate ($15/hour) for the class would equate to $30,975. This extremely conservative valuation would establish $78,267.50 in potential damages for the claim and does not even factor in the years 2019 – 2021. Moreover, if Plaintiff's allegations should actually be accepted as true for purposes of these calculations, then the penalty could functionally be due for every workday in which class members were employed, rather than a mere two weeks over 20.5 months of employment. Mr. Diaz alone would then generate $5,233 in damages for this claim based on his claim to be regularly working fifty-hour days (101 workdays in 2020 at $13 minimum wage; 250 workdays in 2021 at $14 minimum wage; 28 workdays in 2022 at $15 minimum wage). Taking him as an appropriate class representative for the damages of all 619 employees comprising the putative class at this average would reflect $3,239,227 in damages for the claimed meal and rest break violations.

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

26.     Plaintiffs also allege substantial damages as a result of PAGA claims in count nine. *See* Ex. 6 at ¶¶ 93–102. While the Amended Complaint again fails to identify a figure related to these allegations, it asserts numerous labor code violations by Defendant for each class member, which carry a penalty of $100 per employee for the first pay period of such violations and $200 per employee for each pay period thereafter in which the violations occur. *Id.* Again, using Mr. Diaz's 41 pay periods as a representative example, this would establish $8,100 in damages under PAGA and $5,013,900 for the class if Plaintiff could actually demonstrate his claims at trial ($8,100 times 619 employees).

27.     These calculations demonstrate a very conservative amount in controversy totaling $18,082,036.09, before determining what would arguably be the class's largest criteria of damages based on the Amended Complaint – the failure to compensate class members in accordance with minimum wage laws for the actual amount of hours worked and overtime hours worked, Plaintiffs' counts two and three. *See* Ex. 6 at ¶¶ 40–53. Given the amount in controversy is already well in excess and the individualized context of these damages for each putative class member, Defendant will spare the court and conserve the legal time necessary for these criteria. Tabulating the damages for these counts requires recounting each purported class member's period of employment, the corresponding minimum wage rates, the average hours worked based on Plaintiffs' representations, and the offset related to each individual's compensation previously received from Defendant. However, given the number of putative class members and Plaintiffs' allegations that class members regularly worked fifty hours per week, if true, this figure would dwarf all other damages.

## **VENUE IN THIS DISTRICT IS APPROPRIATE**

28.     Pursuant to 28 U.S.C. § 1446(a), venue is proper in the United States District Court for the Southern District of California because it is the District Court of the United States for the District and Division within which the State Court Action is pending.

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL
## HAVE BEEN SATISFIED

29.     The Original Complaint was filed on August 3, 2022. *See* Ex. 3. The Original Complaint did not raise any claims under PAGA and was not apparent on its face whether the action was removable. *Ibid*.

30.     The Amended Complaint was filed on October 31, 2022, and was not apparent on its face whether the action was removable based on the lack of disclosure regarding the amount in controversy for the class claims to satisfy the $5,000,000 threshold for CAFA. *See* Ex. 6.

31.     This notice of removal is being filed on May 16, 2024, following Defendant's investigation into Plaintiffs' claims and a review of its records, which presents the first opportunity Defendant had to discover that the amount in controversy for CAFA was satisfied and thus, this removal is timely under 28 U.S.C. § 1446(b)(3).

32.     As noted above, NEXA has attached true and correct copies of all process, pleadings, and orders served upon NEXA in the State Court Action, thus satisfying 28 U.S.C. § 1446(a).

33.     Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, NEXA will file a copy of this Notice of Removal in the State Court Action and will provide a copy of the Notice of Removal to Plaintiff's counsel using the address provided in the Amended Complaint.

WHEREFORE, Defendant NEXA Mortgage LLC hereby removes this suit to this Honorable Court.

*Signatures to follow:*

1   Dated: May 16, 2024                 Respectfully submitted,

2                           MITCHELL SANDLER LLC
*/s/ Arielle Stephenson*
3                           Arielle Stephenson (SBN 336434)
1120 20th Street NW, Suite 725
4                           Washington, DC 20036
Telephone: (202) 886-5267
5                           astephenson@mitchellsandler.com

6                       Counsel for Defendant, *NEXA Mortgage, LLC*

7

8   Dated:  May 16, 2024             GREELEY LAW, APC

9

10                      By: _____
                           David M. Greeley (SBN 198520)
11                        1350 Columbia Street, Suite 403
San Diego, CA 92101
12                        Telephone:  (619) 658-0462
david@greeley.law

13                       Counsel for Defendant. *NEXA Mortgage. LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

DEFENDANT NEXA MORTGAGE LLC'S NOTICE OF REMOVAL

# EXHIBIT 1



### Superior Court of California, County of San Diego - Register of Actions

| Page | Case Number Search | Participant Name Search | Date Search | Unlawful Detainer Search |

| Printer Friendly Version | FAQ |

Cart

# Register of Actions (ROA)

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | **37-2022-00031816-CU-OE-NC** | Date Filed: | 08/03/2022 |
| Case Title: | Diaz vs Nexa Mortgage LLC [IMAGED] | Case Status: | Pending |
| Case Category: | Civil - Unlimited | Location: | North County |
| Case Type: | Other employment | Judicial Officer: | Earl H. Maas, III |
| Case Age: | 652 days | Department: | N-28 |

View Tentative Rulings

## Future Events

| Event Date | Event Time | Location | Event Type |
|---|---|---|---|
| 05/17/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 06/28/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 06/28/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 03/14/2025 | 09:15 AM | N-28 | Trial Readiness Conference (Civil) |
| 04/11/2025 | 09:15 AM | N-28 | Civil Jury Trial |

**1**

## Participants

| Name | Role | Representation |
|---|---|---|
| Diaz, Damian | Plaintiff | Americano, Carlos; Dawson, Brian C |
| Nexa Mortgage LLC | Defendant | Greeley, David M; Stephenson, Arielle |

**1**

## Representation

| Name | Address | Phone Number |
|---|---|---|
| AMERICANO, CARLOS | 835 fifth Avenue 301 San Diego CA 92101 | |
| DAWSON, BRIAN C | 5755 Oberlin Drive 301 San Diego CA 92121 | |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

**1**

## Register of Actions

**All Entries**    **Filing Entries**    **Minutes Entries**    **Scheduling Entries**

🔍 Enter text to search

**1** **2** **3** **4**

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|-----------------|----------|----------|------|
| 1 | 08/03/2022 | Complaint filed by Diaz, Damian.<br>Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Complaint | Add to Cart |
| 2 | 08/03/2022 | Civil Case Cover Sheet filed by Diaz, Damian.<br>Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Civil Case Cover Sheet | Add to Cart |
| 3 | 08/03/2022 | Original Summons filed by Diaz, Damian.<br>Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Original Summons | Add to Cart |
| 4 | 08/03/2022 | Case assigned to Judicial Officer Maas, Earl. | | | |
| 5 | 08/11/2022 | Civil Case Management Conference scheduled for 01/13/2023 at 10:00:00 AM at North County in N-28 Earl H. Maas. | | | |
| 6 | 10/31/2022 | Amended Complaint (***FIRST AMENDED CLASS ACTION***) filed by Diaz, Damian.<br>Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Amended Complaint | Add to Cart |
| 7 | 12/01/2022 | Notice of Removal to Federal Court filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2022 12 01 - NEXA - Notice of Removal of Case w Exhibits | Add to Cart |
| 8 | 12/01/2022 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2022 12 01 - POS - Ntc of Removal of Case | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 9 | 12/13/2022 | Civil Case Management Conference scheduled for 01/13/2023 at 10:00:00 AM at North County in N-28 Earl H. Maas was vacated. | | | |
| 10 | 07/20/2023 | Notice of Ruling filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Notice of Ruling | Add to Cart |
| 11 | 07/20/2023 | Proof of Service filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| 12 | 08/07/2023 | Civil Case Management Conference date was restored to 01/13/2023 at 10:00:00 AM in N-28 before Earl H. Maas at North County. | | Notice of Hearing SD | Add to Cart |
| 13 | 08/21/2023 | Motion - Other (12/8/2023) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 08 21 - Motion to Compel Arbitration and Stay - Final | Add to Cart |
| 15 | 08/21/2023 | Proof of Service (12/8/2023) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 16 | 08/22/2023 | Motion Hearing (Civil) scheduled for 12/08/2023 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 17 | 10/03/2023 | Stipulation - Other - Fee Due filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 10 02 - Diaz v. Nexa - Stipulation Proposed Order ISO Re-Filing Decl. and Attach. | Add to Cart |
| 18 | 10/03/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 10 02 - POS | Add to Cart |
| 20 | 10/04/2023 | Declaration - Other filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 08 21 - Dec of Mike Kortas ISO MTC Exh A - Final_Redacted 10.4.2023 | Add to Cart |
| 21 | 10/04/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 22 | 11/27/2023 | Opposition - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Opposition - Other | Add to Cart |

| | | **1** | 2 | 3 | 4 | | |

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

| | | [1] | | |

## Register of Actions

**All Entries**   **Filing Entries**   **Minutes Entries**   **Scheduling Entries**

🔍 Enter text to search

| | | [1] [2] [3] [4] | | |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 23 | 11/27/2023 | Request for Judicial Notice (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Request for Judicial Notice | Add to Cart |
| 24 | 11/27/2023 | Declaration - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |
| 25 | 11/27/2023 | Declaration - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |
| 26 | 11/29/2023 | Notice - Other (Disassociation of Counsel and Association of Counsel) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice - Other | Add to Cart |
| 27 | 11/29/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 28 | 12/01/2023 | Reply to Opposition of Noticed Motion and Supporting Declarations filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Reply to Opposition of Noticed Motion and Supporting Declarations | Add to Cart |
| 29 | 12/01/2023 | Request for Judicial Notice filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Request for Judicial Notice | Add to Cart |
| 30 | 12/01/2023 | Notice of Remote Appearance filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice of Remote Appearance | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 31 | 12/01/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 32 | 12/07/2023 | Tentative Ruling for Motion Hearing (Civil) published. | | Tentative Rulings | Add to Cart |
| 34 | 12/08/2023 | Civil Case Management Conference scheduled for 03/08/2024 at 10:00AM before Judge Earl H. Maas, III. | | | |
| 35 | 12/08/2023 | Minutes finalized for Motion Hearing (Civil) heard 12/08/2023 01:30:00 PM. | | Minute Order | Add to Cart |
| 36 | 02/27/2024 | Motion to Compel Discovery (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 37 | 02/27/2024 | Separate Statement (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 38 | 02/27/2024 | Proposed Order (06/21/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |
| 39 | 02/27/2024 | Proof of Service (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| 40 | 02/28/2024 | Discovery Hearing scheduled for 06/21/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 41 | 02/27/2024 | Motion to Compel Discovery (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 42 | 02/27/2024 | Separate Statement (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 43 | 02/27/2024 | Proposed Order (06/28/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

[ ] [ ] **1** [ ] [ ]

## Register of Actions

[ **All Entries** ] [ **Filing Entries** ] [ **Minutes Entries** ] [ **Scheduling Entries** ]

🔍 Enter text to search

[ ] [ ] **1** **2** **3** **4** [ ] [ ]

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 44 | 02/27/2024 | Proof of Service (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| 45 | 02/28/2024 | Discovery Hearing scheduled for 06/28/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 46 | 02/27/2024 | Motion to Compel Discovery (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 47 | 02/27/2024 | Separate Statement (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 48 | 02/27/2024 | Proposed Order (06/28/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |
| 49 | 02/27/2024 | Proof of Service (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| 50 | 02/28/2024 | Discovery Hearing scheduled for 06/28/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 51 | 02/29/2024 | Case Management Statement filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Case Management Statement | Add to Cart |

5/16/24, 9:14 AM    San Diego Superior Court - Register of Actions

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 52 | 02/29/2024 | Proof of Service filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | **Add to Cart** |
| 53 | 03/04/2024 | Case Management Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Case Management Statement | **Add to Cart** |
| 54 | 03/04/2024 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | **Add to Cart** |
| 59 | 03/08/2024 | Pursuant to California Rules of Court 3.714, the Court, after having met and conferred with counsel, categorizes this case as one that will be disposed of within 18 months | | | |
| 60 | 03/08/2024 | Civil Jury Trial scheduled for 04/11/2025 at 09:15AM before Judge Earl H. Maas, III. | | | |
| 61 | 03/08/2024 | Trial Readiness Conference (Civil) scheduled for 03/14/2025 at 09:15AM before Judge Earl H. Maas, III. | | | |
| 62 | 03/08/2024 | Discovery Hearing continued pursuant to party's motion to 05/17/2024 at 01:30PM in Department N-28. | | | |
| 63 | 03/08/2024 | Minutes finalized for Civil Case Management Conference heard 03/08/2024 10:00:00 AM. | | Minute Order | **Add to Cart** |
| 64 | 05/06/2024 | Opposition to Noticed Motion and Supporting Declarations filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Opposition to Plaintiff's Motions to Compel; Decl. of Arielle Stephenson | **Add to Cart** |
| 65 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Form Interrogatories | **Add to Cart** |
| 66 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Special Interrogatories | **Add to Cart** |
| 67 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Requests for Production | **Add to Cart** |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

**1**

## Register of Actions

All Entries | Filing Entries | Minutes Entries | Scheduling Entries

Enter text to search

1 2 3 **4**

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 68 | 05/06/2024 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 69 | 05/10/2024 | Notice of Remote Appearance filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice of Remote Appearance | Add to Cart |
| 70 | 05/13/2024 | Reply to Opposition of Noticed Motion and Supporting Declarations filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Reply to Opposition of Noticed Motion and Supporting Declarations | Add to Cart |
| 71 | 05/13/2024 | Declaration - Other filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |

1 2 3 **4**

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

# EXHIBIT 2



**Superior Court of California, County of San Diego - Register of Actions**

| Page | Case Number Search | Participant Name Search | Date Search | Unlawful Detainer Search |

| Printer Friendly Version | FAQ |

Cart

# Register of Actions (ROA)

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | **37-2022-00031816-CU-OE-NC** | Date Filed: | 08/03/2022 |
| Case Title: | Diaz vs Nexa Mortgage LLC [IMAGED] | Case Status: | Pending |
| Case Category: | Civil - Unlimited | Location: | North County |
| Case Type: | Other employment | Judicial Officer: | Earl H. Maas, III |
| Case Age: | 652 days | Department: | N-28 |

View Tentative Rulings

## Future Events

| Event Date | Event Time | Location | Event Type |
|---|---|---|---|
| 05/17/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 06/28/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 06/28/2024 | 01:30 PM | N-28 | Discovery Hearing - Motion to Compel Discovery |
| 03/14/2025 | 09:15 AM | N-28 | Trial Readiness Conference (Civil) |
| 04/11/2025 | 09:15 AM | N-28 | Civil Jury Trial |

**1**

## Participants

| Name | Role | Representation |
|---|---|---|
| Diaz, Damian | Plaintiff | Americano, Carlos; Dawson, Brian C |
| Nexa Mortgage LLC | Defendant | Greeley, David M; Stephenson, Arielle |

**1**

## Representation

| Name | Address | Phone Number |
|---|---|---|
| AMERICANO, CARLOS | 835 fifth Avenue 301 San Diego CA 92101 | |
| DAWSON, BRIAN C | 5755 Oberlin Drive 301 San Diego CA 92121 | |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

**1**

## Register of Actions

**All Entries** | **Filing Entries** | **Minutes Entries** | **Scheduling Entries**

Enter text to search

**1** **2** **3** **4**

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 3 | 08/03/2022 | Complaint filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Complaint | Add to Cart |
| 4 | 08/03/2022 | Civil Case Cover Sheet filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Civil Case Cover Sheet | Add to Cart |
| 5 | 08/03/2022 | Original Summons filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Original Summons | Add to Cart |
| x | 08/03/2022 | Case assigned to Judicial Officer Maas, Earl. | | | |
| x | 08/11/2022 | Civil Case Management Conference scheduled for 01/13/2023 at 10:00:00 AM at North County in N-28 Earl H. Maas. | | | |
| 6 | 10/31/2022 | Amended Complaint (***FIRST AMENDED CLASS ACTION***) filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) | Amended Complaint | Add to Cart |
| 7 | 12/01/2022 | Notice of Removal to Federal Court filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2022 12 01 - NEXA - Notice of Removal of Case w Exhibits | Add to Cart |
| 8 | 12/01/2022 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2022 12 01 - POS - Ntc of Removal of Case | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| x | 12/13/2022 | Civil Case Management Conference scheduled for 01/13/2023 at 10:00:00 AM at North County in N-28 Earl H. Maas was vacated. | | | |
| 9 | 07/20/2023 | Notice of Ruling filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Notice of Ruling | Add to Cart |
| 10 | 07/20/2023 | Proof of Service filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| x | 08/07/2023 | Civil Case Management Conference date was restored to 01/13/2023 at 10:00:00 AM in N-28 before Earl H. Maas at North County. | | Notice of Hearing SD | Add to Cart |
| 11 | 08/21/2023 | Motion - Other (12/8/2023) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 08 21 - Motion to Compel Arbitration and Stay - Final | Add to Cart |
| 12 | 08/21/2023 | Proof of Service (12/8/2023) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| x | 08/22/2023 | Motion Hearing (Civil) scheduled for 12/08/2023 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 13 | 10/03/2023 | Stipulation - Other - Fee Due filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 10 02 - Diaz v. Nexa - Stipulation Proposed Order ISO Re-Filing Decl. and Attach. | Add to Cart |
| 14 | 10/03/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 10 02 - POS | Add to Cart |
| 15 | 10/04/2023 | Declaration - Other filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | 2023 08 21 - Dec of Mike Kortas ISO MTC Exh A - Final_Redacted 10.4.2023 | Add to Cart |
| 16 | 10/04/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|-----------------|----------|----------|------|
| 17 | 11/27/2023 | Opposition - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Opposition - Other | Add to Cart |

| 1 | 2 | 3 | 4 |

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

| | | **1** | | |

---

## Register of Actions

| All Entries | Filing Entries | Minutes Entries | Scheduling Entries |

🔍 Enter text to search

| | | 1 | **2** | 3 | 4 | | |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 18 | 11/27/2023 | Request for Judicial Notice (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Request for Judicial Notice | Add to Cart |
| 19 | 11/27/2023 | Declaration - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |
| 20 | 11/27/2023 | Declaration - Other (12/8/23) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |
| 21 | 11/29/2023 | Notice - Other (Disassociation of Counsel and Association of Counsel) filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice - Other | Add to Cart |
| 22 | 11/29/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 23 | 12/01/2023 | Reply to Opposition of Noticed Motion and Supporting Declarations filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Reply to Opposition of Noticed Motion and Supporting Declarations | Add to Cart |
| 24 | 12/01/2023 | Request for Judicial Notice filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Request for Judicial Notice | Add to Cart |
| 25 | 12/01/2023 | Notice of Remote Appearance filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice of Remote Appearance | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 26 | 12/01/2023 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 27 | 12/07/2023 | Tentative Ruling for Motion Hearing (Civil) published. | | Tentative Rulings | Add to Cart |
| x | 12/08/2023 | Civil Case Management Conference scheduled for 03/08/2024 at 10:00AM before Judge Earl H. Maas, III. | | | |
| 28 | 12/08/2023 | Minutes finalized for Motion Hearing (Civil) heard 12/08/2023 01:30:00 PM. | | Minute Order | Add to Cart |
| 29 | 02/27/2024 | Motion to Compel Discovery (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 30 | 02/27/2024 | Separate Statement (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 31 | 02/27/2024 | Proposed Order (06/21/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |
| 32 | 02/27/2024 | Proof of Service (06/21/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| x | 02/28/2024 | Discovery Hearing scheduled for 06/21/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 33 | 02/27/2024 | Motion to Compel Discovery (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 34 | 02/27/2024 | Separate Statement (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 35 | 02/27/2024 | Proposed Order (06/28/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

[ ] [ ] [1] [ ] [ ]

## Register of Actions

**All Entries**  **Filing Entries**  **Minutes Entries**  **Scheduling Entries**

🔍 Enter text to search

[ ] [ ] [1] [2] [3] [4] [ ] [ ]

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 36 | 02/27/2024 | Proof of Service (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| x | 02/28/2024 | Discovery Hearing scheduled for 06/28/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 37 | 02/27/2024 | Motion to Compel Discovery (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Motion to Compel Discovery | Add to Cart |
| 38 | 02/27/2024 | Separate Statement (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Separate Statement | Add to Cart |
| 39 | 02/27/2024 | Proposed Order (06/28/2024) submitted by Diaz, Damian received but not filed on 02/27/2024. | Diaz, Damian (Plaintiff) | Proposed Order | Add to Cart |
| 40 | 02/27/2024 | Proof of Service (06/28/2024) filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | Add to Cart |
| x | 02/28/2024 | Discovery Hearing scheduled for 06/28/2024 at 01:30:00 PM at North County in N-28 Earl H. Maas. | | | |
| 41 | 02/29/2024 | Case Management Statement filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Case Management Statement | Add to Cart |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 42 | 02/29/2024 | Proof of Service filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Proof of Service | **Add to Cart** |
| 43 | 03/04/2024 | Case Management Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Case Management Statement | **Add to Cart** |
| 44 | 03/04/2024 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | **Add to Cart** |
| x | 03/08/2024 | Pursuant to California Rules of Court 3.714, the Court, after having met and conferred with counsel, categorizes this case as one that will be disposed of within 18 months | | | |
| x | 03/08/2024 | Civil Jury Trial scheduled for 04/11/2025 at 09:15AM before Judge Earl H. Maas, III. | | | |
| x | 03/08/2024 | Trial Readiness Conference (Civil) scheduled for 03/14/2025 at 09:15AM before Judge Earl H. Maas, III. | | | |
| x | 03/08/2024 | Discovery Hearing continued pursuant to party's motion to 05/17/2024 at 01:30PM in Department N-28. | | | |
| 45 | 03/08/2024 | Minutes finalized for Civil Case Management Conference heard 03/08/2024 10:00:00 AM. | | Minute Order | **Add to Cart** |
| 46 | 05/06/2024 | Opposition to Noticed Motion and Supporting Declarations filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Opposition to Plaintiff's Motions to Compel; Decl. of Arielle Stephenson | **Add to Cart** |
| 47 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Form Interrogatories | **Add to Cart** |
| 48 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Special Interrogatories | **Add to Cart** |
| 49 | 05/06/2024 | Separate Statement filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Nexa's Separate Statement re Requests for Production | **Add to Cart** |

| Name | Address | Phone Number |
|------|---------|--------------|
| GREELEY, DAVID M | GREELEY LAW APC 1350 Columbia Street Suite 403 San Diego CA 92101 | (619) 658-0462 |
| STEPHENSON, ARIELLE | MITCHELL SANDLER LLC 1120 NW 20th Street Suite 725 Washington DC 20036 | (202) 886-5267 |

| | | 1 | | |

## Register of Actions

| All Entries | Filing Entries | Minutes Entries | Scheduling Entries |

Enter text to search

| | | 1 | 2 | 3 | 4 | | |

| ROA# | Entry Date | Short/Long Entry | Filed By | Document | Cart |
|------|-----------|------------------|----------|----------|------|
| 50 | 05/06/2024 | Proof of Service filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Proof of Service | Add to Cart |
| 51 | 05/10/2024 | Notice of Remote Appearance filed by Nexa Mortgage LLC. | Nexa Mortgage LLC (Defendant) | Notice of Remote Appearance | Add to Cart |
| 52 | 05/13/2024 | Reply to Opposition of Noticed Motion and Supporting Declarations filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Reply to Opposition of Noticed Motion and Supporting Declarations | Add to Cart |
| 53 | 05/13/2024 | Declaration - Other filed by Diaz, Damian. | Diaz, Damian (Plaintiff) | Declaration - Other | Add to Cart |

| | | 1 | 2 | 3 | 4 | | |

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

# EXHIBIT 3

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>MILLER LAW FIRM Matthew R. Miller 1946478<br>835 Fifth Ave. Suite 301 San Diego, CA 92101 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 619.687.0143    FAX NO. *(Optional):* 619.687.0136<br>E-MAIL ADDRESS: matt@mrmlawfirm.com<br>ATTORNEY FOR *(Name):* Plaintiff Damian Diaz | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**08/03/2022** at 01:30:59 PM<br><br>Clerk of the Superior Court<br>By Amy Woolf, Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>STREET ADDRESS: 325 S Melrose Dr.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Vista, CA 92081<br>BRANCH NAME: North County | |
| CASE NAME:<br>Damian Diaz v. Nexa Mortgage, LLC | |

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2022-00031816-CU-OE-NC<br><br>JUDGE:    Judge Earl H. Maas III<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [x] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [x] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve                  courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence              court
                                                              f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* 8 unpaid wages, meal/rest break violations/ unlawful deductions, etc.
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 3, 2022

Matthew R. Miller
_____                    ▶    _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |
|---|---|---|

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

# EXHIBIT 4

**MILLER LAW FIRM**
Matthew R. Miller (SBN 194647)
Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: (619) 687-0143
Fax:  (619) 687-0136
matt@mrmlawfirm.com

Brian C. Dawson (SB#183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92131
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com
Attorneys for Plaintiffs and all others similarly situated.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/03/2022** at 01:30:59 PM

Clerk of the Superior Court
By Amy Woolf, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXA MORTGAGE, LLC, an Arizona Limited Liability Company; and DOES 1-100, inclusive<br><br>Defendants. | Case No.    37-2022-00031816-CU-OE-NC<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Failure to Reimburse and Unlawful Deductions<br>(2) Failure to Pay Minimum Wages<br>(3) Failure to Pay Overtime Wages<br>(4) Failure to Provide Rest & Meal Breaks<br>(5) Failure to Maintain and Furnish Accurate Records<br>(6) Failure to Timely Pay Wages<br>(7) Violation of B&P Code §§ 17200 *et seq.; and*<br>(8) Declaratory Relief<br><br>*JURY TRIAL DEMANDED* |

## INTRODUCTION

1.     This is a wage and hour class action lawsuit brought on behalf of California Loan Officers employed by the Defendant NEXA MORTGAGE, LLC ("NEXA") to recover unpaid minimum, regular and overtime wages, meal and rest premium

1

wages, unreimbursed business expenses, unlawful deductions, derivative penalties and declaratory relief.

2.      For the past few years, NEXA, an out-of-state Arizona based company, has become the fastest growing mortgage company through cost saving practices such as wage theft.  The scheme is simple and involves exploiting California workers by misclassifying them as exempt from overtime, minimum wage, meal and rest break laws.  Once hired, the worker is required to pay for all home office expenses and pay for some of NEXA's business expenses, which are deducted from the employees' commission.  So how does NEXA circumvent California wage and hour laws? It requires its California employees to enter into an Employment Agreement in which the employee waives all rights under California law, including his/her right to petition their local Court for violations of California Labor laws.  Indeed, the employee must go to Arizona, pay for an arbitrator and apply Arizona law, which does not protect employees the same way that California does.

3.      NEXA wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California law.  NEXA's avoidance of California labor laws hurt workers and undermines other competing business who play by the rules.  Mr. Diaz, on behalf of himself and all Loan Officers employed by NEXA, seek a stop to these illegal employment practices and to recover all monies earned and owed to the workers victimized by NEXA's practices.

## **PARTIES**

4.      Plaintiff Damian Diaz ("DIAZ"), at all times relevant, is a resident of San Diego County, California.  DIAZ entered into a written employment contract with NEXA on or about or about July 13, 2020, for the position of "Outside Loan Officer".  DIAZ was

Complaint For Damages

responsible for selling mortgage loan products to customers out of his home office which Defendants required him to maintain but did not pay for.  DIAZ conducted sales from his home office more than half his working time and only occasionally met with clients outside of his home office.  DIAZ was paid a percentage of the yield spread premium paid to Defendant which is based on a percentage of the profit obtained by Defendants from the sale of a loan. As a result, there were pay periods during which DIAZ received less than minimum wage or no compensation because he did not make any sales and/or was not paid all earned wages on loans that he originated.  DIAZ worked at least five (5) days a week and ten (10) hours a day.  DIAZ began work early in the morning and worked into the evenings and on the weekends, causing his hours worked to regularly exceed forty (40) in a workweek.  Throughout his employment, DIAZ incurred deductions from his wages for business expenses of the Defendants that were past on to him.

5.     Plaintiff brings this proposed class action on behalf of himself, individually, and on behalf of all similarly situated individuals, pursuant to Code of Civil Procedure § 382, against the Defendants herein.  All members of the putative class were improperly classified as exempt Outside Loan Officers and were subject to policies and practices as alleged herein.  Plaintiff and the putative class members are herein after collectively referred to as "Plaintiffs".

6.     Defendant NEXA MORTGAGE LLC ("NEXA") is, on information and belief, a residential mortgage broker that lends mortgages to home buyers and consumers seeking to refinance their existing mortgages. NEXA is a limited liability company organized and existing under the laws of the State of Arizona and, on information and belief, employs hundreds of mortgage officers in the state of California, with several,

Complaint For Damages

including plaintiff DIAZ working for NEXA within the county of San Diego.

7.      The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 50 when their names are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner liable to Plaintiff for the events and actions alleged herein.  Specifically, at all times herein mentioned, Defendants, including Defendants' managing agents, officers and directors, had, on information and belief, advanced knowledge of and/or ratified each and every act or omission complained throughout this complaint.  At all times herein mentioned, the Defendants aided and abetted the acts and omission of each and all of the other Defendants in proximately causing the damages as herein alleged. All named Defendants, and DOES 1 through 50, will be collectively referred to as "Defendants" and/or "NEXA."

8.      The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 51 through 100, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 51 through 100 when their names are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is personally liable for some, or all, of the claims alleged in the Complaint pursuant to Labor Code §558 and 558.1.

Complaint For Damages

**JURISDICTION AND VENUE**

9.      The amount in controversy arising from the actions and statutory violations as further described herein is sufficient to implicate the general jurisdiction of the Superior Court in and for the County of San Diego.

10.     Venue as to Defendants is proper in this judicial district, pursuant to Code of Civil Procedure § 395(a).  Defendants transact business, have agents, and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on the Representative Plaintiff and those similarly situated within the State of California and within San Diego County.

**GENERAL ALLEGATIONS**

**Plaintiffs were misclassified as Exempt Outside Sales**

11.     Plaintiffs are nonexempt employees, but were misclassified by Defendants as exempt based on the outside salesperson exemption.  Plaintiffs, however, worked less than 50% of their time outside offices or work locations designated by Defendants.  Indeed, Defendants do not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

12.     Plaintiffs are loan officers who promote and sell Defendants' loan products to customers, which is work directly related to the goods and services that constitute a financial service company's marketplace offerings.  §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption.  Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and

regularly engaged and/or spend more than half of his/her working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

13.     "Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property."  (29 C.F.R. 541.502).

14.     Defendants require Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, DIAZ worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

15.     In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such

Complaint For Damages

establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, *et seq.* because Defendants are a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law.  Defendants' conduct as herein alleged was willful and not in good faith, and Defendants had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

## A.     Defendants' Wage and Hour Violations

16.     As a result of Defendants' misclassification, Plaintiffs were not reimbursed for business expenses, paid minimum wage for certain non-sales tasks, not paid overtime, and were not provided or compensated for meal or rest breaks, and were subject to unlawful deductions.  Defendants' conduct as set forth below, violated, among other statutes, Labor Code §§201, 202, 203, 204, 218.5, 221, 226, 226.3, 226.7, 510, 512, 1194, 1197 as well as IWC Wage Order No. 4-2001.

### i.     Unreimbursed Expenses

17.     Defendants failed to indemnify and reimburse the Plaintiffs for required expenses incurred in the discharge of their duties for Defendant.  Cal. Lab. Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed

them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for home office expenses, including a printer, fax machine, internet, phone, and other office-related products; and other loan servicing related expenses in violation of California Labor Code § 2802.

### ii.   Unlawful Deductions

18.   In violation of Labor Code § 221, Defendants passed on their labor costs to Plaintiffs.  Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. Prior to receiving their earned commission Defendants would deduct "fees", costs and expenses that were part of the general overhead of the Defendants.  These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch (BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous" fees.  Plaintiffs are informed and believe that in some cases, loan officers earned less than minimum wage required for all hours worked after Defendants' deductions.

### iii.   Unpaid Wages

19.   Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants.   Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more.  Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

Complaint For Damages

### iv. Unpaid Commissions

20. Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

### v. Wage Statement Violations

21. Defendants failed to maintain and provide Plaintiffs with complete and accurate wage statements which failed to show, among other things, gross overtime pay and the true number of hours worked. Cal. Lab. Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all

applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. As a result, Defendants provided Plaintiffs with wage statements that violate Cal. Lab. Code § 226, and also violate Wage Order No. 4 by failing to maintain time records showing when work begins and ends for each employee.

      **vi.**    **Meal and Rest Breaks**

22.    Because they misclassified Plaintiffs as exempt, Defendants did not provide Plaintiffs with meal or rest breaks.  In violation of Labor Code § 266.7, Defendants also did not compensate Plaintiffs for rest breaks because Defendants paid on a commission basis for sales work and failed to separately pay Plaintiffs for rest breaks.

**B.**    **Defendant's Employment Agreement Contains Numerous Unconscionable Clauses Under California Law.**

23.    Plaintiffs were all provided with a take-it or leave-it Employment Agreement, which they were required to sign as a condition of their employment. Defendants' Employment Agreement is littered with unconscionable clauses in a thinly-veiled attempt to garner an unfair advantage over Plaintiffs who dare seek redress against Defendants illegal employment practices.  The offending clauses and the arbitration provisions of the Employment Agreement renders the entire agreement void and unenforceable.

      **i.**    **The Employment Agreement Contains An Improper Fee Shifting Provision**

24.    Defendants' Employment Agreement contains an arbitration agreement, which purports to be optional, but in practice, is a mandatory condition of Plaintiffs' employment.  The California Supreme Court has held that when an employer imposes

mandatory arbitration as a condition of employment, the arbitration agreement cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.   (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 110-111). Section VII of the Defendants' Employment Agreement, which states in pertinent part that, "the parties will share equally in the cost of such Arbitration...", is the type of cost-splitting provision that has specifically been held to be unconscionable and is therefore unenforceable.

**ii.** **The Employment Agreement Contains an Improper Choice of Law and Forum-selection Clause.**

25.     Defendants' Employment Agreement requires disputes to be resolved in Arizona and that the employment relationship between NEXA and its employees will be governed and construed under and enforce with Arizona laws.   California prohibits employers from requiring an employee who primarily resides and works in California to agree, as a condition of employment, to a provision that would require the employee to adjudicate outside of California a claim arising in California or deprive the employee of the substantive protection of California law with respect to any controversy arising in California. Any provision that violates these prohibitions is voidable (Lab.C. § 925(a), (b)). Plaintiffs all executed the Agreements in California, lived and worked in California, during all times relevant herein.  This provision is therefore unenforceable.

**iii.** **The Employment Agreement Contains an Improper Ban on Class Actions.**

26.     Defendants' Employment Agreement prohibits employees from pursuing or participating in relief on a class or collective action basis against NEXA "arising out of

the employment relationship or this agreement."   The California Supreme Court has held that class arbitration waivers are unlawful when they impermissibly interfere with the vindication of unwaivable statutory rights.  "We conclude that at least in some cases, the prohibition of classwide relief would undermine the vindication of the employee's unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws.  Accordingly, such class arbitration waivers should not be enforced if a trial court determines…that class arbitration would be significantly more effective way of vindicating the rights of affected employees than individual arbitration." (Gentry v. Superior Court (2007) 42 Cal.4th 443).   Further, the Federal Arbitration Act does not preempt California law with respect to class action waivers that apply outside of arbitration to non-arbitrable claims.  (Garrido v. Air Liquide Industrial U.S. LP (2015) 241 Cal.App4th 833, 837-838 (observing claims that are not required to be arbitrated are not governed by the FAA and "Gentry's holding has not been overturned under California law in situations where the FAA does not apply")).

27.    Defendants' arbitration agreement, which requires employees to bring non-arbitrable claims individually in court – especially wage and hour claims where the potential recovery is modest – is contrary to public policy, unfair, and effectively exculpates Defendants from liability for common violations of the Labor Code.  The class waiver is therefore unconscionable and unenforceable under California law because it applies to non-arbitrable claims that are not covered by the FAA, and because it imposes unfair obstacles to employees vindicating their statutory and unwaivable rights under the Labor Code.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to § 382 of the Code of Civil Procedure.  The Class is sufficiently numerous and estimated to include between thirty to fifty employees, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to the parties, Class members, and the Court.  Plaintiff seeks to represent a Class composed of and defined as follows:

> Plaintiff Class:    All current or former employees of Nexa Mortgage, LLC who worked in California as mortgage salespersons or loan officers or similar position, and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial.

29.     Plaintiff reserves the right under Rule 3.765(b), California Rules of Court, to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues.

30.     This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

a.     *COMMONALITY*:   The Representative Plaintiff and the putative class members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

i.    Whether Defendants misclassified Plaintiffs as exempt under the outside salesperson exemption.

ii.   Whether the choice of law, forum selection and arbitration provisions in the Defendants' Employment Agreement are enforceable.

13

iii.   Whether Defendants' violated Labor Code § 2802 by failing to reimburse its employees for business expenses incurred while working from home.

iv.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §1194 by failing to provide or pay minimum wage to Plaintiffs.

v.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §510 by failing to provide or pay overtime to loan officers.

vi.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §226.7 by failing to provide or pay for meal and rest breaks.

vii.   Whether Defendants violated Labor Code §226 by failing to provide Plaintiffs with accurate itemized statements in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employer.

viii.   Violating Labor Code Sections 201, 202, 203 & 204 by failing to tender timely and full payment and/or restitution of all wages owed to the employees whose employment with Defendants has terminated on sales which payment was received by Defendants;

ix.   Whether Plaintiffs are entitled to restitution under Cal.Bus. & Prof. Code §§ 17200 et seq.

x.   Whether Plaintiffs are entitled to receive interest on unpaid compensation due and owing them.

xi.   Where Defendants' systemic acts and practices violated California Labor Code §§ 201, 202, 221, 226.7, 351, 510, 512, 558, 1174, 1194 and 1197, applicable IWC wage orders, and California Business and Professions Code § 17200 et seq.

Complaint For Damages

b.    *NUMEROSITY*:  A class action is the only available method for the fair and efficient adjudication of this controversy.  The members of the Plaintiff Class are so numerous that joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class consists of thirty to fifty persons.  Individual joinder of Class members is also impracticable.  The identity of Class Members can be determined easily upon analysis of, inter alia, employee and payroll records maintained by NEXA.

c.    *TYPICALITY*:  The Representative Plaintiff's claims are typical of the claims of the Plaintiff Class.  The Representative Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendants common course of conduct in violation of law, as alleged herein.

d.    *SUPERIORITY OF CLASS ACTION*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgment and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex and factual issues.  Moreover, individual actions by class members may establish inconsistent standards of conduct for NEXA.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each class member.  Plaintiffs are informed and believe that

Complaint For Damages

NEXA used the same Employment Agreement on every loan officer, thereby making appropriate relief with regard to the members of the class as a whole, as requested herein.

e. <u>ADEQUACY OF REPRESENTATION</u>:  The Representative Plaintiff in this class action is an adequate representative of the Plaintiff Class, in that the Representative Plaintiff's claims are typical of those of the Plaintiff Class and the Representative Plaintiff has the same interests in the litigation of this case as the Class Members.  The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel, experienced in conducting litigation of this nature.  The Representative Plaintiff is not subject to any individual defense unique from those conceivably applicable to the Plaintiff Class as a whole.  The Representative Plaintiff anticipates no management difficulties in this litigation.

**FIRST CAUSE OF ACTION**
**Failure To Reimburse Business Expenses / Unlawful Deduction**
**(Against all Defendants)**

31.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32.    At all mentioned times in this Complaint California Labor Code §§ 221 and 2802 were in full force and effect and binding on Defendants. Said sections require employers to indemnify its employees for all that the employee necessarily expends or loses in direct consequence of the discharge of duties.

33.    California Labor Code §221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

34.    California Labor Code §2802 provides, "An employer shall indemnify his or

her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions believed them to be unlawful."

35.      During the applicable statutory period, Plaintiffs incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience to the directions of Defendants.  These business expenses which Plaintiffs incurred, which were not reimbursed include, but are not limited to, internet, phone, personal computer usage, office supplies, utility bills, and/or fair rental value of space used for home office.  Defendants did not reimburse these expenditures or losses to Plaintiffs. Moreover, Defendants had a policy and practice of deducting its business expenses from Plaintiffs' earned commissions.

36.      Plaintiffs are entitled to reimbursement for all necessary expenditures and losses incurred in direct consequence of the discharge of their duties while employed by Defendants, and they are entitled to restitution of all monies unlawfully withheld by the Defendants in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage in violation of**
**California Labor Code §§ 510, 1194, 1197 and IWC Wage Order 4-2001 §4.**
**(Against all Defendants)**

37.      Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

38.      Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.  At all times relevant, Defendants willfully failed and refused, and continue to willfully fail and refuse,

to pay Plaintiffs the amounts owed.

39.     Labor Code § 510 provides in relevant part: "[e]ight hours of labor constitutes a day's work."  Labor Code § 1197 provides "the minimum wage for employers fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than minimum wage so fixed is unlawful."  Labor Code § 1194 provides "[N]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

40.     Labor Code § 1194.2 provides in relevant part: "In any action under §1193.6 or §1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

41.     Pursuant to IWC Wage Order No. 4-2001, at all time material hereto, "hours worked" includes "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, where or not required to do so."

42.     Plaintiffs are required to work non-selling time, for which they are not compensated.  This includes, but is not limited to, meetings, loan processing, training, loan tracking and/or customer service. Plaintiffs should have received not less than the minimum wage in a sum according to proof for the time worked, but not compensated. For all hours Plaintiffs worked, they are entitled to not less than the California minimum

Complaint For Damages

wage and liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.   In addition, Plaintiffs are entitled to their attorneys' fees, costs and interest according to proof, and to those employees no longer employed by Defendants, waiting time penalties pursuant to Labor Code § 200 et seq.

## THIRD CAUSE OF ACTION
### Failure to Pay Overtime Compensation in Violation of
### California Labor Code §§ 204, 510, 1194, 1197 & 1198 and IWC Wage Order 4-2001.
### (Against all Defendants)

43.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.    Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.

45.    Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid wages, including straight time and overtime, in a timely fashion for their work.   This precludes any waiver for unpaid due and owing wages that remain unpaid at the time of separation.

46.    At all times relevant herein, IWC Wage Order No. 4-2001, governing "Professional, Technical, Clerical, Mechanical and Similar Occupations," applied and continues to apply to Plaintiffs.

47.    At all times relevant herein, IWC Wage Order No. 4-2001 provides for payment of overtime wages equal to one and one-half (1.5) times an employee's regular rate of pay for all hours worked over eight (8) hours per day and/or forty (40) hours in a work week, and/or for payment of overtimes wages equal to double the employee's regular rate of pay for all hours in excess of twelve (12) hours in any workday and/or for all hours worked in excess in eighty (8) hours on the seventh (7th) day of work in any

Complaint For Damages

one workweek.

48.     Throughout the class period, Plaintiffs have routinely and regularly worked in excess of eight hours per day and/or forty hours per week.

49.     Under the provisions of IW|C Order 4-2001, Plaintiffs should have received overtime wages in a sum according to the proof for hours worked during the three (3) years prior to filing of this action.  Defendants owe Plaintiffs overtime wages, and has failed and refused, and continues to fail and refuse, to pay Plaintiffs the amounts owed.

50.     Plaintiffs request recovery of overtime compensation according to proof, interest, attorney fees, and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties on behalf of those employees no longer employed by the Defendants against Defendants in a sum as provided by the California Labor Code and/or other applicable statutes.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Meal and/or Rest Periods**
**California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

51.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     Labor Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the

Complaint For Damages

total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.:

§11 of the Order 4-2001 of the Industrial Wage Commission provides in relevant part:

Rest Periods:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

53.     Defendants have intentionally and improperly failed to provide and/or permit all rest and/or meal periods without any work or duties to Plaintiffs who worked more than three and one half hours (3 ½) per day, and by failing to do so Defendants violated the provisions of Labor Code 226.7.   Plaintiffs were often expected and required to continue working through rest periods to meet the expectations of Defendants and finish the workday.  In some cases when Plaintiffs worked more than ten hours in a shift, Defendants failed to authorize and/or permit a third mandated rest period.  As a result, Plaintiffs were periodically unable to take compliant rest periods.

54.     In addition to failing to authorize and permit compliant reset periods, Plaintiffs were not compensated with one hour's worth of pay at their regular rate of compensation when they were not provided with a compliant rest period in accordance with Labor Code § 226.7.  Thus, Defendants have violated Labor Code § 226.7 and the applicable Wage Order.

55.     Therefore, as a result of Defendants unlawful acts, Plaintiffs have been deprived of timely off-duty breaks and are entitled to recovery under Labor Code §226.7(b) and § 11 of IWC Wage Order No. 4-2004, in the amount of one additional hour of pay at the employee's regular rate of compensation for each work period during each day in which Defendants fialed to provide its employees with timely statutory off-duty breaks.

**FIFTH CAUSE OF ACTION**
**Failure to Maintain Accurate Records and Furnish Accurate Itemized Wage Statements Violation of California Labor Code §§ 226 (b), 1174, 1175**
**(Against all Defendants)**

56.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     Labor Code § 226(a) of the California Labor Code requires Defendants to

22

Complaint For Damages

itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by Plaintiffs and the putative class members.  Defendants knowingly and intentionally failed to comply with Labor Code §226(a) on each and every wage statement that should have been provided to Plaintiff and the putative class. Specifically, Defendants knew that its employees worked far more hours than the hours listed on their timesheets and that its employees were in fact performing "prep work" off the clock.  Defendants maintained these policies despite this knowledge.

58.     Labor Code § 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

59.     §1174 of the California Labor Code requires Defendants to maintain and preserve, in a centralized location, among other items, records showing the names and addresses of all employees employed, payroll records showing the hours worked daily by and the wages paid to its employees.    Likewise, IWC Wage Order 4-2001(7) requires Defendants to maintain time records showing, including but not limited to, when the employee begins and ends each work period, meal periods, and total daily hours worked in an itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and the putative class members.  Labor Code §1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records.

60.     Defendants have intentionally and willfully failed to keep accurate and complete records showing the hours worked daily, breaks taken and missed, and wages

paid to Plaintiffs.  Thus, Plaintiffs have been denied their legal right and protected interest in having available at a central location accurate and complete payroll records showing the hours worked daily by, and the wages paid to them.

61.    In addition, Defendant knowingly and intentionally failed to maintain, furnish and provide timely, accurate, itemized wage statements by failing, inter alia, to identify all hours worked by Plaintiffs.  Further, the wage statements were inaccurate as the unreimbursed business expenses, unpaid wages, missed meal and rest breaks were not included in the gross wages earned by Plaintiffs.

62.    Defendants' failure to provide Plaintiffs with accurate itemized wage statements during the Class period has caused Plaintiffs to incur economic damages in that they were not aware that they were owed and not paid compensation for missed rest and meal periods, for hours worked without pay, for overtime work without pay. In addition, the Defendants provided inaccurate information regarding the hours worked, which masked the underpayment of wages to Plaintiffs.

63.    As a result of Defendants' issuance of inaccurate itemized wage statements and failure to maintain accurate records of Plaintiffs hours worked, Plaintiffs are entitled to recover penalties pursuant to § 226(e).

## SIXTH CAUSE OF ACTION
### Violations of Labor Code § 203 (Waiting Time Penalties)
### (Brought by Plaintiff on behalf Class Members who are no longer employed by Defendants)

64.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.    California Labor Code § 201 requires Defendants to pay their discharged employees all wages due immediately upon discharge.

66.    California Labor Code § 202 requires that if an employee quits his or her

24

Complaint For Damages

employment, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.  Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive a payment by mail if he or she so requests and designates a mailing address.

67.    Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code §§ 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue at the same rate, for up to thirty (30) days from the due date thereof, until paid or until an action therefore is commenced.

68.    Plaintiff and other putative class members who have been discharged or who have quit are entitled to all unpaid compensation, pursuant to California Labor Code § 203, but, to date, have not received such compensation, as alleged above. Plaintiff and the putative class members have not received payment for all of the time spent working for Defendants.

69.    Defendants' willful failure to pay wages to these class members violates Labor Code § 203 because Defendants knew or should have known wages were due to these employees, but Defendants failed to pay them.  Thus, these class members are entitled to recover their daily wage multiplied by thirty days and interest on all amounts recovered herein.

Complaint For Damages

**SEVENTH CAUSE OF ACTION**
**Violation of Business & Professions Code**
**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

70.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

71.     California Business & Professions Code ("B&PC") §§17200 et seq. provides in pertinent part "…[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act…".

72.     B&PC § 17205 provides that unless otherwise expressly provided, the remedies or penalties provided for unfair competition "are cumulative to each other and to the remedies or penalties available under all other laws of this state."

73.     B&PC § 17204 provides that an action for any relief from unfair competition may be prosecuted by any person who suffered injury in fact and lost money or property as a result of such unfair competition.

74.     Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC § 17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving Plaintiff and all others similarly situated of the minimum working standards and conditions due to them under California labor laws and the IWC Wage Orders as specifically described herein.

75.     Defendants have engaged in unfair, unlawful and fraudulent business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation, by failing to furnish Plaintiff and the putative class members with accurate itemized wage statements, failing to keep payroll records showing total hours worked, and by requiring

26

Complaint For Damages

Plaintiff and the putative class members to agree to a terms or conditions of employment that Defendants knew or should have known is prohibited by law.

76. Defendants' use of such practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over Defendants' competitors.

77. Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair practices.

78. Plaintiffs seek full restitution from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

79. Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs.

80. Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

**EIGHTH CAUSE OF ACTION**
**Declaratory Relief**

81. Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

82. CCP § 1060 provides that any person who desires a declaration of his or her rights or duties with respect to another, in cases of actual controversy relating to the legal rights and duties of the respective parties, may ask the Court for a declaration of rights or duties, and the Court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time; any such declaration by the Court shall have the force of a final judgment.

83. An actual controversy exists between the parties as to the enforceability of

the Employment Agreement and its provisions as stated above.   It is therefore necessary that the Court declare the rights and duties of the parties hereto.

84.   Labor Code § 925 prohibits an employer from requiring an employee who primarily resides and works in California to agree to a provision that either: (1) requires the employee to adjudicate outside of California a claim arising in California; or (2) deprives the employee of the substantive protection of California law with respect to a controversy arising in California.   Labor Code § 432.5 makes it unlawful for an employee to require an employee to agree, in writing, to a term or condition known by the employer to be prohibited by law.

85.   Plaintiffs assert the choice-of-law and forum selection provisions in the Defendants standard Employment Agreement are void and illegal, not just under Labor Code 925, but also under other California laws, including California's constitutional right to privacy, Business and Professions Code 16600, 17200 et seq., the Cartwright Act and Labor Code 98.6, 203, 226, 232, 232.5, 432.5, 450, 510, 1102.5, 1194, 1197.5, 2802, and 2804.   These laws were established for a public reason and establish unwaivable rights.

86.   In light of the facts set forth above, a case or controversy exists as to whether Defendants requirement that Plaintiffs agree to Arizona forum selection and choice of law provision is unlawful and unenforceable.   Plaintiffs seek judicial declaration of their rights and obligations with respect to Defendants forum selection and choice of law provisions. Specifically, they seek a judicial declaration that Defendants violate the law (including Labor Code Section 432.5 and 925) by requiring employee to agree to the forum selection and choice of law provisions in their employment documents.   The also seek a declaration that the forum selection and

choice of law provisions violate the laws referenced above.

87. In addition, Plaintiffs are informed and believe that Defendants require all current employees and applicants for employment to execute, as part of their continued or application for employment, an Employment Agreement that contains an arbitration provision. The arbitration agreement is an adhesive contract because agreement is drafted exclusively by Defendants, at the time the arbitration provision was executed by Plaintiffs, Defendants exercised superior bargaining power over the employees and applicants for employment. Further, Defendants require Plaintiffs to adhere to the terms of the standard form agreement presented to them on a "take it or leave it" basis. There was and is no opportunity to negotiate different terms than those drafted by Defendants. Further, the arbitration agreement is unenforceable for a number of reasons, including the reasons stated above, and because the Agreement limits Plaintiffs' procedural and substantive rights and requires Plaintiffs to pay the fees of retired judges who act as arbitrators.

88. Further, Plaintiffs seek a judicial determination regarding the enforceability of the "class waiver" contained in Defendants' Employment Agreement.

89. Ancillary to this judicial declaration, Plaintiffs seek an injunction: (1) Prohibiting Defendants from requiring Plaintiffs to sign employment documents that contain out-of-state forum selection or choice of law provisions; and (2) prohibiting Defendants from threatening to enforce or enforcing these forum selection and choice of law provisions. Plaintiffs also seek an affirmative injunction requiring Defendants to inform class members that its forum selection and choice of law provisions are unlawful, and it will not threaten to enforce or enforce these provisions.

Complaint For Damages

1

## **PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment

3

against the Defendants as follows:

4

1.      An Order that this action may proceed and be maintained on a class-wide

5

basis;

6

7

2.      Appropriate Injunctive relief;

8

3.      Attorneys' fees and costs, according to proof;

9

4.      Disgorgement and restitution, according to proof;

10

5.      Statutory and civil penalties, according to proof;

11

6       Damages for the mount of unpaid compensation, including interest

12

thereon, liquidated damages, and penalties subject to proof at trial;

13

7.      Directing such other and further relief as this Court may deem proper.

14

## **JURY DEMAND**

15

16

WHEREFORE, Plaintiff demands a trial by jury.

17

**MILLER LAW FIRM**

18

Dated:  August 3, 2022            By:     ***/s/ Matthew R. Miller***

19

Matthew R. Miller
Attorneys for Plaintiff and the Proposed Class

20

21

22

23

24

25

26

27

28

Complaint For Damages

# EXHIBIT 5

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/03/2022** at 01:30:59 PM

Clerk of the Superior Court
By Amy Woolf, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAMIAN DIAZ, individually and on behalf of all others similarly situated

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NEXA MORTGAGE, LLC, an Arizona Limited Liability Company; and DOES 1-100, inclusive

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court

325 S Melrose Dr. Vista, CA 92081

| CASE NUMBER: *(Número del Caso):* |
|---|
| 37-2022-00031816-CU-OE-NC |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew R. Miller 835 Fifth Ave. Suite 301 San Diego, CA 92101

| DATE: *(Fecha)* | 08/11/2022 | Clerk, by *(Secretario)* | A. Woolf | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Nexa Mortgage LLC

    under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courts.ca.gov |
|---|---|---|





| **Entity Name:** | **NEXA MORTGAGE, LLC** |
|---|---|
| **Jurisdiction:** | CA |
| **Date:** | 11/17/2022 |
| **Receipt Method:** | Process Server |
| **Case Number:** | 37-2022-00031816-CU-OE-NC |
| **Plaintiff:** | DAMIAN DIAZ; ET AL. |
| **Defendant:** | NEXA MORTGAGE, LLC; ET AL. |
| **Document Type:** | Summons and Notice & Complaint |

# EXHIBIT 6

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/31/2022** at 11:32:00 AM
Clerk of the Superior Court
By Teresa Porotesano, Deputy Clerk

1  **MILLER LAW FIRM**
Matthew R. Miller (SBN 194647)
2  Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 301
3  San Diego, CA 92101
4  Telephone: (619) 687-0143
Fax: (619) 687-0136
5  matt@mrmlawfirm.com

6  Brian C. Dawson (SB#183251)
7  DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
8  San Diego, CA 92131
Telephone: (619) 988-2135
9  Email: brian@dawson-ozanne.com
Attorneys for Plaintiffs and all others similarly situated.
10

11        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12               **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually and on behalf     Case No.
of all others similarly situated,
14                                              **FIRST   AMENDED   CLASS   ACTION
COMPLAINT FOR:**
15               Plaintiff,

16  v.                                          (1) Failure to Reimburse and Unlawful
                                                    Deductions
17  NEXA   MORTGAGE,   LLC,   an   Arizona      (2) Failure to Pay Minimum Wages
Limited Liability Company; and DOES 1-       (3) Failure to Pay Overtime Wages
18  100, inclusive                             (4) Failure to Provide Rest & Meal Breaks
                                                (5) Failure to Maintain and Furnish
19               Defendants.                         Accurate Records
                                                (6) Failure to Timely Pay Wages
20                                              (7) Violation of B&P Code §§ 17200 *et
                                                    seq.;*
21                                              (8) Declaratory Relief, and
22                                              (9) Enforcement of Labor Code Section
                                                    2698 et seq. ("PAGA")
23

24                                              *JURY TRIAL DEMANDED*
25

26

27

28

                                1

                    First Amended Complaint For Damages

**INTRODUCTION**

1.      This is a wage and hour class action lawsuit and representative action pursuant to the Private Attorneys General Act of 2004, Cal.Lab.Code section 2698 et seq., brought on behalf of California Loan Officers employed by the Defendant NEXA MORTGAGE, LLC ("NEXA") to recover unpaid minimum, regular and overtime wages, meal and rest premium wages, unreimbursed business expenses, unlawful deductions, derivative penalties and declaratory relief.

2.      For the past few years, NEXA, an out-of-state Arizona based company, has become the fastest growing mortgage company through cost saving practices such as wage theft.  The scheme is simple and involves exploiting California workers by misclassifying them as exempt from overtime, minimum wage, meal and rest break laws. Once hired, the worker is required to pay for all home office expenses and pay for some of NEXA's business expenses, which are deducted from the employees' commission. So how does NEXA circumvent California wage and hour laws? It requires its California employees to enter into an Employment Agreement in which the employee waives all rights under California law, including his/her right to petition their local Court for violations of California Labor laws.  Indeed, the employee must go to Arizona, pay for an arbitrator and apply Arizona law, which does not protect employees the same way that California does.

3.      NEXA wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California law. NEXA's avoidance of California labor laws hurt workers and undermines other competing business who play by the rules.  Mr. Diaz, on behalf of himself and all Loan Officers employed by NEXA, seek a stop to these illegal employment practices and to

First Amended Complaint For Damages

1  recover all monies earned and owed to the workers victimized by NEXA's practices.

2  **PARTIES**

3  4.  Plaintiff Damian Diaz ("DIAZ"), at all times relevant, is a resident of San

4  Diego County, California.  DIAZ entered into a written employment contract with NEXA

5  on or about or about July 13, 2020, for the position of "Outside Loan Officer".  DIAZ was

6  responsible for selling mortgage loan products to customers out of his home office

7  which Defendants required him to maintain but did not pay for.  DIAZ conducted sales

8  from his home office more than half his working time and only occasionally met with

9  clients outside of his home office.  DIAZ was paid a percentage of the yield spread

10 premium paid to Defendant which is based on a percentage of the profit obtained by

11 Defendants from the sale of a loan. As a result, there were pay periods during which

12 DIAZ received less than minimum wage or no compensation because he did not make

13 any sales and/or was not paid all earned wages on loans that he originated.  DIAZ

14 worked at least five (5) days a week and ten (10) hours a day.  DIAZ began work early

15 in the morning and worked into the evenings and on the weekends, causing his hours

16 worked to regularly exceed forty (40) in a workweek.  Throughout his employment, DIAZ

17 incurred deductions from his wages for business expenses of the Defendants that were

18 past on to him.

19 5.  Plaintiff brings this proposed class action on behalf of himself, individually,

20 and on behalf of all similarly situated individuals, pursuant to Code of Civil Procedure §

21 382, against the Defendants herein.  All members of the putative class were improperly

22 classified as exempt Outside Loan Officers and were subject to policies and practices

23 as alleged herein.  Plaintiff and the putative class members are herein after collectively

24 referred to as "Plaintiffs".

3

6.      In addition, pursuant to the Private Attorney General Act ("PAGA"), incorporated in Labor Code Sections 2698 et seq., Plaintiff brings this representative action against Defendant NEXA MORTGAGE LLC  and DOES 1 through 50, for wage and hour violations of the California Labor Code and the applicable Industrial Welfare Commission Wage Order (the "IWC Wage Order").  Pursuant to Labor Code section 2699, any provision of the Labor and Workforce Development Agency ("LWDA") or any of its departments, divisions, commission, boards, agencies or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Labor Code section 2699.3.  By this action, Plaintiff, who is an aggrieved employee, seeks civil penalties on behalf of himself and other aggrieved employees pursuant to the PAGA.

7.      Plaintiff has satisfied all the prerequisites set out in California Labor Code Section 2699.3 required for maintaining a civil suit to recover the aforementioned penalties.  On August 1, 2022, Plaintiff, by and through counsel, filed his PAGA Notice online with the Labor Workforce Development Agency ("LWDA"), paid the $75.00 filing fee, and sent a letter by certified mail to Defendants setting forth the facts and theories of the violations alleged against Defendants, as prescribed by Labor Code Section 2698 et seq. Attached as Exhibit 1 is a copy of Plaintiff's letter to the LWDA.  The California Department of Industrial Relations' website confirms receipt of Plaintiff's submission, Case No. LWDA-CM-901646-22. The statutory period, 65 days, for the LWDA to serve Plaintiff with a notice of its intent to investigate and assume jurisdiction over the applicable penalty claims has past.  Therefore, Plaintiff may proceed with a civil action pursuant to Labor Code Section 2699.

4

First Amended Complaint For Damages

8.     Defendant NEXA MORTGAGE LLC ("NEXA") is, on information and belief, a residential mortgage broker that lends mortgages to home buyers and consumers seeking to refinance their existing mortgages. NEXA is a limited liability company organized and existing under the laws of the State of Arizona and, on information and belief, employs hundreds of mortgage officers in the state of California, with several, including plaintiff DIAZ working for NEXA within the county of San Diego.

9.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 50 when their names are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner liable to Plaintiff for the events and actions alleged herein.   Specifically, at all times herein mentioned, Defendants, including Defendants' managing agents, officers and directors, had, on information and belief, advanced knowledge of and/or ratified each and every act or omission complained throughout this complaint.  At all times herein mentioned, the Defendants aided and abetted the acts and omission of each and all of the other Defendants in proximately causing the damages as herein alleged. All named Defendants, and DOES 1 through 50, will be collectively referred to as "Defendants" and/or "NEXA."

10.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 51 through 100, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names

First Amended Complaint For Damages

pursuant to § 474 of the California Code of Civil Procedure. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 51 through 100 when their names are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is personally liable for some, or all, of the claims alleged in the Complaint pursuant to Labor Code §558 and 558.1.

## JURISDICTION AND VENUE

11. The amount in controversy arising from the actions and statutory violations as further described herein is sufficient to implicate the general jurisdiction of the Superior Court in and for the County of San Diego.

12. Venue as to Defendants is proper in this judicial district, pursuant to Code of Civil Procedure § 395(a). Defendants transact business, have agents, and are otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have a direct effect on the Representative Plaintiff and those similarly situated within the State of California and within San Diego County.

## GENERAL ALLEGATIONS

**Plaintiffs were misclassified as Exempt Outside Sales**

13. Plaintiffs are nonexempt employees, but were misclassified by Defendants as exempt based on the outside salesperson exemption. Plaintiffs, however, worked less than 50% of their time outside offices or work locations designated by Defendants. Indeed, Defendants do not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

14. Plaintiffs are loan officers who promote and sell Defendants' loan products to customers, which is work directly related to the goods and services that constitute a

6

First Amended Complaint For Damages

financial service company's marketplace offerings. §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption. Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and regularly engaged and/or spend more than half of his/her working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

15. "Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property." (29 C.F.R. 541.502).

16. Defendants require Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, DIAZ worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

First Amended Complaint For Damages

17.     In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, *et seq.* because Defendants are a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law.  Defendants' conduct as herein alleged was willful and not in good faith, and Defendants had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

**A.     Defendants' Wage and Hour Violations**

18.     As a result of Defendants' misclassification, Plaintiffs were not reimbursed for business expenses, paid minimum wage for certain non-sales tasks, not paid overtime, and were not provided or compensated for meal or rest breaks, and were subject to unlawful deductions.  Defendants' conduct as set forth below, violated, among other statutes, Labor Code §§201, 202, 203, 204, 218.5, 221, 226, 226.3, 226.7, 510, 512, 1194, 1197 as well as IWC Wage Order No. 4-2001.

First Amended Complaint For Damages

1

### i. **Unreimbursed Expenses**

2

19.     Defendants failed to indemnify and reimburse the Plaintiffs for required

3

expenses incurred in the discharge of their duties for Defendant. Cal. Lab. Code §

4

2802 provides that "an employer shall indemnify his or her employee for all necessary

5

6

expenditures or losses incurred by the employee in direct consequence of the discharge

7

of his or her duties, or of his or her obedience to the directions of the employer, even

8

though unlawful, unless the employee, at the time of obeying the directions, believed

9

them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for

10

home office expenses, including a printer, fax machine, internet, phone, and other

11

office-related products; and other loan servicing related expenses in violation of

12

California Labor Code § 2802.

13

14

### ii. **Unlawful Deductions**

15

20.     In violation of Labor Code § 221, Defendants passed on their labor costs

16

to Plaintiffs. Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to

17

collect or receive from an employee any part of wages theretofore paid by said

18

employer to said employee. Prior to receiving their earned commission Defendants

19

would deduct "fees", costs and expenses that were part of the general overhead of the

20

Defendants. These deductions included, but are not limited to, background checks,

21

Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch

22

(BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous"

23

24

fees. Plaintiffs are informed and believe that in some cases, loan officers earned less

25

than minimum wage required for all hours worked after Defendants' deductions.

26

27

28

9

First Amended Complaint For Damages

### iii. **Unpaid Wages**

21.     Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants.     Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more.  Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

### iv. **Unpaid Commissions**

22.     Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable

penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

### v.   **Wage Statement Violations**

23.    Defendants failed to maintain and provide Plaintiffs with complete and accurate wage statements which failed to show, among other things, gross overtime pay and the true number of hours worked. Cal. Lab. Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. As a result, Defendants provided Plaintiffs with wage statements that violate Cal. Lab. Code § 226, and also violate Wage Order No. 4 by failing to maintain time records showing when work begins and ends for each employee.

### vi.   **Meal and Rest Breaks**

24.    Because they misclassified Plaintiffs as exempt, Defendants did not provide Plaintiffs with meal or rest breaks.   In violation of Labor Code § 266.7, Defendants also did not compensate Plaintiffs for rest breaks because Defendants paid on a commission basis for sales work and failed to separately pay Plaintiffs for rest breaks.

### B.   **Defendant's Employment Agreement Contains Numerous Unconscionable Clauses Under California Law.**

25.    Plaintiffs were all provided with a take-it or leave-it Employment Agreement, which they were required to sign as a condition of their employment. Defendants' Employment Agreement is littered with unconscionable clauses in a thinly-

11

veiled attempt to garner an unfair advantage over Plaintiffs who dare seek redress against Defendants illegal employment practices. The offending clauses and the arbitration provisions of the Employment Agreement renders the entire agreement void and unenforceable.

**i. The Employment Agreement Contains An Improper Fee Shifting Provision**

26. Defendants' Employment Agreement contains an arbitration agreement, which purports to be optional, but in practice, is a mandatory condition of Plaintiffs' employment. The California Supreme Court has held that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 110-111). Section VII of the Defendants' Employment Agreement, which states in pertinent part that, "the parties will share equally in the cost of such Arbitration...", is the type of cost-splitting provision that has specifically been held to be unconscionable and is therefore unenforceable.

**ii. The Employment Agreement Contains an Improper Choice of Law and Forum-selection Clause.**

27. Defendants' Employment Agreement requires disputes to be resolved in Arizona and that the employment relationship between NEXA and its employees will be governed and construed under and enforce with Arizona laws. California prohibits employers from requiring an employee who primarily resides and works in California to agree, as a condition of employment, to a provision that would require the employee to

---

**12**

First Amended Complaint For Damages

1  adjudicate outside of California a claim arising in California or deprive the employee of

2  the substantive protection of California law with respect to any controversy arising in

3  California. Any provision that violates these prohibitions is voidable (Lab.C. § 925(a),

4
   (b)). Plaintiffs all executed the Agreements in California, lived and worked in California,
5
   during all times relevant herein. This provision is therefore unenforceable.
6

7  **iii.    The Employment Agreement Contains an Improper Ban on Class**

8  **Actions.**

9      28.    Defendants' Employment Agreement prohibits employees from pursuing

10  or participating in relief on a class or collective action basis against NEXA "arising out of

11  the employment relationship or this agreement."  The California Supreme Court has

12  held that class arbitration waivers are unlawful when they impermissibly interfere with

13
    the vindication of unwaivable statutory rights. "We conclude that at least in some cases,
14
    the prohibition of classwide relief would undermine the vindication of the employee's
15

16  unwaivable statutory rights and would pose a serious obstacle to the enforcement of the

17  state's overtime laws.    Accordingly, such class arbitration waivers should not be

18  enforced if a trial court determines…that class arbitration would be significantly more

19  effective way of vindicating the rights of affected employees than individual arbitration."

20
    (Gentry v. Superior Court (2007) 42 Cal.4th 443).    Further, the Federal Arbitration Act
21
    does not preempt California law with respect to class action waivers that apply outside
22

23  of arbitration to non-arbitrable claims.  (Garrido v. Air Liquide Industrial U.S. LP (2015)

24  241 Cal.App4th 833, 837-838 (observing claims that are not required to be arbitrated

25  are not governed by the FAA and "Gentry's holding has not been overturned under

26  California law in situations where the FAA does not apply")).

27
       29.    Defendants' arbitration agreement, which requires employees to bring
28

13

non-arbitrable claims individually in court – especially wage and hour claims where the potential recovery is modest – is contrary to public policy, unfair, and effectively exculpates Defendants from liability for common violations of the Labor Code. The class waiver is therefore unconscionable and unenforceable under California law because it applies to non-arbitrable claims that are not covered by the FAA, and because it imposes unfair obstacles to employees vindicating their statutory and unwaivable rights under the Labor Code.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to § 382 of the Code of Civil Procedure. The Class is sufficiently numerous and estimated to include between thirty to fifty employees, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to the parties, Class members, and the Court. Plaintiff seeks to represent a Class composed of and defined as follows:

> Plaintiff Class:   All current or former employees of Nexa
> Mortgage, LLC who worked in California as mortgage
> salespersons or loan officers or similar position, and were
> classified as exempt, at any time beginning four years prior
> to the filing of this action through the date of trial.

31.     Plaintiff reserves the right under Rule 3.765(b), California Rules of Court, to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues.

32.     This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

a.     *COMMONALITY*:   The Representative Plaintiff and the putative

14

class members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

i. Whether Defendants misclassified Plaintiffs as exempt under the outside salesperson exemption.

ii. Whether the choice of law, forum selection and arbitration provisions in the Defendants' Employment Agreement are enforceable.

iii. Whether Defendants' violated Labor Code § 2802 by failing to reimburse its employees for business expenses incurred while working from home.

iv. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §1194 by failing to provide or pay minimum wage to Plaintiffs.

v. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §510 by failing to provide or pay overtime to loan officers.

vi. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §226.7 by failing to provide or pay for meal and rest breaks.

vii. Whether Defendants violated Labor Code §226 by failing to provide Plaintiffs with accurate itemized statements in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employer.

viii. Violating Labor Code Sections 201, 202, 203 & 204 by failing to tender timely and full payment and/or restitution of all wages owed to the employees whose employment with Defendants has terminated on sales which payment was received by Defendants;

ix. Whether Plaintiffs are entitled to restitution under Cal.Bus. & Prof. Code §§

17200 et seq.

x.  Whether Plaintiffs are entitled to receive interest on unpaid compensation due and owing them.

xi.  Where Defendants' systemic acts and practices violated California Labor Code §§ 201, 202, 221, 226.7, 351, 510, 512, 558, 1174, 1194 and 1197, applicable IWC wage orders, and California Business and Professions Code § 17200 et seq.

b.  *NUMEROSITY*:  A class action is the only available method for the fair and efficient adjudication of this controversy.  The members of the Plaintiff Class are so numerous that joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class consists of thirty to fifty persons.  Individual joinder of Class members is also impracticable.  The identity of Class Members can be determined easily upon analysis of, inter alia, employee and payroll records maintained by NEXA.

c.  *TYPICALITY*:  The Representative Plaintiff's claims are typical of the claims of the Plaintiff Class.  The Representative Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendants common course of conduct in violation of law, as alleged herein.

d.  *SUPERIORITY OF CLASS ACTION*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying,

First Amended Complaint For Damages

inconsistent, or contradictory judgment and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex and factual issues. Moreover, individual actions by class members may establish inconsistent standards of conduct for NEXA. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each class member. Plaintiffs are informed and believe that NEXA used the same Employment Agreement on every loan officer, thereby making appropriate relief with regard to the members of the class as a whole, as requested herein.

e.     ADEQUACY OF REPRESENTATION:  The Representative Plaintiff in this class action is an adequate representative of the Plaintiff Class, in that the Representative Plaintiff's claims are typical of those of the Plaintiff Class and the Representative Plaintiff has the same interests in the litigation of this case as the Class Members. The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel, experienced in conducting litigation of this nature. The Representative Plaintiff is not subject to any individual defense unique from those conceivably applicable to the Plaintiff Class as a whole. The Representative Plaintiff anticipates no management difficulties in this litigation.

**FIRST CAUSE OF ACTION**
**Failure To Reimburse Business Expenses / Unlawful Deduction**
**(Against all Defendants)**

33.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34.     At all mentioned times in this Complaint California Labor Code §§ 221 and

2802 were in full force and effect and binding on Defendants. Said sections require employers to indemnify its employees for all that the employee necessarily expends or loses in direct consequence of the discharge of duties.

35.     California Labor Code §221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

36.     California Labor Code §2802 provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions believed them to be unlawful."

37.     During the applicable statutory period, Plaintiffs incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience to the directions of Defendants.  These business expenses which Plaintiffs incurred, which were not reimbursed include, but are not limited to, internet, phone, personal computer usage, office supplies, utility bills, and/or fair rental value of space used for home office.  Defendants did not reimburse these expenditures or losses to Plaintiffs. Moreover, Defendants had a policy and practice of deducting its business expenses from Plaintiffs' earned commissions.

38.     Plaintiffs are entitled to reimbursement for all necessary expenditures and losses incurred in direct consequence of the discharge of their duties while employed by Defendants, and they are entitled to restitution of all monies unlawfully withheld by the Defendants in an amount according to proof at trial.

39.

1

2

3

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage in violation of**
**California Labor Code §§ 510, 1194, 1197 and IWC Wage Order 4-2001 §4.**
**(Against all Defendants)**

4

5

40.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

6

7

8

9

10

11

41.     Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.  At all times relevant, Defendants willfully failed and refused, and continue to willfully fail and refuse, to pay Plaintiffs the amounts owed.

12

13

14

15

16

17

18

19

20

21

42.     Labor Code § 510 provides in relevant part: "[e]ight hours of labor constitutes a day's work."  Labor Code § 1197 provides "the minimum wage for employers fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than minimum wage so fixed is unlawful."  Labor Code § 1194 provides "[N]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

22

23

24

25

26

27

43.     Labor Code § 1194.2 provides in relevant part: "In any action under §1193.6 or §1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

28

44.     Pursuant to IWC Wage Order No. 4-2001, at all time material hereto,

19

First Amended Complaint For Damages

"hours worked" includes "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, where or not required to do so."

45.    Plaintiffs are required to work non-selling time, for which they are not compensated.  This includes, but is not limited to, meetings, loan processing, training, loan tracking and/or customer service. Plaintiffs should have received not less than the minimum wage in a sum according to proof for the time worked, but not compensated. For all hours Plaintiffs worked, they are entitled to not less than the California minimum wage and liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.  In addition, Plaintiffs are entitled to their attorneys' fees, costs and interest according to proof, and to those employees no longer employed by Defendants, waiting time penalties pursuant to Labor Code § 200 et seq.

**THIRD CAUSE OF ACTION**
**Failure to Pay Overtime Compensation in Violation of**
**California Labor Code §§ 204, 510, 1194, 1197 & 1198 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

46.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.    Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.

48.    Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid wages, including straight time and overtime, in a timely fashion for their work.  This precludes any waiver for unpaid due and owing wages that remain unpaid at the time of separation.

49.    At all times relevant herein, IWC Wage Order No. 4-2001, governing

20

First Amended Complaint For Damages

"Professional, Technical, Clerical, Mechanical and Similar Occupations," applied and continues to apply to Plaintiffs.

50.    At all times relevant herein, IWC Wage Order No. 4-2001 provides for payment of overtime wages equal to one and one-half (1.5) times an employee's regular rate of pay for all hours worked over eight (8) hours per day and/or forty (40) hours in a work week, and/or for payment of overtimes wages equal to double the employee's regular rate of pay for all hours in excess of twelve (12) hours in any workday and/or for all hours worked in excess in eighty (8) hours on the seventh (7th) day of work in any one workweek.

51.    Throughout the class period, Plaintiffs have routinely and regularly worked in excess of eight hours per day and/or forty hours per week.

52.    Under the provisions of IW|C Order 4-2001, Plaintiffs should have received overtime wages in a sum according to the proof for hours worked during the three (3) years prior to filing of this action. Defendants owe Plaintiffs overtime wages, and has failed and refused, and continues to fail and refuse, to pay Plaintiffs the amounts owed.

53.    Plaintiffs request recovery of overtime compensation according to proof, interest, attorney fees, and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties on behalf of those employees no longer employed by the Defendants against Defendants in a sum as provided by the California Labor Code and/or other applicable statutes.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Meal and/or Rest Periods**
**California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

54.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     Labor Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.:

§11 of the Order 4-2001 of the Industrial Wage Commission provides in relevant part:

Rest Periods:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

56.     Defendants have intentionally and improperly failed to provide and/or permit all rest and/or meal periods without any work or duties to Plaintiffs who worked more than three and one half hours (3 ½) per day, and by failing to do so Defendants violated the provisions of Labor Code 226.7.   Plaintiffs were often expected and required to continue working through rest periods to meet the expectations of Defendants and finish the workday.  In some cases when Plaintiffs worked more than ten hours in a shift, Defendants failed to authorize and/or permit a third mandated rest period.  As a result, Plaintiffs were periodically unable to take compliant rest periods.

57.     In addition to failing to authorize and permit compliant reset periods, Plaintiffs were not compensated with one hour's worth of pay at their regular rate of compensation when they were not provided with a compliant rest period in accordance with Labor Code § 226.7.  Thus, Defendants have violated Labor Code § 226.7 and the applicable Wage Order.

First Amended Complaint For Damages

58.     Therefore, as a result of Defendants unlawful acts, Plaintiffs have been deprived of timely off-duty breaks and are entitled to recovery under Labor Code §226.7(b) and § 11 of IWC Wage Order No. 4-2004, in the amount of one additional hour of pay at the employee's regular rate of compensation for each work period during each day in which Defendants failed to provide its employees with timely statutory off-duty breaks.

### FIFTH CAUSE OF ACTION
**Failure to Maintain Accurate Records and Furnish Accurate Itemized Wage Statements Violation of California Labor Code §§ 226 (b), 1174, 1175 (Against all Defendants)**

59.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     Labor Code § 226(a) of the California Labor Code requires Defendants to itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by Plaintiffs and the putative class members.  Defendants knowingly and intentionally failed to comply with Labor Code §226(a) on each and every wage statement that should have been provided to Plaintiff and the putative class. Specifically, Defendants knew that its employees worked far more hours than the hours listed on their timesheets and that its employees were in fact performing "prep work" off the clock.  Defendants maintained these policies despite this knowledge.

61.     Labor Code § 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

62.     §1174 of the California Labor Code requires Defendants to maintain and

24

preserve, in a centralized location, among other items, records showing the names and addresses of all employees employed, payroll records showing the hours worked daily by and the wages paid to its employees. Likewise, IWC Wage Order 4-2001(7) requires Defendants to maintain time records showing, including but not limited to, when the employee begins and ends each work period, meal periods, and total daily hours worked in an itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and the putative class members. Labor Code §1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records.

63.     Defendants have intentionally and willfully failed to keep accurate and complete records showing the hours worked daily, breaks taken and missed, and wages paid to Plaintiffs. Thus, Plaintiffs have been denied their legal right and protected interest in having available at a central location accurate and complete payroll records showing the hours worked daily by, and the wages paid to them.

64.     In addition, Defendant knowingly and intentionally failed to maintain, furnish and provide timely, accurate, itemized wage statements by failing, inter alia, to identify all hours worked by Plaintiffs. Further, the wage statements were inaccurate as the unreimbursed business expenses, unpaid wages, missed meal and rest breaks were not included in the gross wages earned by Plaintiffs.

65.     Defendants' failure to provide Plaintiffs with accurate itemized wage statements during the Class period has caused Plaintiffs to incur economic damages in that they were not aware that they were owed and not paid compensation for missed rest and meal periods, for hours worked without pay, for overtime work without pay. In addition, the Defendants provided inaccurate information regarding the hours worked,

1  which masked the underpayment of wages to Plaintiffs.

2      66.   As a result of Defendants' issuance of inaccurate itemized wage

3  statements and failure to maintain accurate records of Plaintiffs hours worked, Plaintiffs

4  are entitled to recover penalties pursuant to § 226(e).

**SIXTH CAUSE OF ACTION**
**Violations of Labor Code § 203 (Waiting Time Penalties)**
**(Brought by Plaintiff on behalf Class Members who are no longer employed by Defendants)**

67.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68.   California Labor Code § 201 requires Defendants to pay their discharged employees all wages due immediately upon discharge.

69.   California Labor Code § 202 requires that if an employee quits his or her employment, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.  Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive a payment by mail if he or she so requests and designates a mailing address.

70.   Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code §§ 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue at the same rate, for up to thirty (30) days from the due date thereof, until paid or until an action therefore is commenced.

71.   Plaintiff and other putative class members who have been discharged or who have quit are entitled to all unpaid compensation, pursuant to California Labor

Code § 203, but, to date, have not received such compensation, as alleged above. Plaintiff and the putative class members have not received payment for all of the time spent working for Defendants.

72.     Defendants' willful failure to pay wages to these class members violates Labor Code § 203 because Defendants knew or should have known wages were due to these employees, but Defendants failed to pay them. Thus, these class members are entitled to recover their daily wage multiplied by thirty days and interest on all amounts recovered herein.

**SEVENTH CAUSE OF ACTION**
**Violation of Business & Professions Code**
**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

73.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

74.     California Business & Professions Code ("B&PC") §§17200 et seq. provides in pertinent part "...[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act...".

75.     B&PC § 17205 provides that unless otherwise expressly provided, the remedies or penalties provided for unfair competition "are cumulative to each other and to the remedies or penalties available under all other laws of this state."

76.     B&PC § 17204 provides that an action for any relief from unfair competition may be prosecuted by any person who suffered injury in fact and lost money or property as a result of such unfair competition.

77.     Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC § 17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving Plaintiff and all others similarly

27

situated of the minimum working standards and conditions due to them under California labor laws and the IWC Wage Orders as specifically described herein.

78.    Defendants have engaged in unfair, unlawful and fraudulent business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation, by failing to furnish Plaintiff and the putative class members with accurate itemized wage statements, failing to keep payroll records showing total hours worked, and by requiring Plaintiff and the putative class members to agree to a terms or conditions of employment that Defendants knew or should have known is prohibited by law.

79.    Defendants' use of such practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over Defendants' competitors.

80.    Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair practices.

81.    Plaintiffs seek full restitution from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

82.    Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs.

83.    Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

First Amended Complaint For Damages

### EIGHTH CAUSE OF ACTION
**Declaratory Relief**

84.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

85.     CCP § 1060 provides that any person who desires a declaration of his or her rights or duties with respect to another, in cases of actual controversy relating to the legal rights and duties of the respective parties, may ask the Court for a declaration of rights or duties, and the Court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time; any such declaration by the Court shall have the force of a final judgment.

86.     An actual controversy exists between the parties as to the enforceability of the Employment Agreement and its provisions as stated above.   It is therefore necessary that the Court declare the rights and duties of the parties hereto.

87.     Labor Code § 925 prohibits an employer from requiring an employee who primarily resides and works in California to agree to a provision that either: (1) requires the employee to adjudicate outside of California a claim arising in California; or (2) deprives the employee of the substantive protection of California law with respect to a controversy arising in California.   Labor Code § 432.5 makes it unlawful for an employee to require an employee to agree, in writing, to a term or condition known by the employer to be prohibited by law.

88.     Plaintiffs assert the choice-of-law and forum selection provisions in the Defendants standard Employment Agreement are void and illegal, not just under Labor Code 925, but also under other California laws, including California's constitutional right to privacy, Business and Professions Code 16600, 17200 et seq., the Cartwright Act and Labor Code 98.6, 203, 226, 232, 232.5, 432.5, 450, 510, 1102.5, 1194, 1197.5,

29

2802, and 2804.   These laws were established for a public reason and establish unwaivable rights.

89.   In light of the facts set forth above, a case or controversy exists as to whether Defendants requirement that Plaintiffs agree to Arizona forum selection and choice of law provision is unlawful and unenforceable.   Plaintiffs seek judicial declaration of their rights and obligations with respect to Defendants forum selection and choice of law provisions. Specifically, they seek a judicial declaration that Defendants violate the law (including Labor Code Section 432.5 and 925) by requiring employee to agree to the forum selection and choice of law provisions in their employment documents.   The also seek a declaration that the forum selection and choice of law provisions violate the laws referenced above.

90.   In addition, Plaintiffs are informed and believe that Defendants require all current employees and applicants for employment to execute, as part of their continued or application for employment, an Employment Agreement that contains an arbitration provision.   The arbitration agreement is an adhesive contract because agreement is drafted exclusively by Defendants, at the time the arbitration provision was executed by Plaintiffs, Defendants exercised superior bargaining power over the employees and applicants for employment.  Further, Defendants require Plaintiffs to adhere to the terms of the standard form agreement presented to them on a "take it or leave it" basis.  There was and is no opportunity to negotiate different terms than those drafted by Defendants. Further, the arbitration agreement is unenforceable for a number of reasons, including the reasons stated above, and because the Agreement limits Plaintiffs' procedural and substantive rights and requires Plaintiffs to pay the fees of retired judges who act as arbitrators.

91.     Further, Plaintiffs seek a judicial determination regarding the enforceability of the "class waiver" contained in Defendants' Employment Agreement.

92.     Ancillary to this judicial declaration, Plaintiffs seek an injunction: (1) Prohibiting Defendants from requiring Plaintiffs to sign employment documents that contain out-of-state forum selection or choice of law provisions; and (2) prohibiting Defendants from threatening to enforce or enforcing these forum selection and choice of law provisions.   Plaintiffs also seek an affirmative injunction requiring Defendants to inform class members that its forum selection and choice of law provisions are unlawful, and it will not threaten to enforce or enforce these provisions.

### NINTH CAUSE OF ACTION
**Enforcement of Labor Code Section 2698 et. seq. ("PAGA")**
**(Cal. Lab. Code Sections 2698, et seq.)**

93.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

94.     Plaintiff is an aggrieved employee under PAGA because he was employed by Defendants during the applicable statutory period and suffered one or more of the California Labor Code violations set forth in the Complaint. Plaintiff seeks to recover on his behalf and on behalf of the State, and on behalf of all current and former aggrieved employees of Defendants, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs in this representative action. As a matter of law, Plaintiffs PAGA claim is not subject to having the dispute resolved in arbitration or pursuant to any purported arbitration agreement.

95.     For all provisions of the Labor Code except those for which a civil penalty is specifically provided, Labor Code § 2699(f) imposes upon Defendant a penalty of one hundred dollars ($100.00) for each aggrieved employee per pay period for the initial

First Amended Complaint For Damages

1   violation and two hundred dollars ($200.00) for each aggrieved employee per pay

2   period for each subsequent pay period in which Defendant violated these provisions of

3   the Labor Code.

4       96.     Defendants' conduct violates numerous Labor Code section including, but

5   not limited to, the following:

6

7       (a) Violation of Labor Code §§ 201-203, 204, 510, 1194, 1197 and 1198 for

8   failure to timely pay all earned wages (including minimum wages and overtime wages)

9   owed to Plaintiff and other aggrieved employees during employment and upon

10  separation of employment as herein alleged;

11      (b) Violation of Labor Code §§ 226.7 and 512 for failure to provide meal periods

12  to Plaintiff and other aggrieved employees and failure to pay premium wages for missed

13  meal periods as herein alleged;

14

15      (c) Violation of Labor Code § 226 for failure to provide accurate itemized wage

16  statements to Plaintiff and other aggrieved employees as herein alleged; and

17      (d) Violation of Labor Code §§ 1174 and 1174.5 for failure to maintain accurate

18  records.

19      97.     Further, Labor Code § 558 provides, "Any employer or other person acting

20  on behalf of an employer who violates, or causes to be violated, a section of this

21  chapter or any provisions regulating hours and days of work in any order of the IWC

22  shall be subject to a civil penalty as follows: (1) For any violation, fifty dollars ($50) for

23  each underpaid employee for each pay period for which the employee was underpaid in

24  addition to an amount sufficient to recover unpaid wages; (2) For each subsequent

25  violation, one hundred dollars ($100) for each underpaid employee for each pay period

26  for which the employee was underpaid in addition to an amount sufficient to recover

underpaid wages; (3) Wages recovered pursuant to this section shall be paid to the affected employee." Labor Code § 558(c) provides "the civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

98.    As set forth above, Defendants have violated numerous provisions of the Labor Code regulating hours and days of work as well as the IWC Wage Orders. Accordingly, Plaintiff seeks the remedies set forth in Labor Code § 558 for himself, the underpaid employees, and the State of California.

99.    Plaintiff is an "aggrieved employee" because he was employed by the Defendants and had one or more of the alleged violations committed against him, and therefore is properly suited to represent the interests of all other aggrieved employees.

100.    Plaintiff has exhausted the procedural requirements under Labor Code § 2699.3 as to Defendants and is therefore able to pursue a claim for penalties on behalf of himself and all other aggrieved employees under PAGA.

101.    Pursuant to Labor Code § 2699(a), 2699.2, and 2699.5, Plaintiff is entitled to recover civil penalties, in addition to other remedies, for violations of the Labor Code sections cited above.

102.    99. For bringing this action, Plaintiff is entitled to attorneys' fees and costs incurred herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against the Defendants as follows:

1.    An Order that this action may proceed and be maintained on a class-wide basis;

2.    Appropriate Injunctive relief;

3.     Attorneys' fees and costs, according to proof;

4.     Disgorgement and restitution, according to proof;

5.     Statutory and civil penalties, according to proof;

6      Damages for the mount of unpaid compensation, including interest thereon, liquidated damages, and penalties subject to proof at trial;

7.     An award of civil penalties pursuant to PAGA and/or other applicable laws; and

8.     Directing such other and further relief as this Court may deem proper.

### JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury.

**MILLER LAW FIRM**

Dated:  October 31, 2022          By:     */s/ Matthew R. Miller*
                                          Matthew R. Miller
                                          Attorneys for Plaintiff and the Proposed Class

First Amended Complaint For Damages

# EXHIBIT 1

# MILLER LAW FIRM

Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: 619.687.0143
Fax: 619.687.0136
www.mrmlawfirm.com

MATTHEW R. MILLER                                                    CARLOS AMERICANO

August 12, 2022

California Labor and                          *VIA ELECTRONIC FILING*
Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Ste. 801
Oakland, CA 94612

Nexa Mortgage LLC
3100 W Ray Rd #201
Office #209
Chandler, AZ 85226

> **RE:**   **PAGA Notice Pursuant to California Labor Code § 2699**
> Nexa Mortgage LLC

Dear PAGA Administrator and Nexa Mortgage LLC:

We represent Damian Diaz, a former employee of Nexa Mortgage, LLC ("Nexa") with respect to claims arising from his employment with Nexa. The purpose of this letter is to provide notice to the Labor and Workforce Development Agency and Nexa of violations of the California Labor Code.

Mr. Diaz seeks to represent himself and other current and former employees (collectively referred to as "Plaintiffs") with respect to violations of the California Labor Code pursuant to Labor Code sections 2699 et seq. The facts and theories in support of his claims are set forth below.

1.     Nexa Misclassified Non-Exempt Employees as Exempt. Plaintiffs are nonexempt Loan Officer employees, but were misclassified by Nexa as exempt based on the outside salesperson exemption. Plaintiffs worked less than 50% of their time outside offices or work locations designated by Nexa. Indeed, Nexa does not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

Plaintiffs are loan officers who promote and sell Nexa's loan products to customers, which is work directly related to the goods and services that constitute a financial service company's marketplace offerings. §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption. Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and regularly engaged and/or spend more than half of his/her

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 2

working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

"Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property." (29 C.F.R. 541.502).

Nexa requires Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, Mr. Diaz worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, et seq. because Nexa is a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law. Nexa's conduct as herein alleged was willful and not in good faith, and Nexa had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

As a result of Nexa's misclassifying their employees and in the one (1) year prior to this letter through the present, Mr. Diaz alleges, on information and belief, that current and former aggrieved California Loan Officers were not paid with compensation at the overtime rate of pay for all the overtime hours that they worked; were not authorized or permitted to take all legally required and compliant meal periods and/or paid proper meal period premiums; were not authorized or permitted to take all legally required and compliant rest periods and/or paid proper rest period premiums; were not timely paid their earned wages during their employment; were not provided with complete and accurate wage statements; and were not timely paid their final pay upon separation of employment.

2.     Nexa Failed to Pay Overtime Wages.  At all relevant times, Nexa implemented policies and procedures which misclassify its Loan Officers as exempt when, in fact, they should have been classified as non-exempt and, therefore, fail to provide aggrieved California non-exempt hourly Loan Officers with overtime wages for the overtime hours that they worked at

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 3

their overtime rate.

As a result of these policies, Nexa failed to compensate Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt at an overtime rate for all overtime hours worked when the employees had already worked in excess of 8 up to 12 hours in a workday, over 40 hours in a workweek, up to 8 hours on any seventh consecutive day in a workweek, hours worked in excess of 12 hours in a workday, or over 8 hours on any seventh consecutive day in a workweek.

Nexa's policies and procedures were applied to current and former aggrieved California-based Loan Officers who were misclassified for over a year preceding the sending of this notice to the present and resulted in non-exempt employees working time which was not compensated any wages in violation of Labor Code sections 510, 1194, 1197, 1198 and the Wage Orders.

3.     Nexa Failed to Compensate for Missed Meal Periods. Nexa implemented policies and and/or implanted policies which failed to provide Mr. Diaz and current and former aggrieved California-based Loan Officers who were misclassified as exempt with all meal periods as required by and in compliance with the law, including full duty free and timely meal periods. Mr. Diaz alleges that Kubota regularly employed him and other current and former aggrieved California-based Loan Officers who were misclassified as exempt for shifts longer than five (5) hours and/or shifts longer than ten (10) hours. However, as a result of Lexa's misclassification of Mr. Diaz and other current and former aggrieved California-based Loan Officers as exempt employees, Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt were not provided a duty-free uninterrupted meal period of no less than thirty (30) minutes for each five-hour period of work.

Additionally, Nexa failed to provide Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt with a premium wage of (1) one hour of premium pay at the employee's regular rate of pay for each workday they did not receive all legally required and compliant meal periods, in violation of Labor Code section 226.7 and Wage Order 4-2001 section 11.

This practice resulted in Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt not receiving wages to compensate them for workdays which Nexa did not provide them with all legally required and legally compliant meal periods in compliance with California law.

4.     Nexa Failed to Compensate for Missed Rest Breaks. Nexa implemented policies and and/or implanted policies which failed to provide Mr. Diaz and current and former aggrieved California-based Loan Officers who were misclassified as exempt with uninterrupted duty free 10-minute rest periods for each four hours or major fraction thereof worked.

Mr. Diaz alleges that Nexa regularly employed him and other current and former aggrieved California-based Loan Officers who were misclassified as exempt for shifts longer than three-and-a-half (3.5) hours. However, as a result of Nexa's misclassification of Mr. Diaz and other current and former aggrieved California-based Loan Officers as exempt employees, Mr. Diaz and other current and former aggrieved California-based Loan Officers who were

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 4

misclassified as exempt were not provided all required duty-free rest periods of a net ten (10) minutes for every four (4) hours worked or major fraction thereof.

Nexa failed to provide Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt with a premium wage of (1) one hour of premium pay at the employee's regular rate of pay for each workday they did not receive all legally required and compliant rest periods, in violation of Labor Code section 226.7 and Wage Order 4-2001 at section 12.

This practice resulted in Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt not receiving wages to compensate them for workdays which Nexa did not provide them with all legally required and/or legally compliant rest periods in compliance with California law.

5.      Nexa Failed to Pay Earned Wages During Employment. Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants. Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more. Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

6.      Nexa Failed to Pay Earned Commissions. Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

7.      Nexa failed to reimburse employees for business expenses. Defendants failed to indemnify and reimburse the Plaintiffs for required expenses incurred in the discharge of their duties for Defendant. Cal. Lab. Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 5

home office expenses, including a printer, fax machine, internet, phone, and other office-related products; and other loan servicing related expenses in violation of California Labor Code § 2802.

8.     Nexa passed on its business costs to Plaintiffs.     In violation of Labor Code § 221, Defendants passed on their labor costs to Plaintiffs. Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. Prior to receiving their earned commission Defendants would deduct "fees", costs and expenses that were part of the general overhead of the Defendants. These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch (BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous" fees. Plaintiffs are informed and believe that in some cases, loan officers earned less than minimum wage required for all hours worked after Defendants' deductions.   In addition, Mr. Diaz is informed and believes that NEXA violates California Labor Code Section 224 by making deductions from the employee's wages that are neither authorized by the employee or permitted by law.

9.     Nexa Failed to provide accurate wage statements. California Labor Code section 226(a) provides (inter alia) that, upon paying an employee his or her wages, the employer must "furnish each of his or her employees ... an itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

As a result of Nexa's aforementioned violations of the Labor Code (including failure to pay overtime wages for overtime hours worked, failure to pay meal period premiums, and/or failure to pay rest period premiums) rendered inaccurate the pay calculations of Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt, in violation of Labor Code section 226.

10.     Failure to timely pay final wages. An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination or within 72 hours of resignation. (Labor Code §§ 201, 202).

Labor Code section 201(a) states that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code section 202(a) continues, "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than hours thereafter...." Finally, Labor Code section 203(a) provides, "[i]f an employer willfully fails to pay...any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 6

therefor is commenced; but the wages shall not continue for more than 30 days...."

As a result of Nexa's aforementioned violations of the Labor Code (failure to pay overtime wages for overtime hours worked, failure to pay meal period premiums, and/or failure to pay rest period premiums) Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt were not timely paid all their final wages after each employee's termination and/or resignation, as required by Labor Code sections 201, 202, and 203.

**Request Remedy**

Pursuant to Labor Code sections 2699(a) and (f), Mr. Diaz is entitled to recover civil penalties for Nexa's violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 1194, and 1198 and the IWC Wage Orders during the Civil Penalty Period in the following amounts:

a.      For violations of Labor Code sections 201, 202, 203, 226.7, 512, and 1198 (i.e. failure to final wages); one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation [penalty amounts established by Labor Code section 2699(f)(2)].

b.      For violations of Labor Code section 204 (i.e. failure to timely pay earned wages): one hundred dollars ($100) for any initial violation for each failure to pay each employee, and for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld, as established by Labor Code section 210.

c.      For violations of Labor Code section 226 (i.e. inaccurate wage statements) , two hundred fifty dollars ($250) for each employee for each pay period for the initial violation, and for each subsequent violation, one thousand dollars ($1000) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 226.3].

d.      For violations of Labor Code section 510 (i.e. failure to pay overtime), fifty dollars ($50) for each employee for each pay period for the initial violation, and for each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 558] and any unpaid wages.

e.      For violations of Labor Code section 1194 and 1197 (failure to pay overtime), one hundred dollars ($100) for each underpaid employee for each pay period for the initial violation, and for each subsequent violation, two hundred fifty dollars ($250) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 1197.1 ] and any unpaid wages.

In addition, pursuant to Labor Code section 2699(g), Mr. Diaz seeks to recover attorney's fees, costs, filing fees paid to the LWDA, and civil penalties on behalf of himself and the other employees of Nexa.

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 7

Pursuant to Cal.Labor.Code § 2699.3(a)(2)(B) Mr. Diaz requests the agency investigate the above allegations and provide notice of the allegations pursuant to PAGA's provisions. Alternatively, Plaintiffs request the agency inform them if it does not intend to investigate these violations.

Very truly yours,

*Matthew R. Miller*

Matthew R. Miller
MILLER LAW FIRM

C:\Users\Carlos Americano\OneDrive - Miller Law Firm\FIRM\JD\CASES\1086-Diaz\PAGA.doc

# EXHIBIT 7

1 David M. Greeley, Esq. (SBN 198520)
2 James R. Thompson, Esq. (SBN 260083)
 GREELEY THOMPSON LLP
3 600 B Street, Suite 2150
 San Diego, California 92101
4 Telephone: (619) 658-0462
 dgreeley@greeleythompson.com
5

6 MITCHELL SANDLER LLC
 Arielle Stephenson (SBN 336434)
7 1120 20th Street, NW
 Washington, DC 20036
8 Telephone: (202) 886-5267
 astephenson@mitchellsandler.com
9

10 *Attorneys for Defendant NEXA Mortgage LLC*

11   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12    **FOR THE COUNTY OF SAN DIEGO**

13 DAMIAN DIAZ, individually, and on behalf of all Case No. 37-2022-00031816-CU-OE-NC
 others similarly situated,
14           **NOTICE OF REMOVAL OF CASE**

15     Plaintiff,    Hon. Earl H. Maas, III
           Department N-28
16 v.

17 NEXA MORTGAGE, LLC, et al.,

18     Defendants.

19   **TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND**

20 **THEIR ATTORNEYS' OF RECORD:**

21   **PLEASE TAKE NOTICE** that a Notice of Removal of the above captioned lawsuit, was filed

22 in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1441

23 and 1446, by defendant NEXA MORTGAGE, LLC, by its undersigned counsel, on November 30, 2022.

24 A copy of the Notice of Removal (with exhibits) is attached hereto as Exhibit "A".

25  DATED: December 1, 2022   GREELEY THOMPSON LLP

26

27         By: _____
           David M. Greeley, Esq.
28           Attorneys for Defendant NEXA Mortgage LLC

EXHIBIT A

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
5  dgreeley@greeleythompson.com

6
   MITCHELL SANDLER LLC
7  Arielle Stephenson (SBN 336434)
   1120 20th Street, NW
8  Washington, DC 20036
9  Telephone: (202) 886-5267
   astephenson@mitchellsandler.com
10

11 *Attorneys for Defendant NEXA Mortgage LLC*

12

13            **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15 DAMIAN DIAZ, individually, and on    Civil Action No.  '22CV1895 BAS DDL
   behalf of all others similarly situated,
16                                       **DEFENDANT NEXA MORTGAGE**
17                                       **LLC'S NOTICE OF REMOVAL OF**
              Plaintiff,                 **ACTION UNDER 28 U.S.C. § 1441**
18                                       **and 1446**
   v.
19

20 NEXA MORTGAGE, LLC, et al.,

21            Defendants.
22

23      **TO THE CLERK OF THIS HONORABLE COURT:**

24      PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§1441 and 1446, defendant

25 NEXA Mortgage LLC ("NEXA" or "Defendant"), by and through its undersigned

26 counsel, hereby provides notice of removal of this action from the Superior Court of the

27 State of California for the County of Los Angeles to the United States District Court for

28 the Southern District of California. In support thereof, NEXA states as follows:

# THE STATE COURT ACTION

1.　On or about August 3, 2022, Plaintiff Damian Diaz, individually and on behalf of all others similarly situated, commenced an action against NEXA in the Superior Court of the State of California for the County of San Diego, captioned *Damian Diaz v. NEXA Mortgage, LLC*, Case Number 37-2022-00031816-CU-OE-NC.

2.　On August 12, 2022, Plaintiff and a group of the putative class members sent a "PAGA Notice Pursuant to California Labor Code §2699" to NEXA and California Labor and Workforce Development Agency, informing Defendant of the allegations at issue, their requested relief, and requesting that the Agency "investigate the above allegations and provide notice of the allegations pursuant to PAGA's provisions" or inform Plaintiffs if it does not intend to investigate.

3.　On October 31, 2022, Damian Diaz, on behalf of himself and all others similarly situated ("Plaintiff") filed a First Amended Class Action Complaint against NEXA in the Superior Court of the State of California for the County of Los Angeles, captioned *Damian Diaz v. NEXA Mortgage, LLC, et al.*, Case Number 37-2022-00031816-CU-OE-NC (the "State Court Action").

4.　As required by 28 U.S.C. § 1446(a), attached hereto are true and correct copies of all process, pleadings, and orders served upon NEXA in the State Court Action, which consist of the following:

      a.　Attached hereto as Exhibit A is a true and correct copy of the Civil Case Cover Sheet, dated August 3, 2022.

      b.　Attached hereto as Exhibit B is a true and correct copy of the Summons dated August 3, 2022.

      c.　Attached hereto as Exhibit C is a true and correct copy of the Class Action Complaint filed on August 3, 2022 (the "Original Complaint").

      d.　Attached hereto as Exhibit D is a true and correct copy of the Class Action Complaint filed on October 31, 2022 Notice of Intent to File

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CALIFORNIA 92101

PAGA Action dated May 5, 2022 (the "Amended Complaint") and PAGA Notice, attached as Ex. 1 to the Amended Complaint.

   e.   Attached hereto as Exhibit E is a true and correct copy of the Register of Actions Notice ("ROA") reflecting all docket entries and documents filed in the State Court Case. While the ROA notes a docket entry for the case assignment and case management conference date, there are no associated documents.

5.     The Amended Complaint asserts claims under the California Labor Code, California Business and Professions Code ("UCL"); and the Private Attorney General Act of 2004 ("PAGA").  *See* Ex. D (Amended Complaint). The Amended Complaint seeks certification of a class defined as "[a]ll current or former employees of NEXA who worked in California as mortgage salespersons or loan officers or similar position, and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial."  *See id.* ¶ 30.

6.     The Amended Complaint seeks the following forms of relief:  an order certifying the class; injunctive relief, attorneys' fees and costs; disgorgement and restitution; statutory and civil penalties; damages for unpaid compensation, including interest and liquidated damages; an award of civil penalties pursuant to PAGA; and such further relief as the Court deems necessary.  *See id.* at Prayer for Relief.

7.     The Original Complaint's civil cover sheet reflects that it was filed as an unlimited case, which means the amount demanded exceeds $25,000. Ex. A. Both the original and Amended Complaint fail to specify an amount sought by the Plaintiff or the putative class. *See* Ex. A; Ex. D.

8.     NEXA is removing the State Court Action to this Court prior to the time by which NEXA is required under California law to answer or otherwise respond to the Amended Complaint. Accordingly, NEXA has not yet filed a responsive pleading to the Amended Complaint, and thus has not yet had the opportunity to raise any of its defenses to the Amended Complaint.  In its first responsive pleading in this Court, NEXA will

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CALIFORNIA 92101

assert all such defenses by answer or motion. By removing the State Court Action to this Court, NEXA is not waiving any defenses it has to the Amended Complaint, all of which defenses are expressly preserved.

## **THIS COURT HAS SUBJECT MATTER JURISDICTION UNDER**
## **28 U.S.C. § 1332(a)(1)**

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because Plaintiff and NEXA are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. First, there is diversity of citizenship. According to the Amended Complaint, Plaintiff is a citizen and resident of California. *See* Ex. D (Amended Complaint) ¶ 4. NEXA is an Arizona limited liability company with its main headquarters and "nerve center" and, thus, principal place of business in Arizona. *See* Ex. F (California Secretary of State record showing NEXA's principal place of business is in Arizona). All members of the LLC are residents of the State of Arizona.

11. Second, the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff's singular claims for overtime wages based on Plaintiff's allegation that he regularly worked 50 hours per week during his employment, put at issue approximately $54,000 based on an estimate of his regular rate of pay, using his income. Ex. D at ¶21.

12. Further, Plaintiff asserts *eight* other causes of action and numerous violations, including claims for minimum wage, statutory and civil penalties, as well as the inclusion of Private Attorney General Act ("PAGA") claims, which are included in the amount in controversy calculation. Thus, these remaining claims seek at least $21,000 and Defendants calculate the amount in controversy easily exceeds $75,000.00. *See* Ex. D (Amended Complaint). Further, the Amended Complaint requests attorneys' fees, interest, and costs, which would also be considered for determining the amount in controversy.

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CALIFORNIA 92101

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CALIFORNIA, 92101

## VENUE IN THIS DISTRICT IS APPROPRIATE

13.     Pursuant to 28 U.S.C. § 1446(a), venue is proper in the United States District Court for the Southern District of California because it is the District Court of the United States for the District and Division within which the State Court Action is pending.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

14.     The Original Complaint was filed on August 3, 2022. Ex. C. The Original Complaint did not raise any claims under PAGA and was not apparent on its face whether the action was removable. *Ibid*.

15.     The Amended Complaint was filed on October 31, 2022, and is not apparent on its face whether the action is removable. Ex. D.

16.     This notice of removal is being filed on November 30, 2022, which is within 30 days of the date of filing of the Amended Complaint and thus this removal is timely under 28 U.S.C. § 1446(b)(3).

17.     As noted above, NEXA has attached true and correct copies of all process, pleadings, and orders served upon NEXA in the State Court Action, thus satisfying 28 U.S.C. § 1446(a).

18.     Pursuant to 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, NEXA will file a copy of this Notice of Removal in the State Court Action and will provide a copy of the Notice of Removal to Plaintiff's counsel using the address provided in the Amended Complaint.

## NEXA'S DEFENSES TO THE COMPLAINT ARE PRESERVED

19.     As noted above, NEXA has not yet filed an answer or responsive pleading to the Amended Complaint in California state court, and thus has not yet had the opportunity to raise any defenses to the Amended Complaint.  By removing the State Court Action to this Court, NEXA is not waiving any defenses it has to the Amended Complaint, all of which defenses are expressly preserved.

///

WHEREFORE, Defendant NEXA Mortgage LLC hereby removes this suit to this Honorable Court.

DATED: November 30, 2022   GREELEY THOMPSON, LLP

*s/David M. Greeley*
David M. Greeley, Esq. (SBN 198520)
GREELEY THOMPSON LLP
600 B Street, Suite 2150
San Diego, California 92101
Telephone: (619) 658-0462
Email:  dgreeley@greeleythompson.com


*s/ Arielle Stephenson*
Arielle Stephenson (SBN No: 336434)
MITCHELL SANDLER LLC
1120 20th Street N.W., Suite 725
Washington, D.C. 20036
Telephone: (202) 886-5260
Email: astephenson@mitchellsandler.com
akaren@mitchellsandler.com

*Attorneys for Defendant NEXA Mortgage LLC*

**DAMIAN DIAZ, individually v. NEXA MORTGAGE, LLC, et al.**

## <u>APPENDIX TO DEFENDANT'S NOTICE OF REMOVAL</u>

| <u>Document</u> | <u>Date</u> | <u>Ex. No.</u> | <u>Pages</u> |
|---|---|---|---|
| Civil Case Cover Sheet | 08/03/2022 | A | 001-003 |
| Summons | 08/03/2022 | B | 004-006 |
| Original Complaint | 08/03/2022 | C | 007-037 |
| First Amended Complaint | 10/31/2022 | D | 038-080 |
| Register of Actions | | E | 081-082 |
| California Secretary of State. Business Search | | F | 083-086 |

# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>MILLER LAW FIRM Matthew R. Miller 1946476<br>835 Fifth Ave. Suite 301 San Diego, CA 92101<br><br>TELEPHONE NO.: 619.687.0143   FAX NO. *(Optional):* 619.687.0136<br>E-MAIL ADDRESS: matt@mrmlawfirm.com<br>ATTORNEY FOR *(Name):* Plaintiff Damian Diaz | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**08/03/2022** at 01:30:59 PM<br><br>Clerk of the Superior Court<br>By Amy Woolf, Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: 325 S Melrose Dr. | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: Vista, CA 92081 | |
| BRANCH NAME: North County | |

CASE NAME:
Damian Diaz v. Nexa Mortgage, LLC

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| [x] Unlimited   [ ] Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2022-00031816-CU-OE-NC<br>JUDGE:   Judge Earl H. Maas III<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Other collections (09) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [x] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [x] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
      issues that will be time-consuming to resolve      courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence      court
                                                        f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary   b. [x] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):* 8 unpaid wages, meal/rest break violations/ unlawful deductions, etc.
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 3, 2022
Matthew R. Miller
_____                                  ▶  _____
    (TYPE OR PRINT NAME)                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
* Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
* File this cover sheet in addition to any cover sheet required by local court rule.
* If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
* Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |
|---|---|---|

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
 Damage/Wrongful Death
 Uninsured Motorist (46) *(if the
 case involves an uninsured
 motorist claim subject to
 arbitration, check this item
 instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/
 Wrongful Death
Product Liability *(not asbestos or
 toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice–
 Physicians & Surgeons
 Other Professional Health Care
 Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip
 and fall)
 Intentional Bodily Injury/PD/WD
 (e.g., assault, vandalism)
 Intentional Infliction of
 Emotional Distress
 Negligent Infliction of
 Emotional Distress
 Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
 Practice (07)
Civil Rights (e.g., discrimination,
 false arrest) *(not civil
 harassment)* (08)
Defamation (e.g., slander, libel)
 (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice
 *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease
 Contract *(not unlawful detainer
 or wrongful eviction)*
 Contract/Warranty Breach–Seller
 Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/
 Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open
 book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections
 Case
Insurance Coverage *(not provisionally
 complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
 Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent
 domain, landlord/tenant, or
 foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
 drugs, check this item; otherwise,
 report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court
 Case Matter
 Writ–Other Limited Court Case
 Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor
 Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
 *(arising from provisionally complex
 case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of
 County)
 Confession of Judgment *(non-
 domestic relations)*
 Sister State Judgment
 Administrative Agency Award
 *(not unpaid taxes)*
 Petition/Certification of Entry of
 Judgment on Unpaid Taxes
 Other Enforcement of Judgment
 Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
 above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-
 harassment)*
 Mechanics Lien
 Other Commercial Complaint
 Case *(non-tort/non-complex)*
 Other Civil Complaint
 *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
 Governance (21)
Other Petition *(not specified
 above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult
 Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late
 Claim
 Other Civil Petition

# EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/03/2022** at 01:30:59 PM

Clerk of the Superior Court
By Amy Woolf, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAMIAN DIAZ, individually and on behalf of all others similarly situated

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NEXA MORTGAGE, LLC, an Arizona Limited Liability Company; and DOES 1-100, inclusive

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior Court<br><br>325 S Melrose Dr. Vista, CA 92081 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2022-00031816-CU-OE-NC |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew R. Miller 835 Fifth Ave. Suite 301 San Diego, CA 92101

| DATE:<br>*(Fecha)* | 08/11/2022 | Clerk, by<br>*(Secretario)* | *A. Woolf*<br>A. Woolf | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Nexa Mortgage LLC
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*





| | |
|---|---|
| **Entity Name:** | **NEXA MORTGAGE, LLC** |
| **Jurisdiction:** | CA |
| **Date:** | 11/17/2022 |
| **Receipt Method:** | Process Server |
| **Case Number:** | 37-2022-00031816-CU-OE-NC |
| **Plaintiff:** | DAMIAN DIAZ; ET AL. |
| **Defendant:** | NEXA MORTGAGE, LLC; ET AL. |
| **Document Type:** | Summons and Notice & Complaint |

# EXHIBIT C

**MILLER LAW FIRM**
Matthew R. Miller (SBN 194647)
Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: (619) 687-0143
Fax: (619) 687-0136
matt@mrmlawfirm.com

Brian C. Dawson (SB#183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92131
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com
Attorneys for Plaintiffs and all others similarly situated.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/03/2022** at 01:30:59 PM

Clerk of the Superior Court
By Amy Woolf,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NEXA MORTGAGE, LLC, an Arizona Limited Liability Company; and DOES 1-100, inclusive <br><br> Defendants. | Case No.    37-2022-00031816-CU-OE-NC <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> (1) Failure to Reimburse and Unlawful Deductions <br> (2) Failure to Pay Minimum Wages <br> (3) Failure to Pay Overtime Wages <br> (4) Failure to Provide Rest & Meal Breaks <br> (5) Failure to Maintain and Furnish Accurate Records <br> (6) Failure to Timely Pay Wages <br> (7) Violation of B&P Code §§ 17200 *et seq.; and* <br> (8) Declaratory Relief <br><br> *JURY TRIAL DEMANDED* |

## <u>INTRODUCTION</u>

1.     This is a wage and hour class action lawsuit brought on behalf of California Loan Officers employed by the Defendant NEXA MORTGAGE, LLC ("NEXA") to recover unpaid minimum, regular and overtime wages, meal and rest premium

wages, unreimbursed business expenses, unlawful deductions, derivative penalties and declaratory relief.

2. For the past few years, NEXA, an out-of-state Arizona based company, has become the fastest growing mortgage company through cost saving practices such as wage theft. The scheme is simple and involves exploiting California workers by misclassifying them as exempt from overtime, minimum wage, meal and rest break laws. Once hired, the worker is required to pay for all home office expenses and pay for some of NEXA's business expenses, which are deducted from the employees' commission. So how does NEXA circumvent California wage and hour laws? It requires its California employees to enter into an Employment Agreement in which the employee waives all rights under California law, including his/her right to petition their local Court for violations of California Labor laws. Indeed, the employee must go to Arizona, pay for an arbitrator and apply Arizona law, which does not protect employees the same way that California does.

3. NEXA wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California law. NEXA's avoidance of California labor laws hurt workers and undermines other competing business who play by the rules. Mr. Diaz, on behalf of himself and all Loan Officers employed by NEXA, seek a stop to these illegal employment practices and to recover all monies earned and owed to the workers victimized by NEXA's practices.

## **PARTIES**

4. Plaintiff Damian Diaz ("DIAZ"), at all times relevant, is a resident of San Diego County, California. DIAZ entered into a written employment contract with NEXA on or about or about July 13, 2020, for the position of "Outside Loan Officer". DIAZ was

responsible for selling mortgage loan products to customers out of his home office which Defendants required him to maintain but did not pay for. DIAZ conducted sales from his home office more than half his working time and only occasionally met with clients outside of his home office. DIAZ was paid a percentage of the yield spread premium paid to Defendant which is based on a percentage of the profit obtained by Defendants from the sale of a loan. As a result, there were pay periods during which DIAZ received less than minimum wage or no compensation because he did not make any sales and/or was not paid all earned wages on loans that he originated. DIAZ worked at least five (5) days a week and ten (10) hours a day. DIAZ began work early in the morning and worked into the evenings and on the weekends, causing his hours worked to regularly exceed forty (40) in a workweek. Throughout his employment, DIAZ incurred deductions from his wages for business expenses of the Defendants that were past on to him.

5. Plaintiff brings this proposed class action on behalf of himself, individually, and on behalf of all similarly situated individuals, pursuant to Code of Civil Procedure § 382, against the Defendants herein. All members of the putative class were improperly classified as exempt Outside Loan Officers and were subject to policies and practices as alleged herein. Plaintiff and the putative class members are herein after collectively referred to as "Plaintiffs".

6. Defendant NEXA MORTGAGE LLC ("NEXA") is, on information and belief, a residential mortgage broker that lends mortgages to home buyers and consumers seeking to refinance their existing mortgages. NEXA is a limited liability company organized and existing under the laws of the State of Arizona and, on information and belief, employs hundreds of mortgage officers in the state of California, with several,

including plaintiff DIAZ working for NEXA within the county of San Diego.

7.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 50 when their names are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner liable to Plaintiff for the events and actions alleged herein.  Specifically, at all times herein mentioned, Defendants, including Defendants' managing agents, officers and directors, had, on information and belief, advanced knowledge of and/or ratified each and every act or omission complained throughout this complaint.  At all times herein mentioned, the Defendants aided and abetted the acts and omission of each and all of the other Defendants in proximately causing the damages as herein alleged. All named Defendants, and DOES 1 through 50, will be collectively referred to as "Defendants" and/or "NEXA."

8.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 51 through 100, are unknown to Plaintiff at this time.  Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure.  Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 51 through 100 when their names are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is personally liable for some, or all, of the claims alleged in the Complaint pursuant to Labor Code §558 and 558.1.

**JURISDICTION AND VENUE**

9.     The amount in controversy arising from the actions and statutory violations as further described herein is sufficient to implicate the general jurisdiction of the Superior Court in and for the County of San Diego.

10.    Venue as to Defendants is proper in this judicial district, pursuant to Code of Civil Procedure § 395(a).  Defendants transact business, have agents, and are otherwise within this Court's jurisdiction for purposes of service of process.  The unlawful acts alleged herein have a direct effect on the Representative Plaintiff and those similarly situated within the State of California and within San Diego County.

**GENERAL ALLEGATIONS**

**Plaintiffs were misclassified as Exempt Outside Sales**

11.    Plaintiffs are nonexempt employees, but were misclassified by Defendants as exempt based on the outside salesperson exemption.  Plaintiffs, however, worked less than 50% of their time outside offices or work locations designated by Defendants. Indeed, Defendants do not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

12.    Plaintiffs are loan officers who promote and sell Defendants' loan products to customers, which is work directly related to the goods and services that constitute a financial service company's marketplace offerings.  §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption.  Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and

Complaint For Damages

regularly engaged and/or spend more than half of his/her working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

13.    "Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property."  (29 C.F.R. 541.502).

14.    Defendants require Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, DIAZ worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

15.    In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such

Complaint For Damages

establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, *et seq.* because Defendants are a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law.  Defendants' conduct as herein alleged was willful and not in good faith, and Defendants had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

A.     **Defendants' Wage and Hour Violations**

        16.     As a result of Defendants' misclassification, Plaintiffs were not reimbursed for business expenses, paid minimum wage for certain non-sales tasks, not paid overtime, and were not provided or compensated for meal or rest breaks, and were subject to unlawful deductions.   Defendants' conduct as set forth below, violated, among other statutes, Labor Code §§201, 202, 203, 204, 218.5, 221, 226, 226.3, 226.7, 510, 512, 1194, 1197 as well as IWC Wage Order No. 4-2001.

        i.     **Unreimbursed Expenses**

        17.     Defendants failed to indemnify and reimburse the Plaintiffs for required expenses incurred in the discharge of their duties for Defendant.  Cal. Lab. Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed

7

Complaint For Damages

them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for home office expenses, including a printer, fax machine, internet, phone, and other office-related products; and other loan servicing related expenses in violation of California Labor Code § 2802.

### ii. Unlawful Deductions

18. In violation of Labor Code § 221, Defendants passed on their labor costs to Plaintiffs. Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. Prior to receiving their earned commission Defendants would deduct "fees", costs and expenses that were part of the general overhead of the Defendants. These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch (BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous" fees. Plaintiffs are informed and believe that in some cases, loan officers earned less than minimum wage required for all hours worked after Defendants' deductions.

### iii. Unpaid Wages

19. Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants. Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more. Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

### iv.    Unpaid Commissions

20.    Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

### v.    Wage Statement Violations

21.    Defendants failed to maintain and provide Plaintiffs with complete and accurate wage statements which failed to show, among other things, gross overtime pay and the true number of hours worked. Cal. Lab. Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all

9
Complaint For Damages

applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. As a result, Defendants provided Plaintiffs with wage statements that violate Cal. Lab. Code § 226, and also violate Wage Order No. 4 by failing to maintain time records showing when work begins and ends for each employee.

### vi. Meal and Rest Breaks

22. Because they misclassified Plaintiffs as exempt, Defendants did not provide Plaintiffs with meal or rest breaks.  In violation of Labor Code § 266.7, Defendants also did not compensate Plaintiffs for rest breaks because Defendants paid on a commission basis for sales work and failed to separately pay Plaintiffs for rest breaks.

### B. Defendant's Employment Agreement Contains Numerous Unconscionable Clauses Under California Law.

23. Plaintiffs were all provided with a take-it or leave-it Employment Agreement, which they were required to sign as a condition of their employment. Defendants' Employment Agreement is littered with unconscionable clauses in a thinly-veiled attempt to garner an unfair advantage over Plaintiffs who dare seek redress against Defendants illegal employment practices.  The offending clauses and the arbitration provisions of the Employment Agreement renders the entire agreement void and unenforceable.

### i. The Employment Agreement Contains An Improper Fee Shifting Provision

24. Defendants' Employment Agreement contains an arbitration agreement, which purports to be optional, but in practice, is a mandatory condition of Plaintiffs' employment.  The California Supreme Court has held that when an employer imposes

mandatory arbitration as a condition of employment, the arbitration agreement cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.  (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 110-111). Section VII of the Defendants' Employment Agreement, which states in pertinent part that, "the parties will share equally in the cost of such Arbitration...", is the type of cost-splitting provision that has specifically been held to be unconscionable and is therefore unenforceable.

**ii.     The Employment Agreement Contains an Improper Choice of Law and Forum-selection Clause.**

25.     Defendants' Employment Agreement requires disputes to be resolved in Arizona and that the employment relationship between NEXA and its employees will be governed and construed under and enforce with Arizona laws.   California prohibits employers from requiring an employee who primarily resides and works in California to agree, as a condition of employment, to a provision that would require the employee to adjudicate outside of California a claim arising in California or deprive the employee of the substantive protection of California law with respect to any controversy arising in California. Any provision that violates these prohibitions is voidable (Lab.C. § 925(a), (b)). Plaintiffs all executed the Agreements in California, lived and worked in California, during all times relevant herein.  This provision is therefore unenforceable.

**iii.    The Employment Agreement Contains an Improper Ban on Class Actions.**

26.     Defendants' Employment Agreement prohibits employees from pursuing or participating in relief on a class or collective action basis against NEXA "arising out of

the employment relationship or this agreement." The California Supreme Court has held that class arbitration waivers are unlawful when they impermissibly interfere with the vindication of unwaivable statutory rights. "We conclude that at least in some cases, the prohibition of classwide relief would undermine the vindication of the employee's unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws. Accordingly, such class arbitration waivers should not be enforced if a trial court determines…that class arbitration would be significantly more effective way of vindicating the rights of affected employees than individual arbitration." (Gentry v. Superior Court (2007) 42 Cal.4th 443). Further, the Federal Arbitration Act does not preempt California law with respect to class action waivers that apply outside of arbitration to non-arbitrable claims. (Garrido v. Air Liquide Industrial U.S. LP (2015) 241 Cal.App4th 833, 837-838 (observing claims that are not required to be arbitrated are not governed by the FAA and "Gentry's holding has not been overturned under California law in situations where the FAA does not apply")).

27. Defendants' arbitration agreement, which requires employees to bring non-arbitrable claims individually in court – especially wage and hour claims where the potential recovery is modest – is contrary to public policy, unfair, and effectively exculpates Defendants from liability for common violations of the Labor Code. The class waiver is therefore unconscionable and unenforceable under California law because it applies to non-arbitrable claims that are not covered by the FAA, and because it imposes unfair obstacles to employees vindicating their statutory and unwaivable rights under the Labor Code.

# **CLASS ACTION ALLEGATIONS**

28.   Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to § 382 of the Code of Civil Procedure.  The Class is sufficiently numerous and estimated to include between thirty to fifty employees, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to the parties, Class members, and the Court.  Plaintiff seeks to represent a Class composed of and defined as follows:

> Plaintiff Class:   All current or former employees of Nexa
> Mortgage, LLC who worked in California as mortgage
> salespersons or loan officers or similar position, and were
> classified as exempt, at any time beginning four years prior
> to the filing of this action through the date of trial.

29.   Plaintiff reserves the right under Rule 3.765(b), California Rules of Court, to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues.

30.   This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

a.   *COMMONALITY*:   The Representative Plaintiff and the putative class members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

i.    Whether Defendants misclassified Plaintiffs as exempt under the outside salesperson exemption.

ii.   Whether the choice of law, forum selection and arbitration provisions in the Defendants' Employment Agreement are enforceable.

13

020

iii.   Whether Defendants' violated Labor Code § 2802 by failing to reimburse its employees for business expenses incurred while working from home.

iv.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §1194 by failing to provide or pay minimum wage to Plaintiffs.

v.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §510 by failing to provide or pay overtime to loan officers.

vi.   Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §226.7 by failing to provide or pay for meal and rest breaks.

vii.   Whether Defendants violated Labor Code §226 by failing to provide Plaintiffs with accurate itemized statements in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employer.

viii.   Violating Labor Code Sections 201, 202, 203 & 204 by failing to tender timely and full payment and/or restitution of all wages owed to the employees whose employment with Defendants has terminated on sales which payment was received by Defendants;

ix.   Whether Plaintiffs are entitled to restitution under Cal.Bus. & Prof. Code §§ 17200 et seq.

x.   Whether Plaintiffs are entitled to receive interest on unpaid compensation due and owing them.

xi.   Where Defendants' systemic acts and practices violated California Labor Code §§ 201, 202, 221, 226.7, 351, 510, 512, 558, 1174, 1194 and 1197, applicable IWC wage orders, and California Business and Professions Code § 17200 et seq.

b.      *NUMEROSITY*:  A class action is the only available method for the fair and efficient adjudication of this controversy.  The members of the Plaintiff Class are so numerous that joinder of all members is impractical.  While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class consists of thirty to fifty persons.  Individual joinder of Class members is also impracticable.  The identity of Class Members can be determined easily upon analysis of, inter alia, employee and payroll records maintained by NEXA.

c.      *TYPICALITY*:  The Representative Plaintiff's claims are typical of the claims of the Plaintiff Class.  The Representative Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendants common course of conduct in violation of law, as alleged herein.

d.      *SUPERIORITY OF CLASS ACTION*:  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable.  Even if every Class Member could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.    Individualized litigation would also present  the  potential  for  varying, inconsistent, or contradictory judgment and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex and factual  issues.    Moreover,  individual  actions  by  class  members  may  establish inconsistent standards of conduct for NEXA.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each class member.  Plaintiffs are informed and believe that

NEXA used the same Employment Agreement on every loan officer, thereby making appropriate relief with regard to the members of the class as a whole, as requested herein.

e.     ADEQUACY OF REPRESENTATION:  The Representative Plaintiff in this class action is an adequate representative of the Plaintiff Class, in that the Representative Plaintiff's claims are typical of those of the Plaintiff Class and the Representative Plaintiff has the same interests in the litigation of this case as the Class Members.  The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel, experienced in conducting litigation of this nature.  The Representative Plaintiff is not subject to any individual defense unique from those conceivably applicable to the Plaintiff Class as a whole.  The Representative Plaintiff anticipates no management difficulties in this litigation.

**FIRST CAUSE OF ACTION**
**Failure To Reimburse Business Expenses / Unlawful Deduction**
**(Against all Defendants)**

31.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32.     At all mentioned times in this Complaint California Labor Code §§ 221 and 2802 were in full force and effect and binding on Defendants. Said sections require employers to indemnify its employees for all that the employee necessarily expends or loses in direct consequence of the discharge of duties.

33.     California Labor Code §221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

34.     California Labor Code §2802 provides, "An employer shall indemnify his or

---

16

Complaint For Damages

her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions believed them to be unlawful."

35.     During the applicable statutory period, Plaintiffs incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience to the directions of Defendants.  These business expenses which Plaintiffs incurred, which were not reimbursed include, but are not limited to, internet, phone, personal computer usage, office supplies, utility bills, and/or fair rental value of space used for home office.  Defendants did not reimburse these expenditures or losses to Plaintiffs. Moreover, Defendants had a policy and practice of deducting its business expenses from Plaintiffs' earned commissions.

36.     Plaintiffs are entitled to reimbursement for all necessary expenditures and losses incurred in direct consequence of the discharge of their duties while employed by Defendants, and they are entitled to restitution of all monies unlawfully withheld by the Defendants in an amount according to proof at trial.

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage in violation of**
**California Labor Code §§ 510, 1194, 1197 and IWC Wage Order 4-2001 §4.**
**(Against all Defendants)**

37.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

38.     Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.  At all times relevant, Defendants willfully failed and refused, and continue to willfully fail and refuse,

17

Complaint For Damages

to pay Plaintiffs the amounts owed.

39.     Labor Code § 510 provides in relevant part: "[e]ight hours of labor constitutes a day's work."  Labor Code § 1197 provides "the minimum wage for employers fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than minimum wage so fixed is unlawful."  Labor Code § 1194 provides "[N]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

40.     Labor Code § 1194.2 provides in relevant part: "In any action under §1193.6 or §1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

41.     Pursuant to IWC Wage Order No. 4-2001, at all time material hereto, "hours worked" includes "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, where or not required to do so."

42.     Plaintiffs are required to work non-selling time, for which they are not compensated.  This includes, but is not limited to, meetings, loan processing, training, loan tracking and/or customer service. Plaintiffs should have received not less than the minimum wage in a sum according to proof for the time worked, but not compensated. For all hours Plaintiffs worked, they are entitled to not less than the California minimum

18

Complaint For Damages

wage and liquidated damages in an amount equal to the unpaid minimum wages and interest thereon. In addition, Plaintiffs are entitled to their attorneys' fees, costs and interest according to proof, and to those employees no longer employed by Defendants, waiting time penalties pursuant to Labor Code § 200 et seq.

## THIRD CAUSE OF ACTION
### Failure to Pay Overtime Compensation in Violation of
**California Labor Code §§ 204, 510, 1194, 1197 & 1198 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

43.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.     Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.

45.     Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid wages, including straight time and overtime, in a timely fashion for their work. This precludes any waiver for unpaid due and owing wages that remain unpaid at the time of separation.

46.     At all times relevant herein, IWC Wage Order No. 4-2001, governing "Professional, Technical, Clerical, Mechanical and Similar Occupations," applied and continues to apply to Plaintiffs.

47.     At all times relevant herein, IWC Wage Order No. 4-2001 provides for payment of overtime wages equal to one and one-half (1.5) times an employee's regular rate of pay for all hours worked over eight (8) hours per day and/or forty (40) hours in a work week, and/or for payment of overtimes wages equal to double the employee's regular rate of pay for all hours in excess of twelve (12) hours in any workday and/or for all hours worked in excess in eighty (8) hours on the seventh (7th) day of work in any

19

026

one workweek.

48.    Throughout the class period, Plaintiffs have routinely and regularly worked in excess of eight hours per day and/or forty hours per week.

49.    Under the provisions of IW|C Order 4-2001, Plaintiffs should have received overtime wages in a sum according to the proof for hours worked during the three (3) years prior to filing of this action.  Defendants owe Plaintiffs overtime wages, and has failed and refused, and continues to fail and refuse, to pay Plaintiffs the amounts owed.

50.    Plaintiffs request recovery of overtime compensation according to proof, interest, attorney fees, and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties on behalf of those employees no longer employed by the Defendants against Defendants in a sum as provided by the California Labor Code and/or other applicable statutes.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Meal and/or Rest Periods**
**California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

51.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.    Labor Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the

20

Complaint For Damages

total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.:

§11 of the Order 4-2001 of the Industrial Wage Commission provides in relevant part:

Rest Periods:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

53.     Defendants have intentionally and improperly failed to provide and/or permit all rest and/or meal periods without any work or duties to Plaintiffs who worked more than three and one half hours (3 ½) per day, and by failing to do so Defendants violated the provisions of Labor Code 226.7.   Plaintiffs were often expected and required to continue working through rest periods to meet the expectations of Defendants and finish the workday.  In some cases when Plaintiffs worked more than ten hours in a shift, Defendants failed to authorize and/or permit a third mandated rest period.  As a result, Plaintiffs were periodically unable to take compliant rest periods.

54.     In addition to failing to authorize and permit compliant reset periods, Plaintiffs were not compensated with one hour's worth of pay at their regular rate of compensation when they were not provided with a compliant rest period in accordance with Labor Code § 226.7.  Thus, Defendants have violated Labor Code § 226.7 and the applicable Wage Order.

55.     Therefore, as a result of Defendants unlawful acts, Plaintiffs have been deprived of timely off-duty breaks and are entitled to recovery under Labor Code §226.7(b) and § 11 of IWC Wage Order No. 4-2004, in the amount of one additional hour of pay at the employee's regular rate of compensation for each work period during each day in which Defendants fialed to provide its employees with timely statutory off-duty breaks.

### FIFTH CAUSE OF ACTION
**Failure to Maintain Accurate Records and Furnish Accurate Itemized Wage Statements Violation of California Labor Code §§ 226 (b), 1174, 1175 (Against all Defendants)**

56.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     Labor Code § 226(a) of the California Labor Code requires Defendants to

22

Complaint For Damages

itemize in wage statements all deductions from payment of wages and to accurately report total hours worked by Plaintiffs and the putative class members. Defendants knowingly and intentionally failed to comply with Labor Code §226(a) on each and every wage statement that should have been provided to Plaintiff and the putative class. Specifically, Defendants knew that its employees worked far more hours than the hours listed on their timesheets and that its employees were in fact performing "prep work" off the clock. Defendants maintained these policies despite this knowledge.

58. Labor Code § 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

59. §1174 of the California Labor Code requires Defendants to maintain and preserve, in a centralized location, among other items, records showing the names and addresses of all employees employed, payroll records showing the hours worked daily by and the wages paid to its employees. Likewise, IWC Wage Order 4-2001(7) requires Defendants to maintain time records showing, including but not limited to, when the employee begins and ends each work period, meal periods, and total daily hours worked in an itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and the putative class members. Labor Code §1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records.

60. Defendants have intentionally and willfully failed to keep accurate and complete records showing the hours worked daily, breaks taken and missed, and wages

Complaint For Damages

paid to Plaintiffs.  Thus, Plaintiffs have been denied their legal right and protected interest in having available at a central location accurate and complete payroll records showing the hours worked daily by, and the wages paid to them.

61.    In addition, Defendant knowingly and intentionally failed to maintain, furnish and provide timely, accurate, itemized wage statements by failing, inter alia, to identify all hours worked by Plaintiffs.  Further, the wage statements were inaccurate as the unreimbursed business expenses, unpaid wages, missed meal and rest breaks were not included in the gross wages earned by Plaintiffs.

62.    Defendants' failure to provide Plaintiffs with accurate itemized wage statements during the Class period has caused Plaintiffs to incur economic damages in that they were not aware that they were owed and not paid compensation for missed rest and meal periods, for hours worked without pay, for overtime work without pay. In addition, the Defendants provided inaccurate information regarding the hours worked, which masked the underpayment of wages to Plaintiffs.

63.    As a result of Defendants' issuance of inaccurate itemized wage statements and failure to maintain accurate records of Plaintiffs hours worked, Plaintiffs are entitled to recover penalties pursuant to § 226(e).

## SIXTH CAUSE OF ACTION
### Violations of Labor Code § 203 (Waiting Time Penalties)
### (Brought by Plaintiff on behalf Class Members who are no longer employed by Defendants)

64.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.    California Labor Code § 201 requires Defendants to pay their discharged employees all wages due immediately upon discharge.

66.    California Labor Code § 202 requires that if an employee quits his or her

24

Complaint For Damages

employment, "his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.  Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive a payment by mail if he or she so requests and designates a mailing address.

67.     Labor Code § 203 provides that if an employer willfully fails to pay, without abatement or reduction, in accordance with Labor Code §§ 201, 201.5, 202 and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue at the same rate, for up to thirty (30) days from the due date thereof, until paid or until an action therefore is commenced.

68.     Plaintiff and other putative class members who have been discharged or who have quit are entitled to all unpaid compensation, pursuant to California Labor Code § 203, but, to date, have not received such compensation, as alleged above. Plaintiff and the putative class members have not received payment for all of the time spent working for Defendants.

69.     Defendants' willful failure to pay wages to these class members violates Labor Code § 203 because Defendants knew or should have known wages were due to these employees, but Defendants failed to pay them.  Thus, these class members are entitled to recover their daily wage multiplied by thirty days and interest on all amounts recovered herein.

**SEVENTH CAUSE OF ACTION**
**Violation of Business & Professions Code**
**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

70. Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

71. California Business & Professions Code ("B&PC") §§17200 et seq. provides in pertinent part "…[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act…".

72. B&PC § 17205 provides that unless otherwise expressly provided, the remedies or penalties provided for unfair competition "are cumulative to each other and to the remedies or penalties available under all other laws of this state."

73. B&PC § 17204 provides that an action for any relief from unfair competition may be prosecuted by any person who suffered injury in fact and lost money or property as a result of such unfair competition.

74. Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC § 17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving Plaintiff and all others similarly situated of the minimum working standards and conditions due to them under California labor laws and the IWC Wage Orders as specifically described herein.

75. Defendants have engaged in unfair, unlawful and fraudulent business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation, by failing to furnish Plaintiff and the putative class members with accurate itemized wage statements, failing to keep payroll records showing total hours worked, and by requiring

Plaintiff and the putative class members to agree to a terms or conditions of employment that Defendants knew or should have known is prohibited by law.

76.     Defendants' use of such practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over Defendants' competitors.

77.     Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair practices.

78.     Plaintiffs seek full restitution from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

79.     Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs.

80.     Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

## **EIGHTH CAUSE OF ACTION**
**Declaratory Relief**

81.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

82.     CCP § 1060 provides that any person who desires a declaration of his or her rights or duties with respect to another, in cases of actual controversy relating to the legal rights and duties of the respective parties, may ask the Court for a declaration of rights or duties, and the Court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time; any such declaration by the Court shall have the force of a final judgment.

83.     An actual controversy exists between the parties as to the enforceability of

27

034

the Employment Agreement and its provisions as stated above. It is therefore necessary that the Court declare the rights and duties of the parties hereto.

84. Labor Code § 925 prohibits an employer from requiring an employee who primarily resides and works in California to agree to a provision that either: (1) requires the employee to adjudicate outside of California a claim arising in California; or (2) deprives the employee of the substantive protection of California law with respect to a controversy arising in California. Labor Code § 432.5 makes it unlawful for an employee to require an employee to agree, in writing, to a term or condition known by the employer to be prohibited by law.

85. Plaintiffs assert the choice-of-law and forum selection provisions in the Defendants standard Employment Agreement are void and illegal, not just under Labor Code 925, but also under other California laws, including California's constitutional right to privacy, Business and Professions Code 16600, 17200 et seq., the Cartwright Act and Labor Code 98.6, 203, 226, 232, 232.5, 432.5, 450, 510, 1102.5, 1194, 1197.5, 2802, and 2804. These laws were established for a public reason and establish unwaivable rights.

86. In light of the facts set forth above, a case or controversy exists as to whether Defendants requirement that Plaintiffs agree to Arizona forum selection and choice of law provision is unlawful and unenforceable. Plaintiffs seek judicial declaration of their rights and obligations with respect to Defendants forum selection and choice of law provisions. Specifically, they seek a judicial declaration that Defendants violate the law (including Labor Code Section 432.5 and 925) by requiring employee to agree to the forum selection and choice of law provisions in their employment documents. The also seek a declaration that the forum selection and

choice of law provisions violate the laws referenced above.

87.    In addition, Plaintiffs are informed and believe that Defendants require all current employees and applicants for employment to execute, as part of their continued or application for employment, an Employment Agreement that contains an arbitration provision.   The arbitration agreement is an adhesive contract because agreement is drafted exclusively by Defendants, at the time the arbitration provision was executed by Plaintiffs, Defendants exercised superior bargaining power over the employees and applicants for employment.  Further, Defendants require Plaintiffs to adhere to the terms of the standard form agreement presented to them on a "take it or leave it" basis.  There was and is no opportunity to negotiate different terms than those drafted by Defendants. Further, the arbitration agreement is unenforceable for a number of reasons, including the reasons stated above, and because the Agreement limits Plaintiffs' procedural and substantive rights and requires Plaintiffs to pay the fees of retired judges who act as arbitrators.

88.    Further, Plaintiffs seek a judicial determination regarding the enforceability of the "class waiver" contained in Defendants' Employment Agreement.

89.    Ancillary to this judicial declaration, Plaintiffs seek an injunction: (1) Prohibiting Defendants from requiring Plaintiffs to sign employment documents that contain out-of-state forum selection or choice of law provisions; and (2) prohibiting Defendants from threatening to enforce or enforcing these forum selection and choice of law provisions.  Plaintiffs also seek an affirmative injunction requiring Defendants to inform class members that its forum selection and choice of law provisions are unlawful, and it will not threaten to enforce or enforce these provisions.

1

**PRAYER FOR RELIEF**

2    WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment

3    against the Defendants as follows:

4    1.    An Order that this action may proceed and be maintained on a class-wide

5    basis;

6

7    2.    Appropriate Injunctive relief;

8    3.    Attorneys' fees and costs, according to proof;

9    4.    Disgorgement and restitution, according to proof;

10   5.    Statutory and civil penalties, according to proof;

11   6    Damages for the mount of unpaid compensation, including interest

12   thereon, liquidated damages, and penalties subject to proof at trial;

13   7.    Directing such other and further relief as this Court may deem proper.

14

15                              **JURY DEMAND**

16   WHEREFORE, Plaintiff demands a trial by jury.

17                              **MILLER LAW FIRM**

18   Dated:  August 3, 2022          By:    */s/ Matthew R. Miller*

19                                          Matthew R. Miller
                                            Attorneys for Plaintiff and the Proposed Class

20

21

22

23

24

25

26

27

28

Complaint For Damages

# EXHIBIT D

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/31/2022** at 11:32:00 AM
Clerk of the Superior Court
By Teresa Porotesano, Deputy Clerk

1  **MILLER LAW FIRM**
   Matthew R. Miller (SBN 194647)
2  Historic Louis Bank of Commerce Building
   835 Fifth Avenue, Suite 301
3  San Diego, CA 92101
4  Telephone: (619) 687-0143
   Fax: (619) 687-0136
5  matt@mrmlawfirm.com

6  Brian C. Dawson (SB#183251)
7  DAWSON & OZANNE
   5755 Oberlin Dr., Suite 301
8  San Diego, CA 92131
   Telephone: (619) 988-2135
9  Email: brian@dawson-ozanne.com
   Attorneys for Plaintiffs and all others similarly situated.
10

11            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                       **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually and on behalf      Case No.
    of all others similarly situated,
14                                               **FIRST   AMENDED   CLASS   ACTION**
                                                 **COMPLAINT FOR:**
15                      Plaintiff,
16  v.                                           (1) Failure to Reimburse and Unlawful
                                                     Deductions
17  NEXA   MORTGAGE,   LLC,   an   Arizona       (2) Failure to Pay Minimum Wages
    Limited Liability Company; and DOES 1-       (3) Failure to Pay Overtime Wages
18  100, inclusive                               (4) Failure to Provide Rest & Meal Breaks
                                                 (5) Failure to Maintain and Furnish
19                      Defendants.                  Accurate Records
                                                 (6) Failure to Timely Pay Wages
20                                               (7) Violation of B&P Code §§ 17200 *et*
                                                     *seq.;*
21                                               (8) Declaratory Relief, and
22                                               (9) Enforcement of Labor Code Section
                                                     2698 et seq. ("PAGA")
23
24                                               *JURY TRIAL DEMANDED*
25
26
27
28

                                    1

                                                              039

## INTRODUCTION

1.     This is a wage and hour class action lawsuit and representative action pursuant to the Private Attorneys General Act of 2004, Cal.Lab.Code section 2698 et seq., brought on behalf of California Loan Officers employed by the Defendant NEXA MORTGAGE, LLC ("NEXA") to recover unpaid minimum, regular and overtime wages, meal and rest premium wages, unreimbursed business expenses, unlawful deductions, derivative penalties and declaratory relief.

2.     For the past few years, NEXA, an out-of-state Arizona based company, has become the fastest growing mortgage company through cost saving practices such as wage theft.  The scheme is simple and involves exploiting California workers by misclassifying them as exempt from overtime, minimum wage, meal and rest break laws.  Once hired, the worker is required to pay for all home office expenses and pay for some of NEXA's business expenses, which are deducted from the employees' commission. So how does NEXA circumvent California wage and hour laws? It requires its California employees to enter into an Employment Agreement in which the employee waives all rights under California law, including his/her right to petition their local Court for violations of California Labor laws.  Indeed, the employee must go to Arizona, pay for an arbitrator and apply Arizona law, which does not protect employees the same way that California does.

3.     NEXA wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California law. NEXA's avoidance of California labor laws hurt workers and undermines other competing business who play by the rules.  Mr. Diaz, on behalf of himself and all Loan Officers employed by NEXA, seek a stop to these illegal employment practices and to

2

1  recover all monies earned and owed to the workers victimized by NEXA's practices.

2  ## PARTIES

3  4.    Plaintiff Damian Diaz ("DIAZ"), at all times relevant, is a resident of San
4  Diego County, California.  DIAZ entered into a written employment contract with NEXA
5  on or about or about July 13, 2020, for the position of "Outside Loan Officer".  DIAZ was
6  responsible for selling mortgage loan products to customers out of his home office
7  which Defendants required him to maintain but did not pay for.  DIAZ conducted sales
8  from his home office more than half his working time and only occasionally met with
9  clients outside of his home office.  DIAZ was paid a percentage of the yield spread
10 premium paid to Defendant which is based on a percentage of the profit obtained by
11 Defendants from the sale of a loan. As a result, there were pay periods during which
12 DIAZ received less than minimum wage or no compensation because he did not make
13 any sales and/or was not paid all earned wages on loans that he originated.  DIAZ
14 worked at least five (5) days a week and ten (10) hours a day.  DIAZ began work early
15 in the morning and worked into the evenings and on the weekends, causing his hours
16 worked to regularly exceed forty (40) in a workweek.  Throughout his employment, DIAZ
17 incurred deductions from his wages for business expenses of the Defendants that were
18 past on to him.

19 5.    Plaintiff brings this proposed class action on behalf of himself, individually,
20 and on behalf of all similarly situated individuals, pursuant to Code of Civil Procedure §
21 382, against the Defendants herein.  All members of the putative class were improperly
22 classified as exempt Outside Loan Officers and were subject to policies and practices
23 as alleged herein.  Plaintiff and the putative class members are herein after collectively
24 referred to as "Plaintiffs".

3

First Amended Complaint For Damages

6.     In addition, pursuant to the Private Attorney General Act ("PAGA"), incorporated in Labor Code Sections 2698 et seq., Plaintiff brings this representative action against Defendant NEXA MORTGAGE LLC  and DOES 1 through 50, for wage and hour violations of the California Labor Code and the applicable Industrial Welfare Commission Wage Order (the "IWC Wage Order").  Pursuant to Labor Code section 2699, any provision of the Labor and Workforce Development Agency ("LWDA") or any of its departments, divisions, commission, boards, agencies or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Labor Code section 2699.3.  By this action, Plaintiff, who is an aggrieved employee, seeks civil penalties on behalf of himself and other aggrieved employees pursuant to the PAGA.

7.     Plaintiff has satisfied all the prerequisites set out in California Labor Code Section 2699.3 required for maintaining a civil suit to recover the aforementioned penalties.  On August 1, 2022, Plaintiff, by and through counsel, filed his PAGA Notice online with the Labor Workforce Development Agency ("LWDA"), paid the $75.00 filing fee, and sent a letter by certified mail to Defendants setting forth the facts and theories of the violations alleged against Defendants, as prescribed by Labor Code Section 2698 et seq. Attached as Exhibit 1 is a copy of Plaintiff's letter to the LWDA.  The California Department of Industrial Relations' website confirms receipt of Plaintiff's submission, Case No. LWDA-CM-901646-22.  The statutory period, 65 days, for the LWDA to serve Plaintiff with a notice of its intent to investigate and assume jurisdiction over the applicable penalty claims has past.  Therefore, Plaintiff may proceed with a civil action pursuant to Labor Code Section 2699.

4

First Amended Complaint For Damages

8.     Defendant NEXA MORTGAGE LLC ("NEXA") is, on information and belief, a residential mortgage broker that lends mortgages to home buyers and consumers seeking to refinance their existing mortgages. NEXA is a limited liability company organized and existing under the laws of the State of Arizona and, on information and belief, employs hundreds of mortgage officers in the state of California, with several, including plaintiff DIAZ working for NEXA within the county of San Diego.

9.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 50, are unknown to Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names pursuant to § 474 of the California Code of Civil Procedure. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 50 when their names are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is in some manner liable to Plaintiff for the events and actions alleged herein. Specifically, at all times herein mentioned, Defendants, including Defendants' managing agents, officers and directors, had, on information and belief, advanced knowledge of and/or ratified each and every act or omission complained throughout this complaint. At all times herein mentioned, the Defendants aided and abetted the acts and omission of each and all of the other Defendants in proximately causing the damages as herein alleged. All named Defendants, and DOES 1 through 50, will be collectively referred to as "Defendants" and/or "NEXA."

10.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 51 through 100, are unknown to Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names

pursuant to § 474 of the California Code of Civil Procedure. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of DOES 51 through 100 when their names are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each DOE Defendant is personally liable for some, or all, of the claims alleged in the Complaint pursuant to Labor Code §558 and 558.1.

## JURISDICTION AND VENUE

11. The amount in controversy arising from the actions and statutory violations as further described herein is sufficient to implicate the general jurisdiction of the Superior Court in and for the County of San Diego.

12. Venue as to Defendants is proper in this judicial district, pursuant to Code of Civil Procedure § 395(a). Defendants transact business, have agents, and are otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged herein have a direct effect on the Representative Plaintiff and those similarly situated within the State of California and within San Diego County.

## GENERAL ALLEGATIONS

**Plaintiffs were misclassified as Exempt Outside Sales**

13. Plaintiffs are nonexempt employees, but were misclassified by Defendants as exempt based on the outside salesperson exemption. Plaintiffs, however, worked less than 50% of their time outside offices or work locations designated by Defendants. Indeed, Defendants do not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

14. Plaintiffs are loan officers who promote and sell Defendants' loan products to customers, which is work directly related to the goods and services that constitute a

First Amended Complaint For Damages

financial service company's marketplace offerings.  §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption.  Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and regularly engaged and/or spend more than half of his/her working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

15.    "Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property."  (29 C.F.R. 541.502).

16.    Defendants require Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, DIAZ worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

17.     In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, *et seq.* because Defendants are a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law. Defendants' conduct as herein alleged was willful and not in good faith, and Defendants had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

## A.     **Defendants' Wage and Hour Violations**

18.     As a result of Defendants' misclassification, Plaintiffs were not reimbursed for business expenses, paid minimum wage for certain non-sales tasks, not paid overtime, and were not provided or compensated for meal or rest breaks, and were subject to unlawful deductions. Defendants' conduct as set forth below, violated, among other statutes, Labor Code §§201, 202, 203, 204, 218.5, 221, 226, 226.3, 226.7, 510, 512, 1194, 1197 as well as IWC Wage Order No. 4-2001.

First Amended Complaint For Damages

### i. Unreimbursed Expenses

19.     Defendants failed to indemnify and reimburse the Plaintiffs for required expenses incurred in the discharge of their duties for Defendant. Cal. Lab. Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for home office expenses, including a printer, fax machine, internet, phone, and other office-related products; and other loan servicing related expenses in violation of California Labor Code § 2802.

### ii. Unlawful Deductions

20.     In violation of Labor Code § 221, Defendants passed on their labor costs to Plaintiffs. Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. Prior to receiving their earned commission Defendants would deduct "fees", costs and expenses that were part of the general overhead of the Defendants. These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch (BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous" fees. Plaintiffs are informed and believe that in some cases, loan officers earned less than minimum wage required for all hours worked after Defendants' deductions.

First Amended Complaint For Damages

047

### iii. **Unpaid Wages**

21.     Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants.     Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more.  Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

### iv. **Unpaid Commissions**

22.     Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable

First Amended Complaint For Damages

penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

### v. Wage Statement Violations

23. Defendants failed to maintain and provide Plaintiffs with complete and accurate wage statements which failed to show, among other things, gross overtime pay and the true number of hours worked. Cal. Lab. Code § 226 provides that every employer shall furnish each of his or her employees with an accurate itemized wage statement in writing showing, among other things, gross wages earned and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate. As a result, Defendants provided Plaintiffs with wage statements that violate Cal. Lab. Code § 226, and also violate Wage Order No. 4 by failing to maintain time records showing when work begins and ends for each employee.

### vi. Meal and Rest Breaks

24. Because they misclassified Plaintiffs as exempt, Defendants did not provide Plaintiffs with meal or rest breaks. In violation of Labor Code § 266.7, Defendants also did not compensate Plaintiffs for rest breaks because Defendants paid on a commission basis for sales work and failed to separately pay Plaintiffs for rest breaks.

### B. Defendant's Employment Agreement Contains Numerous Unconscionable Clauses Under California Law.

25. Plaintiffs were all provided with a take-it or leave-it Employment Agreement, which they were required to sign as a condition of their employment. Defendants' Employment Agreement is littered with unconscionable clauses in a thinly-

11

First Amended Complaint For Damages

1  veiled attempt to garner an unfair advantage over Plaintiffs who dare seek redress

2  against Defendants illegal employment practices.   The offending clauses and the

3  arbitration provisions of the Employment Agreement renders the entire agreement void

4  and unenforceable.

5

6      **i.      The Employment Agreement Contains An Improper Fee Shifting**

7  **Provision**

8      26.    Defendants' Employment Agreement contains an arbitration agreement,

9  which purports to be optional, but in practice, is a mandatory condition of Plaintiffs'

10  employment.  The California Supreme Court has held that when an employer imposes

11  mandatory arbitration as a condition of employment, the arbitration agreement cannot

12  require the employee to bear any type of expense that the employee would not be

13  required to bear if he or she were free to bring the action in court.  (Armendariz v.

14  Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 110-111). Section VII

15

16  of the Defendants' Employment Agreement, which states in pertinent part that, "the

17  parties will share equally in the cost of such Arbitration...", is the type of cost-splitting

18  provision that has specifically been held to be unconscionable and is therefore

19  unenforceable.

20

21      **ii.     The Employment Agreement Contains an Improper Choice of Law**

22  **and Forum-selection Clause.**

23      27.    Defendants' Employment Agreement requires disputes to be resolved in

24  Arizona and that the employment relationship between NEXA and its employees will be

25  governed and construed under and enforce with Arizona laws.  California prohibits

26  employers from requiring an employee who primarily resides and works in California to

27  agree, as a condition of employment, to a provision that would require the employee to

28

---

**12**

First Amended Complaint For Damages

adjudicate outside of California a claim arising in California or deprive the employee of the substantive protection of California law with respect to any controversy arising in California. Any provision that violates these prohibitions is voidable (Lab.C. § 925(a), (b)). Plaintiffs all executed the Agreements in California, lived and worked in California, during all times relevant herein. This provision is therefore unenforceable.

**iii.     The Employment Agreement Contains an Improper Ban on Class Actions.**

28.     Defendants' Employment Agreement prohibits employees from pursuing or participating in relief on a class or collective action basis against NEXA "arising out of the employment relationship or this agreement." The California Supreme Court has held that class arbitration waivers are unlawful when they impermissibly interfere with the vindication of unwaivable statutory rights. "We conclude that at least in some cases, the prohibition of classwide relief would undermine the vindication of the employee's unwaivable statutory rights and would pose a serious obstacle to the enforcement of the state's overtime laws. Accordingly, such class arbitration waivers should not be enforced if a trial court determines...that class arbitration would be significantly more effective way of vindicating the rights of affected employees than individual arbitration." (Gentry v. Superior Court (2007) 42 Cal.4th 443). Further, the Federal Arbitration Act does not preempt California law with respect to class action waivers that apply outside of arbitration to non-arbitrable claims. (Garrido v. Air Liquide Industrial U.S. LP (2015) 241 Cal.App4th 833, 837-838 (observing claims that are not required to be arbitrated are not governed by the FAA and "Gentry's holding has not been overturned under California law in situations where the FAA does not apply")).

29.     Defendants' arbitration agreement, which requires employees to bring

First Amended Complaint For Damages

non-arbitrable claims individually in court – especially wage and hour claims where the potential recovery is modest – is contrary to public policy, unfair, and effectively exculpates Defendants from liability for common violations of the Labor Code. The class waiver is therefore unconscionable and unenforceable under California law because it applies to non-arbitrable claims that are not covered by the FAA, and because it imposes unfair obstacles to employees vindicating their statutory and unwaivable rights under the Labor Code.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on behalf of himself and all others similarly situated as a class action pursuant to § 382 of the Code of Civil Procedure. The Class is sufficiently numerous and estimated to include between thirty to fifty employees, the joinder of whom in one action is impracticable, and the disposition of whose claims in a class action will provide substantial benefits to the parties, Class members, and the Court. Plaintiff seeks to represent a Class composed of and defined as follows:

> Plaintiff Class:     All current or former employees of Nexa Mortgage, LLC who worked in California as mortgage salespersons or loan officers or similar position, and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial.

31.     Plaintiff reserves the right under Rule 3.765(b), California Rules of Court, to amend or modify the Class descriptions with greater specificity or further division into subclasses or limitation to particular issues.

32.     This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

a.     *COMMONALITY*:     The Representative Plaintiff and the putative

14

class members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

i. Whether Defendants misclassified Plaintiffs as exempt under the outside salesperson exemption.

ii. Whether the choice of law, forum selection and arbitration provisions in the Defendants' Employment Agreement are enforceable.

iii. Whether Defendants' violated Labor Code § 2802 by failing to reimburse its employees for business expenses incurred while working from home.

iv. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §1194 by failing to provide or pay minimum wage to Plaintiffs.

v. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §510 by failing to provide or pay overtime to loan officers.

vi. Whether Defendants violated IWC Wage Order No. 4-2001 and Labor Code §226.7 by failing to provide or pay for meal and rest breaks.

vii. Whether Defendants violated Labor Code §226 by failing to provide Plaintiffs with accurate itemized statements in writing showing the gross wages earned, the net wages earned, all applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate by the employer.

viii. Violating Labor Code Sections 201, 202, 203 & 204 by failing to tender timely and full payment and/or restitution of all wages owed to the employees whose employment with Defendants has terminated on sales which payment was received by Defendants;

ix. Whether Plaintiffs are entitled to restitution under Cal.Bus. & Prof. Code §§

17200 et seq.

x. Whether Plaintiffs are entitled to receive interest on unpaid compensation due and owing them.

xi. Where Defendants' systemic acts and practices violated California Labor Code §§ 201, 202, 221, 226.7, 351, 510, 512, 558, 1174, 1194 and 1197, applicable IWC wage orders, and California Business and Professions Code § 17200 et seq.

b. *NUMEROSITY*: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class are so numerous that joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe the Class consists of thirty to fifty persons. Individual joinder of Class members is also impracticable. The identity of Class Members can be determined easily upon analysis of, inter alia, employee and payroll records maintained by NEXA.

c. *TYPICALITY*: The Representative Plaintiff's claims are typical of the claims of the Plaintiff Class. The Representative Plaintiff and all members of the Plaintiff Class sustained damages arising out of and caused by Defendants common course of conduct in violation of law, as alleged herein.

d. *SUPERIORITY OF CLASS ACTION*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying,

---

16

First Amended Complaint For Damages

inconsistent, or contradictory judgment and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex and factual issues. Moreover, individual actions by class members may establish inconsistent standards of conduct for NEXA. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and the court system and protects the rights of each class member. Plaintiffs are informed and believe that NEXA used the same Employment Agreement on every loan officer, thereby making appropriate relief with regard to the members of the class as a whole, as requested herein.

e. ADEQUACY OF REPRESENTATION: The Representative Plaintiff in this class action is an adequate representative of the Plaintiff Class, in that the Representative Plaintiff's claims are typical of those of the Plaintiff Class and the Representative Plaintiff has the same interests in the litigation of this case as the Class Members. The Representative Plaintiff is committed to vigorous prosecution of this case and has retained competent counsel, experienced in conducting litigation of this nature. The Representative Plaintiff is not subject to any individual defense unique from those conceivably applicable to the Plaintiff Class as a whole. The Representative Plaintiff anticipates no management difficulties in this litigation.

**FIRST CAUSE OF ACTION**
**Failure To Reimburse Business Expenses / Unlawful Deduction**
**(Against all Defendants)**

33. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

34. At all mentioned times in this Complaint California Labor Code §§ 221 and

17

First Amended Complaint For Damages

2802 were in full force and effect and binding on Defendants. Said sections require employers to indemnify its employees for all that the employee necessarily expends or loses in direct consequence of the discharge of duties.

35. California Labor Code §221 states: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

36. California Labor Code §2802 provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions believed them to be unlawful."

37. During the applicable statutory period, Plaintiffs incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience to the directions of Defendants. These business expenses which Plaintiffs incurred, which were not reimbursed include, but are not limited to, internet, phone, personal computer usage, office supplies, utility bills, and/or fair rental value of space used for home office. Defendants did not reimburse these expenditures or losses to Plaintiffs. Moreover, Defendants had a policy and practice of deducting its business expenses from Plaintiffs' earned commissions.

38. Plaintiffs are entitled to reimbursement for all necessary expenditures and losses incurred in direct consequence of the discharge of their duties while employed by Defendants, and they are entitled to restitution of all monies unlawfully withheld by the Defendants in an amount according to proof at trial.

39.

First Amended Complaint For Damages

056

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage in violation of**
**California Labor Code §§ 510, 1194, 1197 and IWC Wage Order 4-2001 §4.**
**(Against all Defendants)**

40.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41.     Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections. At all times relevant, Defendants willfully failed and refused, and continue to willfully fail and refuse, to pay Plaintiffs the amounts owed.

42.     Labor Code § 510 provides in relevant part: "[e]ight hours of labor constitutes a day's work." Labor Code § 1197 provides "the minimum wage for employers fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than minimum wage so fixed is unlawful." Labor Code § 1194 provides "[N]otwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

43.     Labor Code § 1194.2 provides in relevant part: "In any action under §1193.6 or §1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

44.     Pursuant to IWC Wage Order No. 4-2001, at all time material hereto,

19

"hours worked" includes "the time during which an employee is subject to the control of an employer and includes all the time the employee is suffered or permitted to work, where or not required to do so."

45. Plaintiffs are required to work non-selling time, for which they are not compensated. This includes, but is not limited to, meetings, loan processing, training, loan tracking and/or customer service. Plaintiffs should have received not less than the minimum wage in a sum according to proof for the time worked, but not compensated. For all hours Plaintiffs worked, they are entitled to not less than the California minimum wage and liquidated damages in an amount equal to the unpaid minimum wages and interest thereon. In addition, Plaintiffs are entitled to their attorneys' fees, costs and interest according to proof, and to those employees no longer employed by Defendants, waiting time penalties pursuant to Labor Code § 200 et seq.

**THIRD CAUSE OF ACTION**
**Failure to Pay Overtime Compensation in Violation of**
**California Labor Code §§ 204, 510, 1194, 1197 & 1198 and IWC Wage Order 4-2001.**
**(Against all Defendants)**

46. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Plaintiff and the putative class members are/were non-exempt hourly paid employees entitled to the protections of IWC order 4-2001 and Labor Codes §§ 201-204, 226, 510, 558, 1194, 1197 and 1198, among other applicable sections.

48. Labor Code § 204 establishes the fundamental right of all employees in the State of California to be paid wages, including straight time and overtime, in a timely fashion for their work. This precludes any waiver for unpaid due and owing wages that remain unpaid at the time of separation.

49. At all times relevant herein, IWC Wage Order No. 4-2001, governing

First Amended Complaint For Damages

058

"Professional, Technical, Clerical, Mechanical and Similar Occupations," applied and continues to apply to Plaintiffs.

50. At all times relevant herein, IWC Wage Order No. 4-2001 provides for payment of overtime wages equal to one and one-half (1.5) times an employee's regular rate of pay for all hours worked over eight (8) hours per day and/or forty (40) hours in a work week, and/or for payment of overtimes wages equal to double the employee's regular rate of pay for all hours in excess of twelve (12) hours in any workday and/or for all hours worked in excess in eighty (8) hours on the seventh (7th) day of work in any one workweek.

51. Throughout the class period, Plaintiffs have routinely and regularly worked in excess of eight hours per day and/or forty hours per week.

52. Under the provisions of IW|C Order 4-2001, Plaintiffs should have received overtime wages in a sum according to the proof for hours worked during the three (3) years prior to filing of this action. Defendants owe Plaintiffs overtime wages, and has failed and refused, and continues to fail and refuse, to pay Plaintiffs the amounts owed.

53. Plaintiffs request recovery of overtime compensation according to proof, interest, attorney fees, and costs pursuant to California Labor Code § 1194(a), as well as the assessment of any statutory penalties on behalf of those employees no longer employed by the Defendants against Defendants in a sum as provided by the California Labor Code and/or other applicable statutes.

First Amended Complaint For Damages

059

## FOURTH CAUSE OF ACTION
### Failure to Provide Meal and/or Rest Periods
### California Labor Code §§ 226.7 and 512 and IWC Wage Order 4-2001.
### (Against all Defendants)

54.     Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     Labor Code § 512 provides, in relevant part: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.:

§11 of the Order 4-2001 of the Industrial Wage Commission provides in relevant part:

Rest Periods:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

22

060

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

Cal. Lab. Code § 226.7 provides:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

56.     Defendants have intentionally and improperly failed to provide and/or permit all rest and/or meal periods without any work or duties to Plaintiffs who worked more than three and one half hours (3 ½) per day, and by failing to do so Defendants violated the provisions of Labor Code 226.7.    Plaintiffs were often expected and required to continue working through rest periods to meet the expectations of Defendants and finish the workday.  In some cases when Plaintiffs worked more than ten hours in a shift, Defendants failed to authorize and/or permit a third mandated rest period.  As a result, Plaintiffs were periodically unable to take compliant rest periods.

57.     In addition to failing to authorize and permit compliant reset periods, Plaintiffs were not compensated with one hour's worth of pay at their regular rate of compensation when they were not provided with a compliant rest period in accordance with Labor Code § 226.7.  Thus, Defendants have violated Labor Code § 226.7 and the applicable Wage Order.

1    58.    Therefore, as a result of Defendants unlawful acts, Plaintiffs have been

2    deprived of timely off-duty breaks and are entitled to recovery under Labor Code

3    §226.7(b) and § 11 of IWC Wage Order No. 4-2004, in the amount of one additional

4    hour of pay at the employee's regular rate of compensation for each work period during

5    each day in which Defendants failed to provide its employees with timely statutory off-

6

7    duty breaks.

8                              **FIFTH CAUSE OF ACTION**
     **Failure to Maintain Accurate Records and Furnish Accurate Itemized Wage**
9        **Statements Violation of California Labor Code §§ 226 (b), 1174, 1175**
                              **(Against all Defendants)**
10

11    59.    Plaintiffs repeat and re-allege each and every allegation contained in the

12    foregoing paragraphs as if fully set forth herein.

13    60.    Labor Code § 226(a) of the California Labor Code requires Defendants to

14    itemize in wage statements all deductions from payment of wages and to accurately

15    report total hours worked by Plaintiffs and the putative class members.   Defendants

16
     knowingly and intentionally failed to comply with Labor Code §226(a) on each and every
17
18    wage statement that should have been provided to Plaintiff and the putative class.

19    Specifically, Defendants knew that its employees worked far more hours than the hours

20    listed on their timesheets and that its employees were in fact performing "prep work" off

21    the clock.   Defendants maintained these policies despite this knowledge.

22    61.    Labor Code § 226(e) provides that an employee is entitled to recover $50

23    for the initial pay period in which a violation of § 226 occurs and $100 for each

24
     subsequent pay period, as well as an award of costs and reasonable attorneys' fees, for
25
26    all pay periods in which the employer knowingly and intentionally failed to provide

27    accurate itemized statements to the employee causing the employee to suffer injury.

28    62.    §1174 of the California Labor Code requires Defendants to maintain and

                                         24

preserve, in a centralized location, among other items, records showing the names and addresses of all employees employed, payroll records showing the hours worked daily by and the wages paid to its employees.    Likewise, IWC Wage Order 4-2001(7) requires Defendants to maintain time records showing, including but not limited to, when the employee begins and ends each work period, meal periods, and total daily hours worked in an itemized wage statements, and must show all deductions from payment of wages, and accurately report total hours worked by Plaintiffs and the putative class members. Labor Code §1174.5 imposes a civil penalty of $500 for an employer's failure to maintain accurate and complete records.

63.    Defendants have intentionally and willfully failed to keep accurate and complete records showing the hours worked daily, breaks taken and missed, and wages paid to Plaintiffs.    Thus, Plaintiffs have been denied their legal right and protected interest in having available at a central location accurate and complete payroll records showing the hours worked daily by, and the wages paid to them.

64.    In addition, Defendant knowingly and intentionally failed to maintain, furnish and provide timely, accurate, itemized wage statements by failing, inter alia, to identify all hours worked by Plaintiffs. Further, the wage statements were inaccurate as the unreimbursed business expenses, unpaid wages, missed meal and rest breaks were not included in the gross wages earned by Plaintiffs.

65.    Defendants' failure to provide Plaintiffs with accurate itemized wage statements during the Class period has caused Plaintiffs to incur economic damages in that they were not aware that they were owed and not paid compensation for missed rest and meal periods, for hours worked without pay, for overtime work without pay. In addition, the Defendants provided inaccurate information regarding the hours worked,

25

First Amended Complaint For Damages

1 which masked the underpayment of wages to Plaintiffs.

2 66. As a result of Defendants' issuance of inaccurate itemized wage

3 statements and failure to maintain accurate records of Plaintiffs hours worked, Plaintiffs

4 are entitled to recover penalties pursuant to § 226(e).

5

6 ### SIXTH CAUSE OF ACTION
### Violations of Labor Code § 203 (Waiting Time Penalties)
7 **(Brought by Plaintiff on behalf Class Members who are no longer employed by Defendants)**

8 67. Plaintiffs repeat and re-allege each and every allegation contained in the
9
10 foregoing paragraphs as if fully set forth herein.

11 68. California Labor Code § 201 requires Defendants to pay their discharged

12 employees all wages due immediately upon discharge.

13 69. California Labor Code § 202 requires that if an employee quits his or her

14 employment, "his or her wages shall become due and payable not later than 72 hours

15 thereafter, unless the employee has given 72 hours previous notice of his or her

16 intention to quit, in which case the employee is entitled to his or her wages at the time of
17
18 quitting. Notwithstanding any other provision of law, an employee who quits without

19 providing a 72-hour notice shall be entitled to receive a payment by mail if he or she so

20 requests and designates a mailing address.

21 70. Labor Code § 203 provides that if an employer willfully fails to pay, without

22 abatement or reduction, in accordance with Labor Code §§ 201, 201.5, 202 and 205.5,

23 any wages of an employee who is discharged or who quits, the wages of the employee
24
25 shall continue at the same rate, for up to thirty (30) days from the due date thereof, until

26 paid or until an action therefore is commenced.

27 71. Plaintiff and other putative class members who have been discharged or

28 who have quit are entitled to all unpaid compensation, pursuant to California Labor

First Amended Complaint For Damages

064

Code § 203, but, to date, have not received such compensation, as alleged above. Plaintiff and the putative class members have not received payment for all of the time spent working for Defendants.

72.     Defendants' willful failure to pay wages to these class members violates Labor Code § 203 because Defendants knew or should have known wages were due to these employees, but Defendants failed to pay them. Thus, these class members are entitled to recover their daily wage multiplied by thirty days and interest on all amounts recovered herein.

## SEVENTH CAUSE OF ACTION
### Violation of Business & Professions Code
### (Cal. Bus. & Prof. Code §§ 17200, et seq.)

73.     Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

74.     California Business & Professions Code ("B&PC") §§17200 et seq. provides in pertinent part "…[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act…".

75.     B&PC § 17205 provides that unless otherwise expressly provided, the remedies or penalties provided for unfair competition "are cumulative to each other and to the remedies or penalties available under all other laws of this state."

76.     B&PC § 17204 provides that an action for any relief from unfair competition may be prosecuted by any person who suffered injury in fact and lost money or property as a result of such unfair competition.

77.     Defendants have engaged in unlawful, unfair and fraudulent business acts or practices prohibited by B&PC § 17200, including those set forth in the preceding and foregoing paragraphs of the complaint, thereby depriving Plaintiff and all others similarly

27

First Amended Complaint For Damages

065

situated of the minimum working standards and conditions due to them under California labor laws and the IWC Wage Orders as specifically described herein.

78.     Defendants have engaged in unfair, unlawful and fraudulent business practices in California by practicing, employing and utilizing the employment practices outlined in the preceding paragraphs, specifically, by requiring employees to perform the labor services complained of herein without the requisite compensation, by failing to furnish Plaintiff and the putative class members with accurate itemized wage statements, failing to keep payroll records showing total hours worked, and by requiring Plaintiff and the putative class members to agree to a terms or conditions of employment that Defendants knew or should have known is prohibited by law.

79.     Defendants' use of such practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over Defendants' competitors.

80.     Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair practices.

81.     Plaintiffs seek full restitution from Defendants, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants by means of the unfair practices complained of herein.

82.     Further, if Defendants are not enjoined from the conduct set forth above, Defendants will continue to practice, employ and utilize the employment practices outlined in the preceding paragraphs.

83.     Therefore, Plaintiffs request that the Court issue a preliminary and permanent injunction prohibiting Defendants from engaging in the foregoing conduct.

## EIGHTH CAUSE OF ACTION
### Declaratory Relief

84. Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

85. CCP § 1060 provides that any person who desires a declaration of his or her rights or duties with respect to another, in cases of actual controversy relating to the legal rights and duties of the respective parties, may ask the Court for a declaration of rights or duties, and the Court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time; any such declaration by the Court shall have the force of a final judgment.

86. An actual controversy exists between the parties as to the enforceability of the Employment Agreement and its provisions as stated above. It is therefore necessary that the Court declare the rights and duties of the parties hereto.

87. Labor Code § 925 prohibits an employer from requiring an employee who primarily resides and works in California to agree to a provision that either: (1) requires the employee to adjudicate outside of California a claim arising in California; or (2) deprives the employee of the substantive protection of California law with respect to a controversy arising in California. Labor Code § 432.5 makes it unlawful for an employee to require an employee to agree, in writing, to a term or condition known by the employer to be prohibited by law.

88. Plaintiffs assert the choice-of-law and forum selection provisions in the Defendants standard Employment Agreement are void and illegal, not just under Labor Code 925, but also under other California laws, including California's constitutional right to privacy, Business and Professions Code 16600, 17200 et seq., the Cartwright Act and Labor Code 98.6, 203, 226, 232, 232.5, 432.5, 450, 510, 1102.5, 1194, 1197.5,

29

2802, and 2804.   These laws were established for a public reason and establish unwaivable rights.

89.   In light of the facts set forth above, a case or controversy exists as to whether Defendants requirement that Plaintiffs agree to Arizona forum selection and choice of law provision is unlawful and unenforceable.   Plaintiffs seek judicial declaration of their rights and obligations with respect to Defendants forum selection and choice of law provisions. Specifically, they seek a judicial declaration that Defendants violate the law (including Labor Code Section 432.5 and 925) by requiring employee to agree to the forum selection and choice of law provisions in their employment documents.   The also seek a declaration that the forum selection and choice of law provisions violate the laws referenced above.

90.   In addition, Plaintiffs are informed and believe that Defendants require all current employees and applicants for employment to execute, as part of their continued or application for employment, an Employment Agreement that contains an arbitration provision.   The arbitration agreement is an adhesive contract because agreement is drafted exclusively by Defendants, at the time the arbitration provision was executed by Plaintiffs, Defendants exercised superior bargaining power over the employees and applicants for employment.  Further, Defendants require Plaintiffs to adhere to the terms of the standard form agreement presented to them on a "take it or leave it" basis.  There was and is no opportunity to negotiate different terms than those drafted by Defendants. Further, the arbitration agreement is unenforceable for a number of reasons, including the reasons stated above, and because the Agreement limits Plaintiffs' procedural and substantive rights and requires Plaintiffs to pay the fees of retired judges who act as arbitrators.

91. Further, Plaintiffs seek a judicial determination regarding the enforceability of the "class waiver" contained in Defendants' Employment Agreement.

92. Ancillary to this judicial declaration, Plaintiffs seek an injunction: (1) Prohibiting Defendants from requiring Plaintiffs to sign employment documents that contain out-of-state forum selection or choice of law provisions; and (2) prohibiting Defendants from threatening to enforce or enforcing these forum selection and choice of law provisions. Plaintiffs also seek an affirmative injunction requiring Defendants to inform class members that its forum selection and choice of law provisions are unlawful, and it will not threaten to enforce or enforce these provisions.

### NINTH CAUSE OF ACTION
### Enforcement of Labor Code Section 2698 et. seq. ("PAGA")
### (Cal. Lab. Code Sections 2698, et seq.)

93. Plaintiffs re-allege and incorporate by reference the foregoing allegations as though set forth herein.

94. Plaintiff is an aggrieved employee under PAGA because he was employed by Defendants during the applicable statutory period and suffered one or more of the California Labor Code violations set forth in the Complaint. Plaintiff seeks to recover on his behalf and on behalf of the State, and on behalf of all current and former aggrieved employees of Defendants, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs in this representative action. As a matter of law, Plaintiffs PAGA claim is not subject to having the dispute resolved in arbitration or pursuant to any purported arbitration agreement.

95. For all provisions of the Labor Code except those for which a civil penalty is specifically provided, Labor Code § 2699(f) imposes upon Defendant a penalty of one hundred dollars ($100.00) for each aggrieved employee per pay period for the initial

First Amended Complaint For Damages

069

violation and two hundred dollars ($200.00) for each aggrieved employee per pay period for each subsequent pay period in which Defendant violated these provisions of the Labor Code.

96.     Defendants' conduct violates numerous Labor Code section including, but not limited to, the following:

(a) Violation of Labor Code §§ 201-203, 204, 510, 1194, 1197 and 1198 for failure to timely pay all earned wages (including minimum wages and overtime wages) owed to Plaintiff and other aggrieved employees during employment and upon separation of employment as herein alleged;

(b) Violation of Labor Code §§ 226.7 and 512 for failure to provide meal periods to Plaintiff and other aggrieved employees and failure to pay premium wages for missed meal periods as herein alleged;

(c) Violation of Labor Code § 226 for failure to provide accurate itemized wage statements to Plaintiff and other aggrieved employees as herein alleged; and

(d) Violation of Labor Code §§ 1174 and 1174.5 for failure to maintain accurate records.

97.     Further, Labor Code § 558 provides, "Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provisions regulating hours and days of work in any order of the IWC shall be subject to a civil penalty as follows: (1) For any violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover unpaid wages; (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover

underpaid wages; (3) Wages recovered pursuant to this section shall be paid to the affected employee." Labor Code § 558(c) provides "the civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

98.     As set forth above, Defendants have violated numerous provisions of the Labor Code regulating hours and days of work as well as the IWC Wage Orders. Accordingly, Plaintiff seeks the remedies set forth in Labor Code § 558 for himself, the underpaid employees, and the State of California.

99.     Plaintiff is an "aggrieved employee" because he was employed by the Defendants and had one or more of the alleged violations committed against him, and therefore is properly suited to represent the interests of all other aggrieved employees.

100.    Plaintiff has exhausted the procedural requirements under Labor Code § 2699.3 as to Defendants and is therefore able to pursue a claim for penalties on behalf of himself and all other aggrieved employees under PAGA.

101.    Pursuant to Labor Code § 2699(a), 2699.2, and 2699.5, Plaintiff is entitled to recover civil penalties, in addition to other remedies, for violations of the Labor Code sections cited above.

102.    99. For bringing this action, Plaintiff is entitled to attorneys' fees and costs incurred herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment against the Defendants as follows:

1.      An Order that this action may proceed and be maintained on a class-wide basis;

2.      Appropriate Injunctive relief;

---

First Amended Complaint For Damages

3.   Attorneys' fees and costs, according to proof;

4.   Disgorgement and restitution, according to proof;

5.   Statutory and civil penalties, according to proof;

6    Damages for the mount of unpaid compensation, including interest thereon, liquidated damages, and penalties subject to proof at trial;

7.   An award of civil penalties pursuant to PAGA and/or other applicable laws; and

8.   Directing such other and further relief as this Court may deem proper.

## JURY DEMAND

WHEREFORE, Plaintiff demands a trial by jury.

**MILLER LAW FIRM**

Dated:  October 31, 2022          By:     ***/s/ Matthew R. Miller***
                                                  Matthew R. Miller
                                                  Attorneys for Plaintiff and the Proposed Class

First Amended Complaint For Damages

072

EXHIBIT 1

# MILLER LAW FIRM

Historic Louis Bank of Commerce Building
835 Fifth Avenue, Suite 301
San Diego, CA 92101
Telephone: 619.687.0143
Fax: 619.687.0136
www.mrmlawfirm.com

MATTHEW R. MILLER                                                                    CARLOS AMERICANO

August 12, 2022

California Labor and                                    *VIA ELECTRONIC FILING*
Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Ste. 801
Oakland, CA 94612

Nexa Mortgage LLC
3100 W Ray Rd #201
Office #209
Chandler, AZ 85226

> **RE:   PAGA Notice Pursuant to California Labor Code § 2699**
> Nexa Mortgage LLC

Dear PAGA Administrator and Nexa Mortgage LLC:

We represent Damian Diaz, a former employee of Nexa Mortgage, LLC ("Nexa") with respect to claims arising from his employment with Nexa. The purpose of this letter is to provide notice to the Labor and Workforce Development Agency and Nexa of violations of the California Labor Code.

Mr. Diaz seeks to represent himself and other current and former employees (collectively referred to as "Plaintiffs") with respect to violations of the California Labor Code pursuant to Labor Code sections 2699 et seq. The facts and theories in support of his claims are set forth below.

1.      Nexa Misclassified Non-Exempt Employees as Exempt. Plaintiffs are nonexempt Loan Officer employees, but were misclassified by Nexa as exempt based on the outside salesperson exemption. Plaintiffs worked less than 50% of their time outside offices or work locations designated by Nexa. Indeed, Nexa does not maintain brick and mortar offices in the State of California, therefore Plaintiffs were required to work from home, thus they could not qualify as outside salespersons.

Plaintiffs are loan officers who promote and sell Nexa's loan products to customers, which is work directly related to the goods and services that constitute a financial service company's marketplace offerings. §13 of the Fair Labor Standards Act ("FLSA") and Title 29 of the Code of Federal Regulations ("C.F.R") §541, et seq., set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "outside salesperson" exemption. Pursuant to 29 C.F.R. 541.502 and California law, an outside sales employee must be customarily and regularly engaged and/or spend more than half of his/her

074

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 2

working time "away from the employer's place of business" actually selling items or obtaining order or contracts for products and/or services.

"Outside sales does not include sales made by mail, telephone, or the internet unless such contact is merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's place of business, even the employer is not in any formal sense the owner or tenant of the property." (29 C.F.R. 541.502).

Nexa requires Plaintiffs to perform day-to-day sales activities at their home offices primarily by and through telephone, internet and/or direct mail-initiated sales. As a result, Plaintiffs are engaged in a type of work that falls outside the scope of the "outside salesperson" exemption and should therefore have been properly paid all earned wages including minimum and overtime compensation. Specifically, Mr. Diaz worked in his home office in Oceanside conducting sales more than half his working time and did not perform sales work outside of his home office for purposes of the "outside salesperson" exemption. As a result, Plaintiffs do not qualify as outside sales employees under the "outside salesperson" exemption set forth in 29 C.F.R. 541.502 and under California law.

In addition, §13 of the FLSA and Title 29 of the C.F.R. set forth the requirements which must be satisfied in order for an employee to be lawfully classified as exempt pursuant to the "inside salesperson" exemption. 29 C.F.R. 779.317 establishes that the term "retail or service establishment" as used in the Act "does not encompass establishments in industries lacking a retail concept." Such establishments not having been traditionally regarded as retail or service establishments, such a loan or finance companies, cannot under any circumstance qualify as a "retail or service establishment" within the statutory definition of the Act." Plaintiffs are not exempt under §13 of the FLSA or the provisions of 29 C.F.R. 541, et seq. because Nexa is a financial services company which does not qualify as a "retail or service establishment" pursuant to 29 C.F.R. 779.317, and therefore Plaintiffs do not qualify for the "inside salesperson" exemption set forth in 29 U.S.C. § 207(i) as a matter of law. Nexa's conduct as herein alleged was willful and not in good faith, and Nexa had no reasonable grounds for believing that Plaintiffs were exempt from California's labor laws.

As a result of Nexa's misclassifying their employees and in the one (1) year prior to this letter through the present, Mr. Diaz alleges, on information and belief, that current and former aggrieved California Loan Officers were not paid with compensation at the overtime rate of pay for all the overtime hours that they worked; were not authorized or permitted to take all legally required and compliant meal periods and/or paid proper meal period premiums; were not authorized or permitted to take all legally required and compliant rest periods and/or paid proper rest period premiums; were not timely paid their earned wages during their employment; were not provided with complete and accurate wage statements; and were not timely paid their final pay upon separation of employment.

2.  Nexa Failed to Pay Overtime Wages. At all relevant times, Nexa implemented policies and procedures which misclassify its Loan Officers as exempt when, in fact, they should have been classified as non-exempt and, therefore, fail to provide aggrieved California non-exempt hourly Loan Officers with overtime wages for the overtime hours that they worked at

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 3

their overtime rate.

As a result of these policies, Nexa failed to compensate Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt at an overtime rate for all overtime hours worked when the employees had already worked in excess of 8 up to 12 hours in a workday, over 40 hours in a workweek, up to 8 hours on any seventh consecutive day in a workweek, hours worked in excess of 12 hours in a workday, or over 8 hours on any seventh consecutive day in a workweek.

Nexa's policies and procedures were applied to current and former aggrieved California-based Loan Officers who were misclassified for over a year preceding the sending of this notice to the present and resulted in non-exempt employees working time which was not compensated any wages in violation of Labor Code sections 510, 1194, 1197, 1198 and the Wage Orders.

3.  Nexa Failed to Compensate for Missed Meal Periods. Nexa implemented policies and and/or implanted policies which failed to provide Mr. Diaz and current and former aggrieved California-based Loan Officers who were misclassified as exempt with all meal periods as required by and in compliance with the law, including full duty free and timely meal periods. Mr. Diaz alleges that Kubota regularly employed him and other current and former aggrieved California-based Loan Officers who were misclassified as exempt for shifts longer than five (5) hours and/or shifts longer than ten (10) hours. However, as a result of Lexa's misclassification of Mr. Diaz and other current and former aggrieved California-based Loan Officers as exempt employees, Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt were not provided a duty-free uninterrupted meal period of no less than thirty (30) minutes for each five-hour period of work.

Additionally, Nexa failed to provide Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt with a premium wage of (1) one hour of premium pay at the employee's regular rate of pay for each workday they did not receive all legally required and compliant meal periods, in violation of Labor Code section 226.7 and Wage Order 4-2001 section 11.

This practice resulted in Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt not receiving wages to compensate them for workdays which Nexa did not provide them with all legally required and legally compliant meal periods in compliance with California law.

4.  Nexa Failed to Compensate for Missed Rest Breaks. Nexa implemented policies and and/or implanted policies which failed to provide Mr. Diaz and current and former aggrieved California-based Loan Officers who were misclassified as exempt with uninterrupted duty free 10-minute rest periods for each four hours or major fraction thereof worked.

Mr. Diaz alleges that Nexa regularly employed him and other current and former aggrieved California-based Loan Officers who were misclassified as exempt for shifts longer than three-and-a-half (3.5) hours. However, as a result of Nexa's misclassification of Mr. Diaz and other current and former aggrieved California-based Loan Officers as exempt employees, Mr. Diaz and other current and former aggrieved California-based Loan Officers who were

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 4

misclassified as exempt were not provided all required duty-free rest periods of a net ten (10) minutes for every four (4) hours worked or major fraction thereof.

Nexa failed to provide Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt with a premium wage of (1) one hour of premium pay at the employee's regular rate of pay for each workday they did not receive all legally required and compliant rest periods, in violation of Labor Code section 226.7 and Wage Order 4-2001 at section 12.

This practice resulted in Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt not receiving wages to compensate them for workdays which Nexa did not provide them with all legally required and/or legally compliant rest periods in compliance with California law.

5. **Nexa Failed to Pay Earned Wages During Employment.** Plaintiffs were not provided with minimum wages, overtime compensation and other benefits required by law as a result of being misclassified as "exempt" by Defendants. Defendants failed to pay Plaintiffs for all hours worked, including but not limited to, meetings, loan processing, training, loan tracking, and/or customer service in violation of Labor Code § 1197. In addition, Plaintiffs regularly worked overtime, including working days that were 10 hours or more, and weeks that were 50 hours or more. Plaintiffs, however, were not compensated for their overtime in violation of Labor Code § 510.

6. **Nexa Failed to Pay Earned Commissions.** Defendants failed to pay Plaintiffs for all earned wages, including but not limited to, unpaid wages promised to be paid on loans originated by these employees. As part of Defendant's unlawful compensation scheme, in order to receive earned wages for work performed, Defendants require Plaintiffs to remain an employee after the point in time that the wages are earned. This compensation plan that requires the Loan Officers to forfeit earned wages for failing to remain an employee after the wages are earned is an unlawful restraint on the Loan Officers' mobility to move from job to job. Defendants' compensation plan goes far beyond what is necessary to protect its legitimate interests resulting in a situation where the opportunity of the Loan Officers to seek other employment is thereby unlawfully restricted. California law ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice, while also protecting the legal right of persons to engage in businesses and occupations of their choosing. Defendants' compensation scheme denying payment of earned wages for work performed by the Plaintiffs is therefore a de facto unenforceable penalty provision which results in an unlawful forfeiture of earned compensation, divests compensation from these employees, and is unconscionable within the meaning of Cal. Lab. Code § 1670.5.

7. **Nexa failed to reimburse employees for business expenses.** Defendants failed to indemnify and reimburse the Plaintiffs for required expenses incurred in the discharge of their duties for Defendant. Cal. Lab. Code § 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." In this case, Defendants failed to reimburse the Plaintiffs for

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 5

home office expenses, including a printer, fax machine, internet, phone, and other office-related products; and other loan servicing related expenses in violation of California Labor Code § 2802.

8.     Nexa passed on its business costs to Plaintiffs.     In violation of Labor Code § 221, Defendants passed on their labor costs to Plaintiffs. Cal. Lab. Code § 221 provides that it shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee. Prior to receiving their earned commission Defendants would deduct "fees", costs and expenses that were part of the general overhead of the Defendants. These deductions included, but are not limited to, background checks, Nationwide Multistate Licensing System & Registry Fees, "Technology" fees, "NXAtouch (BNTouch)" fee, credit report costs, NEXA Accounting Fees, and other "miscellaneous" fees. Plaintiffs are informed and believe that in some cases, loan officers earned less than minimum wage required for all hours worked after Defendants' deductions.     In addition, Mr. Diaz is informed and believes that NEXA violates California Labor Code Section 224 by making deductions from the employee's wages that are neither authorized by the employee or permitted by law.

9.     Nexa Failed to provide accurate wage statements. California Labor Code section 226(a) provides (inter alia) that, upon paying an employee his or her wages, the employer must "furnish each of his or her employees ... an itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

As a result of Nexa's aforementioned violations of the Labor Code (including failure to pay overtime wages for overtime hours worked, failure to pay meal period premiums, and/or failure to pay rest period premiums) rendered inaccurate the pay calculations of Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt, in violation of Labor Code section 226.

10.     Failure to timely pay final wages. An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination or within 72 hours of resignation. (Labor Code §§ 201, 202).

Labor Code section 201(a) states that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code section 202(a) continues, "[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than hours thereafter...." Finally, Labor Code section 203(a) provides, "[i]f an employer willfully fails to pay...any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 6

therefor is commenced; but the wages shall not continue for more than 30 days...."

As a result of Nexa's aforementioned violations of the Labor Code (failure to pay overtime wages for overtime hours worked, failure to pay meal period premiums, and/or failure to pay rest period premiums) Mr. Diaz and other current and former aggrieved California-based Loan Officers who were misclassified as exempt were not timely paid all their final wages after each employee's termination and/or resignation, as required by Labor Code sections 201, 202, and 203.

## Request Remedy

Pursuant to Labor Code sections 2699(a) and (f), Mr. Diaz is entitled to recover civil penalties for Nexa's violations of Labor Code sections 201, 202, 203, 204, 226, 226.7, 510, 512, 1194, and 1198 and the IWC Wage Orders during the Civil Penalty Period in the following amounts:

a.      For violations of Labor Code sections 201, 202, 203, 226.7, 512, and 1198 (i.e. failure to final wages); one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation [penalty amounts established by Labor Code section 2699(f)(2)].

b.      For violations of Labor Code section 204 (i.e. failure to timely pay earned wages): one hundred dollars ($100) for any initial violation for each failure to pay each employee, and for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus twenty-five percent (25%) of the amount unlawfully withheld, as established by Labor Code section 210.

c.      For violations of Labor Code section 226 (i.e. inaccurate wage statements) , two hundred fifty dollars ($250) for each employee for each pay period for the initial violation, and for each subsequent violation, one thousand dollars ($1000) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 226.3].

d.      For violations of Labor Code section 510 (i.e. failure to pay overtime), fifty dollars ($50) for each employee for each pay period for the initial violation, and for each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 558] and any unpaid wages.

e.      For violations of Labor Code section 1194 and 1197 (failure to pay overtime), one hundred dollars ($100) for each underpaid employee for each pay period for the initial violation, and for each subsequent violation, two hundred fifty dollars ($250) for each underpaid employee for each pay period [penalty amounts established by Labor Code section 1197.1 ] and any unpaid wages.

In addition, pursuant to Labor Code section 2699(g), Mr. Diaz seeks to recover attorney's fees, costs, filing fees paid to the LWDA, and civil penalties on behalf of himself and the other employees of Nexa.

California Labor and Workforce Development Agency
Re: Violations of California Labor Code
August 12, 2022
Page 7

      Pursuant to Cal.Labor.Code § 2699.3(a)(2)(B) Mr. Diaz requests the agency investigate the above allegations and provide notice of the allegations pursuant to PAGA's provisions. Alternatively, Plaintiffs request the agency inform them if it does not intend to investigate these violations.

                                 Very truly yours,

                                 *Matthew R. Miller*

                                 Matthew R. Miller
                                 MILLER LAW FIRM

C:\Users\Carlos Americano\OneDrive - Miller Law Firm\FIRM\JD\CASES\1086-Diaz\PAGA.doc

# EXHIBIT E

**SUPERIOR COURT OF CALIFORNIA**
# County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2022-00031816-CU-OE-NC | Filing Date: | 08/03/2022 |
| Case Title: | Diaz vs Nexa Mortgage LLC [IMAGED] | Case Age: | 112 days |
| Case Status: | Pending | Location: | North County |
| Case Category: | Civil - Unlimited | Judicial Officer: | Earl H. Maas, III |
| Case Type: | Other employment | Department: | N-28 |

## Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| 01/13/2023 | 10:00 AM | N-28 | Civil Case Management Conference - Complaint |

## Participants

| Name | Role | Representation |
|---|---|---|
| Diaz, Damian | Plaintiff | Americano, Carlos; Dawson, Brian C |
| Nexa Mortgage LLC | Defendant | |

## Representation

| Name | Address | Phone Number |
|---|---|---|
| AMERICANO, CARLOS | 835 fifth Avenue 301 San Diego CA 92101 | |
| DAWSON, BRIAN  C | 5755 Oberlin Drive 301 San Diego CA 92121 | |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 08/03/2022 | Complaint filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) |
| 2 | 08/03/2022 | Civil Case Cover Sheet filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) |
| 3 | 08/03/2022 | Original Summons filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) |
| 4 | 08/03/2022 | Case assigned to Judicial Officer Maas, Earl. | |
| 5 | 08/11/2022 | Civil Case Management Conference scheduled for 01/13/2023 at 10:00:00 AM at North County in N-28 Earl H. Maas. | |
| 6 | 10/31/2022 | Amended Complaint (***FIRST AMENDED CLASS ACTION***) filed by Diaz, Damian. Refers to: Nexa Mortgage LLC | Diaz, Damian (Plaintiff) |

# EXHIBIT F

California
*Secretary of State*

Business    UCC

Login

Home

Search

Forms

Help

# Business Search

The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.

Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.

## Basic Search

A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C"** from the entity number. Note, **a basic search** will search **only ACTIVE entities** (Corporations, Limited Liability Companies, Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The

NEXA MORTGAGE, LLC
(201823610151)



Request
Certificate

| | |
|---|---|
| *Initial Filing Date* | 08/21/2018 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | ARIZONA |
| *Entity Type* | Limited Liability Company - Out of State |
| *Principal Address* | 3100 W RAY RD STE 201, OFFICE #209 CHANDLER, AZ 85226 |
| *Mailing Address* | 3100 W RAY RD STE 201, OFFICE #209 CHANDLER,AZ85226 |
| *Statement of Info Due Date* | 08/31/2024 |
| *Agent* | 1505 Corporation 312 PARACORP INCORPORATED 2804 GATEWAY OAKS DR #100 SACRAMENTO, CA 95833 |

Skip to main content    State

Business    UCC

*Advanced Search*

Home

Search

Forms

Help

An Advanced search is required when searching for publicly traded disclosure information or a status other than active.

An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.

**Disclaimer:** Search results are limited to the 500 entities closest matching the entered search criteria. If your desired search result is not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record.

Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.

| NEXA mortgage | 🔍 |
|---|---|

Advanced ⌄

Results: 1

Login

NEXA MORTGAGE, LLC (201823610151)



Request Certificate

| | |
|---|---|
| *Initial Filing Date* | 08/21/2018 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | ARIZONA |
| *Entity Type* | Limited Liability Company - Out of State |
| *Principal Address* | 3100 W RAY RD STE 201, OFFICE #209 CHANDLER, AZ 85226 |
| *Mailing Address* | 3100 W RAY RD STE 201, OFFICE #209 CHANDLER,AZ85226 |
| *Statement of Info Due Date* | 08/31/2024 |
| *Agent* | 1505 Corporation 312 PARACORP INCORPORATED 2804 GATEWAY OAKS DR #100 SACRAMENTO, CA  95833 |



Skip to main content State



# EXHIBIT 8

1 David M. Greeley, Esq. (SBN 198520)
2 James R. Thompson, Esq. (SBN 260083)
  GREELEY THOMPSON LLP
3 600 B Street, Suite 2150
  San Diego, California 92101
4 Telephone: (619) 658-0462
  dgreeley@greeleythompson.com
5
6 MITCHELL SANDLER LLC
  Arielle Stephenson (SBN 336434)
7 1120 20th Street, NW
  Washington, DC 20036
8 Telephone: (202) 886-5267
  astephenson@mitchellsandler.com
9
10 *Attorneys for Defendant NEXA Mortgage LLC*

11 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 **FOR THE COUNTY OF SAN DIEGO**

13 DAMIAN DIAZ, individually, and on behalf of all      Case No. 37-2022-00031816-CU-OE-NC
   others similarly situated,
14                                                       **PROOF OF SERVICE**
15                  Plaintiff,
16 v.
17 NEXA MORTGAGE, LLC, et al.,
18                  Defendants.
19

20      I, Ekaterina Cherniaevskaia, declare as follows:

21      I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22 Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23 My email address is katia@greeleythompson.com

24      On December 1, 2022, I caused to be served true copies of the following document(s) described

25 as:

26      • **NOTICE OF REMOVAL OF CASE**

27 on the interested parties in this action as follows

28

**BY MAIL:** I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

**BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

XXX   **BY ELECTRONIC SERVICE- VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

MILLER LAW FIRM                                    Attorneys for Plaintiffs and all others
Matthew R. Miller (SBN 194647)          similarly situated
Historic Louis Bank of Commerce Building
835 Fifth Ave, Suite 301
San Diego, CA 92101
Telephone: (619) 687-0143
Facsimile: (619) 687-0136
matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92131
Telephone: (619) 988-2135
brian@dawson-ozanne.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 1, 2022, at San Diego, California.

_____
Ekaterina Cherniaevskaia

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

# EXHIBIT 9

1   MILLER LAW FIRM
    Matthew R. Miller SBN 194647
2   Historic Louis Bank of Commerce Building
3   835 Fifth Avenue, Suite 301
    San Diego, CA 92101
4   Telephone: (619) 687-0143
    Fax: (619) 687-0136
5

6   Brian C. Dawson SBN 183251
7   DAWSON & OZANNE
    5755 Oberlin Drive, Ste. 301
8   San Diego, CA 92121
    Telephone: (619) 988-2135
9   Email: brian@dawson-ozanne.com

10  Attorneys for Plaintiffs and all other similarly
11  situated

12

13              **SUPERIOR COURT OF CALIFORNIA**

14         **COUNTY OF SAN DIEGO, CIVIL DIVISION**

15  DAMIAN DIAZ, individually and on behalf     CASE NO.: 37-2022-00031816-CU-OE-NC
    of all others similarly situated,
16                                              **NOTICE OF RULING**
                    Plaintiff,
17                                              Judge: Hon. Earl H. Maas, III
18  v.                                          Dept:   N-28

19  NEXA MORTGAGE, LLC, an Arizona
    Limited Liability Company;  and DOES 1-
20  100, inclusive,                             Trial: Not set.

21  Defendants.

22

23

24  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

25         PLEASE TAKE NOTICE that on July 10, 2023 at 8:30 a.m., the Honorable James E.

26  Simmons, Jr., United States District Judge, ruled on Plaintiffs motion to remand in which it was

27  GRANTED, and the United States District Court finds that it lacks jurisdiction over the case

28  therefore it stays in State Court. Attached hereto as **Exhibit A** is a true and correct copy of the order.

                                    1
                             NOTICE OF RULING

Dated:  July 20, 2023          DAWSON & OZANNE


                                    Brian Daw_____   _____
                                    Brian C. Dawson
                                    Attorneys for Plaintiff

NOTICE OF RULING

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of others similarly situated,<br><br>                          Plaintiffs,<br><br>v.<br><br>NEXA MORTGAGE, LLC; and DOES 1-100, inclusive,<br><br>                        Defendants. | Case No.: 22-cv-1895-JES-DDL<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO REMAND; and**<br><br>**(2) DENYING AS MOOT MOTION TO COMPEL JURISDICTION**<br><br>**[ECF Nos. 4, 5]** |

On December 26, 2022, Plaintiff filed a motion to remand. ECF No. 5. On January 16, 2022, Defendant filed an opposition, and on January 3, 2023, Plaintiff filed a reply. ECF Nos. 9, 15. The matter was taken under submission. After due consideration and for the reasons discussed below, the motion to remand is **GRANTED**. Because the Court finds that it lacks jurisdiction over the case, the Court **DENIES AS MOOT** Defendant's Motion to Compel Arbitration.

## I.  BACKGROUND

On August 8, 2022, Plaintiff Daniel Diaz ("Diaz"), on behalf of himself individually and others similarly situated, initiated a wage and hour class action lawsuit

against Defendant Nexa Mortgage, LLC ("Nexa") in the Superior Court of California, San Diego County. ECF No. 1-2, Ex. C. The complaint alleged that Nexa is an Arizona mortgage company that would hire California loan officers, like Diaz, and improperly classify them as "exempt" to avoid paying owed overtime wages, minimum wages, and giving them meal and rest breaks. *Id.* ¶¶ 11-12. After being hired, the complaint alleged that the employees would be required to pay for all of their home office expenses and some of Nexa's business expenses, which were deducted from the employee's commissions. *Id.* ¶¶ 3, 17-18. Based on this course of conduct, Plaintiffs allege causes of action for: (1) failure to reimburse business expenses/unlawful deductions; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal and/or rest breaks; (5) failure to maintain accurate records; (6) waiting time penalties; (7) violation of California Business and Professions Code §§ 17200 et seq.; and (8) for declaratory relief. *Id.* ¶¶ 31-89.

On October 31, 2022, Plaintiffs filed an amended complaint, the operative complaint in the case. *Id.*, Ex. D ("FAC"). The facts alleged are largely the same, but adds an additional claim under the California Labor Code Private Attorneys General Act ("PAGA") for the alleged labor code violations. FAC ¶¶ 93-102.

On November 30, 2022, Nexa removed the case to this Court. ECF No. 1. In the notice of removal, Nexa alleged that there is federal subject matter jurisdiction through diversity jurisdiction. *Id.* ¶¶ 9-12. On December 26, 2022, Plaintiffs filed the current motion for remand, arguing that there is no diversity jurisdiction. ECF No. 5.

## II.    LEGAL STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be

removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

"Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction."[1] *Audo v. Ford Motor Co.*, 2018 WL 3323244 *1 (S.D. Cal. July, 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Therefore, the "burden of establishing that removal is proper" always lies with the defendant. *Gaus*, 980 F.2d at 566. If there is any doubt as to the propriety of removal, the court shall reject federal subject matter jurisdiction. *Id.*; *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.").

Federal subject matter jurisdiction may arise based on federal question or diversity jurisdiction. 28 U.S.C. § 1331, 1332(a). In the notice of removal, Defendant states that this court has federal subject matter jurisdiction over the matter based on diversity jurisdiction.  ECF No. 1 ¶¶ 9-12. The statute requires complete diversity between plaintiffs and defendants. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). An individual is deemed to be a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A limited liability corporation is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Further, to satisfy § 1332, the matter in controversy must exceed the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

---

[1] The Court notes that this presumption against removal remains good law after the Supreme Court's case *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), which stated that no such presumption applies where a case asserts federal court jurisdiction under the Class Action Fairness Act (CAFA) due to "CAFA's primary objective . . . to ensure Federal court consideration of interstate cases of national importance." *Id.* at *89 (citation and internal quotation marks omitted); *see Steenhuyse v. UBS Fin. Servs., Inc.*, 317 F. Supp. 3d 1062, 1067 (N.D. Cal. 2018). Though this case is brought as a class action, the basis of removal was not under CAFA, but general diversity jurisdiction.

Under 28 U.S.C. § 1446, a defendant removing a civil action from state to federal district court must include "a short and plain statement of the grounds for removal," including as to the amount in controversy being met. 28 U.S.C. § 1446(a). Where a plaintiff challenges the defendant's allegation of jurisdiction under § 1332(a), § 1446 provides that "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). In *Dart*, the Supreme Court recognized that this provision was added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 to "clarify[] the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* Even though *Dart* arose under the CAFA, other courts within this district have applied this framework to non-CAFA cases. *See De Villing v. Sabert Corp.*, No. EDCV182201JGBKKX, 2018 WL 6570868, at *2 (C.D. Cal. Dec. 11, 2018) (noting that *Dart* interpreted 28 U.S.C.§ 1446 which applies equally to CAFA and general diversity jurisdiction cases and collecting cases applying *Dart* to non-CAFA cases).

Thus, the evidence that the Court may consider here include "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Removal jurisdiction therefore cannot rely on "mere speculation and conjecture, with unreasonable assumptions." *Id.*

//
//

4

### III.   DISCUSSION

As a threshold issue, there is no dispute between the parties regarding diversity of citizenship. Plaintiff Diaz, an individual, is a resident of San Diego County, California.[2] FAC ¶ 4. Defendant Nexa is an Arizona limited liability company with its main headquarters in Arizona, and Defendant represents that all the LLC's members are residents of Arizona. ECF No. 1 ¶ 10. Thus, there is complete diversity of the parties. 28 U.S.C. § 1332(a).

The main point of dispute between the parties is whether the amount in controversy requirement has been met. In the notice of removal, Nexa alleges that the amount exceeds $75,000 because: (1) Diaz's individual claim for overtime wages based on his allegation that he worked 50 hours a week during his employment equates to $54,000 (based on an estimate of his regular rate of pay calculated from his income); (2) Diaz asserts eight other causes of action that "seek at least $21,000;" and (3) Diaz seeks attorneys' fees, interest, and costs. ECF No. 1 at ¶¶ 11-12. Thus, Nexa states that the amount in controversy of $75,000 is met.

In its briefing for the instant motion, the calculations that Nexa has put forth to support the amount in controversy requirement has changed. Since Nexa had the burden when facing a challenge as to jurisdiction, the Court will evaluate the proof and calculations put forth by the parties on this motion.

---

[2] The class is defined to be: "All current or former employees of Nexa Mortgage, LLC who worked in California as mortgage salespersons or loan officers or similar position[s], and were classified as exempt, at any time beginning four years prior to the filing of this action through the date of trial." FAC ¶ 30. "The absent class members generally are not taken into account when deciding subject matter jurisdiction or venue." *Massaro v. Beyond Meat, Inc.*, No. 320CV00510AJBMSB, 2021 WL 948805, at *11 (S.D. Cal. Mar. 12, 2021) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002) ("Nonnamed class members cannot defeat complete diversity . . . .")).

Before delving into the specific calculations asserted by the parties, the Court notes several threshold issues. First, the parties agree as to the following bases for the calculations:

1.  Diaz worked for 82 pay periods between July 17, 2020 to February 9, 2022; (ECF No. 5-1 at 8; ECF No. 9 at 8)

2.  Diaz's W-2 Reported Wages for 2020 was $10,665.71; (ECF No. 5-2 at 6; ECF No. 9 at 8)

3.  Diaz's W-2 Reported Wages for 2021 was $88,273.49. (ECF No. 5-2 at 7; ECF No. 9 at 8)

Second, regarding Diaz's hours worked, the FAC alleges the following: "Diaz worked at least five (5) days a week and ten (10) hours a day. Diaz began work early in the morning and worked into the evenings and on the weekends, causing his hours worked to regularly exceed forty (40) in a workweek." FAC ¶ 4. Relying on these assertions, Nexa's damage calculations assume that Diaz always worked 50 hours a week for every week that he worked. ECF No. 9 at 4. Diaz argues that this cannot be assumed because "just because someone alleges to regularly have worked overtime throughout their employment does not mean that person worked exactly 50 hours per week every week." ECF No. 5-1 at 5. On balance, the Court is satisfied that Nexa reasonably interpreted these allegations to base its calculations off Diaz regularly working 50 hours every week for the purposes of establishing amount in controversy for this motion. In proving up the amount in controversy, a defendant may rely on "reasonable assumptions." *Ibarra*, 775 F.3d at 1199. In *Ibarra*, the court concluded that an allegation that the plaintiff worked overtime hours on "multiple occasions during his employment" did not support a calculation assumption that the plaintiff always worked overtimes hours on each and every shift. *Id.* Here, in contrast, the allegations in the complaint suggest a more regular frequency. Further, Diaz puts forth no colorable alternative for how to interpret its own allegations. If Nexa was prohibited from making this assumption for this calculation, it is difficult to see what other reasonable assumption it could have made to

perform the calculations. Thus, for the purpose of this motion, the Court will accept Nexa's assumption that the complaint alleges that Diaz worked 50 hours every week that he did work.

With these threshold issues in mind, Nexa calculates several categories of damages that it argues should be summed together to meet the amount in controversy requirement. The first category of damages is unpaid overtime and minimum wage pay. Nexa agrees with the wage statements for 2020 and 2021 recited above, and states that its payroll records show that Plaintiff earned a gross income of $43,269.23 in the year 2022. ECF No. 9 at 8. Defendant then calculated unpaid overtime as follows:

1) For weeks where the records show that Diaz earned $0 pay, despite working hours, Nexa assumed a regular pay rate equal to the minimum wage. Then overtime is calculated at 1.5x the regular pay rate.

2) For weeks where the records show that Diaz earned income, the regular pay rate is calculated by taking the income and dividing it by the hours worked to arrive at a wage per hour. Then overtime is calculated at 1.5x this wage per hour.

Nexa then provided the Court and also Diaz with "Pay Summary" statements covering 2020-2022 (ECF Nos. 9-1). Based on these Pay Summaries, it calculated based on each statement what the overtime owed to Plaintiff was (based on the formula above) and summed up the allegedly owed overtime pay for 2020-2022, arriving at a total amount of $17,587.60. ECF No. 9-1 at 30-36.

The second category of damages is unpaid overtime wages that Nexa calculates based on these same Pay Summary records. Based on Diaz's own allegations, "there were pay periods where Diaz received less than minimum wage or no compensation because he did not make any sales and/or was not paid all earned wages on loans that he originated." FAC ¶ 4. Nexa estimates that Diaz "received no compensation for at or around 16 weeks in 2020, 22 weeks in 2021, and 3 weeks in 2022." ECF No. 9 at 13. Defendant states that minimum wages was $13/hour in 2020, $14/hour in 2021, and

$15/hour in 2022. *Id.* at 12. Further Nexa doubled the amount because the complaint seeks liquidated damages. *Id.* (citing FAC ¶¶ 43, 45 ("liquidated damages in an amount equal to unpaid minimum wages and interest thereon")). Based on these calculations, Nexa estimates that Diaz claims unpaid minimum wages totaling $56,100.

Finally, Nexa also calculates additional damages in the form of damages related to various Labor Code violations and attorney's fees. Nexa states that Diaz alleges that he is owed $3,600 of damages from inaccurate wage statements due to willful failure to include all wages owed in violation of California Labor Code § 203, and owed $4,000 in damages from inaccurate wage statements under § 226. ECF No. 9 at 13-15. Nexa also states that Diaz's allegations regarding unpaid business expenses, including cell phone and internet costs, are estimated to be around $3,697 based on average cell phone and internet monthly costs derived from the internet. *Id.* at 14. Totaling up all these damages, Nexa then estimates attorney's fees at a rate of 25% and arrives at a total estimated damages of $106,231.[3] *Id.* at 16.

Diaz objects to many aspects of Nexa's calculations. First, Diaz states that the records on which Nexa bases its calculations cannot be relied upon. ECF No. 15 at 4. For example, Diaz points out that the Pay Summaries show that he made $10,665.71 for the year 2020 but the W-2 Statement show a total compensation in that year of $11,768.65. *Id.* at 5. Similarly, the Pay Summaries show a total of $88,273.49 for the year 2021, but the W-2 for the same year shows $95,313.42. *Id.* Second, Diaz argues that the method that Nexa uses to calculate the unpaid overtime and minimum wages is flawed. *Id.* at 6-9. Diaz argues that the records lack information as to what payments were made for, so another plausible explanation is that the income paid to Diaz on the weeks he was paid may have been "true-up" payments for work that was actually performed in the

---

[3] The amount prior to fees is calculated at $17,587.60 + $56,100 + $3,600 + $4,000 + $3,697 = $84,984.60. Attorney's fees at 25% equals $21,246.15.

previously weeks where the pay summary reported $0 income.[4] *Id.* at 7. Third, Diaz argues that even if the income did not include "true-up" payments, overall, the only damages Diaz may only be able to obtain are late penalties during the pay periods for which he did not get a paycheck. *Id.* at 8-10. This is because Diaz argues that he made more than minimum wage overall. For example, in the 2021, Diaz calculates that someone working 52 weeks at 50 hours a week for minimum wage that year ($14) would make $36,400 for 2021. *Id.* at 6. Diaz, regardless of whether based on the W-2 statement or the Pay Summaries, made well in excess of that amount. *Id.* Thus, Diaz it appears that he was compensated for the work hours but the payments may have been late—depending on whether paychecks were issues weekly or bi-weekly,[5] Diaz calculates that the late penalties would either be $18,841 (if paid weekly) or $14,028.58 (if paid bi-weekly). *Id.* at 8-9. Finally, Diaz also contests the remainder of the alleged damages, arguing that: 1) the unpaid business expenses lack foundation because they are based on average expenses found online and not discounted for the percentage the cellphone and internet services are used for personal use; 2) the § 226 damages would drop to $2000 if paychecks were issued bi-weekly; and 3) the attorney's fees estimate is uncertain and based on flawed total damages data. *Id.* at 10-11. Using Diaz's own calculations, he argues that the amount of damages at issue here are well below the $75,000 threshold required to invoke diversity jurisdiction. *Id.* at 12.

After independently reviewing the evidence and calculations submitted, the Court agrees with Diaz that there are some foundational issues in the underlying income information and calculations. The Pay Summaries and W-2 statements submitted for the identical years do show unexplained discrepancies. Furthermore, Nexa's calculations of

---

[4] The "true-up" payments that Nexa references apply where when a bonus is paid, employers are required to "retroactively calculate the difference between the employees' overtime pay rate over the quarter and the employees' overtime rate as if the [] bonus had been paid as part of the base rate of pay." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 681 (9th Cir. 2021).
[5] Diaz states that it is not clear based on the records provided to the Court whether paychecks were distributed weekly or biweekly. ECF No. 17 at 8.

22cv1895-JES-DDL

overtime pay appears to show errors. As one example, Nexa includes a Pay Summary for a one-week period, starting on June 9, 2021 and ending on June 15, 2021, and with a pay date of June 21, 2021:



ECF No. 9-1 at 4 (emphasis added). The document shows Diaz earning $3443.48. The corresponding entry in the spreadsheet where Nexa calculates owed overtime pay shows the income at the amount $3443; however, it shows the pay period from June 9 to June 21 (the pay date, not the period ending date) and the calculations are based on the income being attributed to 9 days rather than presumably 5 working days.

| Pay Period | Gross Pay | Working Days | Total Hours Worked in Pay Period | Non-Overtime Hours Per Pay Period | Regular Rate of Pay | Overtime Premium | Overtime Hours Allegedly Worked | Overtime Sought |
|---|---|---|---|---|---|---|---|---|
| 1/1/2021 to 1/8/2021 | $0 | 5 | 50 | 40 | $ 14.00 | $ 7.00 | 10 | $ 70.00 |
| 1/11/2021 to 1/26/2021 | $0 | 12 | 120 | 96 | $ 14.00 | $ 7.00 | 24 | $ 168.00 |
| 1/27/2021 to 2/5/2021 | $4,223 | 8 | 80 | 64 | $ 52.79 | $ 26.39 | 16 | $ 422.30 |
| 2/8/2021 to 2/19/2021 | $0 | 10 | 100 | 80 | $ 14.00 | $ 7.00 | 20 | $ 140.00 |
| 2/20/2021 to 3/9/2021 | $0 | 12 | 120 | 96 | $ 14.00 | $ 7.00 | 24 | $ 168.00 |
| 3/10/2021 to 3/19/2021 | $2,252 | 8 | 80 | 64 | $ 28.15 | $ 14.08 | 16 | $ 225.20 |
| 3/22/2021 to 4/2/2021 | $0 | 10 | 100 | 80 | $ 14.00 | $ 7.00 | 20 | $ 140.00 |
| 4/5/2021 to 4/16/2021 | $0 | 10 | 100 | 80 | $ 14.00 | $ 7.00 | 20 | $ 140.00 |
| 4/19/2021 to 4/30/2021 | $0 | 10 | 100 | 80 | $ 14.00 | $ 7.00 | 20 | $ 140.00 |
| 5/3/2021 to 5/14/2021 | $0 | 10 | 100 | 80 | $ 14.00 | $ 7.00 | 20 | $ 140.00 |
| 5/19/2021 to 5/28/2021 | $5,467 | 8 | 80 | 64 | $ 68.34 | $ 34.17 | 16 | $ 546.70 |
| 5/31/2021 to 6/4/2021 | $0 | 5 | 50 | 40 | $ 14.00 | $ 7.00 | 10 | $ 70.00 |
| 6/9/2021 to 6/21/2021 | $3,443 | 9 | 90 | 72 | $ 38.26 | $ 19.13 | 18 | $ 344.30 |
| 6/23/2021 to 7/2/2021 | $7,976 | 8 | 80 | 64 | $ 99.70 | $ 49.85 | 16 | $ 797.60 |
| 7/5/2021 to 7/9/2021 | $0 | 5 | 50 | 40 | $ 14.00 | $ 7.00 | 10 | $ 70.00 |

ECF No. 9-1 at 32. The records submitted to the court are then missing any income statement from June 15 to June 23. *See generally* ECF No. 9-1 at 2-28. The next

chronological Pay Summary shows another one-week period, starting on June 23, 2021 and ending on June 29, 2021, and with a pay date of July 2, 2021, with a total income of $7,976.32:



ECF No. 9-1 at 3. The entry in Nexa's calculation spreadsheet shows a matching income, but again shows the end date as the pay date rather than the period ending date, and calculates the overtime based on 8 days instead of one week. These calculation issues are not isolated and appear replete through the spreadsheets. These issues call into question the reliability of the numbers submitted by Nexa. *Ibarra*, 775 F.3d at 1197 (defendant needs to submit summary judgment type evidence to the court and any assumptions must be reasonable).

    As for the calculation for minimum wage, the first issue is that Nexa does not explain how it arrived its total weeks numbers (16 weeks in 2020, 22 weeks in 2021, and 3 weeks in 2022). ECF No. 9 at 13. If this is based on the flawed spreadsheets discussed above, this data is also not reliable. The second issue is that Nexa assumed in the calculations that any weeks where $0 was paid according to the Pay Summaries were hours for which Diaz needed to be paid minimum wage. However, this is not the law. Diaz's allegations in the FAC actually state that "Plaintiffs are required to work non-selling time, for which they are not compensated. This includes, but is not limited to, meetings, loan processing, training, loan tracking and/or customer service. Plaintiffs should have received not less than the minimum wage in a sum according to proof for the time worked, but not compensated." FAC ¶ 45. This comports with the law. *Balasanyan*

*v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1007 (S.D. Cal. 2012) ("[E]mployees must be directly compensated at least minimum wage for all time spent on activities that do not allow them to directly earn wages.") (citing *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005)). Though the Court recognizes that Nexa may have to make reasonable assumptions to show that the amount in controversy is above the threshold, particularly because the allegations in the complaint are alleged by Plaintiffs and may not elaborate on the full basis for the alleged wrongful behavior, Nexa provides no support for why it made the assumption that *all* weeks showing zero income are weeks where Diaz performed non-sales or commission generating work for which he is entitled to minimum wage payment.

The Court also notes that Diaz's positions are also not fully supported by the law either. For example, California courts have expressly rejected the pay averaging that Diaz suggests in its brief. *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 324 (2005) ("We conclude, therefore, that the FLSA model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate."). Simply because Diaz may have made more than what a minimum wage worker would have made working his hours over a year does not mean that he cannot be owed any minimum wage hours as a matter of law.

However, on a motion to remand, the burden is squarely on Defendant Nexa to establish that the amount in controversy is met and any doubt must be resolved in favor of Plaintiff Diaz. *Gaus*, 980 F.2d at 566. The Court must consider the evidence submitted, and only exercise jurisdiction if it is convinced by a preponderance of the evidence that the amount in controversy has been met. *Dart Cherokee Basin Operating*, 574 U.S. at 88. Based on the concerns identified throughout this order with regards to the data itself, the calculations, and the assumptions of law that have been made, the Court finds that Defendant Nexa has not met its burden. Accordingly, Plaintiff's motion to remand is **GRANTED**.

//

## IV.   MOTION TO COMPEL ARBITRATION

Also pending before the Court is Nexa's Motion to Compel Arbitration. ECF No. 4. Because the Court grants Diaz's motion to remand and finds that Nexa has not sufficiently show that there is federal subject matter jurisdiction over the case, the Court reserves that motion for decision in front of the court with proper jurisdiction. Accordingly, the Motion to Compel Arbitration is **DENIED AS MOOT**.

## V.   CONCLUSION

After due consideration and for the reasons discussed above, the Court G**RANTS** Plaintiff's Motion to Remand and **DENIES AS MOOT** Defendant's Motion to Compel Arbitration.

**IT IS SO ORDERED.**

Dated:  July 10, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge

# EXHIBIT 10

1  MILLER LAW FIRM
   Matthew R. Miller SBN 194647
2  Historic Louis Bank of Commerce Building
3  835 Fifth Avenue, Suite 301
   San Diego, CA 92101
4  Telephone: (619) 687-0143
   Fax: (619) 687-0136
5

6  Brian C. Dawson SBN 183251
7  DAWSON & OZANNE
   5755 Oberlin Drive, Ste. 301
8  San Diego, CA 92121
   Telephone: (619) 988-2135
9  Email: brian@dawson-ozanne.com

10 Attorneys for Plaintiffs and all other similarly
11 situated

12

13              **SUPERIOR COURT OF CALIFORNIA**

14          **COUNTY OF SAN DIEGO, CIVIL DIVISION**

15 | DAMIAN DIAZ, individually and on behalf | CASE NO.: 37-2022-00031816-CU-OE-NC |
   | of all others similarly situated, | |
16 | | **PROOF OF SERVICE** |
   |            Plaintiff, | |
17 | | Judge: Hon. Earl H. Maas, III |
18 | v. | Dept:   N-28 |
19 | NEXA MORTGAGE, LLC, an Arizona | |
   | Limited Liability Company;  and DOES 1- | |
20 | 100, inclusive, | Trial: Not set. |
   | | |
21 | Defendants. | |

22

23

24              **PROOF OF SERVICE**

25         At the time of service, I was over 18 years of age and not a party to this action.  I am

26
27 employed in the County of San Diego, State of California.  My business address is Dawson &

28 Ozanne at 5755 Oberlin Drive, Ste. 301, San Diego, CA 92121.

On July 20, 2023, I served true copies of the following document(s) described as:

**\*NOTICE OF RULING**

on the interested parties below as follows:

David M. Greeley, Esq. (SBN 198520)
James R. Thompson, Esq. (SBN 260083)
GREELEY THOMPSON LLP
600 B Street, Suite 2150
San Diego, California 92101
Telephone: (619) 658-0462
dgreeley@greeleythompson.com

MITCHELL SANDLER LLC
Arielle Stephenson (SBN 336434)
1120 20th Street, NW
Washington, DC 20036
Telephone: (202) 886-5267
astephenson@mitchellsandler.com
*Attorneys for Defendant*

**BY ELECTRONIC TRANSMITTAL:** Pursuant to Code of Civil Procedure Section 1010.6, I caused the document(s) to be sent to the person(s) at the email address(es) listed above via email from the One Legal e-service portal. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 20, 2023, at San Diego, California.

Melissa Shaffer

# EXHIBIT 11

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
   dgreeley@greeleythompson.com
5
   MITCHELL SANDLER LLC
6  Arielle Stephenson (SBN 336434)
   1120 20th Street, NW
7  Washington, DC 20036
   Telephone: (202) 886-5267
8  astephenson@mitchellsandler.com
9
   *Attorneys for Defendant NEXA Mortgage LLC*
10

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
08/21/2023 at 05:20:00 PM
Clerk of the Superior Court
By Veronica Navarro,Deputy Clerk

11           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all   Case No. 37-2022-00031816-CU-OE-NC
14  others similarly situated,
                                                       **DEFENDANT'S NOTICE OF MOTION**
15                     Plaintiff,                       **AND MOTION TO COMPEL PLAINTIFF'S**
                                                       **CLAIMS TO ARBITRATION & STAY THE**
16  v.                                                 **CASE; MEMORANDUM OF POINTS AND**
                                                       **AUTHORITIES**
17  NEXA MORTGAGE, LLC, et al.
18                     Defendants.                      Date: December 8, 2023
                                                       Time: 1:30 p.m.
19                                                     **Reservation Number: 3011415**
                                                       Hon. Earl Maas, III
20                                                     Department N-28
21
                                                       Complaint Filed: August 3. 2022
22                                                     Amended Complaint Filed: October 31, 2022
                                                       Trial Date: None Set
23

24      **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

25      **PLEASE TAKE NOTICE** that on December 8, 2023, or as soon thereafter as the matter may

26  be heard in Department N-28 of the Superior Court of California, County of San Diego, located at 325

27  S. Melrose, Vista, CA 92081, Defendant will and hereby does move this Court for an order compelling

28

---

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 37-2022-00031816-CU-OE-NC

1   Plaintiff Damian Diaz to arbitrate his claims raised in the First Amended Complaint with JAMS pursuant

2   to the executed Outside Loan Officer Employment Agreement entered into on or around July 13, 2020.

3   Plaintiff Damian Diaz agreed to arbitrate any and all disputes concerning or arising out of the

4   employment relationship, through binding arbitration.

5          This motion is based on this notice of motion, the attached memorandum of points and authorities

6   and its exhibits, and all records on file with this Court, and such other and further oral and written

7   arguments as may be presented at, or prior to, the hearing on this matter.

8

9    Dated:  August 21, 2023                    Respectfully submitted,

10

11                                              MITCHELL SANDLER LLC
                                                */s/ Arielle Stephenson*
12                                              Arielle Stephenson (SBN 336434)
                                                1120 20th Street, NW
13                                              Washington, DC 20036
                                                Telephone: (202) 886-5267
14                                              astephenson@mitchellsandler.com

15                                              Counsel for Defendant, *NEXA Mortgage, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 37-2022-00031816-CU-OE-NC

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION**

## I.     INTRODUCTION

On or about October 31, 2022, Plaintiff Damian Diaz ("Plaintiff') filed a complaint against NEXA Mortgage, LLC ("NEXA" or "Defendant") alleging nine causes of action: 1) failure to reimburse and unlawful deductions; 2) failure to pay minimum wages; 3) failure to pay overtime wages; 4) failure to provide rest and meal breaks; 5) failure to maintain and furnish accurate records; 6) failure to pay timely wages; 7) Violation of B&P Code §§ 17200 *et seq*.; 8) declaratory relief; *and*  9) enforcement of Labor Code Section 2698 et seq. ("PAGA").  On October 31, 2022, Plaintiff filed an amended complaint ("Complaint"), alleging the same nine causes of action, including a representative claim under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). Plaintiff's Complaint is clear that each of these claims arise from his employment with NEXA.

At the inception of Plaintiff's employment with NEXA, however, Plaintiff executed the Outside Loan Officer Employment Agreement (the "Employment Agreement"). *See* Damian Diaz Outside Loan Officer Agreement, attached hereto as Exhibit A. The Employment Agreement contains a binding arbitration clause that requires the parties to resolve any disputes arising from Plaintiff's employment with NEXA through binding arbitration. Despite executing a valid, binding arbitration clause, Plaintiff has improperly filed this matter in California state court. In accordance with binding precedent, including, but not limited to the Supreme Court's decision on June 15, 2022 in *Viking River Cruises, Inc. v. Angie Moriana*, 142 S. Ct. 1906 (2022), this matter should be compelled to arbitration, and the case should be stayed pending the outcome of arbitration.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Agreed to Arbitrate All Claims Arising Out of His Employment Relationship with NEXA.

Plaintiff began his employment with NEXA as a loan officer in July 2020. On or about July 13, 2020, Plaintiff executed the Outside Loan Officer Agreement, which governed the terms of his employment with NEXA. *See* Exhibit A. Section VIII of the Employment Agreement entitled

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

"Arbitration/Governing Law/Consent to Jurisdiction," states in relevant part:

> In the event of any dispute between the parties concerning or arising out of their employment relationship, it shall be resolved through binding arbitration in accordance with the rules of JAMS arbitration, provided however, that notwithstanding any rules in JAMS to the contrary, employees' claims may not be joined with the claims of any other person or Employee and there will be no allowance for the Employee to pursue or participate in relief on a class or collective action basis against the Company arising out of the employment relationship or this agreement.
>
> …
>
> Employee understands that by agreeing to this provision, s/he is waiving the right to a jury and the right to go to court for any claims covered herein. Employee may opt out of this provision of the Agreement, thus relieving both parties of the obligations of this provision, by (1) sending a notarized letter to the attention of Employee's immediate supervisor copied to the Company's Human Resources department, both sent via Certified Mail within 30 days of the execution of this Agreement expressly opting out of this provision; or (2) striking the entirety of this paragraph and initialing here as follows:

Exhibit A at § VIII.

The Employment Agreement was fully executed by Plaintiff and NEXA. Moreover, Plaintiff never exercised his option to either strike the arbitration agreement or send any correspondence following execution of the Agreement indicating his desire to opt out of the arbitration provision, as was explicitly stated in the Agreement. Accordingly, Plaintiff – having the full opportunity to consider—and reconsider – whether to arbitrate all disputes "arising out of" his employment with NEXA, clearly elected to do so. Further, it is apparent these claims arise out of his employment with NEXA. Specifically, Plaintiff's claims allege that NEXA's compensation practices were unlawful at times. Amended Complaint, ¶26. Thus, this Court should compel Plaintiff's claims to arbitration, in accordance with the terms of Plaintiff's Employment Agreement and stay the action pending the outcome of the arbitration.

///

///

///

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

**III.   ARGUMENT**

**A.      The Federal Arbitration Act Applies.**

By its terms, the FAA "provides for the enforcement of arbitration provisions in any contract evidencing a transaction involving interstate commerce." *Mount Diablo Medical Center v. Health Net of Cal., Inc.*, 101 Cal.App.4th 711, 717 (2002); *Khalatian v. Prime Time Shuttle, Inc*., 237 Cal. App. 4th 651, 657 (2015) ("the FAA applies when the contract evidences a transaction involving interstate commerce." (citations and internal quotations omitted). In addition, the FAA preempts state laws that "stand as an obstacle to the accomplishment of the FAA's objectives." *People v. Maplebear Inc.*, 81 Cal. App. 5th 923 (2022) (citations omitted).

Activities that "have an economic or commercial character will likely have a nexus to interstate commerce and, accordingly, would be proper objects of congressional regulation under the Commerce Clause." *U.S. v. Adams*, 343 F.3d 1024, 1028 (9th Cir. 2003); *see also Thorup v. Dean Witter Reynolds, Inc.*, 180 Cal.App.3d 228, 233 (1986) (employment agreement between stock brokerage and its account executive involves interstate commerce and is subject to the FAA). "Employment contracts, except for those covering workers specifically exempted by the statute, are covered by the FAA." *Evenskaas v. Cal. Transit, Inc.*, 81 Cal. App. 5th 285, 292 (2022) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Here, Defendant is an Arizona-based mortgage broker, licensed in 48 states, that was and is involved in interstate commerce, including using interstate commerce to sell loan products, which have an "economic" and "commercial character" to customers nationwide. *See Adams*, 343 F.3d at 1028; Decl. of M. Kortas ¶7-8. NEXA brokers mortgage loans that are ultimately re-sold on the secondary market. Decl. of M. Kortas ¶12. NEXA and its loan officers use mail, email, internet and telephone as a routine and necessary part of the loan application process it performs in originating loans. Decl. of M. Kortas ¶¶ 25. Additionally, "the use of wire transfers, credit card transactions, and other banking functions is routine between loan officers, lenders, consumers as well as various service providers engaged by and through NEXA to facilitate the origination of the loan and the loan application approval process." Decl. of M. Kortas ¶26. Thus, NEXA is engaged in interstate commerce and its activities in

5

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 37-2022-00031816-CU-OE-NC

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

1   the mortgage industry undoubtedly have a nexus to interstate commerce.

2        While employed, Plaintiff sold twenty-three (23) loans, which were funded by seven (7) different

3   lenders, located in 2 (two) different states. Decl. of M. Kortas ¶¶ 22-23. The loans totaled $11,744,222

4   and brokered the loans to customers in two states – California and Texas. Decl. of M. Kortas ¶¶ 22, 24.

5   Further, the Employment Agreement states a loan officer's primary duty is to "solicit, originate, and

6   facilitate the processing and closing of loan products and financing of residential real estate transactions

7   on behalf of the Company's customers," which includes a requirement that loan officers "meet and call

8   on clients, referral sources, realtors, and business prospects." Ex. A, ¶IIA-B. In addition, the

9   Employment Agreement requires compliance with several federal banking laws. Decl. of M. Kortas ¶21.

10  Accordingly, Plaintiff's employment, NEXA, and the agreement governing such employment, clearly

11  have a nexus with interstate commerce.

12      **B.**    **Policy Strongly Favors Arbitration Pursuant to the Federal Arbitration Act and**

13          **Should Compel Plaintiff's Claims to Arbitration.**

14       As the United States Supreme Court reaffirmed in *AT&T Mobility v. Concepcion,* 563 U.S. 333

15  (2011), the Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration

16  agreements," and requires courts to compel arbitration of any claims covered by an arbitration agreement

17  in accordance with its terms. *Id.* at 346. Specifically, the FAA requires courts to enforce covered

18  arbitration agreements according to their terms. *Lamps Plus., Inc. v. Varela*, 139 S. Ct. 1407, 1412

19  (2019). The "body of federal substantive law" created by the FAA is applicable, however, in both state

20  and federal courts. *Southland Corp. v. Keating* 465 U.S. 1, 12 (1984). State law therefore cannot bar

21  enforcement of the FAA, even in the context of state law claims brought in state court. *Buckeye Check*

22  *Cashing, Inc. v. Cardegna* 546 U.S. 440, 445 (2006).

23       The FAA creates a general presumption in favor of arbitration and requires the enforcement of a

24  written agreement to arbitrate. 9 U.S.C. § 2; *see also Concepcion*, 563 U.S. at 344 ("The 'principal

25  purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their

26  terms.'") (citations omitted).  In enacting the FAA, Congress intended to place arbitration agreements

27  on an equal footing with other contracts and establish a federal policy in favor of arbitration. *Gilmer v.*

28

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1961). "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). "The Federal Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gilmer*, 500 U.S. at 24-25. As the Supreme Court set forth in *Concepcion*, it is "beyond dispute that the FAA was designed to promote arbitration." *Concepcion*, 563 U.S. at 345. Thus, this Court must interpret arbitration provisions liberally, resolving doubts in favor of arbitration.

In deciding whether to compel arbitration under the FAA, the court's role is limited to deciding: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." (*Brennan v. Opus Bank* (9th Cir. 2015) 796 F.3d 1125, 1130.) If these conditions are satisfied, the court is without discretion to deny the motion and must compel arbitration. (9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 218 ["By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration."].)

Specifically, pursuant to the FAA, Courts have consistently found that agreements between employer and employees to arbitrate employee-related disputes are valid and enforceable. *See e.g., Gilmer*, 500 U.S. at 34-35; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (enforcing arbitration clauses in employment agreements noting that "At the end of our encounter with the Arbitration Act, then, it appears just as it did in the beginning:  a congressional command requiring us to enforce, not override, the terms of the arbitration agreements before us."). Notably, the burden is on the party opposing arbitration to proffer evidence demonstrating that such an agreement is invalid. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). In *Gilmer*, the United States Supreme Court expressly recognized arbitration as a legitimate method of resolving employment related disputes including alleged violations of statutory rights. *Gilmer*, 500 U.S. at 34-35; *see also Circuit City Stores,* 532 U.S. at 123 ("We have been clear in rejecting the supposition that the advantage s of the arbitration process somehow disappear when transferred to the employment

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

context.  Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation."); *Lewis v. Simplified Labor Staffing Sols., Inc.*, No. B312871, 2 2022 WL 17414203, at *6 (Ct. App. Dec. 5, 2022) (enforcing employee's predispute agreement to arbitrate PAGA claims.)

In fact, agreements to arbitrate must be enforced and any attempt to discriminate against or single out such clauses for special scrutiny or treatment is preempted and unlawful. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) ("The FAA thus preempts any state rule discriminating on its face against arbitration … [a]nd not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements.); *see also Viking River Cruises, Inc.*, 142 S. Ct. at 1917 ("The FAA 'preempts any state rule discriminating on its face against arbitration'"); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 ("the law is clear: Congress has instructed that arbitration agreements like those [in the employment context] before us must be enforced as written."); *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1203-04 (9th Cir. 2021) ("Where the employment agreement and related documents, including an arbitration agreement included "explicit language regarding employment disputes" and statutory claims were "clearly encompassed by the agreement," arbitration must be compelled because the employee "knowingly waived her right to a judicial forum.")

Here, there is an agreement to arbitration, contained within Plaintiff's employment agreement, wherein Plaintiff agreed to arbitrate all disputes "arising out of" his employment with NEXA. Exhibit A at § VIII; *Smith v. Rent-A-Center, Inc*, No. 1:18-CV-01351 LJO JLT, 2019 WL 3004160, at * 4 (E.D. Cal. July 9, 2019) (a defendant satisfies its "burden to show an agreement to arbitrate merely by attaching a copy of the [] agreement."). Second, the agreement covers the dispute – all causes of action relate to Diaz's employment with NEXA and alleged violations of wage, hour, and labor laws. *See generally Compl.*

### C.   Plaintiff's PAGA Claims are Subject to Arbitration.

Plaintiff cannot circumvent the arbitration clause simply because he brings claims pursuant to PAGA. Indeed, only a few months ago, the Supreme Court squarely addressed the arbitrability of PAGA

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

claims. In *Viking River Cruises, Inc. v. Moriana*, the Supreme Court held that claims brought pursuant to PAGA can be subject to arbitration. *See* 142 S. Ct. 1906 (2022) (the FAA preempts any rule precluding "division of PAGA actions into individual and non-individual claims through an agreement to arbitrate.") Specifically, in *Viking River Cruises*, the Court held that the plaintiff's former employer was entitled to enforce an arbitration agreement where it mandated arbitration of the former employee's individual PAGA claim. *Id.*; *see also Lewis*, 2022 WL 17414203, at * 4 ("the Viking River court found the FAA *does* apply to PAGA claims."). The Court's holding in *Viking River Cruises* is yet another reason that Plaintiff's arbitration clause must be enforced.

### D.   The Court Should Stay this Action Pending the Outcome of Arbitration, Including Plaintiff's Remaining Representative PAGA Claims.

Pursuant to the California Supreme Court's holding in *Adolph v. Uber Techs.*, Inc., 14 Cal. 5th 1104 (2023), Defendant requests that the Court stay the non-individual remaining PAGA claims pending the outcome of the arbitration pursuant to Code of Civil Procedure section 1281.4. Section 1281.4 provides that where a court orders arbitration of an action pending in state court, "the court in which such action or proceeding is pending *shall*, upon motion of a party to such action or proceeding, stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate." (Code of Civil Procedure § 1281.4 (emphasis added).) The party seeking arbitration must move pursuant to section 1281.4 to stay the action; it is not stayed automatically by an order compelling arbitration. (Ross v. Blanchard (1967) 251 Cal.App.2d 739, 742.)  Upon an order compelling arbitration of all claims except the non-individual PAGA claims, and defenses in this action, Defendant concurrently requests the issuance of an order staying these judicial proceedings in accordance with Section 1281.4.

A stay is important as a matter of equity because the arbitrator's final determination as to whether Plaintiff is an aggrieved employee would be binding on the court, and if it is determined that Plaintiff is *not* an aggrieved employee, Diaz could no longer prosecute his non-individual claims due to lack of standing. *See Uber*, 14 Cal. 5th at 1123-24 (2023) (citing *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65, 76–82 [304 Cal. Rptr. 3d 587].)

Further, the request for a stay is appropriate as "[t]he purpose of the statutory stay is to protect

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

1    the jurisdiction of the arbitrator by preserving the status quo until the arbitration is resolved." *Heritage*

2    *Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1152) "In the absence of a stay,

3    the continuation of the proceedings in the trial court disrupts the trial arbitration proceedings and can

4    render them ineffective." (*Ibid.*) Thus, Defendant moves the Court to stay the action until the arbitration

5    is concluded.

6    **IV.**     **CONCLUSION**

7        For the foregoing, Defendant respectfully requests that the Court grant its Motion to Compel

8    Plaintiff's Complaint to Arbitration and Stay the Action.

9

10    Dated: August 21, 2023                  Respectfully submitted,

11                                                   MITCHELL SANDLER LLC

12                                                   */s/ Arielle Stephenson*

                                                 Arielle Stephenson (SBN 336434)

13                                                   1120 20th Street, NW

14                                                   Washington, DC 20036

                                                 Telephone: (202) 886-5267

15                                                   astephenson@mitchellsandler.com

16                                                   Counsel for Defendant, *NEXA Mortgage, LLC*

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 37-2022-00031816-CU-OE-NC

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

# EXHIBIT 12

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
   dgreeley@greeleythompson.com
5
   MITCHELL SANDLER LLC
6  Arielle Stephenson (SBN 336434)
7  1120 20th Street, NW
   Washington, DC 20036
8  Telephone: (202) 886-5267
   astephenson@mitchellsandler.com
9
   *Attorneys for Defendant NEXA Mortgage LLC*
10

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/21/2023** at 05:20:00 PM

Clerk of the Superior Court
By Veronica Navarro,Deputy Clerk

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                   **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all   Case No. 37-2022-00031816-CU-OE-NC
14  others similarly situated,
                                                       **PROOF OF SERVICE**
15                   Plaintiff,

16  v.

17  NEXA MORTGAGE, LLC, et al.

18                   Defendants.

19

20          I, Ekaterina Cherniaevskaia, declare as follows:

21          I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22  Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is katia@greeleythompson.com

24          On August 21, 2023, I caused to be served true copies of the following document(s) described

25  as:

26      •  **DECLARATION OF MIKE KORTAS IN SUPPORT OF NEXA MORTGAGE, LLC'S**
         **MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION**
27      •  **DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL PLAINTIFF'S**
28

_____
                                  PROOF OF SERVICE

**CLAIMS TO ARBITRATION & STAY THE CASE; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in this action as follows

_____  **BY MAIL:**  I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____  **BY PERSONAL DELIVERY:**  I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

_XXX_  **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| | |
|---|---|
| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 21, 2023, at San Diego, California.

_____
Ekaterina Cherniaevskaia

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

# EXHIBIT 13

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/03/2023** at 03:00:00 PM

Clerk of the Superior Court
By Gregory Hornick, Deputy Clerk

1 | David M. Greeley, Esq. (SBN 198520)
2 | James R. Thompson, Esq. (SBN 260083)
GREELEY THOMPSON LLP
3 | 600 B Street, Suite 2150
San Diego, California 92101
4 | Telephone: (619) 658-0462
dgreeley@greeleythompson.com
5 |
6 | Arielle Stephenson (SBN 336434)
Mitchell Sandler, LLC
7 | 1120 20th Street, NW, Suite 725
Washington, DC 20036
8 | Telephone: (202) 886-5260
astephenson@mitchellsandler.com
9 |
10 | Attorneys for Defendant, *NEXA Mortgage LLC*

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
12 | **FOR THE COUNTY OF SAN DIEGO**

13 |
14 | DAMIAN DIAZ, individually and on behalf of all others similarly situated,

15 | Plaintiffs,

16 |
17 | v.

18 | NEXA MORTGAGE, LLC, et al.,

19 | Defendants.

20 |

Case No. 37-2022-00031816-CU-OE-NC

**STIPULATION TO STRIKE THE DECLARATION OF MIKE KORTAS AND PERMIT THE DELCARATION TO BE RE-FILED AND [PROPOSED] ORDER**

Hon. Earl Maas, III
Department N-28

Complaint Filed: August 3, 2022
Trial Date: None Set

21 |
22 | The parties hereby stipulate to, and request that the Court order, that the declaration of

23 | Mike Kortas submitted in support of Defendant's Motion to Compel Arbitration and Stay the

24 | Action on August 21, 2023, Register of Action # 14, be stricken, and Plaintiff is permitted to re-

25 | file the declaration.

26 | Good cause exists for this request, as the declaration of Mike Kortas includes an

27 | attachment of Plaintiff's employment application and agreement to arbitrate as Exhibit A

28 | ("Exhibit A"). Prior to filing, Defense counsel reviewed Exhibit A and redacted Plaintiff's

STIPULATION TO STRIKE THE DECLARATION OF MIKE KORTAS AND PERMIT THE
DELCARATION TO BE RE-FILED AND [PROPOSED] ORDER

1

birthday, social security number, address, and other personal information. Ex. A at 17-18. After the filing, Counsel noticed a social security number that was inadvertently not redacted on page 25 of the document.

Accordingly, the parties request that the Court strike the declaration of and permit Defendant to re-file a further redacted declaration of Mr. Kortas and Exhibit A filed in connection with the Motion to Compel Arbitration and Stay the Action.


Dated: September 27, 2023          MITCHELL SANDLER, LLC

                                   */s/ Arielle Stephenson*
                                   Arielle Stephenson, Esq.
                                   Attorney for Defendant NEXA Mortgage, LLC

Dated: September 27, 2023          GREELEY THOMPSON LLP

                                   */s/ David M. Greeley*
                                   David M. Greeley, Esq.
                                   Attorney for Defendant NEXA Mortgage, LLC

Dated: October 2, 2023             MILLER LAW FIRM

                                   */s/ Matthew R. Miller*
                                   Matthew R. Miller, Esq.
                                   Attorney for Plaintiff Damian Diaz

Dated: September 28, 2023          DAWSON & OZANNE

                                   */s/ Brian C. Dawson*
                                   Brian C. Dawson
                                   Attorney for Plaintiff Damian Diaz


IT IS SO ORDERED

Dated: **October 3**, 2023     By: _____
                                   Hon. Earl Maas, III
                                   Judge of the Superior Court


STIPULATION TO STRIKE THE DECLARATION OF MIKE KORTAS AND PERMIT THE
DELCARATION TO BE RE-FILED AND [PROPOSED] ORDER
2

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
   dgreeley@greeleythompson.com
5
   MITCHELL SANDLER LLC
6  Arielle Stephenson (SBN 336434)
7  1120 20th Street, NW
   Washington, DC 20036
8  Telephone: (202) 886-5267
   astephenson@mitchellsandler.com
9
   *Attorneys for Defendant NEXA Mortgage LLC*
10

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**10/03/2023** at 03:00:00 PM
Clerk of the Superior Court
By Gregory Hornick, Deputy Clerk

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                    **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all       Case No. 37-2022-00031816-CU-OE-NC
    others similarly situated,
14                                                          **PROOF OF SERVICE**

15                     Plaintiff,

16  v.

17  NEXA MORTGAGE, LLC, et al.

18                     Defendants.

19

20      I, Ekaterina Cherniaevskaia, declare as follows:

21      I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22  Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is katia@greeleythompson.com

24      On October 2, 2023, I caused to be served true copies of the following document(s) described as:

25      • **STIPULATION TO STRIKE THE DECLARATION OF MIKE KORTAS AND
26        PERMIT THE DELCARATION TO BE RE-FILED AND [PROPOSED] ORDER**

27  on the interested parties in this action as follows

28

────────────────────────────────────────────
                        PROOF OF SERVICE

*GREELEY THOMPSON LLP*
*600 B STREET, SUITE 2150*
*SAN DIEGO, CA 92101*

_____ **BY MAIL:** I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____ **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

__XXX__ **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| | |
|---|---|
| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 2, 2023, at San Diego, California.

_____
Ekaterina Cherniaevskaia

# EXHIBIT 14

1   David M. Greeley, Esq. (SBN 198520)
2   James R. Thompson, Esq. (SBN 260083)
    GREELEY THOMPSON LLP
3   600 B Street, Suite 2150
    San Diego, California 92101
4   Telephone: (619) 658-0462
    dgreeley@greeleythompson.com
5
6   MITCHELL SANDLER LLC
    Arielle Stephenson (SBN 336434)
7   1120 20th Street, NW
    Washington, DC 20036
8   Telephone: (202) 886-5267
    astephenson@mitchellsandler.com
9
    *Attorneys for Defendant NEXA Mortgage LLC*
10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                     **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all    Case No. 37-2022-00031816-CU-OE-NC
14  others similarly situated,
                                                        **PROOF OF SERVICE**
15                      Plaintiff,

16  v.

17  NEXA MORTGAGE, LLC, et al.

18                      Defendants.
19

20          I, Ekaterina Cherniaevskaia, declare as follows:

21          I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22  Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is katia@greeleythompson.com

24          On October 2, 2023, I caused to be served true copies of the following document(s) described as:

25      • **STIPULATION TO STRIKE THE DECLARATION OF MIKE KORTAS AND
26        PERMIT THE DELCARATION TO BE RE-FILED AND [PROPOSED] ORDER**

27  on the interested parties in this action as follows

28

_____   **BY MAIL:**  I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____   **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

 XXX    **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| | |
|---|---|
| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated |

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 2, 2023, at San Diego, California.

_____
Ekaterina Cherniaevskaia

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

# EXHIBIT 15

1  David M. Greeley, Esq. (SBN 198520)
   James R. Thompson, Esq. (SBN 260083)
2  GREELEY THOMPSON LLP
   600 B Street, Suite 2150
3  San Diego, California 92101
   Telephone: (619) 658 0462
4  dgreeley@greeleythompson.com

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**10/04/2023** at 02:53:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

5  *Attorneys for Defendant NEXA Mortgage, LLC*

6

7

8          **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

9                          **CENTRAL DIVISION**

10  DAMIAN DIAZ, individually and on behalf of          Case No.: 37 2022-00031816 CU-OE NC
    all others similarly situated,
11                                                      **DECLARATION OF MIKE KORTAS IN
                                                        SUPPORT OF NEXA MORTGAGE, LLC'S**
12              Plaintiffs,                             **MOTION TO COMPEL ARBITRATION
                                                        AND TO STAY THE ACTION**
13         v.

14  NEXA MORTGAGE, LLC, et al.,                         Department: N 28
                                                        Judge: Hon. Earl Maas, III
15              Defendants.
                                                        Complaint Filed: August 3, 2023
16                                                      Trial Date: Not set

17

18         I, Mike Kortas, declare:

19         1.     The facts set forth are based on my own personal knowledge, and if called upon to testify,

20  I would competently testify under oath.

21         2.     I am the Chief Executive Officer of NEXA Mortgage, LLC ("NEXA").

22         3.     I currently reside in the state of Arizona.

23         4.     I submit this Declaration in support of Defendant's Motion to Compel Plaintiff's Claims

24  to Arbitration.

25         5.     I am familiar with NEXA's business operations and licensing.

26         6.     I am also familiar with NEXA's onboarding process, the process for keeping employee

27  personnel records, and have reviewed Plaintiff Damian Diaz's ("Plaintiff") personnel file while at

28

1   NEXA.

2       7.     NEXA is licensed as a mortgage broker in forty-eight (48) states, including California.

3       8.     NEXA's primary place of business is Arizona.

4       9.     In order to be licensed, NEXA must submit applications through the Nationwide
5   Mortgage Licensing System "NMLS" or the state's individual regulatory authority if that state does not
6   use NMLS.

7       10.    NEXA does business in forty-eight (48) states and has customers in each state it is
8   licensed in.

9       11.    NEXA sells mortgage loans through individual loan officers who connect with customers.
10   NEXA does not fund loans, but it works with lenders who close the loan for the customer.

11       12.    After a loan is closed by the lender, the loan that NEXA brokered is then typically re-sold
12   on the secondary market.

13       13.    NEXA employs loan officers to sell mortgage loans through its lending partners, and it
14   employs loan officers in forty eight (48) states.

15       14.    Individual loan officers must also be licensed as a mortgage loan originator and indicate
16   on their personal NMLS account that NEXA is the entity sponsoring them, once they begin employment
17   at NEXA.

18       15.    On July 13, 2020, Plaintiff was hired as a loan officer and executed the "NEXA
19   MORTGAGE LLC OUTSIDE LOAN OFFICER EMPLOYMENT AGREEMENT" ("Employment
20   Agreement").

21       16.    NEXA requires employees to submit their signed Employment Agreement through
22   DocuSign and requires that each page of the Employment Agreement be initialed, along with a printed
23   name, signature, and date on the last page.

24       17.    On July 13, 2020, Plaintiff initialed each page of the Employment Agreement and printed,
25   signed, and dated the last page, through DocuSign, bearing DocuSign Envelop ID 059DABD4 09FA
26   4109-8BC5-8E4395576A67. The Agreement was submitted as Exhibit A to Defendant's Motion to
27   Compel.

28

2

1      18.    On or around July 2020, Plaintiff caused his individual NMLS account to indicate that

2 NEXA was his sponsoring entity. This information was obtained by reviewing the NMLS Consumer

3 Access page.

4      19.    The Employment Agreement contains an arbitration provision stating "In the event of any

5 dispute between the parties concerning or arising out of their employment relationship, it shall be

6 resolved through binding arbitration in accordance with the rules of JAMS Arbitration .."). Employment

7 Agreement at §VIII.

8      20.    The Employment Agreement further specifies that "Employee's primary duties shall be

9 to utilize his/her knowledge, training and experience to solicit, originate, and facilitate the processing

10 and closing of loan products and financing of residential real estate transactions on behalf of the

11 Company's customers." Employment Agreement at II(A).

12      21.    The Employment Agreement also requires that employees comply and be familiar with

13 the federal Truth in Lending Act ("TILA") and Real Estate Settlement Procedures Act ("RESPA").

14 Employment Agreement at § III(E).

15      22.    While employed, Plaintiff sold twenty three (23) loans, amounting to $11,744,222 in total

16 loan amount.

17      23.    The loans were funded by seven (7) different lenders, located in two (2) states, Michigan

18 and California.

19      24.    Plaintiff brokered loans, which ultimately closed, in two (2) states, California and Texas.

20      25.    In connection with facilitating the application for and processing of mortgage loan

21 applications, NEXA and its loan officers use mail, email, internet and telephone as a routine and

22 necessary part of the loan application process it performs in originating loans.

23      26.    Additionally, the use of wire transfers, credit card transactions, and other banking

24 functions is routine between loan officers, lenders, consumers as well as various service providers

25 engaged by and through NEXA to facilitate the origination of the loan and the loan application approval

26 process.

27      27.    I declare under the penalty of perjury under the laws of the United States and the State of

28

1 | California that the foregoing is true and correct.

2 | Executed August 21, 2023, at Gilbert, Arizona.

Mike Kortas

DECLARATION OF MIKE KORTAS IN SUPPORT OF DEFENDANT NEXA MORTGAGE, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION
Case No.: 37-2022-00031816-CU-OE-NC

# EXHIBIT A

Welcome to **NEXA Mortgage**,

We are excited to have you join us. Here you will find what we need to get you started at NEXA Mortgage. It's a very fast process if you can accomplish these easy steps right away.

**STEP 1**: Please review the attached video and acknowledge it in the attached paperwork:
http://tiny.cc/antimoney

**STEP 2**: Please complete all paperwork attached
a. There can be no blank spaces, please enter N/A or none if appropriate
b. May be completed electronically but must have a certificate of digital signature unless signed by hand

**STEP 3**: Please provide the following documents
a. Color copy of either a) US Passport or b) Driver's License and Social Security Card.
b. Last years W2 along with this years most recent YTD paystub (must be mortgage industry related)

**STEP 4**: Please give NEXA access to NMLS by establishing a relationship.
a. Update your employer to "NEXA Mortgage, LLC" (must match exact)
b. Contact NMLS directly if you have any questions on this process as they are a great resource
c. DO NOT contact any state regulators unless NEXA requests you to

**FINAL STEP**: Please email all of the following information to your onboarding specialist once all steps above have been completed. Do not send until all steps or documents are completed.
a. Completed paperwork with no blank spaces as described in Step #2
b. All documents in Step #3
c. Confirm in your email to your onboarding specialist that you have in fact granted NEXA access to your NMLS for sponsorship (your previous employer should be aware at this stage you are moving)
i. Oregon and Washington may have additional onboarding costs due to home office licensing costs.

**HAVE QUESTIONS STILL?** either…
a. Login to our live video support center at https://zoom.us/my/nexasupport
b. Talk to the original Loan Officer that asked you to join NEXA
i. You can even meet with them in our support center

Once we have all of the required items we will immediately setup your access and LOS so you can get started right away. But don't hesitate to ask us any questions at all.

**NEXA MORTGAGE LLC**

**OUTSIDE LOAN OFFICER EMPLOYMENT AGREEMENT**

THIS EMPLOYMENT AGREEMENT made and entered into this __13__day of _____July_____, 2020, is made by and between NEXA Mortgage LLC, successors, assigns and subsidiaries (collectively "Employer" or "Company" or "NEXA"), and ___Damian Diaz___ ("Employee" or "Outside Loan Officer") (collectively the "Parties").  Employee has been offered the position of an Inside Loan Officer but has elected to work in the capacity of an Outside Loan Officer.

## I.      **EMPLOYMENT**

A.      Either Employer or Employee may terminate this Agreement at any time, for any or no reason, with or without cause. Except for the provisions relating to the protection of NEXA's Confidential and Proprietary information, and the non-solicitation restrictions and covenants contained herein which continue beyond the termination of employment, this contract is considered at-will, meaning either party may terminate the employment relationship at any time for any or no reason. There is no guarantee of continued employment and Employer does not have term employment contracts, oral or written, express or implied.  Upon termination of employment, Employee may not perform any services on behalf of Employer concerning a borrower unless specifically pre-authorized in writing by an officer of the Company as set forth in Exhibit A.

B.      <u>Part-Time Status</u>.   Unless designated as such, Employee's employment is required to be considered on a full-time basis and Employee may not simultaneously work with any other Company unless authorized by an officer of the Company as set forth in Exhibit A.  In the event Employee and Company agree to part-time employment, it must be reflected on and subject to the limitations set forth in Exhibit A.

## II.     **DUTIES**

A.      Employee shall be employed as an Outside Loan Officer for Employer. Employee's primary duties shall be to utilize his/her knowledge, training and experience to solicit, originate, and facilitate the processing and closing of loan products and financing of residential real estate transactions on behalf of the Company's customers.

B.      Employee agrees to spend a majority of work time each work week away from Company's office or other place of business to perform his/her services.  Employee agrees that s/he will not treat his/her home as an office of NEXA and will not customarily or regularly conduct any business on a consistent basis from his/her home.  Employee recognizes that the position of Outside Loan Officer requires Employee to meet and call on clients, referral sources, realtors, and business prospects at their homes and places of employment or in other social settings away from any NEXA office.

C.      Employee shall at all times possess a valid motor vehicle driver's license and shall provide evidence thereof at time of employment and thereafter at any time requested by NEXA. Employee shall, at all times, possess valid motor vehicle insurance as required by the state in which the motor vehicle is licensed. Employee shall provide evidence thereof at time of employment and thereafter at any time requested by NEXA. If Employee's driver's license or insurance is revoked, suspended or discontinued for any reason, Employee must notify NEXA immediately of the revocation, suspension, or discontinuance action.

D.      Employee must know, remain familiar with, and comply with all applicable laws, regulations and industry standards, as well as all Company rules, procedures and policies.  Employee is responsible for abiding by all lending laws and may not mislead, alter, falsify or fraudulently change any documentation or commit fraud in any manner with relation to any loan file at any stage of the loan process.  Employee may not steer customers to loans in order to increase or maximize personal compensation.  Employee may not encourage any customer to enter into a loan unless the Outside Loan Officer has a good faith belief that the customer has the ability to repay the loan.  Employee may not assist a customer in closing a loan if Employee has sufficient reason to believe the customer has provided materially false information in connection with the mortgage application.  Employee shall immediately report any conduct of which s/he becomes aware, in violation of the above, to the president of the Company.

E.      Employee must immediately report to the Company any lawsuits, complaints, investigations or other similar actions which involve Employee's duties on behalf of the Company and/or which could potentially affect Employee's licensing status or ability to perform his/her job for the Company.

F.      As a condition of employment, Employee must at all times be able to meet any and all applicable qualifications and standards required for Loan Officer Licensure under the SAFE Act.  Employee must remain current on any and all applicable registration, licensing and training obligations required under the SAFE Act and/or any other state, federal or local laws pertaining to Loan Officer Certification or standards.  Employee is not entitled to commission on any loan originated at any time when Employee was not properly registered. Employee may only originate loans in the state where s/he is licensed and Employee and/or his/her Branch are physically located.

G.      Employee must adhere to the Company's pricing Policy, which requires Employee to adhere to his/her assigned Base Price in connection with his origination activities on behalf of the Company and adhere to the collection of mandatory fees required by the Company and/or its Lenders.  Employee may deviate from that base price only if authorized in advance by an authorized officer of the Company as set forth in Exhibit A.

H.      Employee may not at any time engage in marketing the Company, use the Company's name or a facsimile of any marketing, or advertise a product sold by the Company without the Company's prior express permission. Employee may not make any representations as an Employee on any social networking, blog or internet site concerning the Company, or its products and/or services without the prior express permission of the Company.

III.　　　　**COMPENSATION**

A.　　Base Wage.  To the extent Employee works in any state where an Employee classified as Outside Sales is required to be paid a minimum wage, Employee will receive a base salary equivalent to the minimum wage for all hours worked.

B.　　Commission of Closed End Residential Mortgage Loans.  Subject to the terms and conditions set forth herein, Employee's commission on closed end residential mortgages will be calculated by applying a standard number of basis points as set forth in Exhibit A applied to the volume of any loan that loan officer originated and closed in a month, less any expenses associated or attributable to Loan originator's business activities, including but not limited to marketing, processing support, licensing fees, Base Wages, legal fees, credit reports, appraisals, costs advanced on loans that do not close, Corporate Allocations as set forth on Exhibit A, or other approved expenses.  Notwithstanding the foregoing, loan level expenses attributable to closed loans will not impact Employee's compensation.

C.　　Other Commission.  Subject to the terms and conditions set forth herein, Employee will be entitled to receive commission on commercial loans, reverse mortgages and open-ended mortgages he/she originates and that close as set forth in Exhibit A.  A commercial loan is any loan that is secured by a property utilized for commercial purposes, including the purchase of a property that would include more than four separate dwelling units.

D.　　Employee is entitled to all employee benefits as set forth in the Company Handbook provided that the Company may in its discretion change or eliminate those benefits at any time with or without notice.

E.　　Employee is only considered to have earned and be entitled to payment of commission on loans once they have been sold on the secondary market by the Lender and the period for any early payment default or early pay-off has expired. Notwithstanding, the Company may advance the commission on loans once they have been closed under Employee's supervision.  In the event such commission is advanced but is later deemed un-earnable as a result of any early payment default or early pay-off, the amounts advanced will be subtracted from Employee's net commission in calculating any unearned commission not yet paid to Employee.  No payment will be advanced, nor commission paid on loans that Employee did not originate, or that were not closed while under Employee's authorized supervision. It is understood that Employee is not entitled to commission simply for procuring a loan.  As defined herein, a loan is not closed unless and until the loan has gone through closing, all monies have funded, all rescission periods have expired, and all proper documentation has been submitted in accordance with RESPA, TILA, and applicable Lender requirements.

F.　　Prospective Compensation Adjustments.  Employee's compensation will not as a matter of course be reviewed or adjusted, and generally will not be adjusted more than once in any six-month period.  In the event an Employee's compensation is evaluated for adjustment, a variety of criteria shall be considered including pull through rate, quality of loan files, loan volume, seniority, overall sources of origination, adherence to pricing and origination policies,

loan performance, any relevant competitive forces impacting Employee's customer base, and any relevant macroeconomic trends will be reviewed.

G.      <u>Minimum Volume Threshold</u>. A major part of the Employee's job is to monitor the processing/closing of each loan they originate and to verify that all the information submitted is true and accurate, and to ensure that all fees and expenses to be borne by borrower are in fact paid by the borrower. Employee understands that the Company may upon notice to Employee, apply a Minimum Volume Threshold to future commission calculations in subsequent months, in the event it suffers any losses from early payment defaults, buybacks, early pay-offs, or repeated violations of any Pricing Policies. The Minimum Volume Threshold will establish a minimum dollar amount of volume which Employee must generate before Employee begins to earn commission in accordance with the Calculations set forth herein.

H.      Employee agrees that within 30 days of the receipt of any commission checks, s/he will bring to Employer's attention, in writing, any and all objections, disputes, or concerns regarding omissions or errors in connection with commissions paid. Employee understands that if no such written dispute is initiated, Employee's silence constitutes an acknowledgement that commissions were properly classified and paid.

I.      <u>Severance</u>. Subject to each and every term and conditions set forth above, in the event of termination, so long as Employee does not materially breach any term or condition of this Agreement or otherwise violate any fiduciary duty to Employer, Employee will receive as a severance a percentage of the amount of commission Employee could have, consistent with the terms and conditions of this Agreement, been advanced on loans in his/her pipeline that close within 30 days following termination.

## IV. EMPLOYEE REFERRAL PROGRAM

A.      Employee shall be eligible to receive an override on Eligible Recruits so long as Employee has either (i) produced at least 1 closed loan that month, or (ii) referred at least 2 loan officers to the Company that month.

B.      Eligible Recruits shall include any loan officer that as determined in the Company's sole discretion, was originally and formally introduced to the Company by Employee. First Generation Eligible Recruits must be directly referred to the Company by Employee. Second Generation Eligible Recruits are Eligible Recruits of First Generation Eligible Recruits. Third Generation Eligible Recruits are Eligible Recruits of Second Generation Eligible Recruits.

C.      Subject to all terms set forth herein, Employee's Override shall be a percentage as set forth in Exhibit A of the Net Broker Fees received by the Company on loans originated by Employee's Eligible Recruits in a month. The Net Broker Fee is determined by reducing the Broker Fee paid to the Company by 25 Bps. The Net Broker Fee includes fees paid to the Company by any Lender or Borrower (as applicable) as compensation for originating the loan. Maximum compensation payout is limited to $3M of monthly volume for any employee referral.

D.      For the Net Broker Fees originated through Second Generation Eligible Recruits to count

towards Employee's override, there must be five or more Active Eligible Recruits in the First Generation. For the Net Broker Fees originated through Third Generation Eligible Recruits to count towards Employee's override, there must be ten or more Active Eligible Recruits in the First Generation. To be considered "Active" an Eligible Recruit must have closed at least one loan in the applicable month.

E.   Forfeiture of Override.  Employee shall forfeit any override in any month if it is found that they have referred a borrower to any person who is or may be an Eligible Recruit (any generation) without the express written consent of an authorized Officer of the Company as set forth in Exhibit A. It is strictly prohibited to refer any borrower to any other loan officer Employee who is directly or indirectly recruited to the Company without prior written authorization.

F.   Suspension of Override. Employee shall be suspended from participating in the Override for at least one month (or more if determined in the Company's discretion) following (i) any repeated violation of the Pricing Policy within any 90 day period; (ii) the determination that Employee has violated the anti-referral provisions of this Agreement; or (iii) any violation of federal or state banking laws or regulations.

G.   Post Termination Override.  In the event Employee remains employed by the Company for at least three years consecutively and does not become employed by another residential mortgage lender or broker following termination, Employee shall continue to receive the override as calculated herein following termination, provided however, that the Post Termination Override shall cease permanently if the Company has reason to believe (i) Employee directly or indirectly refers a borrower to a loan officer on which he could receive a post termination override, or (ii) Employee never directly or indirectly solicits any NEXA employee he directly or indirectly recruited to leave the Company or work for another entity.

## V. CONFIDENTIAL INFORMATION, TRADE SECRETS, AND NONSOLICITATION

A.   Employee acknowledges that by reason of his/her employment hereunder, Employee will occupy a position of trust and confidence with Employer and that Employee will have access to confidential and proprietary information and trade secrets of Employer, all of which are the unique and valuable property of Employer. Employee acknowledges that, among other things, its business methods, leads, loan programs, advertising programs, referral sources, marketing strategies, software, investor lists, and employer's documentation (the "Confidential Information") have been developed through the expenditure of substantial time, effort and money which Employer wishes to maintain in confidence and withhold from disclosure to other persons. Accordingly, as a material inducement to Employer to enter into this Agreement, Employee acknowledges that s/he will become intimately involved and/or knowledgeable in regard to Company's business and will be entrusted with Company's Confidential Information, and both during his/her employment and after any termination thereof, Employee will use such information solely for Company's benefit, and maintain as secret and will not disclose any of the Confidential Information to any third party (except as Employee's duties may require) without Company's prior express written authorization.

B.   Employee acknowledges that all documents, files, electronic records or data, or records or materials of any sort pertaining to Company's business, whether prepared by Employee or otherwise coming into Employee's possession or control, are the sole and exclusive property of Employer and that Employee has no right to keep or use such documents or things following termination of his/her employment.  Employee agrees that, upon any termination of employment, Employee shall not retain any such documents or things in his/her possession and will immediately return them to Employer.

C.   Employee agrees that during his/her employment with Company s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity solicit any customer or client or prospective customer or client of Company to engage in or transact business with himself/herself or any other person or entity for services provided by Company.

D.   Employee further acknowledges that all leads provided to or worked on by Employee and loans in process are Employer's property.  Employee agrees to provide upon termination a written account of any and all open leads, business prospects, and/or loans in process as of the date of his/her termination and agrees not to take any action to divert such loans to a competitor or away from Company.

E.   Employee agrees that for a period of twelve (12) months following the cessation of employment with Employer (such period <u>not</u> to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein) s/he will not directly or indirectly, on behalf of himself/herself or any other individual, organization, or entity, solicit, encourage or facilitate any customer or client who has closed a loan with Company in the preceding 12 months, to refinance or otherwise prematurely pay-off such loans.

F.   Employee agrees that during his/her employment with Employer and for a period of twelve (12) months after the termination of employment with Employer (such period not to include any period(s) of violation or period(s) of time required for litigation to enforce the covenants herein), Employee will not on behalf of himself or on behalf of any other person, firm, or entity, directly or indirectly solicit any person employed by the Company (as an employee or contractor) within 12 months preceding Employee's termination, to leave the Employer or form or join another entity.

G.   Employee agrees to show this Agreement to any subsequent employer with whom s/he works within 12 months following the termination of employment with Company.

H.   Employee agrees that the restrictions herein will not interfere with or unduly limit his/her ability to obtain suitable alternative employment following termination of employment.  Employee acknowledges that the protections afforded to Company herein, are reasonable and necessary.  Employee agrees that Company shall be entitled to the cost of all legal fees and expenses incurred in investigating and enforcing the covenants contained herein, including fees and expenses incurred prior to filing suit.

## VI.   NO EXISTING RESTRICTIVE COVENANTS

Employee verifies that no "non-compete" non-solicitation or confidentiality agreements with any other company, person or entity are binding upon him/her as of the date this Agreement.  Employee agrees s/he is not utilizing the confidential information obtained from a prior employer in performing any services on NEXA's behalf.

## VII.   FORUM SELECTION/JURISDICTION

In the event that any litigation needs to be brought to obtain temporary injunctive relief and/or enforce or challenge the arbitration provisions herein, or should employee opt out of the arbitration provisions above or assert claims not covered by the arbitration provision, the parties agree that any litigation between the parties may only be brought in Federal District Court in Arizona, or in the event subject-matter jurisdiction is lacking, in an Arizona State Court of competent jurisdiction.  By execution of this Agreement, the parties are consenting to personal jurisdiction in Arizona limited to such matters.

## VIII.   ARBITRATION/GOVERNING LAW/CONSENT TO JURISDICTION

This Agreement is made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona.  In the event of any dispute between the parties concerning or arising out of their employment relationship, it shall be resolved through binding arbitration in accordance with the rules of JAMS Arbitration, provided however, that notwithstanding any rules in JAMS to the contrary, employees' claims may not be joined with the claims of any other person or Employee and there will be no allowance for Employee to pursue or participate in relief on a class or collective action basis against the Company arising out of the employment relationship or this agreement.  Furthermore, this Agreement does not prevent any party from seeking relief in a state or federal court located in Arizona, arising from any action that violates section IV of this Agreement.  Notwithstanding any JAMS rule to the contrary, the parties will share equally in the cost of such Arbitration, and shall be responsible for their own attorneys' fees, provided that if the Arbitration is brought pursuant to any statutory claim for which attorneys' fees were expressly recoverable, the Arbitrator shall award such attorneys' fees and costs consistent with the statute at issue.  Moreover, if the claim is de minimus in comparison with the amount of the arbitration fee, Employer may, in its discretion, agree to pay Employees share of the Arbitration Fee. Nothing herein shall preclude or limit Employee from filing any complaint or charge with a State, Federal, or County agency.  Employee understands that by agreeing to this provision, s/he is waiving the right to a jury and the right to go to court for any claims covered herein. Employee may opt out of this provision of the Agreement, thus relieving both parties of the obligations of this provision, by (1) sending a notarized letter to the attention of Employee's immediate supervisor copied to the Company's Human Resources department, both sent via Certified Mail within 30 days of the execution of this Agreement expressly opting out of this provision; or (2) striking the entirety of this paragraph and initialing here as follows:

DocuSign Envelope ID: 95DDABD4-095A-4109-8B65-8E4395576A67

## IX.    VOLUNTARY AGREEMENT

Employee acknowledges that s/he has been given sufficient time and opportunity to review, consider, and obtain advice in connection with the execution of this Agreement, and that Employee has not been forced to sign this Agreement, or any part thereof under duress.


## MISCELLANEOUS

A.    This Agreement sets forth the entire understanding and agreement of the parties hereto and fully supersedes any and all prior or contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.  No prior negotiations or drafts of this Agreement shall be used by either party to construe the terms or to challenge the validity hereof.

B.    This Agreement may not be modified except in writing between all parties hereto. No oral promises, assurances, agreements, or understandings either prior or subsequent to the execution of this Agreement are binding or may be relied upon except and unless incorporated herein or incorporated by written modification as permitted herein. Notwithstanding the foregoing, the parties agree that receipt of an email by Employee sent by the Company's President entitled Employment Contract Modification, that requires any receiving employee to acknowledge receipt thereof, shall be treated as a "writing" sufficient to modify the terms of this contract.

C.    No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any party hereto.

D.    The Parties agree that this Agreement shall be severable, meaning that if any provision is held to be unenforceable, it shall not affect the validity or enforceability of the remainder of the terms and provisions of this Agreement.


IN WITNESS WHEREOF and intending to be legally bound hereby, the parties have read, understood and executed this Agreement the day and year above written.


Outside Loan Officer                                    NEXA Mortgage, LLC

DocuSigned by:
*Damian Diaz* 7/13/2020
AC47E593DFDA481...
Damian Diaz

DocuSigned by:
*Mike Kortas* 7/10/2020
5A1A54E6B1114EB...
Mike Kortas

DocuSigned by:
*Joseph Stunzi* 7/15/2020
E61A991B2257485...
Joseph Stunzi

## Exhibit A

This Addendum is attached to and incorporated into the Employment Agreement and at all times subject to the terms and conditions of said Employment Agreement.

1.  <u>Damian Diaz</u> shall be considered an Authorized Loan Officer for the Company as referenced in the Employment Agreement.

2.  Commission Calculations:
    a.  Basis Points applied on Closed End Residential Mortgage loans: <u>220 bps</u> bps minus $0.00 admin fee. (maximum is 220 bps)
    b.  Maximum Compensation. Notwithstanding the foregoing, the maximum commission credited on any closed end residential mortgage loan (subject to all expenses) is: $ <u>10,000.00</u> (maximum cap is $10,000.00)
    c.  Commission Percentage on Revenue of Open-ended Mortgages: 80%
    d.  Commission Percentage on Revenue of Commercial Loans: 80%
    e.  Commission Percentage on Revenue of Reverse Mortgages: 80%
    f.  In the event a loan is the result of a Company Lead or Sponsorship, the commission percentage or basis points set forth herein is reduced by 50%. A loan is the result of a Company Lead or Sponsorship if it directly results from a lead purchased by the Company, a relationship established or sponsored by the Company (including any marketing services agreement or affiliate program) or any advertising paid for by the Company.

3.  Employee Referral Program Override:

| Req'd 1st Gen Active Recruits | Generation Level | Override Percentage |
|---|---|---|
| 1 | 1 | 4% |
| 5 | 2 | 4% |
| 10 | 3 | 4% |

4.  <u>Part-Time Employment</u>. Only if both Company and Employee Initial as set forth herein (Company_____) / (Employee_____) then Employee's shall be employed on a part-time basis in which case Employee may not work more than 5 hours hours per week. Employees on Part-Time Status must request direct access to the Loan Origination System prior to submitting a loan to the Company.

DocuSign Envelope ID: 950DABD1-09FA-4109-8BC5-8E4395576A67

**Pricing Policy**

1. Loan Officer agrees to use lenders that pay NEXA Mortgage the appropriate compensation based on their compensation chosen within Exhibit A. Loan Officer must get prior management approval to use any lender that is not covering the minimum Loan Officer compensation.
    a. Loan Officer understands that there is no compensation and the Loan Officer forfeits any compensation without prior approval when applicable

Lender/Borrower Paid Comp (75 basis points) = LO Compensation (44 basis points)
Lender/Borrower Paid Comp (100 basis points) = LO Compensation (66 basis points)
Lender/Borrower Paid Comp (125 basis points) = LO Compensation (88 basis points)
Lender/Borrower Paid Comp (150 basis points) = LO Compensation (110 basis points)
Lender/Borrower Paid Comp (175 basis points) = LO Compensation (132 basis points)
Lender/Borrower Paid Comp (200 basis points) = LO Compensation (154 basis points)
Lender/Borrower Paid Comp (225 basis points) = LO Compensation (176 basis points)
Lender/Borrower Paid Comp (250 basis points) = LO Compensation (198 basis points)
Lender/Borrower Paid Comp (275 basis points) = LO Compensation (220 basis points)

2. Loan Officers understand that they must use lenders that at least meet their maximum compensation as outlined in Exhibit A.

3. Lender spreadsheets within NEXA University contain Lender Paid Compensation and maximums. Loan Officers understand the need to reference that chart for pricing policy and accuracy.

_Damian Diaz_
AC47E589DFDA481...
Loan Officer

7/13/2020
Date

# EMPLOYMENT APPLICATION

| APPLICANT INFORMATION | | |
|---|---|---|
| Damian | Enrique | Diaz |



| | | C |
|---|---|---|



| | | | | |
|---|---|---|---|---|
| CURRENT COMPANY | ADDRESS | | | |
| Pacific Lending | 401 S. Melrose Ave 102 | | | |
| JOB TITLE | RESPONSIBILITIES | FROM (MM / YY) | | UNTIL (MM / YY) |
| Loan Officer | Originate Loans | 10/2017 | | 07/2020 |
| SUPERVISOR NAME | PHONE NUMBER | EMAIL ADDRESS | | |
| Shaun Espino | 9096411497 | shaune@pacificlending.com | | |
| REASON FOR LEAVING | MAY WE CONTACT YOUR PREVIOUS SUPERVISOR | | | |
| Lack of support | FOR A REFERENCE  YES ☒   NO ☐ | | | |
| PREVIOUS COMPANY | ADDRESS | | | |
| Ony Glo | 3250 Wilshire Blvd | | | |
| JOB TITLE | RESPONSIBILITIES | FROM (MM / YY) | | UNTIL (MM / YY) |
| Loan Officer | Originate Loans | 04/2013 | | 10/2017 |
| SUPERVISOR NAME | PHONE NUMBER | EMAIL ADDRESS | | |
| Yvette Chavez | 3104215544 | bov1978@gmail.com | | |
| REASON FOR LEAVING | MAY WE CONTACT YOUR PREVIOUS SUPERVISOR | | | |
| Wanted a closer office to my home | FOR A REFERENCE  YES ☒   NO ☐ | | | |
| PREVIOUS COMPANY | ADDRESS | | | |
| Lone Star Financial | 410 S Melrose | | | |
| JOB TITLE | RESPONSIBILITIES | FROM (MM / YY) | | UNTIL (MM / YY) |
| Loan Officer | Originate Loans | 10/2009 | | 04/2013 |
| SUPERVISOR NAME | PHONE NUMBER | EMAIL ADDRESS | | |
| Ignacio Ventura | 7604961042 | n/a | | |
| REASON FOR LEAVING | MAY WE CONTACT YOUR PREVIOUS SUPERVISOR | | | |
| Wanted a higher split | FOR A REFERENCE  YES ☒   NO ☐ | | | |

## PROFESSIONAL REFERENCES

| FIRST ME | LAST NAME | RELATIONSHIP | |
|---|---|---|---|
| Abraham | Vargas | Friend | |
| FIRST NAME | LAST NAME | RELATIONSHIP | |
| Jeff | Sims | Friend | |
| FIRST NAME | LAST NAME | RELATIONSHIP | |
| Bernie | Nacional | Friend | |

## MILITARY SERVICE

| BRANCH | FROM (MM / YY) | UNTIL (MM / YY) |
|---|---|---|
| Marine Corps | 10/1982 | 07/1988 |

| RANK AT DISCHARGE | TYPE OF DISCHARGE | IF OTHER THAN HONORABLE, EXPLAIN |
|---|---|---|
| E5 | Honorable | I also served 9 years in the California National Guard |

## EDUCATION HISTORY

| HIGH SCHOOL - FULL NAME | STATE | DID YOU GRADUATE | TYPE OF DEGREE |
|---|---|---|---|
| Spur High School | Texas | YES ☒   NO ☐ | Diploma |
| COLLEGE - FULL NAME | STATE | DID YOU GRADUATE | TYPE OF DEGREE |
| National University | CA | YES ☐   NO ☒ | n/a |
| ADDITIONAL EDUCATION - FULL NAME | STATE | DID YOU GRADUATE | TYPE OF DEGREE |
| Watterson College Pacific | CA | YES ☒   NO ☐ | Paralegal Degree |

## ADDITIONAL INFORMATION

| | |
|---|---|
| WHAT IS THE DATE YOU INTEND TO TRANSFER YOUR LICENSE TO NEXA MORTGAGE? (MM / DD)  As soon as possible | WHO REFERRED YOU TO NEXA MORTGAGE?  Joseph Stunzi |
| ARE YOU A CITIZEN OF THE UNITED STATES?  YES ☒   NO ☐ | ARE YOU AUTHORIZED TO WORK IN THE U.S.  YES ☒   NO ☐ |
| HAVE YOU EVER WORKED FOR NEXA MORTGAGE?  YES ☐   NO ☒ | IF YES TO PREVIOUS QUESTIONS, WHEN? (OR NA)  n/a |
| HAVE YOU EVER BEEN CONVICTED OF A FELONY?  YES ☐   NO ☒ | IF YES TO PREVIOUS QUESTIONS, EXPLAIN? (OR NA)  n/a |
| DO YOU HAVE AN ACTIVE NMLS IDENTIFIER NUMBER?  YES ☒   NO ☐ | HAVE YOU EVER HAD A NMLS LICENSE REVOKED OR SUSPENDED FROM ANY STATE?  YES ☐   NO ☒ |
| The following information is used for identification and statistical purposes it is not used in any manner considered discriminatory under the eeoc guidelines | RACE  Hispanic | SEX  Male |

## DISCLAIMER AND SIGNATURE

*I certify that my answers are true and complete to the best of my knowledge.*
*If this application leads to employment, I understand that false or misleading information in my application or interview may result in my release. I authorize employer to verify with references and past employers any information the employer may deem appropriate.*

| SIGNATURE | DATE (MM / DD / YYYY) |
|---|---|
| Damian Diaz  AC47E593DFDA481... | 7/13/2020 |

## Acknowledgements (LO)

## DO NOT INITIAL OR SIGN WITHOUT READING.

1. Pre Funding Quality Control Procedures
   a. All files must be submitted to NEXA for Pre Funding QC, unless they are processed by a NEXA Endorsed Processor.
2. File Orientation
   a. Upon affiliation, all originators and their processors are required to complete "New Loan Officer" Onboarding within NEXA University. At this time, important policies and procedures are reviewed. Files may be held up until this is completed.
3. Suitability
   a. The loan originator must ensure the loan is 'suitable' for the borrower. This means there is a clear benefit to the Borrower ,i.e. lower rate, better terms, etc.
4. Early Payoff–Premium Refund
   a. Lenders will recover any rebates and commission paid out on files which pay off prematurely, usually within 6 months. This means if you close a loan for Joe Borrower in June and it pays off just 3 months later in September, the lender will usually recover the rebate. Originators are responsible for return of rebate and commission paid in these situations, including if employment has already terminated. Keep in touch with your clients!
5. State Licensing
   a. Originating a loan in a state in which you are not properly licensed/registered or with proper pay status will result in loss of commissions and/or termination.
6. Loan Fall Out
   a. Originators who submit loans irresponsibly and who have excessive fall out will lose access to lenders and jeopardize their relationship with NEXA.
7. Should have known…
   a. If you were aware of, or should have been aware of fraud within a file, from income, to employment to occupancy, you will be terminated and pursued aggressively. If your name is on a file, and there's fraud on that file, you are responsible. No excuses.

DocuSigned by:

Damian Diaz                    7/13/2020
AC47E593DFDA48...
Signature and Date

DocuSign Envelope ID: 959DABD4-095FA-4109-8BC5-8E4395576A67

**NEXA Mortgage, LLC Loan Originator Certification of Receipt of and Agreement to**

**Comply with the Anti-Money Laundering Program (AMLP)**

I, Damian Diaz _____, acknowledge that the activities I perform for NEXA Mortgage, LLC (NEXA) constitute originating residential mortgage loans under the definitions included in the Financial Crimes Enforcement Network's (FinCEN) final rule "Anti-Money Laundering Program and Suspicious Activity Report Filing Requirements for Residential Mortgage Lenders and Originators" published at 77 FR 8148 – 8160 on February 14, 2012.

I have read NEXA's AML Program and its initial training materials. I understand the program's requirements and agree to comply with all related company policies and procedures. I understand that my actions affect NEXA's compliance with Federal and state statutes and regulations and my agreement to comply does not constitute NEXA exercising direct control over my activities. I understand NEXA will, from time to time, issue updated policies and procedures and offer training in order to comply with AMLP and related regulations. I agree as an independent Loan Officer to comply with these requirements and agree that I will participate in all related training or will provide NEXA with certified evidence of comparable training obtained on my own at my own expense. Such certified evidence will be presented to NEXA no later than the training date offered by NEXA when such training is required. I also understand that my participation in identifying AML or other suspicious activities including mortgage fraud falls under the requirements of not only NEXA's policies but also under the Federal and State statutes and regulations. I agree to support NEXA's efforts to prevent fraud, money laundering and financing terrorist activities, including reporting that may be required. I do understand since NEXA does not have direct control over my business activities that my failure to comply with NEXA's AML Program will constitute a breach of my agreement with NEXA and can subject my contract to immediate termination for cause. My signature below acknowledges my receipt, understanding and agreement to comply with the existing and future related policies as they may from time to time change. It also acknowledges I have reviewed and understand the initial training materials provided.

DocuSigned by:

Damian Diaz _____ Date: 7/13/2020 _____

AC47E593DFDA481...

Originator signature

**NEXA Mortgage, LLC - Employee Handbook - Policies & Procedures**
**Certification of Receipt of and Agreement to Comply**

I, Damian Diaz
_____, acknowledge that the activities I perform for NEXA Mortgage, LLC (NEXA) constitute originating residential mortgage loans. I have read NEXA's policies and procedures located on the NEXA website at www.NEXAmortgage.com I understand the requirements set forth and agree to comply with all policies and procedures described herein.

I understand that my actions affect NEXA's compliance with Federal and State statutes and regulations and my agreement to comply does not constitute NEXA exercising direct control over my activities. I understand NEXA will, from time to time, issue updated policies and procedures and may also offer training in order to comply with such policies and procedures and the related regulations. I agree as an Independent Loan Officer to comply with these requirements and agree that I will participate in all related training or will provide NEXA with certified evidence of comparable training obtained on my own at my own expense. Such certified evidence will be presented to NEXA no later than the training date offered by NEXA when such training is required.

My signature below acknowledges my receipt, understanding and agreement to comply with the existing and future related policies and procedures as they may from time to time change. It also acknowledges I have reviewed and understand the initial materials provided.

DocuSigned by:
*Damian Diaz*                                        7/13/2020
_____
Signature and Date

**Addendum: Current Fee Schedule**

All fees will be collected by NEXA and applied to future payroll.

**Background Check**: $75

**NMLS Fees**: All Sponsorship fees will be charged to the Loan Officer with a $40 accounting fee in addition to for each state they are sponsored in.

**Technology Fee**: $65/month, includes access to Calyx Point, NEXA Drive powered by Google, and @nexamortgage.com email.

**NEXA University Tuition**: $0/month ($0year).

**NEXAtouch (BNTouch):** $70/month + $0.04 per text. This is an optional item.

**Credit Reports**: Loan Officer will incur all credit report invoices plus a 10% accounting fee. The Loan Officer may opt to pay their credit report fees directly and avoid the 10% accounting fee. Cost will be deducted from Loan Officers payroll.

**Accounting Fee**: Loan Officer may incur up to a 10% accounting fee for any charges that are run through NEXA Mortgage accounting teams.

**Payroll Expenses**: All payroll expenses are charged back to the Loan Officer of which are incurred by NEXA Mortgage (ex: any employer matching taxes, unemployment taxes, FICA, workman's compensation costs, etc.)

**Miscellaneous:** All costs related to your employment will be charged back to the Loan Officer

_Damian Diaz_                                      7/13/2020
Signature and Date

## W2 Commission Calculation Acknowledgement

W2 commissions are much different than 1099 commissions. Please review carefully to avoid confusion when you receive your first W2 check.

Although we'd much prefer to pay you on a 1099 basis, HUD and some states require we pay you W2. We recommend you meet with your accountant for advice on how to complete your W4 form. Additionally, keep in mind we do allow you to reduce your taxes by submitting business expenses and use of a company provided credit card upon request.

**Sample W2 Commission**
Compensation $5000
Less Invoices -$100 (listed for example only)
Net Receipts $4900
Less Payroll Costs* -10% (*15%, 10%, 8% or 2% depending on YTD income)
=Gross LO Check: $4410

From the gross amount, standard withholding taxes will be applied according to your W4.

DocuSigned by:

_Damian Diaz_____        7/13/2020

Signature and Date

## <u>NEXA Mortgage - Loan Officer Production Policy</u>

This performance policy is designed to ensure that all team members of NEXA Mortgage strive to maximize their potential as Commission based Outside Loan Officers. NEXA Mortgage was founded on the principles of hard work to promote an income lifestyle for its Loan Officers that ensures security, stability and the potential for long term growth. Adhering to these minimum requirements will be the foundation of that growth and stability.

NEXA Mortgage, LLC has a production policy for all Loan Officers unless otherwise agreed by Management directly as outlined below.

Def. Production Probationary Period - The calendar month following a calendar month of no closings or measurable production.

Initial Employment:
- Must submit at least one transaction into active escrow within 30 days with all documents and disclosures needed to submit to an Investor with an established closing date.
- Inability to submit a transaction within a calendar month will result in a Production Probationary period and potential termination. All access for Loan Officer will be removed.
- After 2 additional weeks without any transactions, Loan Officer may be terminated from NEXA Mortgage, LLC without notice.
- Loan Officer is encouraged to request employment again at any time and is eligible for rehire.
- Loan Officer is required to manage these dates and will not require notification from Management as critical dates are passed.

Continued Employment:
- Loan Officer must close at least 2 transactions every calendar month
- Loan Officer must close at least 3 transactions every calendar month to be considered full-time
- Inability to close a transaction within a calendar month will result in a Production Probationary period and potential termination. All access for Loan Officer will be removed.
- Loan Officer is encouraged to request employment again at any time and is eligible for rehire.
- Loan Officer is required to manage these dates and will not require notification from Management as critical dates are passed.

Disclaimer - NEXA Mortgage, LLC and its members reserve the right to use discretion in the enforcement of this policy.

MLO Printed  Damian Diaz

MLO Signed  *Damian Diaz*
AC47E593DFDA481...

Date  7/13/2020



**Employment Eligibility Verification**
**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**
OMB No. 1615-0047
Expires 10/31/2022

▶**START HERE: Read instructions carefully before completing this form. The instructions must be available, either in paper or electronically, during completion of this form. Employers are liable for errors in the completion of this form.**

**ANTI-DISCRIMINATION NOTICE:** It is illegal to discriminate against work-authorized individuals. Employers **CANNOT** specify which document(s) an employee may present to establish employment authorization and identity. The refusal to hire or continue to employ an individual because the documentation presented has a future expiration date may also constitute illegal discrimination.

| Section 1. Employee Information and Attestation *(Employees must complete and sign Section 1 of Form I-9 no later than the **first day of employment**, but not before accepting a job offer.)* | | | |
|---|---|---|---|
| Last Name *(Family Name)*<br>Diaz | First Name *(Given Name)*<br>Damian | Middle Initial<br>E | Other Last Names Used *(if any)* |

| Address *(Street Number and Name)* | Apt. Number | City or Town | State | ZIP Code |
|---|---|---|---|---|
| ▮ | | ▮ | ▮ | ▮ |

| Date of Birth *(mm/dd/yyyy)* | U.S. Social Security Number | Employee's E-mail Address | Employee's Telephone Number |
|---|---|---|---|
| ▮ | | myloanconsultant760@gmail.c▮ | ▮ |

**I am aware that federal law provides for imprisonment and/or fines for false statements or use of false documents in connection with the completion of this form.**

**I attest, under penalty of perjury, that I am (check one of the following boxes):**

| ☐ 1. A citizen of the United States |
|---|
| ☒ 2. A noncitizen national of the United States *(See instructions)* |
| ☐ 3. A lawful permanent resident    (Alien Registration Number/USCIS Number): |
| ☐ 4. An alien authorized to work    until (expiration date, if applicable, mm/dd/yyyy):<br>Some aliens may write "N/A" in the expiration date field. *(See instructions)* |

*Aliens authorized to work must provide only one of the following document numbers to complete Form I-9:*
*An Alien Registration Number/USCIS Number OR Form I-94 Admission Number OR Foreign Passport Number.*

QR Code - Section 1
Do Not Write In This Space

**1.** Alien Registration Number/USCIS Number: _____

**OR**

**2.** Form I-94 Admission Number: _____

**OR**

**3.** Foreign Passport Number: _____

Country of Issuance: _____

| Signature of Employee<br>DocuSigned by:<br>*Damian Diaz* | Today's Date *(mm/dd/yyyy)* 7/13/2020 |
|---|---|

**Preparer and/or Translator Certification (check one):**

☒ I did not use a preparer or translator.    ☐ A preparer(s) and/or translator(s) assisted the employee in completing Section 1.
*(Fields below must be completed and signed when preparers and/or translators assist an employee in completing Section 1.)*

**I attest, under penalty of perjury, that I have assisted in the completion of Section 1 of this form and that to the best of my knowledge the information is true and correct.**

| Signature of Preparer or Translator | Today's Date *(mm/dd/yyyy)* |
|---|---|

| Last Name *(Family Name)* | First Name *(Given Name)* | | |
|---|---|---|---|

| Address *(Street Number and Name)* | City or Town | State | ZIP Code |
|---|---|---|---|

🛑 *Employer Completes Next Page* 🛑

DocuSign Envelope ID: 95DDABD1-09FA-4109-8BC5-8E4395576A67

**Employment Eligibility Verification**

**Department of Homeland Security**

U.S. Citizenship and Immigration Services

**USCIS**
**Form I-9**

OMB No. 1615-0047
Expires 10/31/2022

---

### Section 2. Employer or Authorized Representative Review and Verification

*(Employers or their authorized representative must complete and sign Section 2 within 3 business days of the employee's first day of employment. You must physically examine one document from List A OR a combination of one document from List B and one document from List C as listed on the "Lists of Acceptable Documents.")*

| Employee Info from Section 1 | Last Name *(Family Name)* <br> Diaz | First Name *(Given Name)* <br> Damian | M.I. <br> E | Citizenship/Immigration Status <br> Citizen |
|---|---|---|---|---|

| List A <br> Identity and Employment Authorization | OR | List B <br> Identity | AND | List C <br> Employment Authorization |
|---|---|---|---|---|

| List A | List B | List C |
|---|---|---|
| Document Title | Document Title | Document Title |
| Issuing Authority | Issuing Authority | Issuing Authority |
| Document Number | Document Number | Document Number |
| Expiration Date *(if any) (mm/dd/yyyy)* | Expiration Date *(if any) (mm/dd/yyyy)* | Expiration Date *(if any) (mm/dd/yyyy)* |
| Document Title | | |
| Issuing Authority | Additional Information | QR Code - Sections 2 & 3 <br> Do Not Write In This Space |
| Document Number | | |
| Expiration Date *(if any) (mm/dd/yyyy)* | | |
| Document Title | | |
| Issuing Authority | | |
| Document Number | | |
| Expiration Date *(if any) (mm/dd/yyyy)* | | |

**Certification: I attest, under penalty of perjury, that (1) I have examined the document(s) presented by the above-named employee, (2) the above-listed document(s) appear to be genuine and to relate to the employee named, and (3) to the best of my knowledge the employee is authorized to work in the United States.**

**The employee's first day of employment *(mm/dd/yyyy)*:** _____ *(See instructions for exemptions)*

| Signature of Employer or Authorized Representative <br> *Marissa Sanchez* | Today's Date *(mm/dd/yyyy)* | Title of Employer or Authorized Representative <br> Human Resources |
|---|---|---|
| Last Name of Employer or Authorized Representative <br> Sanchez | First Name of Employer or Authorized Representative <br> Marissa | Employer's Business or Organization Name <br> NEXA Mortgage, LLC |
| Employer's Business or Organization Address *(Street Number and Name)* <br> 2450 S. Gilbert Rd Suite 210 | City or Town <br> Chandler | State <br> AZ | ZIP Code <br> 85286 |

### Section 3. Reverification and Rehires *(To be completed and signed by employer or authorized representative.)*

| A. New Name *(if applicable)* | | | B. Date of Rehire *(if applicable)* |
|---|---|---|---|
| Last Name *(Family Name)* | First Name *(Given Name)* | Middle Initial | Date *(mm/dd/yyyy)* |

**C.** If the employee's previous grant of employment authorization has expired, provide the information for the document or receipt that establishes continuing employment authorization in the space provided below.

| Document Title | Document Number | Expiration Date *(if any) (mm/dd/yyyy)* |
|---|---|---|

**I attest, under penalty of perjury, that to the best of my knowledge, this employee is authorized to work in the United States, and if the employee presented document(s), the document(s) I have examined appear to be genuine and to relate to the individual.**

| Signature of Employer or Authorized Representative <br> *Marissa Sanchez* | Today's Date *(mm/dd/yyyy)* | Name of Employer or Authorized Representative <br> Marissa Sanchez |
|---|---|---|

77029AACB29B483...

## LISTS OF ACCEPTABLE DOCUMENTS
### All documents must be UNEXPIRED

Employees may present one selection from List A
or a combination of one selection from List B and one selection from List C.

| LIST A<br><br>Documents that Establish Both Identity and Employment Authorization | OR | LIST B<br><br>Documents that Establish Identity | AND | LIST C<br><br>Documents that Establish Employment Authorization |
|---|---|---|---|---|
| 1. U.S. Passport or U.S. Passport Card | | 1. Driver's license or ID card issued by a State or outlying possession of the United States provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address | | 1. A Social Security Account Number card, unless the card includes one of the following restrictions:<br>(1) NOT VALID FOR EMPLOYMENT<br>(2) VALID FOR WORK ONLY WITH INS AUTHORIZATION<br>(3) VALID FOR WORK ONLY WITH DHS AUTHORIZATION |
| 2. Permanent Resident Card or Alien Registration Receipt Card (Form I-551) | | | | |
| 3. Foreign passport that contains a temporary I-551 stamp or temporary I-551 printed notation on a machine-readable immigrant visa | | 2. ID card issued by federal, state or local government agencies or entities, provided it contains a photograph or information such as name, date of birth, gender, height, eye color, and address | | 2. Certification of report of birth issued by the Department of State (Forms DS-1350, FS-545, FS-240) |
| 4. Employment Authorization Document that contains a photograph (Form I-766) | | 3. School ID card with a photograph | | 3. Original or certified copy of birth certificate issued by a State, county, municipal authority, or territory of the United States bearing an official seal |
| 5. For a nonimmigrant alien authorized to work for a specific employer because of his or her status:<br>a. Foreign passport; and<br>b. Form I-94 or Form I-94A that has the following:<br>(1) The same name as the passport; and<br>(2) An endorsement of the alien's nonimmigrant status as long as that period of endorsement has not yet expired and the proposed employment is not in conflict with any restrictions or limitations identified on the form. | | 4. Voter's registration card | | 4. Native American tribal document |
| | | 5. U.S. Military card or draft record | | 5. U.S. Citizen ID Card (Form I-197) |
| | | 6. Military dependent's ID card | | 6. Identification Card for Use of Resident Citizen in the United States (Form I-179) |
| | | 7. U.S. Coast Guard Merchant Mariner Card | | 7. Employment authorization document issued by the Department of Homeland Security |
| | | 8. Native American tribal document | | |
| | | 9. Driver's license issued by a Canadian government authority | | |
| | | **For persons under age 18 who are unable to present a document listed above:** | | |
| 6. Passport from the Federated States of Micronesia (FSM) or the Republic of the Marshall Islands (RMI) with Form I-94 or Form I-94A indicating nonimmigrant admission under the Compact of Free Association Between the United States and the FSM or RMI | | 10. School record or report card | | |
| | | 11. Clinic, doctor, or hospital record | | |
| | | 12. Day-care or nursery school record | | |

**Examples of many of these documents appear in the Handbook for Employers (M-274).**

**Refer to the instructions for more information about acceptable receipts.**



## Certificate Of Completion

Envelope Id: 059DABD409FA41098BC58E4395576A67
Subject: Please DocuSign: NEXA Outside Loan Officer Employment Agreement- Damian Diaz
Source Envelope:
Document Pages: 22
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 14
Initials: 8

Status: Completed

Envelope Originator:
NEXA Mortgage
18798 E Druids Glen Dr.
Queen Creek, AZ  85142
hr@nexamortgage.com
IP Address: 199.66.171.161

## Record Tracking

Status: Original
          7/10/2020 11:03:33 AM

Holder: NEXA Mortgage
          hr@nexamortgage.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mike Kortas<br>hr@nexamortgage.com<br>Human Resources<br>NEXA Mortgage, LLC<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Mike Kortas<br>5A1A54E6B1114EB...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 199.66.171.161 | Sent: 7/10/2020 11:05:08 AM<br>Viewed: 7/10/2020 11:05:17 AM<br>Signed: 7/10/2020 11:05:22 AM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Damian Diaz<br>myloanconsultant760@gmail.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Damian Diaz<br>AC47E593DFDA481...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 68.8.23.32 | Sent: 7/10/2020 11:05:24 AM<br>Viewed: 7/10/2020 11:49:17 AM<br>Signed: 7/13/2020 5:24:03 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/10/2020 11:49:17 AM<br>    ID: 32462d25-c2d4-452d-8df0-d21e33fdc267 | | |
| Joseph Stunzi<br>jstunzi@nexamortgage.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Joseph Stunzi<br>E61A991B2257485...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 155.186.196.214<br>Signed using mobile | Sent: 7/13/2020 5:24:06 PM<br>Viewed: 7/15/2020 4:22:03 AM<br>Signed: 7/15/2020 4:29:30 AM |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Marissa Sanchez<br>msanchez@nexamortgage.com<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>Marissa Sanchez<br>77029AACB29B483...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 199.66.171.161 | Sent: 7/15/2020 4:29:33 AM<br>Viewed: 7/16/2020 2:24:40 PM<br>Signed: 7/16/2020 2:25:27 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/16/2020 2:24:40 PM<br>    ID: 3e458088-6e33-4843-b8d2-a13133803fd6 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Adriana Moore<br>amoore@nexamortgage.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>   Not Offered via DocuSign | COPIED | Sent: 7/16/2020 2:25:31 PM |
| Damian Diaz<br>myloanconsultant760@gmail.com<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>   Accepted: 7/10/2020 11:49:17 AM<br>   ID: 32462d25-c2d4-452d-8df0-d21e33fdc267 | COPIED | Sent: 7/16/2020 2:25:31 PM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 7/16/2020 2:25:31 PM |
| Certified Delivered | Security Checked | 7/16/2020 2:25:31 PM |
| Signing Complete | Security Checked | 7/16/2020 2:25:31 PM |
| Completed | Security Checked | 7/16/2020 2:25:31 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

Electronic Record and Signature Disclosure created on: 10/24/2019 2:07:09 PM
Parties agreed to: Damian Diaz, Marissa Sanchez, Damian Diaz

Case 3:24-cv-00873-JES-DDL   Document 1   Filed 05/16/24   PageID.284   Page 284 of 439

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, NEXA Mortgage, LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact NEXA Mortgage, LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: rsuarez@nexamortgage.com

**To advise NEXA Mortgage, LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at rsuarez@nexamortgage.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from NEXA Mortgage, LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to rsuarez@nexamortgage.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with NEXA Mortgage, LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to rsuarez@nexamortgage.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify NEXA Mortgage, LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by NEXA Mortgage, LLC during the course of your relationship with NEXA Mortgage, LLC.

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
   dgreeley@greeleythompson.com
5
6  MITCHELL SANDLER LLC
   Arielle Stephenson (SBN 336434)
7  1120 20th Street, NW
   Washington, DC 20036
8  Telephone: (202) 886-5267
   astephenson@mitchellsandler.com
9
   *Attorneys for Defendant NEXA Mortgage LLC*
10

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**10/04/2023** at 02:53:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12              **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all          Case No. 37-2022-00031816-CU-OE-NC
14  others similarly situated,
                                                            **PROOF OF SERVICE**
15                          Plaintiff,

16  v.

17  NEXA MORTGAGE, LLC, et al.

18                          Defendants.

19

20          I, Ekaterina Cherniaevskaia, declare as follows:

21          I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22  Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is katia@greeleythompson.com

24          On October 4, 2023, I caused to be served true copies of the following document(s) described as:

25      •  **DECLARATION OF MIKE KORTAS IN SUPPORT OF NEXA MORTGAGE, LLC'S**
           **MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION**
26

27  on the interested parties in this action as follows

28

_____ **BY MAIL:** I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____ **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

__XXX__ **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 4, 2023, at San Diego, California.

_____
Ekaterina Cherniaevskaia

EXHIBIT 16

1  David M. Greeley, Esq. (SBN 198520)
2  James R. Thompson, Esq. (SBN 260083)
   GREELEY THOMPSON LLP
3  600 B Street, Suite 2150
   San Diego, California 92101
4  Telephone: (619) 658-0462
   dgreeley@greeleythompson.com
5
6  MITCHELL SANDLER LLC
   Arielle Stephenson (SBN 336434)
7  1120 20th Street, NW
   Washington, DC 20036
8  Telephone: (202) 886-5267
   astephenson@mitchellsandler.com
9
   *Attorneys for Defendant NEXA Mortgage LLC*
10

11        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12             **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all | Case No. 37-2022-00031816-CU-OE-NC
14  others similarly situated,
                                                    | **PROOF OF SERVICE**
15                      Plaintiff,

16  v.

17  NEXA MORTGAGE, LLC, et al.

18                      Defendants.

19

20        I, Ekaterina Cherniaevskaia, declare as follows:

21        I am employed with the law firm of GREELEY THOMPSON LLP, whose address is 600 B

22  Street, Suite 2150, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is katia@greeleythompson.com

24        On October 4, 2023, I caused to be served true copies of the following document(s) described as:

25   • **DECLARATION OF MIKE KORTAS IN SUPPORT OF NEXA MORTGAGE, LLC'S
26     MOTION TO COMPEL ARBITRATION AND TO STAY THE ACTION**

27  on the interested parties in this action as follows

28

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

_____ **BY MAIL:**  I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____ **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

XXX **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| | |
|---|---|
| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 4, 2023, at San Diego, California.

_____
Ekaterina Cherniaevskaia

GREELEY THOMPSON LLP
600 B STREET, SUITE 2150
SAN DIEGO, CA 92101

# EXHIBIT 17

1  Matthew R. Miller (SBN 194647)
   MILLER LAW FIRM
2  6790 Embarcadero Lane, No. 100
   Carlsbad, CA 92011
3  Telephone: (619) 261-1150
   Email: matt@mrmlawfirm.com
4
5  Brian C. Dawson (SBN 183251)
   DAWSON & OZANNE
6  5755 Oberlin Dr., Suite 301
   San Diego, CA 92121
7  Telephone: (619) 988-2135
8  Email: brian@dawson-ozanne.com  *Attorneys for Plaintiff*

9          **SUPERIOR COURT OF CALIFORNIA**
           **COUNTY OF SAN DIEGO, NORTH COUNTY**
10

11  DAMIAN DIAZ, individually and on behalf of      **Case No. 37-2022-00031816**
    all others similarly situated,
12                                                  **PLAINTIFF'S OPPOSITION TO**
                                                    **MOTION TO COMPEL ARBITRATION**
            Plaintiff,                              **AND STAY THE CASE**
13
         v.
14                                                  Date:     December 8, 2023
    NEXA MORTGAGE, LLC, et al.,                     Time:     1:30 p.m.
15
            Defendants.                             Dept.:    4B
16                                                  Judge:    Hon. Earl Maas III
17
                                                    State Action Filed: August 3, 2022
18                                                  FAC Filed: October 31, 2022
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ……………………………………………………   1

II.    STATEMENT OF FACTS ……………………………………………   2

III.   LEGAL STANDARD ………………………………………………   3

IV.    LEGAL ARGUMENT ………………………………………………   4

       A.    Nexa Waived Its Right to Arbitration By Initiating
             a Case In Arizona Against Diaz …………………………………   4

       B.    The Arbitration Provision Is Unconscionable and
             Should Not be Enforced …………………………………………   5

             1.    The Arbitration Provision Is Procedurally Unconscionable ………   6

                   (a)    Nexa's arbitration rules, which were never
                          provided to Diaz, are purposely ambiguous ………………   6

                   (b)    Nexa's "opt out" provision was carefully hidden
                          from Diaz and almost impossible to elect …………………   7

             2.    The Arbitration Provision is Substantively Unconscionable ……..   8

                   (a)    The arbitration provision requires Diaz to split
                          arbitration fees and costs with Nexa ………………………   9

                   (b)    The Agreement contains an improper choice of
                          law clause ……………………………………………… 10

                   (c)    The Agreement contains an improper choice of
                          forum clause …………………………………………… 11

                   (d)    The Agreement contains an improper clause exempting
                          Nexa from arbitrating claims it is likely to bring ………… 11

             3.    Nexa's Employment Agreement Cannot Be Saved By
                   Severing its Numerous Deficiencies ……………………………… 12

       C.    The Court Should Allow Diaz' Representative PAGA Claims to
             Move Forward Even if Arbitration is Ordered as to His
             Individual Claims. ……………………………………..…….. 14

VII.   CONCLUSION …………………………………………………….. 15

## **TABLE OF AUTHORITIES**

**Cases:**

*Adolph v. Uber Technologies, Inc.* 14 Cal.5th 1104, 1113-1125 (2023) ...................... 14

*AMN Healthcare, Inc. v. Aya Healthcare* Services, 28 Cal.App.5th 923 (2018)............ 10

*Armendariz v. Foundation Health Psychcare Services Inc.,* 24 Cal.4th 83 (2000)......... 5, 9, 12, 13

*Baltazar v. Forever 21, Inc.*, 62 C4th 1237 (2016) .............................................. 6

*Barker v. Insight Global, LLC*, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) .............. 11

*Baxter v. Genworth North America Corp.* 16 CA5th 713 (2017) ............................ 13

*Bridge Fund v. Fastbucks Franchise,* 622 F.3d 996 (2010) .................................. 13

*Brown v. Dillard's,* 430 F.3d 1004 (9th Cir. 2005) ............................................ 5

*Circuit City Stores, Inc. v. Mantor*, 335 F3d 1101 (9th Cir. 2003) .......................... 5, 9

*Fitz v. NCR Corp.*, 118 Cal. App. 4th 702 (2004) ............................................ 6

*Gavriiloglou v. Prime Healthcare Management*, 83 Cal.App.5th 595 (2022) .............. 14, 15

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*

      232 Cal. App. 4th 1332 (Feb. 9, 2015.) ................................................ 6

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003) ............................................ 6

*Jarboe v. Hanlees Auto Group* 53 Cal.App.5th 539 (2020) .................................. 15

*Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App.4th 1322 (1999) ................... 3, 6

*Leenay v. Superior Court* 81 Cal.App.5th 553 (2022) ........................................ 15

*Lewis v. Fletcher Jones Motor Cars, Inc.*, 205 Cal.App.4th 436 (2012) .................... 4

*LGCY Power LLC v. Superior Court,* 75 Cal.App.5th 844 (2022) ........................... 4

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) .................................. 8

*Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125 (C.D. Cal. 2006) ............................... 11

*Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107 (2004) ............................. 6, 11

*Morgan v. Sundance, Inc.,* 142 S.Ct. 1708 (2022) ........................................... 4

*Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286 (2006) ............................ 10

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019) .................................................. 9

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (2009) .................................. 6, 13

*Pry Corp. of America v. Leach*, 177 Cal.App.2d 632 (1960) ................................ 5

*Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899 (2015) ................................... 6

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109 (2013) ................................ 9

*Subcontracting Concepts (CT), LLC v. De Melo*, 34 CA5th 201 (2019) ………………… 13

*Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387 (2010) …………………………… 6

*Zullo v. Superior Court*, 197 Cal. App. 4th 477 (2011) …………………………………... 6

**<u>Statutes</u>**

9 U.S.C. § 2 …………………………………………………………………………………………... 3

CA Business & Professions Code § 16600 ……………………………………………… 10

CA Civil Code § 1717 ……………………………………………………………………………… 10

CA Labor Code § 2698, et seq. ……………………………………………………………… 14

# I. INTRODUCTION

For the past few years, Nexa, based in Arizona with no office in California, has become one of the fastest growing mortgage companies through cost saving practices such as wage theft by misclassifying their employees.  Nexa wants the benefits of using California workers to sell its loans to California consumers without the burden of having to comply with California laws.  Nexa's avoidance of California labor laws hurt workers and undermines other competing businesses who play by the rules.

Defendant Nexa Mortgage, LLC ("Nexa") has waived its right to pursue arbitration.  Despite this fact, Nexa is still trying to enforce an arbitration provision that is impermissibly unconscionable.  By purposely creating an adhesive agreement that is both substantively and procedurally unconscionable, the offending provisions with the agreement cannot and should not be saved by simply severing the offending clauses.  Any after-the-fact willingness by Nexa to now alter its arbitration provisions should not be considered.  This court should deny Nexa's Motion to Compel Arbitration and Stay the Proceedings.

If the Court is inclined to grant the Motion to Compel, plaintiff, Damian Diaz' ("Diaz") Representative PAGA claims should be allowed to move forward.  Contrary to Defendants' arguments, this Court would NOT be compelled to stay the Representative PAGA action pending resolution of the arbitration. CCP section 1281.4 does not automatically require a stay if requested. Diaz' Representative PAGA action is not dependent on what happens in arbitration.  Diaz would be standing in the shoes of the California Labor and Workforce Development Agency (LWDA). There are different real parties in interest (Diaz vs. LWDA) and differences in the relief sought (damages vs. penalties) Additionally, a stay in the proceedings would prejudice other aggrieved NEXA employees who would have to wait months if not years to obtain relief.[1]

---

[1] Pursuant to Evidence Code section 452(d), Diaz requests Judicial Notice of a recent California Trial Court Order attached to the Declaration of Brian C. Dawson, Exhibit G. In *Cano v. Infinite Velocity Automotive, Inc.*, 2023 WL 7475841, 10/4/23, California Superior Court, Alameda County, the court addressed the various issues relating to the enforcement of arbitration provisions on individual employment claims versus representative claims on behalf of the LWDA.

-1-

## II.  STATEMENT OF FACTS

Diaz worked at Nexa as a mortgage loan officer from about July 13, 2020 to February 9, 2022, working primarily from his home in San Diego County. (*Declaration of Damian Diaz* filed herewith ["*Diaz Decl.*"] ¶ 2-3.)

Prior to commencing employment with Nexa, Diaz attended a "Zoom" meeting with several other potential "recruits" where the benefits of becoming a Nexa loan officer were promoted to the attendees. (*Diaz Decl.* ¶ 4.). After that, Nexa sent Diaz an email that offered him what was essentially a "welcome package" with instructions of what Diaz would need to provide or do as part of the onboarding process to become a Nexa employee. (*Diaz Decl.* ¶ 5.)

The email provided a link to electronically sign via "Docusign" the Nexa Mortgage LLC Outside Loan Officer Employment Agreement (the "Agreement") in which Diaz was to adopt an electronic signature and initials for himself, and then click on the prompts made available by Nexa within the electronic document which automatically took the cursor to predetermined locations within documents where Diaz would either "click" to enter initials automatically or to enter a signature automatically into the pre-set locations. (*Diaz Decl.* ¶ 6.)

Diaz understood that that he would need to complete the tasks listed in the instructions to ultimately become a Nexa employee.  He opened the Docusign Agreement link, but had no discussions with anyone at Nexa about its contents either before or during the signing process.  Diaz did not really review the Agreement in any sort of detail or discuss the Agreement or its contents with legal counsel before clicking to enter the signature. (*Diaz Decl.* ¶ 7.)

Section VIII of the Agreement contains the arbitration provision at issue.  (**Exhibit A** to Defendant's Motion to Compel Arbitration is the Arbitration Agreement at issue in this case.). The option to "opt out" of Section VIII of the Agreement was never discussed with anyone at Nexa before, during, or after the onboarding process. (*Diaz Decl.* ¶ 8.)  Although Diaz did not read or appreciate the significance of Section VIII of the Agreement, Diaz was never prompted to specifically initial any part of Section VIII of the Agreement, nor was there any way for him through the Docusign electronic format to "strike" or cross out portions of the Agreement, including portions of Section VIII while electronically signing via Docusign.  Diaz was also never prompted to choose to either initial or not

initial at the end of Section VIII, in the space following the last sentence. (*Diaz Decl.* ¶ 8.)

Despite the arbitration provision's requirement that Diaz create and notarize a personal opt out letter and mail via certified mail to both Nexa's Human Resources Department and to Diaz' immediate supervisor, Diaz was not provided the mailing address for either.  In fact, as far as Diaz understood, he never had an immediate supervisor during his entire tenure with Nexa. (*Diaz Decl.* ¶ 9.)  Had Diaz read and understood the significance of the arbitration provision, he would have opted out of that section. (*Diaz Decl.* ¶ 10.)

After Diaz left his employment with Nexa, Nexa filed a lawsuit against him for allegedly violating the non-solicitation clause in Section V of the Agreement.  At no time did Nexa present to the court an application that all other proceedings in the action be stayed pending the arbitration of any issue, question, or dispute which was arbitrable under Nexa's Agreement. (*Declaration of Brian C. Dawson* ["*Dawson Decl.*"], Exhibit "E".)  After communications between counsel for Nexa and Diaz' counsel, Nexa dismissed the action on or about March 17, 2022. (*Dawson Decl.* ¶ 2.)

### III.  LEGAL STANDARD

The FAA does not preempt contractual defenses to the enforcement of an Arbitration provision including waiver and unconscionability.  The defenses to the Agreement, such as fraud, duress, and unconscionability, are determined under applicable state law, which would apply to invalidate the arbitration provision at issue.  9 *U.S.C.* § 2; *Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App. 4th 1322, 1327 (1999).

Here, California law, rather than Arizona law as stated within section VI, VII and VIII of the Agreement, should be applied to determine the issues of waiver and unconscionability of the Agreement.   Under California Labor Code section 925, choice of law and forum provisions designating a state other than California in employment agreements, as to employees working in California, are voidable at the request of the employee.  Diaz' First Amended Complaint ("FAC") against Nexa, seeks a court order rendering the Arizona choice of law and forum provisions void.  Thus, California law should be applied as to Nexa's Motion to Compel Arbitration. [See, Register of

1   Actions, Diaz v. Nexa, No. 6, FAC, pg. 067, ¶¶ 86-88.]

2          Satisfaction of section 925(b), requiring that the employee "request" that the provision be void

3   can be met through the filing of a complaint in court seeking relief from the choice of law and forum

4   provision. *LGCY Power LLC v. Superior Court,* 75 Cal.App.5th 844, 863-865 (2022).

5                                    **IV.  LEGAL ARGUMENT**

6   **A.    Nexa Waived Its Right to Arbitration by Initiating a lawsuit in AZ Against Diaz.**

7          Despite drafting the Agreement's arbitration clause mandating that alleged breaches of the

8   "non-solicitation clause" of Section V be arbitrated, Nexa instead chose to ignore the arbitration

9   provision and instead file a lawsuit against Diaz in Arizona state court alleging the same, as Nexa

10  knew the AZ venue would be problematic for Diaz, a California resident.  The Agreement's arbitration

11  clause permits only the litigation in state court of "action that violates section IV of this Agreement"

12  yet Nexa specifically chose to file its state court claim against Diaz for an alleged violation of section

13  V of the Agreement. (See section VIII of the Agreement, Exhibit A to Defendant's Motion to Compel;

14  see also Dawson Decl. Exhibit E, which is the Complaint filed by Nexa against Diaz in Arizona state

15  court.  This Court has the authority and should deny Nexa's Motion for waiving its rights to arbitration

16  by already breaching its own arbitration provision.  A corporation should not be allowed to use an

17  arbitration provision as a sword and shield whenever it sees fit.  In order to find that Nexa waived its

18  right to arbitration, this Court needs to find: (1) knowledge of an existing right to compel arbitration;

19  (2) acts inconsistent with that existing right; and (3) prejudice to the opposing party.  *Lewis v. Fletcher

20  Jones Motor Cars, Inc.*, 205 Cal.App.4th 436 (2012).  Based upon a recent U.S. Supreme Court case,

21  prejudice, however, is not required.  *Morgan v. Sundance,* 142 S.Ct. 1708, 1710-1714 (2022).[2]

22          A "bedrock principle of California contract law is that 'he who seeks to enforce a contract must

23  show that he has complied with the conditions and agreements of the contract on his part to be

24

25

26  [2] The U.S. Court held the elements required to establish waiver of arbitration rights are exactly the same as it would be in
    any other contractual context.  *Morgan* at 1713-1714.  In its ruling, the court specifically rejected the idea that unfair

27  prejudice is required to establish waiver - "outside the arbitration context, a federal court assessing waiver does not
    generally ask about prejudice.  Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.'"

28  (internal quotation marks omitted). *Id.*  To decide whether a waiver has occurred, "the court focuses on the actions of the
    person who held the right; the court seldom considers the effects of those actions on the opposing party." *Id.*

performed.'" *Brown v. Dillard's*, 430 F.3d 1004, 1010, (9th Cir. 2005), quoting, *Pry Corp. of America v. Leach*, 177 Cal.App.2d 632, 639 (1960).

*Brown v Dillard's*, is illustrative of Nexa's waiver of its right to compel arbitration against Diaz.  In *Brown,* the plaintiff employee filed a state court action after Dillard's refused to arbitrate her wrongful termination claim under its arbitration provision.  In response to the lawsuit, Dillard's removed action to federal court and moved to compel arbitration.  The district court denied the Motion.  On appeal, the Ninth Circuit affirmed and held that Dillard's could not compel the employee to honor arbitration agreement of which it was itself in material breach, and alternatively, Dillard's, waived its right to arbitrate subject claims. *Id.* at 1010-1011.

The court found "Dillard's breached the arbitration agreement by refusing to participate in properly initiated arbitration proceedings.  Dillard's breach was tantamount to a repudiation of the arbitration agreement." *Id. at* 1011-1013.[3]  Nexa's selective application of its own arbitration provision reeks of bad faith, which should not be rewarded by the court.  Nexa's refusal to abide by its own arbitration provision when convenient for Nexa constituted an enforceable waiver.

**B.**     **The Arbitration Provision Is Unconscionable and Should Not be Enforced.**

Unconscionability under California law "has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *Armendariz v. Foundation Health Psychcare Services Inc.,* 24 Cal.4th 83, 114 (2000) (internal quotation omitted).

To establish this defense, the party opposing arbitration must demonstrate procedural and

---

[3] Additionally, the court reasoned:

**If we took Dillard's view and allowed it to compel arbitration notwithstanding its breach of the arbitration agreement, we would set up a perverse incentive scheme. Employers like Dillard's would have an incentive to refuse to arbitrate claims brought by employees in the hope that the frustrated employees would simply abandon them. This tactic would be costless to employers if they were allowed to compel arbitration whenever a frustrated but persistent employee eventually initiated litigation. We decline to adopt a rule that would encourage companies to refuse to participate in properly initiated arbitration proceedings. To promote our national policy in favor of arbitration . . . we must decline to compel it in this case.**

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

substantive unconscionability, but both "need not be present in the same degree." *Sanchez v. Valcia Holding Co.*, 61 Cal. 4th 899, 910 (2015)). Instead, a sliding scale exists such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

### 1. The Arbitration Provision Is Procedurally Unconscionable.

The "oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347–48, *as modified on denial of reh'g* (Feb. 9, 2015)). Oppression can be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive. *Id.*[4]

#### (a) Nexa's arbitration rules, which were never provided to Diaz, are purposely ambiguous

California courts have held that the failure to provide incorporated rules governing the agreed upon arbitration may increase the likelihood of procedural unconscionability.[5] Similarly, when the incorporated rules include terms unfavorable to the weaker party, the failure to provide the governing rules results in procedurally unconscionable surprise.[6]

---

[4] The focus of this analysis is whether the contract was the result of oppression or surprise. The "oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." *Kinney v. United HealthCare Servs., Inc.*, supra, 70 Cal. App. 4th at 1329. The element of surprise can be inferred when "the terms to which the party supposedly agreed [are] hidden in a prolix printed form drafted by the party seeking to enforce them." *Id.* An "arbitration agreement that is an essential part of a 'take it or leave it' employment condition, without more, is procedurally unconscionable." *Martinez v. Master Prot. Corp.*, 118 Cal. App. 107, 114 (2004).

[5] See *Zullo v. Superior Court*, 197 Cal. App. 4th 477, 485 (2011) (noting that the failure to provide the "arbitration rules adds a bit to the procedural unconscionability"); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393 (2010) (affirming superior court's finding that the agreement was procedurally unconscionable because "the agreement was prepared by [the employer], it was a mandatory part of the agreement and [the employee] was not given a copy of the AAA Rules"); *Parada v. Superior Court*, 176 Cal. App. 4th 1554, 1572 (2009) (finding element of surprise bolstered by failure to include the governing JAMS rules).

[6] *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003) (finding oppression and procedural unconscionability where the agreement merely referenced the Better Business Bureau arbitration rules without providing those rules to the customer or disclosing that they precluded the customer from obtaining damages); see also, *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004) (finding procedural unconscionability and surprise where the arbitration rules were not attached to the agreement because it "fail[ed] to provide employees with adequate notice of the applicable rules of discovery"; and see *Baltazar v. Forever 21, Inc.*, 62 C4th 1237, 1246 (2016) ("[C]ourts will more closely scrutinize the substantive

---

-6-

Although Nexa's arbitration provision states, ambiguously, that the arbitration will be "resolved through binding arbitration in accordance with the rules of JAMS Arbitration..." [Exhibit 1 to Defendant's Motion to Compel - Agreement at ¶ VIII], Nexa did not provide the JAMS rules for arbitration at the time Diaz executed the Agreement or anytime thereafter.  Nexa's actions and inactions establish procedural unconscionability.[7]

Additionally, both the JAMS employment arbitration rules and JAMS comprehensive arbitration rules were revised by JAMS several months into Diaz' employment with Nexa. (See *Dawson Decl.* Exhibits "B" and "D" JAMS 2021 revisions to both its comprehensive and employment arbitration rules).  The result is that neither party could be sure of what JAMS rules might be applicable to govern any dispute, setting up an almost certain challenge in the event of a dispute as to what rules would be applicable to what type of dispute between the parties.

For Diaz, Nexa's self-serving and ambiguous arbitration provision is particularly burdensome in this regard.  The Agreement Section VII allows Nexa to force Diaz (who purportedly consented to Arizona personal jurisdiction while Docusigning the Agreement) to litigate in state or federal court in Arizona if either Nexa or Diaz want to "challenge the arbitration provisions" in the Agreement.  By failing to specify what rules even apply, Nexa ensured Diaz' confusion and frustration would be exacerbated by being forced into out-of-state litigation just to determine the playing field.

### (b)    Nexa's "opt out" provision was carefully hidden from Diaz and almost impossible to elect.

Although Diaz did not read the arbitration provision or have any real opportunity to discuss the arbitration provision with anyone from Nexa, the requirement hidden at the bottom of the lengthy single paragraph arbitration provision purports to give Diaz an option to opt out of the provision by

---

unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement.")

[7] **First,** no one from Nexa discussed or referenced the arbitration provision or "rules" with Diaz.  **Second**, Nexa never provided Diaz any actual JAMS rules.  **Third**, Nexa never provided Diaz any link or other method to locate whatever JAMS rules might apply before, during, or after the signing process.  **Fourth**, Nexa's drafting references "rules of JAMS Arbitration" but does not specify whether the rules are JAMS comprehensive arbitration rules or JAMS employment arbitration rules.  **Fifth**, the provision does not specify whether arbitration will be conducted pursuant to the JAMS rules in effect at the time of signing the Agreement or those that might be in effect at the time of a dispute.

either: 1) "sending a notarized letter to the attention of Employee's immediate supervisor copied to the Company's Human Resources department, both sent via Certified Mail within 30 days of the execution of this Agreement expressly opting out of this provision;" or 2) "striking the entirety of this paragraph and initialing here as follows:".

The problem with these two options is that the first option, as onerous as it may be to draft an "express" opt out letter to the satisfaction of Nexa, have it notarized, and then sent via certified mail to two separate parties within the 30 day time limit, did not provide Diaz with the certified mailing addresses or contact information for either of the two required parties. In fact, Diaz did not know who his "immediate supervisor" even was at the time, nor has he ever believed or been informed that he has ever had an immediate supervisor.

Second, the DocuSign agreement provided to Diaz in an electronic "click-to-sign" format did not provide an opportunity or manner in which Diaz could effectively strike provisions of the electronic Agreement, nor did Docusign alert Diaz to this hidden "opportunity" or provide any prompt to initial the electronic version where it specifically requires Diaz to "[initial] here as follows:" The result of hiding this "opt out" location within the document and purposely avoiding it by Nexa when establishing the pre-determined Docusign prompts for initials and signatures made it extremely difficult for Diaz, or frankly any other Nexa employee, to locate and effectively opt out of the arbitration provision.

The complexities purposely designed by Nexa are very similar to the complexities created by the employer in *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021). In *Lim*, the employee plaintiff was also presented with "a contract of adhesion i.e., a take-it-or-leave-it offer" from its employer, TForce. *Lim*, at 1001. With "respect to unfair surprise, TForce presented the delegation clause in the middle of 31 numbered paragraphs, within more than nine pages of single-spaced, 10-point font. Nothing in the text of the agreement called Lim's attention to the delegation clause, and Lim was not required to sign or initial that specific provision. This further supports some degree of procedural unconscionability." *Lim*, at 1001.

Here, Diaz was similarly not given "meaningful opportunity" to negotiate or reject the terms of the arbitration provision, nor was he given "reasonable notice of [the] opportunity to negotiate or

reject.., and … an actual, meaningful, and reasonable choice to exercise that discretion." *Circuit City Stores, Inc. v. Mantor*, 335 F3d 1101, 1106 (9th Cir. 2003).

Due to the high level of procedural unconscionability present in the arbitration provision and within the sections of the Agreement to which the arbitration provision relates to and relies upon for its construction, under *Armendariz*, even a minimal level of substantive unconscionability renders the arbitration provision void.

**2.     The Arbitration Provision is Substantively Unconscionable.**

"Substantive unconscionability examines the fairness of a contract's terms." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129 (2019). The substantive unconscionability doctrine is concerned with terms that are "unreasonably favorable to the more powerful party," not just " a simple old-fashioned bad bargain." *Id.* at 130. California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided. *Id.* at 129–30 (citations omitted).

Substantive unconscionability focuses on the one-sidedness of the contract terms. *Armendariz*, 24 Cal. 4th at 115-116.   The test is whether the terms impair the integrity of the bargaining process or otherwise contravene public policy, or the terms "attempt to alter in an impermissible manner fundamental duty otherwise imposed by the law" or "negate the reasonable expectations of the non-drafting party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013); see also *Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 247 (2016), - term "outside the reasonable expectation of the non-drafting party or is unduly oppressive" (internal quotes omitted).  Here, there are several aspects of Nexa's arbitration provision that render it substantively unconscionable.

**(a)     The arbitration provision requires Diaz to split arbitration fees and costs with Nexa.**

When an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. *Armendariz*, 24 Cal. 4th at 110-11.

Here, the arbitration provision requires any dispute between the parties concerning or arising out of their employment relationship (except enforcement or challenges to the arbitration provisions, alleged violations of section IV of the Agreement) be resolved through binding arbitration in accordance with the rules of JAMS Arbitration.  The arbitration provision further mandates that "notwithstanding any JAMS rules to the contrary, the parties will share equally in the costs of such arbitration, and shall be responsible their own attorneys' fees…"  Per the plain language of the arbitration provision, Diaz is required to pay half of the JAMS' fees and expenses.

Although no one knows whether JAMS employment rules or comprehensive rules apply (or what version of either set of rules apply), Diaz would be responsible for half the fees and costs *regardless* of which set of JAMS rules apply.  If Diaz wants to challenge this outcome, per the terms of the Agreement, Diaz would need to seek redress in an Arizona court.   (*Dawson Decl.* Exhibits A through D, which are various JAMS Arbitrations Rules and Procedures.)  The Declaration of Brian C. Dawson provides an analysis of these rules and procedures.

**(b)     The Agreement contains an improper choice of law clause.**

The arbitration provision claims that "the Agreement is made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona."  As discussed above, out-of-state employers may contract into their employment agreements choice of law and forum selection provisions as long as the forum selected provides adequate remedies otherwise provided to the employee under California law.  *Olinick v. BMG Entertainment*, 138 Cal. App. 4th 1286, 1294 (2006).

Here, California law provides far greater protections for employees than Arizona.  For example, California Labor Code section 925 specifically prohibits employers from adjudicating claims outside of California that arose in California. Furthermore, Nexa has already sued Diaz once in Arizona state court, seeking damages and attorneys' fees from Diaz for an alleged breach of a non-solicitation provision that would be invalid under California law, as would the Agreement's non-reciprocal attorneys' fees provision contained in section V(h) of the Agreement that gives Nexa the right to collect attorneys' fees but not Diaz in the event of a dispute. (See CA B&P Code § 16600; CA Civil Code § 1717; and see *AMN Healthcare, Inc. v. Aya Healthcare* Services, 28 Cal.App.5th 923,

-10-

(2018) and *Barker v. Insight Global, LLC*, 2019 WL 176260 (N.D. Cal. Jan. 11, 2019) both invalidating post-employment non-solicitation agreements.)

       **(c)     The Agreement contains an improper choice of forum clause.**

Paragraph VII of the Agreement provides that the employee consents "to personal jurisdiction in Arizona" in the event that any litigation needs to be brought to "enforce or challenge the arbitration provisions herein". This provision is unconscionable because it is designed to discourage employees like Diaz from enforcing their rights against Nexa in light of the increased cost and inconvenience of traveling to Arizona and retaining counsel there. See *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1134 (C.D. Cal. 2006) (declining to enforce a New Jersey choice of venue provision because the plaintiff resided in California such that the "provision would impose too great a burden").

Thus, to the extent that it applies to the arbitration clause, the choice of venue provision is unduly burdensome and substantively unconscionable. The clause is designed merely to discourage employees like Plaintiff Diaz from enforcing their rights against Nexa. The clause is substantively unconscionable and cannot be enforced.

       **(d)     The Agreement contains an improper clause exempting Nexa from arbitrating claims it is likely to bring.**

The Employment Agreement contains Nexa designed carve outs from the mandatory arbitration provisions for certain claims. Not surprisingly, these exceptions apply to only claims that Nexa is likely to bring.

An "arbitration agreement is substantively unconscionable if it requires the employee but not the employer to arbitrate claims." *Martinez*, supra, 118 Cal. App. 4th at 114 (internal quotation omitted). In *Martinez*, the court held that an arbitration agreement that required both parties to arbitrate state and federal statutory claims, contract and tort claims, and claims of discrimination, but specifically exempted the employer from an obligation to arbitrate any claims "for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information," was substantively unconscionable. *Id.* at 115. The court reasoned that the provision required "employees to arbitrate the claims they are most likely to assert against [the employer], while simultaneously permitting [the employer] to litigate in court the claims it is most

likely to assert against its employees." *Id.* The court determined that the provision was not bilateral and accordingly, was substantively unconscionable.

Although bilateral arbitration is generally required, California law allows an employer to preserve a judicial remedy for itself if justified based on a legitimate commercial need or business reality. *Armendariz*, 24 Cal. 4th at 117.

Here, Nexa's two carve out provisions are much broader. First, Section VII of the Agreement provides "in the event that any litigation needs to be brought to obtain temporary injunctive relief and or enforce or challenge the arbitration provisions herein the parties agree that any litigation between the parties may only be brought in federal District Court in Arizona, or in the event subject matter jurisdiction is lacking, in an Arizona court of competent jurisdiction."

Second, Section VIII provides an additional carve out from arbitration that allows either party to seek "relief in a state or federal court located in Arizona, arising from any action that violates section IV of this Agreement". The Agreement Section IV "Employee Referral Program" relates to the complicated structure of commissions, fees, and "overrides" that justify Nexa withholding portions of Diaz income as a result of Nexa's pyramid recruiting structure.

Thus, the exception here is broader, and is **not** limited to seeking injunctive relief to protect Nexa's intellectual property or justified by a legitimate business purpose. Accordingly, this provision is substantively unconscionable.

### 3. Nexa's Employment Agreement Cannot Be Saved By Severing its Numerous Deficiencies.

An agreement to arbitrate is considered "permeated" by unconscionability where it contains more than one unconscionable provision. *Armendariz*, supra, 24 Cal.4th at p. 124. Such "multiple defects indicate a systematic effort to impose arbitration on [the non-drafting party] not simply as an alternative to litigation, but as an inferior forum that works to the [drafting party's] advantage." *Id.* An arbitration agreement is also deemed "permeated" by unconscionability if "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." *Id.* at 124–125. If "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms," the court must void the entire agreement. *Id.*

-12-

at 125.

Courts will not rewrite a party's arbitration agreement to save it from its own unconscionable terms. *Bridge Fund v. Fastbucks Franchise,* 622 F.3d 996, 1006 (2010)(refusing to rewrite an Arizona choice of forum clause) and see *Subcontracting Concepts (CT), LLC v. De Melo,* 34 CA5th 201, 216 (2019) - systematic unconscionability shows "there is no single provision that can be stricken" to remove unconscionable taint from agreement and so severance not required; *Baxter v. Genworth North America Corp.,* 16 CA5th 713, 738 (2017).

An unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach. *Parada,* supra, 176 Cal. App. 4th at 1586, (citing *Armendariz,* 24 Cal.4th at 124–25.

*Armendariz* explained that employer would not be deterred from routinely inserting a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. *Id.* at 124 n.13; and see *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015) (severing the unenforceable provisions of an arbitration clause would allow an employer to draft one-sided agreements and "then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance.") Here, there are several unconscionable clauses in Nexa's arbitration provision that cannot, and should not, be severed.[8]

Taken together, the issues raised by these contractual provisions create an agreement permeated with unconscionability. The court cannot just sever these provisions, but would instead have to rewrite portions of the Agreement.

---

- [8] **The improper cost sharing provision.** Fixing this provision would require the rewriting of the agreement or insertion of additional terms. Striking the provision would not change Diaz' obligations as JAMS rules require the litigants to share the costs.

- **The ambiguous rules of arbitration** Nothing in section VIII indicates whether JAMS comprehensive rules or employment rules apply, nor does it specify whether the rules in effect at time of signing or at time of a dispute would apply. None of these problems can be corrected with a severance.

- **Nexa's exempted claims clause, and the improper choice of law and forum clauses.** These provisions cannot simply be severed as this Court would need to rewrite the agreement to clarify what disputes would be settled in what forums and what states, and what portions of which disputes would be arbitrable.

**C.    The Court Should Allow Diaz' Representative PAGA Claims To Move Forward Even if Arbitration is Ordered As To His Individual Claims.**

The FAA does *not* preempt California law regarding the unenforceability of an arbitration agreement requiring an employee as a condition of employment to give up the right to bring a *representative* action for alleged Labor Code violations under the Labor Code Private Attorneys General Act of 2004 (PAGA, Labor Code § 2698, et seq.). *Adolph v. Uber Technologies, Inc.* 14 Cal.5th 1104, 1113-1125 (2023).

A few months ago, the California Supreme Court, in *Adolph v. Uber Technologies, Inc.,* construing state law, concluded that even if a representative plaintiff's individual claim has been ordered to arbitration pursuant to an agreement with the employer, the plaintiff may pursue a *nonindividual representative action* under PAGA. The reasoning from the Court was that a PAGA representative plaintiff retains standing to pursue a nonindividual action in court if that plaintiff is an aggrieved employee. Such representative lawsuits are fundamentally law enforcement actions whereby plaintiff is suing the employer on behalf of the state for Labor Code violations to augment the State's limited enforcement capabilities.  The State is in fact the real party in interest.  *Id.* ("an order compelling arbitration of individual claims does not strip the plaintiff of standing to litigate non-individual claims in court"].

If the Court determines that Mr. Diaz' individual claims should be arbitrated, the issue then becomes whether to stay Mr. Diaz' Representative PAGA claims.   There is no reason and basis to stay a representative action pending resolution of the Mr. Diaz' individual claims.  The ruling in *Adolph v. Uber* <u>does not</u> mandate a stay of proceedings pending arbitration. *Adolph* 14 Cal.5th at 1125 (2023) [the Court specifically uses the word "may" multiple times in discusses whether a stay should be imposed].   Diaz' Representative PAGA action is not dependent on what happens in arbitration. Diaz would be standing in the shoes of the California Labor and Workforce Development Agency (LWDA). There are different real parties in interest (Diaz vs. LWDA) and differences in the relief sought (damages vs. penalties).  See, *Gavriiloglou v. Prime Healthcare Management* 83 Cal.App.5th 595, 602-603 (2022). Additionally, a stay in the proceedings would prejudice other aggrieved NEXA employees who would have to wait months if not years to obtain relief. Other recent cases hold that

stays should not be automatically imposed just because arbitration on individual claims is required. Representative PAGA actions should not take a back seat and wait until resolution of an arbitration proceeding. See, *Leenay v. Superior Court* 81 Cal.App.5th 553 (2022)[9]; *Jarboe v. Hanlees Auto Group* 53 Cal.App.5th 539, 555-556 (2020); *Gavriiloglou v. Prime Healthcare Management* 83 Cal.App.5th at 602-603 [a PAGA plaintiff does not lose standing to litigate the LWDA's claims in court when the plaintiff's individual claims are subject to arbitration]; see also, Decl. Dawson, Exhibit G, trial court ruling in *Cano v. Infinite Velocity Automotive, Inc.*, 2023 WL 7475841, 10/4/23, California Superior Court, Alameda County).  In *Cano*, the trial court provides an extensive analysis on the issues pending in this case.  Due to page limit constraints, Plaintiff respectfully requests this Court to examine the analysis performed by the Court in *Cano*.

## VII.  CONCLUSION

Nexa's arbitration provision contained within its take-it-or-leave-it Agreement is unenforceable because it is both procedurally and substantively unconscionable.  In light of the multiple unconscionable provisions and resulting pervasive unconscionability, the court should not attempt to sever unconscionable provisions from the Agreement.  Even attempting to sever these provisions would instead require a re-drafting, which is not permitted.  Diaz respectfully asks the Court to deny Nexa's Motion to Compel Arbitration.


Dated: November 27, 2023          DAWSON & OZANNE


By: *Brian Dawson*
    Brian C. Dawson, Attorneys for Damian Diaz

---

[9]     The *Leenay* court held that a delay in the prosecution of the LWDA's claims is contrary to the legislative purpose of the PAGA to increase enforcement of the Labor Code. Claims on behalf of the LWDA under the PAGA are law enforcement actions on behalf of the state. "When an employee chooses to forgo individual claims and brings a PAGA action on behalf of the state, the employer should not be able [to] dictate how ... the representative action proceeds by capitalizing on another employee's decision to bring **arbitrable** claims. ... That result would create an unwarranted obstacle to the effective prosecution of representative PAGA actions and undermine the Legislature's objective to augment the limited enforcement capability of the state." (*Leenay v. Superior Court* 81 Cal.App.5th 553, 572 (2022)).

# EXHIBIT 18

Matthew R. Miller (SBN 194647)
MILLER LAW FIRM
6790 Embarcadero Lane, No. 100
Carlsbad, CA 92011
Telephone: (619) 261-1150
Email: matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92121
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com  *Attorneys for Plaintiff*

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO, NORTH COUNTY

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEXA MORTGAGE, LLC, et al.,<br><br>Defendants. | **Case No. 37-2022-00031816**<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THE CASE**<br><br>Date:  December 8, 2023<br>Time:  1:30 p.m.<br><br>Dept.:  4B<br>Judge:  Hon. Earl Maas III<br><br>State Action Filed: August 3, 2022<br>FAC Filed: October 31, 2022 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff Damian Diaz through his attorney of record, requests that the Court take judicial notice pursuant to Evidence Code section 452(c), (d), (g), and (h) of the following court records in support of his Opposition to Defendant's Motion to Compel Arbitration and Stay the Case:

-1-

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION

1.    The current "JAMS Employment Arbitration Rules & Procedures Effective June 1, 2021" as downloaded from JAMS' website at https://www.jamsadr.com/rules-employment-arbitration/.  (This document is attached to the Declaration of Brian C. Dawson as **Exhibit A**.)

2.    The  "Summary of Revisions to Employment Arbitration Rules", "Amended and Effective June 1, 2021" as downloaded from JAMS' website at https://www.jamsadr.com/rules-employment-arbitration/. (This document is attached to the Declaration of Brian C. Dawson as **Exhibit B**.)

3.    The current "JAMS Comprehensive Arbitration Rules & Procedures Effective June 1, 2021" as downloaded from JAMS' website at https://www.jamsadr.com/rules-comprehensive-arbitration/ . (This document is attached to the Declaration of Brian C. Dawson as **Exhibit C**.)

4.    The "Summary of Revisions to Comprehensive Arbitration Rules", "Amended and Effective June 1, 2021" as downloaded from JAMS' website at https://www.jamsadr.com/rules-comprehensive-arbitration/ (This document is attached to the Declaration of Brian C. Dawson as **Exhibit D**.)

5.    The Verified Complaint filed by Nexa Mortgage LLC against Damian Diaz and Groves Capital, Inc. in Arizona Superior Court, Case No. CV2022-001931.  (This document is attached to the Declaration of Brian C. Dawson as **Exhibit E**.)

6.    The Dismissal Minute Entry entered in Arizona Superior Court, Case No. CV2022-001931. (This document is attached to the Declaration of Brian C. Dawson as **Exhibit F**.)

7.     The court's ruling in *Cano v. Infinite Velocity Automotive, Inc.*, 2023 WL 7475841, October 4, 2023, California Superior Court, Alameda County; [the court addressed the various issues relating to the enforcement of arbitration provisions on individual employment claims versus representative claims on behalf of the LWDA.]. (This document is attached to the Declaration of Brian C. Dawson as **Exhibit G**.)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION

1

2  Dated:  November 27, 2023

3                                        By:     s/  *Brian C. Dawson*
                                                     BRIAN C. DAWSON
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL
ARBITRATION

# EXHIBIT 19

Matthew R. Miller (SBN 194647)
MILLER LAW FIRM
6790 Embarcadero Lane, No. 100
Carlsbad, CA 92011
Telephone: (619) 261-1150
Email: matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92121
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com  *Attorneys for Plaintiff*

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO, NORTH COUNTY

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> NEXA MORTGAGE, LLC, et al., <br><br> Defendants. | **Case No. 37-2022-00031816** <br><br> **DECLARATION OF DAMIAN DIAZ SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION** <br><br> Date: December 8, 2023 <br> Time: 1:30 p.m. <br><br> Dept.: 4B <br> Judge: Hon. Earl Maas III <br><br> State Action Filed: August 3, 2022 <br> FAC Filed: October 31, 2022 |

I, Damian Diaz, declare as follows:

      1.     I am the plaintiff in this matter, and am over 18 years of age.  I have personal knowledge of the facts set forth herein, and if called upon to testify to the facts contained herein, would do so competently.

2.     I was employed by the Nexa Mortgage LLC (or its related employing entity) as a loan officer from approximately July 13, 2020 to February 9, 2022.

3.     The document attached to "Defendant's Motion to Compel Claims to Arbitration and Dismiss Representative PAGA Claims" as Exhibit A [Dkt. No. 4-2] entitled "Nexa Mortgage LLC Outside Loan Officer Employment Agreement" indicates in the first paragraph of page "Exhibit A – 002" that I was "offered the position of an Inside Loan Officer but has elected to work in the capacity of an Outside Loan Officer". This statement is not true, as I was never offered a position of "Inside Loan Officer" at any time prior to, or during my employment with Nexa Mortgage LLC.

4.     Prior to commencing employment with Nexa, I was contacted by a Nexa loan officer who suggested that I would benefit from also becoming a Nexa loan officer. I attended a "Zoom" meeting with several other potential "recruits" where the benefits of becoming a Nexa loan officer were promoted the attendees.

5.     After that, I was sent an email that offered me what was essentially a "welcome package" with instructions of what I would need to provide or do as part of the onboarding process to become a Nexa employee.

6.     The email provided a link to electronically sign via "Docusign" the "Nexa Mortgage LLC Outside Loan Officer Employment Agreement" (the "Agreement") in which I was to adopt an electronic signature and initials for myself, and then clicked on the prompts made available by Nexa within the electronic document which automatically took the cursor to the places predetermined within the Agreement where I would either "click" to enter initials automatically or click to enter a signature automatically into the pre-determined locations.

7.     I understood that that I would need to complete the tasks listed in the instructions to ultimately become a Nexa employee. I opened the Docusign Agreement link, but had no discussions with anyone at Nexa about its contents either before or during the signing process. I did not really review the Agreement in any sort of detail nor was I represented by legal counsel during the onboarding process with Nexa nor did I consult with any legal counsel before clicking to enter the signature.

8.      The option to "opt out" of Section VIII of the Agreement was never discussed with anyone at Nexa before, during, or after the onboarding process.  Although I did not read or appreciate the significance of Section VIII of the Agreement, I was never prompted to specifically initial any part of Section VIII of the Agreement, nor was there any way for me through the Docusign electronic format to "strike" or cross out portions of the Agreement, including portions of Section VIII while electronically signing via Docusign.  I was also never prompted to choose to either initial or not initial at the end of Section VIII, in the space following the last sentence of that paragraph.

9.      During the onboarding process, I was never given any mailing instructions or mailing addresses for either Nexa's Human Resources Department nor my immediate supervisor, whomever that person would have been.  In fact, as far as I understood, I never had an "immediate supervisor" while working at Nexa.

10.    Had I read and understood the significance of Section VIII of the Agreement, I would have opted out of that section.

11.     While employed at Nexa, I was responsible for selling mortgage loan products to customers which I did from my home "office", which I maintained without reimbursement from Nexa.  I conducted sales from my home office more than half of my working time and only occasionally met with clients outside of my home office.  I was paid according to a commission structure that I never really fully understood, nor was I given a breakdown of how my commissions were calculated on a per sale basis.  There were weeks throughout my employment in which I received no payments from Nexa.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated:  November 27, 2023          By:     s/ *Damian Diaz*
                                                     DAMIAN DIAZ

DECLARATION OF DAMIAN DIAZ SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION

# EXHIBIT 20

Matthew R. Miller (SBN 194647)
MILLER LAW FIRM
6790 Embarcadero Lane, No. 100
Carlsbad, CA 92011
Telephone: (619) 261-1150
Email: matt@mrmlawfirm.com

Brian C. Dawson (SBN 183251)
DAWSON & OZANNE
5755 Oberlin Dr., Suite 301
San Diego, CA 92121
Telephone: (619) 988-2135
Email: brian@dawson-ozanne.com  *Attorneys for Plaintiff*

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN DIEGO, NORTH COUNTY**

| | |
|---|---|
| DAMIAN DIAZ, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>   v.<br><br>NEXA MORTGAGE, LLC, et al.,<br><br>         Defendants. | **Case No. 37-2022-00031816**<br><br>**DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION AND STAY THE CASE**<br><br>Date:    December 8, 2023<br>Time:   1:30 p.m.<br><br>Dept.:   4B<br>Judge:   Hon. Earl Maas III<br><br>State Action Filed: August 3, 2022<br>FAC Filed: October 31, 2022 |

I, Brian C. Dawson, declare as follows:

1.      I am an attorney licensed to practice before the courts of the State of California, and am a partner in the law firm, Dawson & Ozanne.  Our firm is legal counsel for plaintiff, Damian Diaz.  I have personal knowledge of the facts set forth herein, and if called upon to testify to the facts contained herein, would do so competently.

-1-

2.      After being served with the complaint that was filed by Nexa Mortgage LLC on February 16, 2022 in Arizona Superior Court, Mr. Diaz consulted with our office and, in conjunction with our office, sought the assistance from multiple attorneys licensed to practice in Arizona concerning representation to defend himself in that action.  To the best of my knowledge and underderstanding, at no time did Nexa present to the court an application that all other proceedings in the action be stayed pending the arbitration of any issue, question, or dispute which was arbitrable under Nexa's Agreement.  After some communications with Nexa's counsel, Nexa dismissed the action on or about March 17, 2022.

3.      Exhibits A through D that are attached to this Declaration are the various JAMS Arbitration Rules that may or may not apply to Mr. Diaz' arbitration proceedings if such proceedings were compelled.  Nexa's Arbitration provision requires any dispute between the parties concerning or arising out of their employment relationship (except enforcement or challenges to the arbitration provisions, alleged violations of section IV of the Agreement) be resolved through binding arbitration in accordance with the rules of JAMS Arbitration.  The arbitration provision further mandates that "notwithstanding any JAMS rules to the contrary, the parties will share equally in the costs of such arbitration, and shall be responsible their own attorneys' fees…"  Per the plain language of the arbitration provision, Diaz is required to pay half of the JAMS' fees and expenses.

4.      Although no one knows whether JAMS employment rules or comprehensive rules apply (or what version of either set of rules apply), Diaz would be responsible for half the fees and costs regardless of which set of JAMS rules apply.  If Diaz wants to challenge this outcome, per the terms of the Agreement, Diaz would need to seek redress in an Arizona court.

5.      If the JAMS comprehensive rules apply (either those in force when he Docusigned the Agreement or those as revised during his employment), Diaz would be responsible for his pro-rata share of the costs. (See Dawson Decl. Exhibit "C" JAMS Comprehensive Arbitration Rules & Procedures Effective June 1, 2021).

6.      JAMS comprehensive arbitration Rule 31(a) mandates: "Each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL ARBITRATION

expenses". (Dawson Decl. Exhibit "C" at pg. 35). Rule 31(c) also mandates: "The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration. Id.

7.      Even if one takes a contrary interpretation of the plain language of Nexa's arbitration provision and concludes that the absence of the term "employment rules" instead means that employment rules" apply, this re-drafting still does not necessarily alleviate the unconscionable cost burden on Diaz due to Nexa's drafting trick. On their face, JAMS employment rules arguably might limit Diaz' arbitration cost outlay to his "initial JAMS case management fee". (See Dawson Decl. Exhibit "A" JAMS Employment Arbitration Rules & Procedures Effective June 1, 2021, at Rule 31(c)).

8.      However, a further reading of Rule 31(c) shows this cost saving feature does not apply to Diaz, nor any other Nexa employee who failed to locate and execute the hidden opt out language within the arbitration provision. Rule 31(c) mandates "[i]f an arbitration is based on a clause or agreement that is required as a condition of employment, the only fee employee may be required to pay is the initial JAMS case management fee."

9.      Here, the problem for Diaz is that Nexa's arbitration provision technically provided Diaz an option to opt out of the arbitration clause, making that clause not a "required condition of employment" and this portion of Rule 31(c) minimizing Diaz' expenses arguably does not apply. Instead, Rule 31(c) goes on to state that "[i]f an Arbitration is not based on a clause or agreement that is required as a condition of employment, the parties are jointly and severally liable for the payment of JAMS arbitration fees and arbitrator compensation and expenses." (emphasis added.)

10.     Moreover, if Diaz or Nexa wanted to challenge the applicability of Employment Rule 31(c), the Agreement's "Forum Selection/Jurisdiction" clause forces that dispute to be litigated in Arizona court, a forum to which Diaz purportedly consented as part of the Agreement. As a result, the provision is unconscionable. Ting v. AT&T, 319 F.3d 1126, 1151 (9th Cir. 2003) (finding

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL
ARBITRATION

1   requirement that customers "split the arbitrator's fees with AT&T" to be unconscionable under

2   California law); and see Armendariz at 110-111.

3       11.    Attached hereto as *Exhibit A*, is a true and correct copy of the current "JAMS

4   Employment Arbitration Rules & Procedures Effective June 1, 2021" as downloaded from

5   JAMS' website at https://www.jamsadr.com/rules-employment-arbitration/ .

6       12.    Attached hereto as *Exhibit B*, is a true and correct copy of the "Summary of

7   Revisions to Employment Arbitration Rules", "Amended and Effective June 1, 2021" as

8   downloaded from JAMS' website at https://www.jamsadr.com/rules-employment-arbitration/ .

9       13.    Attached hereto as *Exhibit C*, is a true and correct copy of the current "JAMS

10  Comprehensive Arbitration Rules & Procedures Effective June 1, 2021" as downloaded from

11  JAMS' website at https://www.jamsadr.com/rules-comprehensive-arbitration/ .

12      14.    Attached hereto as *Exhibit D*, is a true and correct copy of the "Summary of

13  Revisions to Comprehensive Arbitration Rules", "Amended and Effective June 1, 2021" as

14  downloaded from JAMS' website at https://www.jamsadr.com/rules-comprehensive-arbitration/

15      15.    Attached hereto as *Exhibit E*, is a true and correct copy of the Verified Complaint

16  filed by Nexa Mortgage LLC against Damian Diaz and Groves Capital, Inc. in Arizona Superior

17  Court, Case No. CV2022-001931.

18      16.    Attached hereto as *Exhibit F*, is a true and correct copy of the Dismissal Minute

19  Entry entered in Arizona Superior Court, Case No. CV2022-001931.

20      17.    Attached hereto as *Exhibit G*, is a true and correct copy of the court's ruling in *Cano*

21  *v. Infinite Velocity Automotive, Inc.*, 2023 WL 7475841, October 4, 2023, California Superior Court,

22  Alameda County; [the court addressed the various issues relating to the enforcement of arbitration

23  provisions on individual employment claims versus representative claims on behalf of the LWDA.]

24  ///

25  ///

26  ///

27  ///

28

-4-

1    I declare under penalty of perjury under the laws of the State of California that the

2   foregoing is true and correct.

3

4   Dated:  November 27, 2023

5                                        By:      s/ *Brian C. Dawson*

6                                                 BRIAN C. DAWSON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF BRIAN C. DAWSON SUPPORTING OPPOSITION TO MOTION TO COMPEL
ARBITRATION

# EXHIBIT A

# JAMS
# Employment
# Arbitration Rules
# & Procedures

Effective June 1, 2021

Local Solutions. Global Reach.



# JAMS Employment
# Arbitration Rules & Procedures

**Founded in 1979, JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide.** Our neutrals resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

**JAMS mediators and arbitrators are full-time neutrals** who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct. Whether they are conducting in-person, remote or hybrid hearings, JAMS neutrals are adept at managing the resolution process.

**Effective June 1, 2021, these updated Rules reflect the latest developments in arbitration.** They make explicit the arbitrator's full authority to conduct hearings in person, virtually or in a combined form, and with participants in more than one geographic location. They also update electronic filing processes to coordinate with **JAMS Access**, our secure, online case management platform.



### Summary of Revisions to the Employment Rules

Scan this code with your smartphone for a complete list of all changes.

## Additional Employment Arbitration Resources



### JAMS Employment Arbitration Minimum Standards

Scan for our policy on the use of arbitration for resolving employment-related disputes.



### Sample Employment Contract Clauses

Scan for guidance on drafting an employment dispute resolution program and contract clause language.



### JAMS Employment Practice Group

Scan to learn more about our experienced employment neutrals.



### Virtual & Hybrid ADR

Scan to learn about our concierge-level client services, including **Virtual ADR Moderators** and **premium technology**.

**jamsadr.com • 800.352.5267**

# Table of Contents

**RULE 1**   Scope of Rules. . . . . . . . . . . . . . . . . . . . . . . . .4

**RULE 2**   Party Self-Determination. . . . . . . . . . . . . . .4

**RULE 3**   Amendment of Rules. . . . . . . . . . . . . . . . . . .4

**RULE 4**   Conflict with Law . . . . . . . . . . . . . . . . . . . . . .4

**RULE 5**   Commencing an Arbitration . . . . . . . . . . . .4

**RULE 6**   Preliminary and
Administrative Matters. . . . . . . . . . . . . . . . .5

**RULE 7**   Number and Neutrality of
Arbitrators; Appointment
and Authority of Chairperson. . . . . . . . . . .6

**RULE 8**   Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**RULE 9**   Notice of Claims . . . . . . . . . . . . . . . . . . . . . . .7

**RULE 10**   Changes of Claims . . . . . . . . . . . . . . . . . . . . .7

**RULE 11**   Interpretation of Rules
and Jurisdictional Challenges. . . . . . . . . . .7

**RULE 12**   Representation . . . . . . . . . . . . . . . . . . . . . . . .7

**RULE 13**   Withdrawal from Arbitration. . . . . . . . . . . .8

**RULE 14**   *Ex Parte* Communications. . . . . . . . . . . . . .8

**RULE 15**   Arbitrator Selection, Disclosures
and Replacement. . . . . . . . . . . . . . . . . . . . . .8

**RULE 16**   Preliminary Conference . . . . . . . . . . . . . . . .9

**RULE 17**   Exchange of Information . . . . . . . . . . . . . . .9

**RULE 18**   Summary Disposition
of a Claim or Issue . . . . . . . . . . . . . . . . . . . .10

**RULE 19**   Scheduling and Location of Hearing . . . .10

**RULE 20**   Pre-Hearing Submissions . . . . . . . . . . . . . .10

**RULE 21**   Securing Witnesses and Documents
for the Arbitration Hearing . . . . . . . . . . . . .11

**RULE 22**   The Arbitration Hearing . . . . . . . . . . . . . . . .11

**RULE 23**   Waiver of Hearing. . . . . . . . . . . . . . . . . . . . . .12

**RULE 24**   Awards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**RULE 25**   Enforcement of the Award. . . . . . . . . . . . . .13

**RULE 26**   Confidentiality and Privacy. . . . . . . . . . . . .13

**RULE 27**   Waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**RULE 28**   Settlement and Consent Award. . . . . . . . .14

**RULE 29**   Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 30**   Disqualification of the
Arbitrator as a Witness or
Party and Exclusion of Liability . . . . . . . . .14

**RULE 31**   Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

**RULE 32**   Bracketed (or High-Low)
Arbitration Option. . . . . . . . . . . . . . . . . . . . .15

**RULE 33**   Final Offer (or Baseball)
Arbitration Option. . . . . . . . . . . . . . . . . . . . .15

**RULE 34**   Optional Arbitration
Appeal Procedure. . . . . . . . . . . . . . . . . . . . .15

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## RULE 1
## Scope of Rules

(a)   The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are employment-related, unless other Rules are prescribed.

(b)   The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Employment Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)   The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d)   JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)   The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-filing) means the electronic transmission of documents to JAMS for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents to a party, attorney or representative under these Rules.

## RULE 2
## Party Self-Determination

(a)   The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness and Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)   When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

## RULE 3
## Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## RULE 4
## Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## RULE 5
## Commencing an Arbitration

(a)   The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)   A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)   A pre-dispute written contractual provision requiring the Parties to arbitrate the employment dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)   A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv)   The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or

(v)   A copy of a court order compelling Arbitration at JAMS.

(b)   The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties together with evidence that the Demand for Arbitration has been served on all Parties.

(c)   If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 19, the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)   The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirement, such as the statute of limitations; any contractual limitations period; or any claims notice requirement. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rules 3, 13(a), 17(a) and 31(a)).

## RULE 6
## Preliminary and Administrative Matters

(a)   JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)   If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the Parties and witnesses, and the relative resources of the Parties shall be considered, but in no event will the Hearing be scheduled in a location that precludes attendance by the Employee.

(c)   If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)   JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e)   Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i)   If a Party files more than one Arbitration with JAMS, JAMS may consolidate two or more of the Arbitrations into a single Arbitration.

(ii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii)   Where a Demand or Demands for Arbitration is or are submitted naming parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f)   Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## RULE 7
## Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a)   The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)   In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed, in advance of the Arbitration Hearing, to produce documents.

(c)   Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## RULE 8
## Service

(a   JAMS or the Arbitrator may at any time require electronic filing and service of documents in an Arbitration, including through the JAMS Electronic Filing System. If JAMS or the Arbitrator requires electronic filing and service, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of documents and notifications.

Any document filed via the JAMS Electronic Filing System shall be considered as filed when the transmission to the JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date.

(b)   Every document filed with the JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to the JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney.

(c)   Delivery of e-service documents through the JAMS Electronic Filing System shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through the JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service or JAMS completes the transmission of the electronic document(s) to the JAMS Electronic Filing System for e-filing and/or e-service.

(d)   If an electronic filing and/or service via the JAMS Electronic Filing System does not occur due to technical error in the transmission of the document, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed and/ or served nunc pro tunc to the date it was first attempted to be transmitted electronically. In such cases a Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e)   For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f)   In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period. If the last day for the performance of any act that is required by these rules to be performed within a specific time

falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday.

## RULE 9
## Notice of Claims

(a) Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b) Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c) Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.

(d) Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e) Any claim or counterclaim to which no response has been served will be deemed denied.

(f) Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## RULE 10
## Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third Party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## RULE 11
## Interpretation of Rules and Jurisdictional Challenges

(a) Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c) Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d) The Arbitrator may, upon a showing of good cause or sua sponte, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may only be altered in accordance with Rules 22(i) or 24.

## RULE 12
## Representation

(a) The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and

email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)   Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address, telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c)   The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## RULE 13
## Withdrawal from Arbitration

(a) No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b)   A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## RULE 14
## *Ex Parte* Communications

(a)   No Party may have any ex parte communication with a neutral Arbitrator, except as provided in section (b) of this

Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)   A Party may have ex parte communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c)   The Parties may agree to permit more extensive ex parte communication between a Party and a non-neutral Arbitrator. More extensive communications with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## RULE 15
## Arbitrator Selection, Disclosures and Replacement

(a)   Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)   If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)   Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)   If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many

members of the tripartite panel as are necessary to complete the panel.

(e)   If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS shall deem that Party to have accepted all of the Arbitrator candidates.

(f)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration.

(g)   If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision will be final.

(h)   Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstances likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties and their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i)   At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final

determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)   Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the party that did not appoint that Arbitrator.

## RULE 16
## Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)   The exchange of information in accordance with Rule 17 or otherwise;

(b)   The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)   The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)   The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)   The attendance of witnesses as contemplated by Rule 21;

(f)   The scheduling of any dispositive motion pursuant to Rule 18;

(g)   The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)   The form of the Award; and

(i)   Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## RULE 17
## Exchange of Information

(a)   The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information

("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, names of individuals whom they may call as witnesses at the Arbitration Hearing and names of all experts who may be called to testify at the Arbitration Hearing, together with each expert's report, which may be introduced at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b)   Each Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness.

(c)   As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d)   The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

(e)   The Parties may take discovery of third parties with the approval of the Arbitrator.

## RULE 18
## Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the motion. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

## RULE 19
## Scheduling and Location of Hearing

(a)   The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)   If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c)   The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena duces tecum to a third-party witness.

## RULE 20
## Pre-Hearing Submissions

(a)   Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; and (3) a list of all exhibits

intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b)   The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## RULE 21
## Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena duces tecum shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## RULE 22
## The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so. It is expected that the Employee will attend the Arbitration Hearing, as will any other individual party with information about a significant issue.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony, even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Arbitrator has full authority to determine that the Hearing, or any portion thereof, be conducted in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form. If some or all of the witnesses or other participants are located remotely, the Arbitrator may make such orders and set such procedures as the Arbitrator deems necessary or advisable.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator,

to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted, or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i)   At any time before the Award is rendered, the Arbitrator may, sua sponte or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)   Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. No other means of recording the proceedings shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

(i)   The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)   If there is no agreement to share the cost, the stenographic record may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)   If the Parties agree to the Optional Arbitration Appeal Procedure (see Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing.

(iv)   The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## RULE 23
### Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## RULE 24
### Awards

(a)   The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)   Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)   In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d)   In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)   Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)   The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an

allocation is expressly prohibited by the Parties' Agreement or by applicable law. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g)   The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h)   The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an Arbitration Agreement that is required as a condition of employment.

(i)   After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31 or on account of the effect of an offer to allow judgment), or the Arbitrator may sua sponte propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)   The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or

a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award.

## RULE 25
## Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, et seq., or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## RULE 26
## Confidentiality and Privacy

(a)   JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)   The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)   Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## RULE 27
## Waiver

(a)   If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)   If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## RULE 28
### Settlement and Consent Award

(a)   The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b)   The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c)   If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## RULE 29
### Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## RULE 30
### Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)   The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)   The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)   The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## RULE 31
### Fees

(a)   Except as provided in paragraph (c) below, unless the Parties have agreed to a different allocation, each Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration. To the extent possible, the allocation of such fees and expenses shall not be disclosed to the Arbitrator. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)   JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its pro rata or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)   If an Arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an Employee may be required to pay is the initial JAMS Case Management Fee. JAMS does not preclude an Employee from contributing to administrative and Arbitrator fees and expenses. If an Arbitration is not based on a clause or agreement that is required as a condition of employment, the Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities or individuals are adverse for purpose of fees, considering such factors as whether the entities or individuals are represented by the same attorney and whether the entities or individuals are presenting joint or separate positions at the Arbitration.

## RULE 32
## Bracketed (or High-Low) Arbitration Option

(a)   At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)   JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)   The Arbitrator shall render the Award in accordance with Rule 24.

(d)   In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## RULE 33
## Final Offer (or Baseball) Arbitration Option

(a)   Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)   If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)   If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)   Other than as provided herein, the provisions of Rule 24 shall be applicable.

## RULE 34
## Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedures to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

jamsadr.com • 800.352.5267

# EXHIBIT B



**SUMMARY OF REVISIONS TO EMPLOYMENT ARBITRATION RULES**

**JAMS Employment Arbitration Rules, Amended and Effective June 1, 2021.**

**Rule 1. Scope of Rules**

Rule 1(f): The revised rule clarifies the meanings of "electronic filing" and "electronic service."

**Rule 2. Party Self-Determination**

Rule 2(b): The revised rule eliminates the word "subsequently" from the phrase "the Parties may subsequently agree."

**Rule 5. Commencing an Arbitration**

Rule 5(a)(iv): The revised rule includes the phrase "where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules." This revision clarifies JAMS' administrative authority in certain situations in the convening stages of an arbitration. For example, where a respondent fails to object timely to JAMS' administration, JAMS may determine that it can proceed with administration even if the parties' arbitration agreement does not name JAMS or the JAMS Rules (e.g., the parties' agreement is silent as to arbitration provider and rules). Where a respondent does object timely to JAMS' administration, JAMS may determine that it can proceed with administration if the parties' arbitration agreement specifies JAMS or the JAMS Rules.

**Rule 6. Preliminary and Administrative Matters**

Rule 6(e)(i): The revised rule adds the words "two or more of." This addition clarifies JAMS' authority in certain instances to consolidate any number of a party's multiple arbitration filings into a single proceeding.

**Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson**

Rule 7(b): The revised rule adds the phrase "in advance of the Arbitration Hearing" to the last sentence.

**Rule 8. Service**

The revised Rule 8 aligns electronic filing and service in a JAMS arbitration with the functionality of JAMS' new electronic case management system, JAMS Access (referred to in the rules as "the JAMS Electronic Filing System").

Rule 8(a): Previously, this rule allowed the arbitrator to require electronic filing and service at any time. The revised rule clarifies that JAMS or the arbitrator may require electronic filing and service at any time.

Rule 8(b): The revised rule eliminates the requirement for a filing party to maintain in paper format the "original signature" of third parties.

Rule 8(f): The revised rule includes the following sentence: "If the last day for the performance of any act that is required by these Rules to be performed within a specific time falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday."

**Rule 9. Notice of Claims**

Rule 9 (c): The revised rule allows JAMS to grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the arbitrator.

**Rule 12. Representation**

The revised Rule 12 eliminates all references to fax numbers.

Rule 12(c): This new rule allows an arbitrator (or tripartite panel) to withhold approval of any intended change in party representation where the change could compromise the ability of the arbitrator (or panel) to continue to serve or the finality of an award.

**Rule 15. Arbitrator Selection, Disclosures and Replacement**

Rule 15(b): The revised rule adds the words "at least" in the following: "at least ten (10) Arbitrator candidates in the case of a tripartite panel." This addition makes explicit JAMS' authority to include more than 10 names in a list of arbitrator candidates for a tripartite panel. (Both the prior and revised versions of this rule make explicit JAMS' authority to include more than five names in a list of candidates for a sole arbitrator.) The revised rule also includes the words "add names to or" in the following: "JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause." This addition makes explicit JAMS' authority to supplement a list of arbitrator candidates—in addition to replacing any or all names—for reasonable cause.

Rule 15(f): With the addition of the words "or individuals," the revised rule makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of the arbitrator selection process.

**Rule 17. Exchange of Information**

Rule 17(e): This new rule makes explicit that in a consumer or employment arbitration, the parties may take discovery of third parties with the approval of the arbitrator.

**Rule 18. Summary Disposition of a Claim or Issue**

The revised Rule 18 provides that an arbitrator may permit a party to file a motion for summary disposition of a claim or issue only if the arbitrator determines the party has shown that the proposed motion for summary disposition is likely to succeed and to dispose of or narrow the issues in the case.

**Rule 22. The Arbitration Hearing**

Rule 22(g): The revised rule makes explicit the arbitrator's full authority to conduct the hearing in person, virtually or in a combined form, and with participants in more than one geographic location. It further makes explicit the arbitrator's authority to issue orders and set procedures as needed if hearing participants are located remotely.

Rule 22(k): Previously, this rule allowed a party to arrange for a stenographic "or other" record of the hearing. The revised rule maintains a party's ability to arrange for a stenographic record but eliminates its ability to arrange for "other" types of records of the hearing absent party agreement or the direction of arbitrator.

**Rule 31. Fees**

Rule 31(d): With the addition of the words "or individuals" in several places, the revised makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of JAMS' assessment of fees.

# EXHIBIT C

# JAMS Comprehensive Arbitration Rules & Procedures

Effective June 1, 2021

Local Solutions. Global Reach.



# JAMS Comprehensive Arbitration Rules & Procedures

**Founded in 1979, JAMS is the largest private provider of alternative dispute resolution (ADR) services worldwide.** Our neutrals resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

**JAMS mediators and arbitrators are full-time neutrals** who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct. Whether they are conducting in-person, remote or hybrid hearings, JAMS neutrals are adept at managing the resolution process.

**Effective June 1, 2021, these updated Rules reflect the latest developments in arbitration.** They make explicit the arbitrator's full authority to conduct hearings in person, virtually or in a combined form, and with participants in more than one geographic location. They also update electronic filing processes to coordinate with **JAMS Access**, our secure, online case management platform.



### Summary of Revisions to the Comprehensive Rules

Scan this code with your smartphone for a complete list of all changes.

## Additional Arbitration Resources



### Arbitration Schedule of Fees and Costs

Scan for details on our professional and administrative fees.



### Latest JAMS Rules Updates

Scan for links to our updated **Streamlined, Construction, Expedited Construction** and **Employment** rules.



### Sample Contract Clauses

Scan for guidance on creating custom commercial contract clauses, including our **Diversity and Inclusion** option.



### Virtual & Hybrid ADR

Scan to learn about our concierge-level client services, including **Virtual ADR Moderators** and **premium technology**.

**jamsadr.com • 800.352.5267**

# Table of Contents

RULE 1    Scope of Rules . . . . . . . . . . . . . . . . . . . . . . . .4

RULE 2    Party Self-Determination and Emergency Relief Procedures . . . . . . . . . . .4

RULE 3    Amendment of Rules . . . . . . . . . . . . . . . . . .5

RULE 4    Conflict with Law . . . . . . . . . . . . . . . . . . . . . .5

RULE 5    Commencing an Arbitration . . . . . . . . . . . .5

RULE 6    Preliminary and Administrative Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

RULE 7    Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson . . . . . . . . . . . . . . . . . . . . . . . . .6

RULE 8    Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

RULE 9    Notice of Claims . . . . . . . . . . . . . . . . . . . . . . .7

RULE 10   Changes of Claims . . . . . . . . . . . . . . . . . . .7

RULE 11   Interpretation of Rules and Jurisdictional Challenges . . . . . . . . . . . . .8

RULE 12   Representation . . . . . . . . . . . . . . . . . . . . . . .8

RULE 13   Withdrawal from Arbitration . . . . . . . . . . .8

RULE 14   Ex Parte Communications . . . . . . . . . . . .8

RULE 15   Arbitrator Selection, Disclosures and Replacement . . . . . . . . . . . . . . . . . . . . .9

RULE 16   Preliminary Conference . . . . . . . . . . . . . . .10

RULE 16.1  Application of Expedited Procedures . . .10

RULE 16.2  Where Expedited Procedures Are Applicable . . . . . . . . . . . . . . . . . . . . . . .10

RULE 17   Exchange of Information . . . . . . . . . . . . . . .11

RULE 18   Summary Disposition of a Claim or Issue . . . . . . . . . . . . . . . . . . . . . . .12

RULE 19   Scheduling and Location of Hearing . . . .12

RULE 20   Pre-Hearing Submissions . . . . . . . . . . . . .12

RULE 21   Securing Witnesses and Documents for the Arbitration Hearing . . . . . . . . . . .13

RULE 22   The Arbitration Hearing . . . . . . . . . . . . . . .13

RULE 23   Waiver of Hearing . . . . . . . . . . . . . . . . . . . .14

RULE 24   Awards . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

RULE 25   Enforcement of the Award . . . . . . . . . . . . .15

RULE 26   Confidentiality and Privacy . . . . . . . . . . . .15

RULE 27   Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

RULE 28   Settlement and Consent Award . . . . . . . .15

RULE 29   Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . .16

RULE 30   Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability . . . . . . . . . . . . . . . . . .16

RULE 31   Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

RULE 32   Bracketed (or High-Low) Arbitration Option . . . . . . . . . . . . . . . . . . . .16

RULE 33   Final Offer (or Baseball) Arbitration Option . . . . . . . . . . . . . . . . . . . .17

RULE 34   Optional Arbitration Appeal Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*NOTICE: These Rules are the copyrighted property of JAMS. They cannot be copied, reprinted or used in any way without permission of JAMS, unless they are being used by the parties to an arbitration as the rules for that arbitration. If they are being used as the rules for an arbitration, proper attribution must be given to JAMS. If you wish to obtain permission to use our copyrighted materials, please contact JAMS at 949.224.1810.*

## RULE 1
## Scope of Rules

(a)   The JAMS Comprehensive Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims that are administered by JAMS and in which the Parties agree to use these Rules or, in the absence of such agreement, any disputed claim or counterclaim that exceeds $250,000, not including interest or attorneys' fees, unless other Rules are prescribed.

(b)   The Parties shall be deemed to have made these Rules a part of their Arbitration Agreement ("Agreement") whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules and the disputes or claims meet the criteria of the first paragraph of this Rule.

(c)   The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ("NAC") or the office of JAMS General Counsel or their designees.

(d)   JAMS may, in its discretion, assign the administration of an Arbitration to any of its Resolution Centers.

(e)   The term "Party" as used in these Rules includes Parties to the Arbitration and their counsel or representatives.

(f)   "Electronic filing" (e-filing) means the electronic transmission of documents to JAMS for the purpose of filing via the Internet. "Electronic service" (e-service) means the electronic transmission of documents to a Party, attorney or representative under these Rules.

## RULE 2
## Party Self-Determination and Emergency Relief Procedures

(a)   The Parties may agree on any procedures not specified herein or in lieu of these Rules that are consistent with the applicable law and JAMS policies (including, without limitation, Rules 15(i), 30 and 31). The Parties shall promptly notify JAMS of any such Party-agreed procedures and shall confirm such procedures in writing. The Party-agreed procedures shall be enforceable as if contained in these Rules.

(b)   When an Arbitration Agreement provides that the Arbitration will be non-administered or administered by an entity other than JAMS and/or conducted in accordance with rules other than JAMS Rules, the Parties may agree to modify that Agreement to provide that the Arbitration will be administered by JAMS and/or conducted in accordance with JAMS Rules.

(c)   Emergency Relief Procedures. These Emergency Relief Procedures are available in Arbitrations filed and served after July 1, 2014, and where not otherwise prohibited by law. Parties may agree to opt out of these Procedures in their Arbitration Agreement or by subsequent written agreement.

(i)   A Party in need of emergency relief prior to the appointment of an Arbitrator may notify JAMS and all other Parties in writing of the relief sought and the basis for an Award of such relief. This Notice shall include an explanation of why such relief is needed on an expedited basis. Such Notice shall be given by email or personal delivery. The Notice must include a statement certifying that all other Parties have been notified. If all other Parties have not been notified, the Notice shall include an explanation of the efforts made to notify such Parties.

(ii)   JAMS shall promptly appoint an Emergency Arbitrator to rule on the emergency request. In most cases the appointment of an Emergency Arbitrator will be done within 24 hours of receipt of the request. The Emergency Arbitrator shall promptly disclose any circumstance likely, based on information disclosed in the application, to affect the Arbitrator's ability to be impartial or independent. Any challenge to the appointment of the Emergency Arbitrator shall be made within 24 hours of the disclosures by the Emergency Arbitrator. JAMS will promptly review and decide any such challenge. JAMS' decision shall be final.

(iii)   Within two business days, or as soon as practicable thereafter, the Emergency Arbitrator shall establish a schedule for the consideration of the request for emergency relief. The schedule shall provide a reasonable opportunity for all Parties to be heard taking into account the nature of the relief sought. The Emergency Arbitrator has the authority to rule on his or her own jurisdiction and shall resolve any disputes with respect to the request for emergency relief.

(iv)  The Emergency Arbitrator shall determine whether the Party seeking emergency relief has shown that immediate loss or damage will result in the absence of emergency relief and whether the requesting Party is entitled to such relief. The Emergency Arbitrator shall enter an order or Award granting or denying the relief, as the case may be, and stating the reasons therefor.

(v)  Any request to modify the Emergency Arbitrator's order or Award must be based on changed circumstances and may be made to the Emergency Arbitrator until such time as an Arbitrator or Arbitrators are appointed in accordance with the Parties' Agreement and JAMS' usual procedures. Thereafter, any request related to the relief granted or denied by the Emergency Arbitrator shall be determined by the Arbitrator(s) appointed in accordance with the Parties' Agreement and JAMS' usual procedures.

(vi)  In the Emergency Arbitrator's discretion, any interim Award of emergency relief may be conditioned on the provision of adequate security by the Party seeking such relief.

## RULE 3
## Amendment of Rules

JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules.

## RULE 4
## Conflict with Law

If any of these Rules, or modification of these Rules agreed to by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern over the Rule in conflict, and no other Rule will be affected.

## RULE 5
## Commencing an Arbitration

(a)  The Arbitration is deemed commenced when JAMS issues a Commencement Letter based upon the existence of one of the following:

(i)  A post-dispute Arbitration Agreement fully executed by all Parties specifying JAMS administration or use of any JAMS Rules; or

(ii)  A pre-dispute written contractual provision requiring the Parties to arbitrate the dispute or claim and specifying JAMS administration or use of any JAMS Rules or that the Parties agree shall be administered by JAMS; or

(iii)  A written confirmation of an oral agreement of all Parties to participate in an Arbitration administered by JAMS or conducted pursuant to any JAMS Rules; or

(iv)  The Respondent's failure to timely object to JAMS administration, where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules; or

(v)  A copy of a court order compelling Arbitration at JAMS.

(b)  The issuance of the Commencement Letter confirms that requirements for commencement have been met, that JAMS has received all payments required under the applicable fee schedule and that the Claimant has provided JAMS with contact information for all Parties together with evidence that the Demand for Arbitration has been served on all Parties.

(c)  If a Party that is obligated to arbitrate in accordance with subparagraph (a) of this Rule fails to agree to participate in the Arbitration process, JAMS shall confirm in writing that Party's failure to respond or participate, and, pursuant to Rule 22(j), the Arbitrator, once appointed, shall schedule, and provide appropriate notice of, a Hearing or other opportunity for the Party demanding the Arbitration to demonstrate its entitlement to relief.

(d)  The date of commencement of the Arbitration is the date of the Commencement Letter but is not intended to be applicable to any legal requirement, such as the statute of limitations; any contractual limitations period; or any claims notice requirement. The term "commencement," as used in this Rule, is intended only to pertain to the operation of this and other Rules (such as Rules 3, 13(a), 17(a) and 31(a)).

## RULE 6
## Preliminary and Administrative Matters

(a)  JAMS may convene, or the Parties may request, administrative conferences to discuss any procedural matter relating to the administration of the Arbitration.

(b)  If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, JAMS may determine the location of the Hearing, subject to Arbitrator review. In determining the location of the Hearing, such factors as the subject matter of the dispute, the convenience of the

Parties and witnesses, and the relative resources of the Parties shall be considered.

(c)   If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings. JAMS may so inform the Parties in order that one of them may advance the required payment. If one Party advances the payment owed by a non-paying Party, the Arbitration shall proceed, and the Arbitrator may allocate the non-paying Party's share of such costs, in accordance with Rules 24(f) and 31(c). An administrative suspension shall toll any other time limits contained in these Rules or the Parties' Agreement.

(d)   JAMS does not maintain an official record of documents filed in the Arbitration. If the Parties wish to have any documents returned to them, they must advise JAMS in writing within thirty (30) calendar days of the conclusion of the Arbitration. If special arrangements are required regarding file maintenance or document retention, they must be agreed to in writing, and JAMS reserves the right to impose an additional fee for such special arrangements. Documents that are submitted for e-filing are retained for thirty (30) calendar days following the conclusion of the Arbitration.

(e)   Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations in the following instances:

(i)   If a Party files more than one Arbitration with JAMS, JAMS may consolidate two or more of the Arbitrations into a single Arbitration.

(ii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties already involved in another Arbitration or Arbitrations pending under these Rules, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

(iii)   Where a Demand or Demands for Arbitration is or are submitted naming Parties that are not identical to the Parties in the existing Arbitration or Arbitrations, JAMS may decide that the new case or cases shall be consolidated into one or more of the pending proceedings and referred to one of the Arbitrators or panels of Arbitrators already appointed.

When rendering its decision, JAMS will take into account all circumstances, including the links between the cases and the progress already made in the existing Arbitrations.

Unless applicable law provides otherwise, where JAMS decides to consolidate a proceeding into a pending Arbitration, the Parties to the consolidated case or cases will be deemed to have waived their right to designate an Arbitrator as well as any contractual provision with respect to the site of the Arbitration.

(f)   Where a third party seeks to participate in an Arbitration already pending under these Rules or where a Party to an Arbitration under these Rules seeks to compel a third party to participate in a pending Arbitration, the Arbitrator shall determine such request, taking into account all circumstances he or she deems relevant and applicable.

## RULE 7
## Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson

(a)   The Arbitration shall be conducted by one neutral Arbitrator, unless all Parties agree otherwise. In these Rules, the term "Arbitrator" shall mean, as the context requires, the Arbitrator or the panel of Arbitrators in a tripartite Arbitration.

(b)   In cases involving more than one Arbitrator, the Parties shall agree on, or, in the absence of agreement, JAMS shall designate, the Chairperson of the Arbitration Panel. If the Parties and the Arbitrators agree, a single member of the Arbitration Panel may, acting alone, decide discovery and procedural matters, including the conduct of hearings to receive documents and testimony from third parties who have been subpoenaed, in advance of the Arbitration Hearing, to produce documents.

(c)   Where the Parties have agreed that each Party is to name one Arbitrator, the Arbitrators so named shall be neutral and independent of the appointing Party, unless the Parties have agreed that they shall be non-neutral.

## RULE 8
## Service

(a)   JAMS or the Arbitrator may at any time require electronic filing and service of documents in an Arbitration, including through the JAMS Electronic Filing System. If JAMS or the Arbitrator requires electronic filing and service, the Parties shall maintain and regularly monitor a valid, usable and live email address for the receipt of documents and notifications. Any document filed via the JAMS Electronic Filing System shall

be considered as filed when the transmission to the JAMS Electronic Filing System is complete. Any document e-filed by 11:59 p.m. (of the sender's time zone) shall be deemed filed on that date.

(b)  Every document filed with the JAMS Electronic Filing System shall be deemed to have been signed by the Arbitrator, Case Manager, attorney or declarant who submits the document to the JAMS Electronic Filing System, and shall bear the typed name, address and telephone number of a signing attorney.

(c)  Delivery of e-service documents through the JAMS Electronic Filing System shall be considered as valid and effective service and shall have the same legal effect as an original paper document. Recipients of e-service documents shall access their documents through the JAMS Electronic Filing System. E-service shall be deemed complete when the Party initiating e-service or JAMS completes the transmission of the electronic document(s) to the JAMS Electronic Filing System for e-filing and/or e-service.

(d)  If an electronic filing and/or service via JAMS Electronic Filing System does not occur due to technical error in the transmission of the document, the Arbitrator or JAMS may, for good cause shown, permit the document to be filed and/or served *nunc pro tunc* to the date it was first attempted to be transmitted electronically. In such cases a Party shall, absent extraordinary circumstances, be entitled to an order extending the date for any response or the period within which any right, duty or other act must be performed.

(e)  For documents that are not filed electronically, service by a Party under these Rules is effected by providing one signed copy of the document to each Party and two copies in the case of a sole Arbitrator and four copies in the case of a tripartite panel to JAMS. Service may be made by hand-delivery, overnight delivery service or U.S. mail. Service by any of these means is considered effective upon the date of deposit of the document.

(f)  In computing any period of time prescribed or allowed by these Rules for a Party to do some act within a prescribed period after the service of a notice or other paper on the Party and the notice or paper is served on the Party only by U.S. mail, three (3) calendar days shall be added to the prescribed period. If the last day for the performance of any act that is required by these Rules to be performed within a specific time falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday.

## RULE 9
## Notice of Claims

(a)  Each Party shall afford all other Parties reasonable and timely notice of its claims, affirmative defenses or counterclaims. Any such notice shall include a short statement of its factual basis. No claim, remedy, counterclaim or affirmative defense will be considered by the Arbitrator in the absence of such prior notice to the other Parties, unless the Arbitrator determines that no Party has been unfairly prejudiced by such lack of formal notice or all Parties agree that such consideration is appropriate notwithstanding the lack of prior notice.

(b)  Claimant's notice of claims is the Demand for Arbitration referenced in Rule 5. It shall include a statement of the remedies sought. The Demand for Arbitration may attach and incorporate a copy of a Complaint previously filed with a court. In the latter case, Claimant may accompany the Complaint with a copy of any Answer to that Complaint filed by any Respondent.

(c)  Within fourteen (14) calendar days of service of the notice of claim, a Respondent may submit to JAMS and serve on other Parties a response and a statement of any affirmative defenses, including jurisdictional challenges, or counterclaims it may have. JAMS may grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the Arbitrator.

(d)  Within fourteen (14) calendar days of service of a counterclaim, a Claimant may submit to JAMS and serve on other Parties a response to such counterclaim and any affirmative defenses, including jurisdictional challenges, it may have.

(e)  Any claim or counterclaim to which no response has been served will be deemed denied.

(f)  Jurisdictional challenges under Rule 11 shall be deemed waived, unless asserted in a response to a Demand or counterclaim or promptly thereafter, when circumstances first suggest an issue of arbitrability.

## RULE 10
## Changes of Claims

After the filing of a claim and before the Arbitrator is appointed, any Party may make a new or different claim against a Party or any third party that is subject to Arbitration in the proceeding. Such claim shall be made in writing, filed with JAMS and served

on the other Parties. Any response to the new claim shall be made within fourteen (14) calendar days after service of such claim. After the Arbitrator is appointed, no new or different claim may be submitted, except with the Arbitrator's approval. A Party may request a hearing on this issue. Each Party has the right to respond to any new or amended claim in accordance with Rule 9(c) or (d).

## RULE 11
## Interpretation of Rules and Jurisdictional Challenges

(a)   Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final.

(b)   Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(c)   Disputes concerning the appointment of the Arbitrator shall be resolved by JAMS.

(d)   The Arbitrator may, upon a showing of good cause or *sua sponte*, when necessary to facilitate the Arbitration, extend any deadlines established in these Rules, provided that the time for rendering the Award may be altered only in accordance with Rules 22(i) or 24.

## RULE 12
## Representation

(a)   The Parties, whether natural persons or legal entities such as corporations, LLCs or partnerships, may be represented by counsel or any other person of the Party's choice. Each Party shall give prompt written notice to the Case Manager and the other Parties of the name, address, telephone number and email address of its representative. The representative of a Party may act on the Party's behalf in complying with these Rules.

(b)   Changes in Representation. A Party shall give prompt written notice to the Case Manager and the other Parties of any change in its representation, including the name, address,

telephone number and email address of the new representative. Such notice shall state that the written consent of the former representative, if any, and of the new representative, has been obtained and shall state the effective date of the new representation.

(c)   The Arbitrator may withhold approval of any intended change or addition to a Party's legal representative(s) where such change or addition could compromise the ability of the Arbitrator to continue to serve, the composition of the Panel in the case of a tripartite Arbitration or the finality of any Award (on the grounds of possible conflict or other like impediment). In deciding whether to grant or withhold such approval, the Arbitrator shall have regard to the circumstances, including the general principle that a Party may be represented by a legal representative chosen by that Party, the stage that the Arbitration has reached, the potential prejudice resulting from the possible disqualification of the Arbitrator, the efficiency resulting from maintaining the composition of the Panel (as constituted throughout the Arbitration), the views of the other Party or Parties to the Arbitration and any likely wasted costs or loss of time resulting from such change or addition.

## RULE 13
## Withdrawal from Arbitration

(a)   No Party may terminate or withdraw from an Arbitration after the issuance of the Commencement Letter (see Rule 5), except by written agreement of all Parties to the Arbitration.

(b)   A Party that asserts a claim or counterclaim may unilaterally withdraw that claim or counterclaim without prejudice by serving written notice on the other Parties and the Arbitrator. However, the opposing Parties may, within seven (7) calendar days of service of such notice, request that the Arbitrator condition the withdrawal upon such terms as he or she may direct.

## RULE 14
## *Ex Parte* Communications

(a)   No Party may have any *ex parte* communication with a neutral Arbitrator, except as provided in section (b) of this Rule. The Arbitrator(s) may authorize any Party to communicate directly with the Arbitrator(s) by email or other written means as long as copies are simultaneously forwarded to the JAMS Case Manager and the other Parties.

(b)  A Party may have *ex parte* communication with its appointed neutral or non-neutral Arbitrator as necessary to secure the Arbitrator's services and to assure the absence of conflicts, as well as in connection with the selection of the Chairperson of the arbitral panel.

(c)  The Parties may agree to permit more extensive *ex parte* communication between a Party and a non-neutral Arbitrator. More extensive communication with a non-neutral Arbitrator may also be permitted by applicable law and rules of ethics.

## RULE 15
## Arbitrator Selection, Disclosures and Replacement

(a)  Unless the Arbitrator has been previously selected by agreement of the Parties, JAMS may attempt to facilitate agreement among the Parties regarding selection of the Arbitrator.

(b)  If the Parties do not agree on an Arbitrator, JAMS shall send the Parties a list of at least five (5) Arbitrator candidates in the case of a sole Arbitrator and at least ten (10) Arbitrator candidates in the case of a tripartite panel. JAMS shall also provide each Party with a brief description of the background and experience of each Arbitrator candidate. JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause at any time before the Parties have submitted their choice pursuant to subparagraph (c) below.

(c)  Within seven (7) calendar days of service upon the Parties of the list of names, each Party may strike two (2) names in the case of a sole Arbitrator and three (3) names in the case of a tripartite panel, and shall rank the remaining Arbitrator candidates in order of preference. The remaining Arbitrator candidate with the highest composite ranking shall be appointed the Arbitrator. JAMS may grant a reasonable extension of the time to strike and rank the Arbitrator candidates to any Party without the consent of the other Parties.

(d)  If this process does not yield an Arbitrator or a complete panel, JAMS shall designate the sole Arbitrator or as many members of the tripartite panel as are necessary to complete the panel.

(e)  If a Party fails to respond to a list of Arbitrator candidates within seven (7) calendar days after its service, or fails to respond according to the instructions provided by JAMS, JAMS

shall deem that Party to have accepted all of the Arbitrator candidates.

(f)  Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process. JAMS shall determine whether the interests between entities or individuals are adverse for purposes of Arbitrator selection, considering such factors as whether they are represented by the same attorney and whether they are presenting joint or separate positions at the Arbitration.

(g)  If, for any reason, the Arbitrator who is selected is unable to fulfill the Arbitrator's duties, a successor Arbitrator shall be chosen in accordance with this Rule. If a member of a panel of Arbitrators becomes unable to fulfill his or her duties after the beginning of a Hearing but before the issuance of an Award, a new Arbitrator will be chosen in accordance with this Rule, unless, in the case of a tripartite panel, the Parties agree to proceed with the remaining two Arbitrators. JAMS will make the final determination as to whether an Arbitrator is unable to fulfill his or her duties, and that decision shall be final.

(h)  Any disclosures regarding the selected Arbitrator shall be made as required by law or within ten (10) calendar days from the date of appointment. Such disclosures may be provided in electronic format, provided that JAMS will produce a hard copy to any Party that requests it. The Parties and their representatives shall disclose to JAMS any circumstance likely to give rise to justifiable doubt as to the Arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the Arbitration or any past or present relationship with the Parties or their representatives. The obligation of the Arbitrator, the Parties and their representatives to make all required disclosures continues throughout the Arbitration process.

(i)  At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause. The challenge must be based upon information that was not available to the Parties at the time the Arbitrator was selected. A challenge for cause must be in writing and exchanged with opposing Parties, who may respond within seven (7) calendar days of service of the challenge. JAMS shall make the final determination as to such challenge. Such determination shall take into account the materiality of the facts and any prejudice to the Parties. That decision will be final.

(j)   Where the Parties have agreed that a Party-appointed Arbitrator is to be non-neutral, that Party-appointed Arbitrator is not obliged to withdraw if requested to do so only by the Party that did not appoint that Arbitrator.

## RULE 16
## Preliminary Conference

At the request of any Party or at the direction of the Arbitrator, a Preliminary Conference shall be conducted with the Parties or their counsel or representatives. The Preliminary Conference may address any or all of the following subjects:

(a)   The exchange of information in accordance with Rule 17 or otherwise;

(b)   The schedule for discovery as permitted by the Rules, as agreed by the Parties or as required or authorized by applicable law;

(c)   The pleadings of the Parties and any agreement to clarify or narrow the issues or structure the Arbitration Hearing;

(d)   The scheduling of the Hearing and any pre-Hearing exchanges of information, exhibits, motions or briefs;

(e)   The attendance of witnesses as contemplated by Rule 21;

(f)   The scheduling of any dispositive motion pursuant to Rule 18;

(g)   The premarking of exhibits, the preparation of joint exhibit lists and the resolution of the admissibility of exhibits;

(h)   The form of the Award; and

(i)   Such other matters as may be suggested by the Parties or the Arbitrator.

The Preliminary Conference may be conducted telephonically and may be resumed from time to time as warranted.

## RULE 16.1
## Application of Expedited Procedures

(a)   If these Expedited Procedures are referenced in the Parties' Agreement to arbitrate or are later agreed to by all Parties, they shall be applied by the Arbitrator.

(b)   The Claimant or Respondent may opt into the Expedited Procedures. The Claimant may do so by indicating the election in the Demand for Arbitration. The Respondent may opt into the Expedited Procedures by so indicating in writing to JAMS with a copy to the Claimant served within fourteen (14) days of receipt of the Demand for Arbitration. If a Party opts into the Expedited Procedures, the other side shall indicate within seven (7) calendar days of notice thereof whether it agrees to the Expedited Procedures.

(c)   If one Party elects the Expedited Procedures and any other Party declines to agree to the Expedited Procedures, each Party shall have a client or client representative present at the first Preliminary Conference (which should, if feasible, be an in-person conference), unless excused by the Arbitrator for good cause.

## RULE 16.2
## Where Expedited Procedures Are Applicable

(a)   The Arbitrator shall require compliance with Rule 17(a) prior to conducting the first Preliminary Conference. Each Party shall confirm in writing to the Arbitrator that it has so complied or shall indicate any limitations on full compliance and the reasons therefor.

(b)   Document requests shall (1) be limited to documents that are directly relevant to the matters in dispute or to its outcome; (2) be reasonably restricted in terms of time frame, subject matter and persons or entities to which the requests pertain; and (3) not include broad phraseology such as "all documents directly or indirectly related to." The Requests shall not be encumbered with extensive "definitions" or "instructions." The Arbitrator may edit or limit the number of requests.

(c)   E-discovery shall be limited as follows:

(i)   There shall be production of electronic documents only from sources used in the ordinary course of business. Absent a showing of compelling need, no such documents are required to be produced from backup servers, tapes or other media.

(ii)   Absent a showing of compelling need, the production of electronic documents shall normally be made on the basis of generally available technology in a searchable format that is usable by the requesting Party and convenient and economical for the producing Party. Absent a showing of compelling need, the Parties need not produce metadata, with the exception of header fields for email correspondence.

(iii)   The description of custodians from whom electronic documents may be collected should be narrowly tailored to include only those individuals whose electronic documents may reasonably be expected to contain evidence that is material to the dispute.

(iv)   Where the costs and burdens of e-discovery are disproportionate to the nature of the dispute or to the amount in controversy, or to the relevance of the materials requested, the Arbitrator may either deny such requests or order disclosure on the condition that the requesting Party advance the reasonable cost of production to the other side, subject to the allocation of costs in the final Award.

(v)   The Arbitrator may vary these Rules after discussion with the Parties at the Preliminary Conference.

(d)   Depositions of percipient witnesses shall be limited as follows:

(i)   The limitation of one discovery deposition per side (Rule 17(b)) shall be applied by the Arbitrator, unless it is determined, based on all relevant circumstances, that more depositions are warranted. The Arbitrator shall consider the amount in controversy, the complexity of the factual issues, the number of Parties and the diversity of their interests, and whether any or all of the claims appear, on the basis of the pleadings, to have sufficient merit to justify the time and expense associated with the requested discovery.

(ii)   The Arbitrator shall also consider the additional factors listed in the JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases.

(e)   Expert depositions, if any, shall be limited as follows: Where written expert reports are produced to the other side in advance of the Hearing, expert depositions may be conducted only by agreement of the Parties or by order of the Arbitrator for good cause shown.

(f)   Discovery disputes shall be resolved on an expedited basis.

(i)   Where there is a panel of three Arbitrators, the Parties are encouraged to agree, by rule or otherwise, that the Chair or another member of the panel be authorized to resolve discovery issues, acting alone.

(ii)   Lengthy briefs on discovery matters should be avoided. In most cases, the submission of brief letters will sufficiently inform the Arbitrator with regard to the issues to be decided.

(iii)   The Parties should meet and confer in good faith prior to presenting any issues for the Arbitrator's decision.

(iv)   If disputes exist with respect to some issues, that should not delay the Parties' discovery on remaining issues.

(g)   The Arbitrator shall set a discovery cutoff not to exceed seventy-five (75) calendar days after the Preliminary Conference for percipient discovery and not to exceed one hundred five (105) calendar days for expert discovery (if any). These dates may be extended by the Arbitrator for good cause shown.

(h)   Dispositive motions (Rule 18) shall not be permitted, except as set forth in the JAMS Recommended Arbitration Discovery Protocols for Domestic Commercial Cases or unless the Parties agree to that procedure.

(i)   The Hearing shall commence within sixty (60) calendar days after the cutoff for percipient discovery. Consecutive Hearing days shall be established unless otherwise agreed by the Parties or ordered by the Arbitrator. These dates may be extended by the Arbitrator for good cause shown.

(j)   The Arbitrator may alter any of these Procedures for good cause.

## RULE 17
## Exchange of Information

(a)   The Parties shall cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information (including electronically stored information ("ESI")) relevant to the dispute or claim immediately after commencement of the Arbitration. They shall complete an initial exchange of all relevant, non-privileged documents, including, without limitation, copies of all documents in their possession or control on which they rely in support of their positions, and names of individuals whom they may call as witnesses at the Arbitration Hearing, within twenty-one (21) calendar days after all pleadings or notice of claims have been received. The Arbitrator may modify these obligations at the Preliminary Conference.

(b)   Each Party may take one deposition of an opposing Party or of one individual under the control of the opposing Party. The Parties shall attempt to agree on the time, location and duration of the deposition. If the Parties do not agree, these issues shall be determined by the Arbitrator. The necessity of additional depositions shall be determined by the

Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness.

(c)   As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

(d)   The Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute. With the written consent of all Parties, and in accordance with an agreed written procedure, the Arbitrator may appoint a special master to assist in resolving a discovery dispute.

(e)   In a consumer or employment case, the Parties may take discovery of third parties with the approval of the Arbitrator.

## RULE 18
## Summary Disposition of a Claim or Issue

The Arbitrator may permit any Party to file a Motion for Summary Disposition of a particular claim or issue, either by agreement of all interested Parties or at the request of one Party, provided other interested Parties have reasonable notice to respond to the request. The Request may be granted only if the Arbitrator determines that the requesting Party has shown that the proposed motion is likely to succeed and dispose of or narrow the issues in the case.

## RULE 19
## Scheduling and Location of Hearing

(a)   The Arbitrator, after consulting with the Parties that have appeared, shall determine the date, time and location of the Hearing. The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.

(b)   If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party. The non-participating Party shall be served with a Notice of Hearing at least thirty (30) calendar days prior to the scheduled date, unless the law of the relevant jurisdiction allows for, or the Parties have agreed to, shorter notice.

(c)   The Arbitrator, in order to hear a third-party witness, or for the convenience of the Parties or the witnesses, may conduct the Hearing at any location. Any JAMS Resolution Center may be designated a Hearing location for purposes of the issuance of a subpoena or subpoena *duces tecum* to a third-party witness.

## RULE 20
## Pre-Hearing Submissions

(a)   Except as set forth in any scheduling order that may be adopted, at least fourteen (14) calendar days before the Arbitration Hearing, the Parties shall file with JAMS and serve and exchange (1) a list of the witnesses they intend to call, including any experts; (2) a short description of the anticipated testimony of each such witness and an estimate of the length of the witness' direct testimony; (3) any written expert reports that may be introduced at the Arbitration Hearing; and (4) a list of all exhibits intended to be used at the Hearing. The Parties should exchange with each other copies of any such exhibits to the extent that they have not been previously exchanged. The Parties should pre-mark exhibits and shall attempt to resolve any disputes regarding the admissibility of exhibits prior to the Hearing.

(b)   The Arbitrator may require that each Party submit a concise written statement of position, including summaries of the facts and evidence a Party intends to present, discussion of the applicable law and the basis for the requested Award or denial of relief sought. The statements, which may be in the form of a letter, shall be filed with JAMS and served upon the other Parties at least seven (7) calendar days before the Hearing date. Rebuttal statements or other pre-Hearing written submissions may be permitted or required at the discretion of the Arbitrator.

## RULE 21
## Securing Witnesses and Documents for the Arbitration Hearing

At the written request of a Party, all other Parties shall produce for the Arbitration Hearing all specified witnesses in their employ or under their control without need of subpoena. The Arbitrator may issue subpoenas for the attendance of witnesses or the production of documents either prior to or at the Hearing pursuant to this Rule or Rule 19(c). The subpoena or subpoena *duces tecum* shall be issued in accordance with the applicable law. Pre-issued subpoenas may be used in jurisdictions that permit them. In the event a Party or a subpoenaed person objects to the production of a witness or other evidence, the Party or subpoenaed person may file an objection with the Arbitrator, who shall promptly rule on the objection, weighing both the burden on the producing Party and witness and the need of the proponent for the witness or other evidence.

## RULE 22
## The Arbitration Hearing

(a)   The Arbitrator will ordinarily conduct the Arbitration Hearing in the manner set forth in these Rules. The Arbitrator may vary these procedures if it is determined to be reasonable and appropriate to do so.

(b)   The Arbitrator shall determine the order of proof, which will generally be similar to that of a court trial.

(c)   The Arbitrator shall require witnesses to testify under oath if requested by any Party, or otherwise at the discretion of the Arbitrator.

(d)   Strict conformity to the rules of evidence is not required, except that the Arbitrator shall apply applicable law relating to privileges and work product. The Arbitrator shall consider evidence that he or she finds relevant and material to the dispute, giving the evidence such weight as is appropriate. The Arbitrator may be guided in that determination by principles contained in the Federal Rules of Evidence or any other applicable rules of evidence. The Arbitrator may limit testimony to exclude evidence that would be immaterial or unduly repetitive, provided that all Parties are afforded the opportunity to present material and relevant evidence.

(e)   The Arbitrator shall receive and consider relevant deposition testimony recorded by transcript or videotape, provided that the other Parties have had the opportunity to attend and cross-examine. The Arbitrator may in his or her discretion consider witness affidavits or other recorded testimony even if the other Parties have not had the opportunity to cross-examine, but will give that evidence only such weight as he or she deems appropriate.

(f)   The Parties will not offer as evidence, and the Arbitrator shall neither admit into the record nor consider, prior settlement offers by the Parties or statements or recommendations made by a mediator or other person in connection with efforts to resolve the dispute being arbitrated, except to the extent that applicable law permits the admission of such evidence.

(g)   The Arbitrator has full authority to determine that the Hearing, or any portion thereof, be conducted in person or virtually by conference call, videoconference or using other communications technology with participants in one or more geographical places, or in a combined form. If some or all of the witnesses or other participants are located remotely, the Arbitrator may make such orders and set such procedures as the Arbitrator deems necessary or advisable.

(h)   When the Arbitrator determines that all relevant and material evidence and arguments have been presented, and any interim or partial Awards have been issued, the Arbitrator shall declare the Hearing closed. The Arbitrator may defer the closing of the Hearing until a date determined by the Arbitrator in order to permit the Parties to submit post-Hearing briefs, which may be in the form of a letter, and/or to make closing arguments. If post-Hearing briefs are to be submitted or closing arguments are to be made, the Hearing shall be deemed closed upon receipt by the Arbitrator of such briefs or at the conclusion of such closing arguments, whichever is later.

(i)   At any time before the Award is rendered, the Arbitrator may, *sua sponte* or on application of a Party for good cause shown, reopen the Hearing. If the Hearing is reopened, the time to render the Award shall be calculated from the date the reopened Hearing is declared closed by the Arbitrator.

(j)   The Arbitrator may proceed with the Hearing in the absence of a Party that, after receiving notice of the Hearing pursuant to Rule 19, fails to attend. The Arbitrator may not render an Award solely on the basis of the default or absence of the Party, but shall require any Party seeking relief to submit such evidence as the Arbitrator may require for the rendering of an Award. If the Arbitrator reasonably believes that a Party will not attend the Hearing, the Arbitrator may schedule the Hearing as a telephonic Hearing and may receive the evidence

necessary to render an Award by affidavit. The notice of Hearing shall specify if it will be in person or telephonic.

(k)  Any Party may arrange for a stenographic record to be made of the Hearing and shall inform the other Parties in advance of the Hearing. No other means of recording the proceedings shall be permitted absent agreement of the Parties or by direction of the Arbitrator.

(i)  The requesting Party shall bear the cost of such stenographic record. If all other Parties agree to share the cost of the stenographic record, it shall be made available to the Arbitrator and may be used in the proceeding.

(ii)  If there is no agreement to share the cost of the stenographic record, it may not be provided to the Arbitrator and may not be used in the proceeding, unless the Party arranging for the stenographic record agrees to provide access to the stenographic record either at no charge or on terms that are acceptable to the Parties and the reporting service.

(iii)  If the Parties agree to the Optional Arbitration Appeal Procedure (Rule 34), they shall, if possible, ensure that a stenographic or other record is made of the Hearing and shall share the cost of that record.

(iv)  The Parties may agree that the cost of the stenographic record shall or shall not be allocated by the Arbitrator in the Award.

## RULE 23
## Waiver of Hearing

The Parties may agree to waive the oral Hearing and submit the dispute to the Arbitrator for an Award based on written submissions and other evidence as the Parties may agree.

## RULE 24
## Awards

(a)  The Arbitrator shall render a Final Award or a Partial Final Award within thirty (30) calendar days after the date of the close of the Hearing, as defined in Rule 22(h) or (i), or, if a Hearing has been waived, within thirty (30) calendar days after the receipt by the Arbitrator of all materials specified by the Parties, except (1) by the agreement of the Parties; (2) upon good cause for an extension of time to render the Award; or (3) as provided in Rule 22(i). The Arbitrator shall provide the Final Award or the Partial Final Award to JAMS for issuance in accordance with this Rule.

(b)  Where a panel of Arbitrators has heard the dispute, the decision and Award of a majority of the panel shall constitute the Arbitration Award.

(c)  In determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties. In the absence of such agreement, the Arbitrator shall be guided by the rules of law and equity that he or she deems to be most appropriate. The Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy.

(d)  In addition to a Final Award or Partial Final Award, the Arbitrator may make other decisions, including interim or partial rulings, orders and Awards.

(e)  Interim Measures. The Arbitrator may grant whatever interim measures are deemed necessary, including injunctive relief and measures for the protection or conservation of property and disposition of disposable goods. Such interim measures may take the form of an interim or Partial Final Award, and the Arbitrator may require security for the costs of such measures. Any recourse by a Party to a court for interim or provisional relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

(f)  The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement. (Such a prohibition may not limit the power of the Arbitrator to allocate Arbitration fees and Arbitrator compensation and expenses pursuant to Rule 31(c).)

(g)  The Award of the Arbitrator may allocate attorneys' fees and expenses and interest (at such rate and from such date as the Arbitrator may deem appropriate) if provided by the Parties' Agreement or allowed by applicable law. When the Arbitrator is authorized to award attorneys' fees and must determine the reasonable amount of such fees, he or she may consider whether the failure of a Party to cooperate reasonably in the discovery process and/or comply with the Arbitrator's discovery orders caused delay to the proceeding or additional costs to the other Parties.

(h)  The Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.

(i)   After the Award has been rendered, and provided the Parties have complied with Rule 31, the Award shall be issued by serving copies on the Parties. Service may be made by U.S. mail. It need not be sent certified or registered.

(j)   Within seven (7) calendar days after service of a Partial Final Award or Final Award by JAMS, any Party may serve upon the other Parties and file with JAMS a request that the Arbitrator correct any computational, typographical or other similar error in an Award (including the reallocation of fees pursuant to Rule 31(c) or on account of the effect of an offer to allow judgment), or the Arbitrator may *sua sponte* propose to correct such errors in an Award. A Party opposing such correction shall have seven (7) calendar days thereafter in which to file and serve any objection. The Arbitrator may make any necessary and appropriate corrections to the Award within twenty-one (21) calendar days of receiving a request or fourteen (14) calendar days after his or her proposal to do so. The Arbitrator may extend the time within which to make corrections upon good cause. The corrected Award shall be served upon the Parties in the same manner as the Award.

(k)   The Award is considered final, for purposes of either the Optional Arbitration Appeal Procedure pursuant to Rule 34 or a judicial proceeding to enforce, modify or vacate the Award pursuant to Rule 25, fourteen (14) calendar days after service if no request for a correction is made, or as of the effective date of service of a corrected Award.

## RULE 25
## Enforcement of the Award

Proceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1, *et seq.*, or applicable state law. The Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof.

## RULE 26
## Confidentiality and Privacy

(a)   JAMS and the Arbitrator shall maintain the confidential nature of the Arbitration proceeding and the Award, including the Hearing, except as necessary in connection with a judicial challenge to or enforcement of an Award, or unless otherwise required by law or judicial decision.

(b)   The Arbitrator may issue orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information.

(c)   Subject to the discretion of the Arbitrator or agreement of the Parties, any person having a direct interest in the Arbitration may attend the Arbitration Hearing. The Arbitrator may exclude any non-Party from any part of a Hearing.

## RULE 27
## Waiver

(a)   If a Party becomes aware of a violation of or failure to comply with these Rules and fails promptly to object in writing, the objection will be deemed waived, unless the Arbitrator determines that waiver will cause substantial injustice or hardship.

(b)   If any Party becomes aware of information that could be the basis of a challenge for cause to the continued service of the Arbitrator, such challenge must be made promptly, in writing, to the Arbitrator or JAMS. Failure to do so shall constitute a waiver of any objection to continued service by the Arbitrator.

## RULE 28
## Settlement and Consent Award

(a)   The Parties may agree, at any stage of the Arbitration process, to submit the case to JAMS for mediation. The JAMS mediator assigned to the case may not be the Arbitrator or a member of the Appeal Panel, unless the Parties so agree, pursuant to Rule 28(b).

(b)   The Parties may agree to seek the assistance of the Arbitrator in reaching settlement. By their written agreement to submit the matter to the Arbitrator for settlement assistance, the Parties will be deemed to have agreed that the assistance of the Arbitrator in such settlement efforts will not disqualify the Arbitrator from continuing to serve as Arbitrator if settlement is not reached; nor shall such assistance be argued to a reviewing court as the basis for vacating or modifying an Award.

(c)   If, at any stage of the Arbitration process, all Parties agree upon a settlement of the issues in dispute and request the Arbitrator to embody the agreement in a Consent Award, the Arbitrator shall comply with such request, unless the Arbitrator believes the terms of the agreement are illegal or undermine the integrity of the Arbitration process. If the Arbitrator is concerned about the possible consequences of the proposed

Consent Award, he or she shall inform the Parties of that concern and may request additional specific information from the Parties regarding the proposed Consent Award. The Arbitrator may refuse to enter the proposed Consent Award and may withdraw from the case.

## RULE 29
## Sanctions

The Arbitrator may order appropriate sanctions for failure of a Party to comply with its obligations under any of these Rules or with an order of the Arbitrator. These sanctions may include, but are not limited to, assessment of Arbitration fees and Arbitrator compensation and expenses; assessment of any other costs occasioned by the actionable conduct, including reasonable attorneys' fees; exclusion of certain evidence; drawing adverse inferences; or, in extreme cases, determining an issue or issues submitted to Arbitration adversely to the Party that has failed to comply.

## RULE 30
## Disqualification of the Arbitrator as a Witness or Party and Exclusion of Liability

(a)    The Parties may not call the Arbitrator, the Case Manager or any other JAMS employee or agent as a witness or as an expert in any pending or subsequent litigation or other proceeding involving the Parties and relating to the dispute that is the subject of the Arbitration. The Arbitrator, Case Manager and other JAMS employees and agents are also incompetent to testify as witnesses or experts in any such proceeding.

(b)   The Parties shall defend and/or pay the cost (including any attorneys' fees) of defending the Arbitrator, Case Manager and/or JAMS from any subpoenas from outside parties arising from the Arbitration.

(c)   The Parties agree that neither the Arbitrator, nor the Case Manager, nor JAMS is a necessary Party in any litigation or other proceeding relating to the Arbitration or the subject matter of the Arbitration, and neither the Arbitrator, nor the Case Manager, nor JAMS, including its employees or agents, shall be liable to any Party for any act or omission in connection with any Arbitration conducted under these Rules, including, but not limited to, any disqualification of or recusal by the Arbitrator.

## RULE 31
## Fees

(a)   Each Party shall pay its *pro rata* share of JAMS fees and expenses as set forth in the JAMS fee schedule in effect at the time of the commencement of the Arbitration, unless the Parties agree on a different allocation of fees and expenses. JAMS' agreement to render services is jointly with the Party and the attorney or other representative of the Party in the Arbitration. The non-payment of fees may result in an administrative suspension of the case in accordance with Rule 6(c).

(b)   JAMS requires that the Parties deposit the fees and expenses for the Arbitration from time to time during the course of the proceedings and prior to the Hearing. The Arbitrator may preclude a Party that has failed to deposit its *pro rata* or agreed-upon share of the fees and expenses from offering evidence of any affirmative claim at the Hearing.

(c)   The Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitrator compensation and expenses. In the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration.

(d)   Entities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of JAMS' assessment of fees. JAMS shall determine whether the interests between entities or individuals are adverse for purpose of fees, considering such factors as whether the entities or individuals are represented by the same attorney and whether the entities or individuals are presenting joint or separate positions at the Arbitration.

## RULE 32
## Bracketed (or High-Low) Arbitration Option

(a)   At any time before the issuance of the Arbitration Award, the Parties may agree, in writing, on minimum and maximum amounts of damages that may be awarded on each claim or on all claims in the aggregate. The Parties shall promptly notify JAMS and provide to JAMS a copy of their written agreement setting forth the agreed-upon minimum and maximum amounts.

(b)   JAMS shall not inform the Arbitrator of the agreement to proceed with this option or of the agreed-upon minimum and maximum levels without the consent of the Parties.

(c)   The Arbitrator shall render the Award in accordance with Rule 24.

(d)   In the event that the Award of the Arbitrator is between the agreed-upon minimum and maximum amounts, the Award shall become final as is. In the event that the Award is below the agreed-upon minimum amount, the final Award issued shall be corrected to reflect the agreed-upon minimum amount. In the event that the Award is above the agreed-upon maximum amount, the final Award issued shall be corrected to reflect the agreed-upon maximum amount.

## RULE 33
### Final Offer (or Baseball) Arbitration Option

(a)   Upon agreement of the Parties to use the option set forth in this Rule, at least seven (7) calendar days before the Arbitration Hearing, the Parties shall exchange and provide to JAMS written proposals for the amount of money damages they would offer or demand, as applicable, and that they believe to be appropriate based on the standard set forth in Rule 24(c). JAMS shall promptly provide copies of the Parties' proposals to the Arbitrator, unless the Parties agree that they should not be provided to the Arbitrator. At any time prior to the close of the Arbitration Hearing, the Parties may exchange revised written proposals or demands, which shall supersede all prior proposals. The revised written proposals shall be provided to JAMS, which shall promptly provide them to the Arbitrator, unless the Parties agree otherwise.

(b)   If the Arbitrator has been informed of the written proposals, in rendering the Award, the Arbitrator shall choose between the Parties' last proposals, selecting the proposal that the Arbitrator finds most reasonable and appropriate in light of the standard set forth in Rule 24(c). This provision modifies Rule 24(h) in that no written statement of reasons shall accompany the Award.

(c)   If the Arbitrator has not been informed of the written proposals, the Arbitrator shall render the Award as if pursuant to Rule 24, except that the Award shall thereafter be corrected to conform to the closest of the last proposals and the closest of the last proposals will become the Award.

(d)   Other than as provided herein, the provisions of Rule 24 shall be applicable.

## RULE 34
### Optional Arbitration Appeal Procedure

The Parties may agree at any time to the JAMS Optional Arbitration Appeal Procedure. All Parties must agree in writing for such procedure to be effective. Once a Party has agreed to the Optional Arbitration Appeal Procedure, it cannot unilaterally withdraw from it, unless it withdraws, pursuant to Rule 13, from the Arbitration.

# NOTES

# NOTES

# EXHIBIT D



**SUMMARY OF REVISIONS TO COMPREHENSIVE ARBITRATION RULES**

**JAMS Comprehensive Arbitration Rules, Amended and Effective June 1, 2021.**

**Rule 1. Scope of Rules**

Rule 1(f): The revised rule clarifies the meanings of "electronic filing" and "electronic service."

**Rule 2. Party Self-Determination and Emergency Relief Procedures**

Rule 2(b): The revised rule eliminates the word "subsequently" from the phrase "the Parties may subsequently agree."

Rule 2(c)(i): The revised rule eliminates the reference to "facsimile."

Rule 2(c)(ii): The revision clarifies the nature of the Emergency Arbitrator's required disclosures.

Rule 2(c)(iv): The revised rule changes the standard for the granting of emergency relief by eliminating the words "and irreparable" from the phrase "immediate and irreparable loss or damage."

**Rule 5. Commencing an Arbitration**

Rule 5(a)(iv): The revised rule includes the phrase "where the Parties' Arbitration Agreement does not specify JAMS administration or JAMS Rules." This revision clarifies JAMS' administrative authority in certain situations in the convening stages of an arbitration. For example, where a respondent fails to object timely to JAMS' administration, JAMS may determine that it can proceed with administration even if the parties' arbitration agreement does not name JAMS or the JAMS Rules (e.g., the parties' agreement is silent as to arbitration provider and rules). Where a respondent does object timely to JAMS' administration, JAMS may determine that it can proceed with administration if the parties' arbitration agreement specifies JAMS or the JAMS Rules.

**Rule 6. Preliminary and Administrative Matters**

Rule 6(e)(i): The revised rule adds the words "two or more of." This addition clarifies JAMS' authority in certain instances to consolidate any number of a party's multiple arbitration filings into a single proceeding.

**Rule 7. Number and Neutrality of Arbitrators; Appointment and Authority of Chairperson**

Rule 7(b): The revised rule adds the phrase "in advance of the Arbitration Hearing" to the last sentence.

**Rule 8. Service**

The revised Rule 8 aligns electronic filing and service in a JAMS arbitration with the functionality of JAMS' new electronic case management system, JAMS Access (referred to in the rules as "the JAMS Electronic Filing System").

Rule 8(a): Previously, this rule allowed the arbitrator to require electronic filing and service at any time. The revised rule clarifies that JAMS or the arbitrator may require electronic filing and service at any time.

Rule 8(b): The revised rule eliminates the requirement for a filing party to maintain in paper format the "original signature" of third parties.

Rule 8(f): The revised rule includes the following sentence: "If the last day for the performance of any act that is required by these Rules to be performed within a specific time falls on a Saturday, Sunday or other legal holiday, the period is extended to and includes the next day that is not a holiday."

**Rule 9. Notice of Claims**

Rule 9(c): The revised rule allows JAMS to grant reasonable extensions of time to file a response or counterclaim prior to the appointment of the arbitrator.

**Rule 12. Representation**

The revised Rule 12 eliminates all references to fax numbers.

Rule 12(c): This new rule allows an arbitrator (or tripartite panel) to withhold approval of any intended change in party representation where the change could compromise the ability of the arbitrator (or panel) to continue to serve or the finality of an award.

**Rule 15. Arbitrator Selection, Disclosures and Replacement**

Rule 15(b): The revised rule adds the words "at least" in the following: "at least ten (10) Arbitrator candidates in the case of a tripartite panel." This addition makes explicit JAMS' authority to include more than 10 names in a list of arbitrator candidates for a tripartite panel. (Both the prior and revised versions of this rule make explicit JAMS' authority to include more than five names in a list of candidates for a sole arbitrator.) The revised rule also includes the words "add names to or" in the following: "JAMS may add names to or replace any or all names on the list of Arbitrator candidates for reasonable cause."

This addition makes explicit JAMS' authority to supplement a list of arbitrator candidates—in addition to replacing any or all names—for reasonable cause.

Rule 15(f): With the addition of the words "or individuals," the revised rule makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of the arbitrator selection process.

### Rule 17. Exchange of Information

Rule 17(e): This new rule makes explicit that in a consumer or employment arbitration, the parties may take discovery of third parties with the approval of the arbitrator.

### Rule 18. Summary Disposition of a Claim or Issue

The revised Rule 18 provides that an arbitrator may permit a party to file a motion for summary disposition of a claim or issue only if the arbitrator determines the party has shown that the proposed motion for summary disposition is likely to succeed and to dispose of or narrow the issues in the case.

### Rule 19. Scheduling and Location of Hearing

Rule 19(b): The revised rule adds the clause "and the Arbitrator reasonably believes that the Party will not participate in the Hearing" in the following: "If a Party has failed to participate in the Arbitration process, and the Arbitrator reasonably believes that the Party will not participate in the Hearing, the Arbitrator may set the Hearing without consulting with that Party."

### Rule 22. The Arbitration Hearing

Rule 22(g): The revised rule makes explicit the arbitrator's full authority to conduct the hearing in person, virtually or in a combined form, and with participants in more than one geographic location.

Rule 22(k): Previously, this rule allowed a party to arrange for a stenographic "or other" record of the hearing. The revised rule maintains a party's ability to arrange for a stenographic record but eliminates its ability to arrange for "other" types of records of the hearing absent party agreement or the direction of the arbitrator.

### Rule 31. Fees

Rule 31(d): In several places, the revised rule adds the words "or individuals" in the following context: "entities or individuals." This addition makes explicit JAMS' longstanding practice of treating both entities and individuals whose interests are not adverse as a single party for purposes of JAMS' assessment of fees.

# EXHIBIT E

Clerk of the Superior Court
*** Electronically Filed ***
Y. Moralez, Deputy
2/16/2022 12:30:36 PM
Filing ID 13946470

1    Jeffrey C. Matura, State Bar No. 019893
     John J. Daller, State Bar No. 034016
2    **BARRETT & MATURA, P.C.**
     8925 East Pima Center Parkway, Suite 215
3    Scottsdale, Arizona 85258
     Tel: (602) 792-5705
4    Fax: (602) 792-5710
     jmatura@barrettmatura.com
5    jdaller@barrettmatura.com

6    Attorneys for Plaintiff NEXA MORTGAGE LLC

7

8                        **ARIZONA SUPERIOR COURT**

9                         **MARICOPA COUNTY**

10   NEXA MORTGAGE LLC,
                                           Case No.  **CV2022-001931**
11                    Plaintiff,
                                           **VERIFIED COMPLAINT**
12   v.

13   DAMIAN DIAZ and GROVES CAPITAL,
     INC.,
14
                      Defendants.
15

16

17

18       Plaintiff NEXA Mortgage LLC ("NEXA" or the "Company") allege for its Verified

19   Complaint as follows:

20                              **PARTIES**

21       1.      Plaintiff NEXA is, at all times relevant, a residential mortgage broker that lends

22   mortgages to home buyers and consumers seeking to refinance their existing mortgages. NEXA

23   is a limited liability company organized and existing under the laws of the State of Arizona and

24   its principal place of business is conducted business at 3100 W Ray Road, #201, Office #209,

25   Chandler, Arizona, 85226.

26

1

2.     Defendant Damian Diaz ("Diaz"), at all times relevant, is a resident and citizen of Oceanside, California and was previously employed as an Outside Loan Officer of NEXA until February 9, 2022. Diaz is now employed by Groves Capital, Inc.

3.     At all times relevant, Groves Capital, Inc. ("Groves Capital") is a hybrid mortgage broker and banker.  Groves Capital is organized and exists under the laws of the State of California, and is headquartered at 4080 Centre, Suite 206, San Diego, California 92103.

4.     Groves Capital operates several mortgage offices across the country, including Arizona, and conducts business at its office at 2160 McCulloch Blvd. N., Suite 102, Lake Havasu City, Arizona 86403 and its office at 3830 N. Morning Dove Circle, Mesa, Arizona 85207.

## JURISDICTION AND VENUE

5.     NEXA and Diaz entered into an Outside Loan Officer Agreement on or about July 13, 2020, that governed the terms of Diaz's employment for NEXA.

6.     Diaz's Outside Loan Officer Agreement contains a Forum Selection and Jurisdiction clause. The provision states "[i]n the event that any litigation needs to be brought to obtain temporary injunctive relief . . . the parties agree that any litigation between the parties may only be brought in Federal District Court in Arizona, or in the event subject-matter jurisdiction is lacking, in an Arizona Court of competent jurisdiction.  By execution of this Agreement, the parties are consenting to personal jurisdiction in Arizona limited to such matters." (**Exhibit 1**, Section VII).

7.     Further, Groves Capital's ongoing physical presence in the state, maintaining two different permanent offices as well as business licensure and licensure as a lender/broker in the State, justifies the exercise of general jurisdiction over Groves Capital.

8.     Jurisdiction and venue are proper in this Court pursuant to A.R.S. §§ 12-123 and 12-401.

9.     NEXA claims damages and other relief in excess of the minimum jurisdictional requirements of this Court.

2

1

## GENERAL ALLEGATIONS

2      10.    The following general allegations support the claims alleged in this Verified

3  Complaint.

4

### Diaz's Contractual Obligations To NEXA

5      11.    Diaz commenced his employment with NEXA on or about July 13, 2020, when he

6  executed his Outside Loan Officer Employment Agreement.

7      12.    The primary purpose of Diaz's employment with NEXA was to utilize his training

8  and experience to "solicit, originate and facilitate the processing and closing of loan products

9  and financing of residential real estate transactions on behalf of the Company's customers."

10  (**Exhibit 1**, Section II (A)).

11      13.    NEXA compensated Diaz with a base salary and commissions for residential,

12  commercial, and open-ended reverse mortgages and that he originated and closed, as well as any

13  benefits offered by the Company. (**Exhibit 1**, Section III).

14      14.    Diaz's employment with NEXA was at-will, however, he agreed to non-

15  solicitation restrictions and covenants that would continue beyond the termination of his

16  employment. (**Exhibit 1**, Section I (A)).

17      15.    Diaz explicitly agreed to twelve-month non-solicitation restrictions to NEXA's

18  clients and employees in his Employment Agreement.

19      16.    Section V (F) of the Employment Agreement states "Employee agrees that during

20  his/her employment with Employer and for a period of twelve (12) months after the termination

21  of employment with Employer (such period not to include any period(s) of violation of period(s)

22  of time required for litigation to enforce the covenants herein), Employee will not on behalf of

23  himself or on behalf of any other person, firm, or entity, directly or indirectly solicit any person

24  employed by the Company (as an employee or contractor) within 12 months preceding

25  Employee's termination, to leave the Employer or form or join another entity."

26

3

17.     Diaz explicitly agreed that the restrictions in his Employment Agreement, including the non-solicitation covenant, "will not interfere with or unduly limit his/her ability to obtain suitable alternative employment following termination of employment" and "that the protections afforded to [NEXA] herein, are reasonable and necessary." Diaz agreed that NEXA "shall be entitled to the cost of all legal fees and expenses incurred in investigating and enforcing the covenants contained herein, including fees and expenses incurred prior to filing suit." (**Exhibit 1**, Section V (H)).

### Diaz's Resignation From NEXA

18.     In his role as an Outside Loan Officer, Diaz had access to NEXA's commission policies, employee referral program, employee compensation policies, mortgage pricing policies, client lists, referral sources and other confidential NEXA information.

19.     On or about February 9, 2022, Diaz voluntarily resigned from NEXA, and upon, information and belief, immediately joined Groves Capital on the same day.

20.     According to the terms of Diaz's Outside Loan Officer Employment Agreement, his non-solicitation obligations to NEXA run until at least February 9, 2023, assuming NEXA did not bring an action to enforce these restrictions.

### Diaz and Groves Capital Immediately Solicit NEXA's Employees

21.     Upon information and belief, Diaz planned his resignation from NEXA with assistance, encouragement and in concert with Groves Capital.

22.     Groves Capital offers identical or substantially similar mortgage products and services as NEXA and competes for the same potential clients in the State of Arizona.

23.     Immediately prior to his resignation from NEXA, Diaz posted a message to NEXA's internal Facebook page, which is appended hereto as **Exhibit 2**. Diaz announced his resignation by stating he was "mov[ing] on to greener pastures."

24.     In this post, Diaz stated that he "did not recruit any loan officers, so I was paying 12% to my upline and was not recovering it. So, I thought I would give my self [sic] a 12% pay

4

raise. I have 160 lenders, can do broker, correspondent, and direct lending with my new broker, having all these options, I will be able to give my clients a better rate and make more money as there is no paying an upline 12% and the fees are so much less."

25.     Diaz provided his phone number if any NEXA employees wanted to contact him after describing the list of alleged benefits in working for Groves Capital.

26.     Diaz's message on NEXA's internal Facebook page was a brazen attempt to solicit existing NEXA employees to join him at his new employer and he sought to convince those employees that his new opportunity paid higher compensation, offered better lending terms to customers and it was an alternative to NEXA employees who "did not recruit."

27.     Knowing that his post on NEXA's Facebook page would be removed, Diaz later posted a substantially similar message on his personal Facebook page, through which he was connected with NEXA employees who can view his messages and posts. This message again invited other employees to contact him at his new job and touted the purported benefits of his new employment.

28.     On or about the same day as Diaz's resignation and internal posting to NEXA employees, Groves Capital's Chief Executive Officer, Chris Groves, sent messages to specific NEXA employees soliciting their employment with Groves Capital.  This solicitation is appended as **Exhibit 3**.

29.     Groves Capital's message stated "No pyramid here- you recruit its straightforward come from my side not from others that recruit you and 1099. How many [loan officers] have you recruited? To make the money that is taken out of your commission you need to recruit at least 3 producing [loan officers] because Nexa takes 12% out of your commission to pay the upline. If you are not recruiting each/every one month 12% is taken out of your commission to pay 4% to the person who recruited you, 4% to the person who recruited your recruiter, and 4% to the person who hired you. How does that make you feel? How does it feel to have a cap on your commission? . . . . Let's set up a time for a call: what works best for you? 15 min[utes] to

5

make more money for your family with a company that treats their partners with a 5 star experience."

30.    Both Diaz's and Groves Capital's messages had similar communication strategies, emphasizing the claim that Groves Capital provided 12% higher compensation over NEXA due to a purported obligation to recruit additional loan officers.

31.    The purpose of these messages was to reinforce Groves Capital's recruitment efforts of NEXA employees.

32.    The timing of both messages on the same day as well as use of virtually identical language demonstrates that Diaz and Groves Capital coordinated both Diaz's resignation from NEXA and their recruitment efforts of NEXA employees.

33.    Diaz's use of NEXA's compensation metrics and deductions in his recruitment efforts demonstrates that Groves Capital was familiar with NEXA's contracts with loan officers in violation of his confidentiality obligations.

34.    Upon information and belief, Diaz was acting within the course and scope of his employment with NEXA when he violated his non-solicitation obligations to NEXA.

35.    Upon information and belief, Groves Capital is aware of Diaz's Outside Loan Officer Employment Agreement, including Diaz's non-solicitation restrictions.

36.    Section V (G) of Diaz's Employment Agreements requires that he disclose his NEXA Employment Agreement to any subsequent employer within 12 months of his employment with NEXA.

37.    Upon information and belief, Defendants have solicited and continue to solicit NEXA employees and seek to use their knowledge of compensation for NEXA employees to induce NEXA employees to terminate their employment and begin working at Groves Capital.

**Groves Capital's Previous Raid Of NEXA Employees**

38.    Groves Capital's hiring of Diaz and solicitation of existing NEXA employees on February 9, 2022 was not their first effort to recruit NEXA's employees.

39.     In addition to Diaz, Groves Capital has successfully recruited at least six NEXA employees to their company in less than the last two years. Groves Capital has recruited four NEXA employees in just the last nine months, including Diaz.

### NEXA Suffers Irreparable Harm

40.     Diaz and Groves Capital's improper conduct will inevitably cause irreparable harm and damage to NEXA's business and goodwill for which there is no adequate remedy at law. Defendants' wrongful acts, if allowed to continue, will seriously compromise years of substantial investment and effort by NEXA in the goodwill and relationships cultivated with employees and customers.

41.     NEXA's reputation and relationships with its employees and customers are critical to its continued success in the highly competitive mortgage lending industry. Indeed, when loan officers resign, NEXA loses not only the loan officer but their pipeline of future loans that can be attracted through the relationships with past customers and referral sources. Further, each departure undermines employee morale and increases the possibility of future solicitations. NEXA now faces potential harm to its reputation and relationships with its employees and customers, and a loss of goodwill, that would be impossible to calculate.

42.     NEXA reasonably believes that additional employees will leave NEXA within the coming days and weeks to join Defendants, in addition to the six employees it has lost within the last two years, including four in the last nine months.

43.     NEXA has suffered and will continue to suffer significant expenses to replace employees, provide training and re-establish and maintain business relationships with customers, employees and referral sources.

44.     As a result of this wrongful conduct by Defendants, NEXA has suffered, and will continue to suffer, substantial and irreparable harm, including but not limited to:

• the loss of good will and business reputation;

• the loss of existing and potential employees, referral sources, and customers; and

7

- the inability to enforce the restrictive covenants of other employees.

45.     The damages that NEXA has suffered, and will continue to suffer, are nearly impossible to calculate, especially because the losses of goodwill and employee and customer trust are nearly impossible to measure.

46.     Thus, there is no adequate remedy for such harm.

## COUNT ONE

### (Breach of Non-Solicitation Agreement Against Diaz)

47.     NEXA realleges and incorporates by reference each and every allegation in the preceding paragraphs.

48.     NEXA and Diaz entered into a valid contract governing Diaz's employment with NEXA.

49.     In his Employment Agreement, Diaz agreed, for a period of 12 months after the termination of his employment, to not directly or indirectly solicit any person employed by NEXA within 12 months preceding Diaz's termination, to form or join another entity, either on behalf of himself or on behalf of another person or entity.

50.     In his Employment Agreement, Diaz agreed, for a period of 12 months after the termination of his employment, on his own behalf or on behalf of another person or entity, to not solicit, encourage or facilitate any customer or client who has closed a loan with NEXA within 12 months of Diaz's termination, to refinance or otherwise prematurely pay-off such loan.

51.     Diaz breached the Employment Agreement via posts on the NEXA's internal and his own personal social media pages, both of which are connected to NEXA employees, which specifically encouraged NEXA employees to contact him at his new employer and contrasted Groves Capital's purportedly improved compensation terms and mortgage pricing with NEXA.

52.     Diaz's conduct has caused and will continue to cause irreparable injury unless and until Diaz is preliminarily and permanently enjoined from these actions.

## COUNT TWO

### Tortious Interference With Contract/Business Expectancy Against Groves Capital

53.     NEXA realleges and incorporates by reference each and every allegation in the preceding paragraphs.

54.     A contractual relationship exists between NEXA and Diaz pursuant to the Loan Officer Employment Agreement.

55.     Groves Capital knew that NEXA had contracts with its employees in which they agreed not to not to solicit NEXA employees for a period of 12 months after the termination of employment.  Diaz's NEXA Employment Agreement required him to disclose its contents to any subsequent employer within 12 months of the termination of his NEXA Employment.

56.     Groves Capital's intimate knowledge of NEXA's contractual arrangements was demonstrated through the contents of its solicitations which discussed specific aspects of NEXA's contracts with its Employees.

57.     Groves Capital tortiously interfered with these contractual relations by inducing the disclosure of NEXA's confidential information from NEXA employees.

58.     Groves Capital induced NEXA employees to solicit other NEXA employees, in breach of their Employment Agreements and to interfere with NEXA's employee relationships. Groves Capital utilized NEXA's compensation policies to launch a coordinated campaign to induce the termination of employment of other NEXA employees to join Groves Capital.

59.     Groves Capital was aware of the contractual relationship between NEXA and its employees and schemed to interfere with those relationships.

60.     Groves Capital acted intentionally to interfere with NEXA's relationships with its employees.

61.     These actions constitute an interference with NEXA's contracts with its employees.

62.    Groves Capital's actions were intentional, aggravated and outrageous. They interfered with NEXA's employment relationships with the intent of causing injury to NEXA or in conscious disregard of a substantial risk of significant harm to NEXA. Punitive damages should therefore be awarded in an amount sufficient to punish Groves Capital and to deter it and others similarly situated from engaging in similar conduct in the future.

**WHEREFORE**, NEXA prays for and seeks judgment against all Defendants as follows:

A. A temporary restraining order and a preliminary injunction enjoining Diaz and Groves Capital from (1) interfering with NEXA's contractual relationships with its employees; and (2) contacting NEXA's employees via NEXA's social media and corporate websites.

B. A temporary restraining order and a preliminary and permanent injunction enjoining Diaz from soliciting any NEXA employees, directly or indirectly, on his own behalf or on behalf of another person or entity, to terminate their employment with NEXA or join another entity, until February 16, 2023.

C. Compensatory damages in an amount to be proven at trial;

D. Punitive damages in an amount sufficient to punish Defendants and to deter them and others similarly situated from engaging in similar conduct in the future;

E. Pre- and post-judgment interest on all damage awards at the rate permitted by law until paid; and

F. Costs pursuant to A.R.S. § 12-341 and attorneys' fees pursuant to A.R.S. § 12-341.01 and § 44-404(3).

/ / /

/ / /

/ / /

/ / /

/ / /

Dated on February 16, 2022.

BARRETT & MATURA, P.C

By:___/s/ Jeffrey C. Matura_____
        Jeffrey C. Matura
        John J. Daller
        8925 East Pima Center Parkway
        Suite 215
        Scottsdale, Arizona 85258
        Attorneys for Plaintiff

ORIGINAL of the foregoing filed
on February 16, 2022, with:

Clerk of the Court
Maricopa County Superior Court
Phoenix, Arizona

/s/ Holly A. McGee

_____
Holly A. McGee

11

**VERIFICATION**

State of Arizona          )
                          ) ss
County of Maricopa        )

    Mike Kortas, being duly sworn upon his oath, deposes and states:

    I have read the foregoing Verified Complaint and either have personal knowledge of the matters alleged in the Verified Complaint and know them to be true, or after conducting a reasonable investigation, believe the matters alleged to be true and correct.

    I declare under penalty of perjury that the foregoing to be true and correct.

    Executed on this _____ date of February 2022.

*Mike Kortas*
Mike Kortas (Feb 15, 2022 11:29 MST)
_____
Mike Kortas

1

# Kortas Verification for Complaint

**Final Audit Report** 2022-02-15

| | |
|---|---|
| Created: | 2022-02-15 |
| By: | Ken MacPhail (KMacPhail@mitchellsandler.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAy_yAUc6szxsUrzrGE7KNAqPda-3q69nE |

## "Kortas Verification for Complaint" History

📑 Document created by Ken MacPhail (KMacPhail@mitchellsandler.com)
2022-02-15 - 6:26:39 PM GMT- IP address: 71.246.220.13

📧 Document emailed to Mike Kortas (mkortas@nexamortgage.com) for signature
2022-02-15 - 6:28:51 PM GMT

📑 Email viewed by Mike Kortas (mkortas@nexamortgage.com)
2022-02-15 - 6:29:14 PM GMT- IP address: 66.249.84.25

🖋 Document e-signed by Mike Kortas (mkortas@nexamortgage.com)
Signature Date: 2022-02-15 - 6:29:47 PM GMT - Time Source: server- IP address: 184.103.3.252

✅ Agreement completed.
2022-02-15 - 6:29:47 PM GMT

 **Adobe Sign**

# EXHIBIT F

Clerk of the Superior Court
*** Electronically Filed ***
03/18/2022 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2022-001931                                03/17/2022

                                             CLERK OF THE COURT
HONORABLE BRADLEY ASTROWSKY                      M. Corriveau
                                                   Deputy


NEXA MORTGAGE L L C                          JEFFREY C MATURA

v.

DAMIAN DIAZ, et al.                          DAMIAN DIAZ
                                             4418 JILL ST
                                             OCEANSIDE CA 92057


                                             GROVES CAPITAL INC
                                             C/O PARACORP INCORPORATED
                                             8825 N 23RD AVE STE 100
                                             PHOENIX AZ 85021
                                             JUDGE ASTROWSKY



                        DISMISSAL MINUTE ENTRY


        A Notice of Dismissal with prejudice has been presented to the Court.

        DISPOSITION:

        Pursuant to Rule 41(a), ARCP, the dismissal is effective without court order.

# EXHIBIT G

2023 WL 7475841 (Cal.Super.) (Trial Order)
Superior Court of California,
Rene C. Davidson Courthouse.
Alameda County

Sebastian CANO, Plaintiff/Petitioner(s),

v.

INFINITE VELOCITY AUTOMOTIVE, INC., Defendant/Respondent(s).

No. 22CV012765.
October 4, 2023.

**\*1** Date: 10/04/2023
Time: 11:24 AM
Dept: 21

**Order re: Ruling on Submitted Matter filed by Infinite Velocity Automotive, Inc. (Defendant) on 08/25/2023**

Evelio Grillo, Judge.

The Motion for Reconsideration filed by Infinite Velocity Automotive, Inc. on 07/12/2023 is Denied.

The Court, having taken the matter under submission on 09/15/2023, now rules as follows: The Motion of Defendant for reconsideration of order on motion to compel **arbitration** and stay case is DENIED under CCP 1008.

The motion is GRANTED on the court's own motion as a case management motion. On reconsideration, the motion to stay the case is DENIED on the merits.

## BACKGROUND

Plaintiff was employed at F.H. Dailey Chevrolet. Plaintiff agreed in writing to submit disputes to **arbitration**. (Berenbrok Decl., Exh A, para 9.)

On 1/20/23, the court issued an order that states: "Motion of defendant to compel plaintiff to **arbitrate** individual claims is GRANTED. The Motion of defendant to compel plaintiff to **arbitrate** "individual" PAGA claims is GRANTED. The Motion of defendant to compel plaintiff to **arbitrate** "non-individual" PAGA claims is DENIED. The case is NOT STAYED."

Since 1/20/23, there has been relevant new case law. New cases include Rocha v. U-Haul Co. of California (2/2/2023) 88 Cal.App.5th 65; On 3/24/23, the Court of Appeal issued Gregg v. **Uber** Technologies, Inc. (3/24/2023) 89 Cal.App.5th 786, 806 (review granted 6/14/2023); **Adolph** v. **Uber** Technologies (7/17/2023) 14 Cal.5th 1104; Barrera v. Apple American Group LLC (8/31/2023) 2023 WL 5620678 at *17.

On 7/12/23, defendant filed this motion for reconsideration arguing that when viewed in light of Rocha, this Court should stay the claims that plaintiff asserts as agent and proxy for the LWDA (the "non-individual PAGA claims") until the completion of the **arbitration** on Plaintiff's individual claims and "individual PAGA claims."

### MOTION FOR RECONSIDERATION - PROCEDURE

Under 🚩 CCP 1008, a party must file a motion for reconsideration within 10 days based on new law or facts. The court's order was filed on 1/20/23. This motion was filed on 7/12/23. Defendant filed the motion well after the 10 day period. The motion as framed under 🚩 CCP 1008(a) would be denied.

An order staying a case is in the nature of a discretionary case management order. The Court may stay a case in its entirety in the interest of justice. (C.C.P. 187; 🚩 Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 758 ["The case management tools available to trial courts [includes] the inherent authority to stay an action when appropriate"]; Bailey v. Fosca Oil Co., (1963) 216 Cal.App.2d 813, 817 ["the power of a court to stay proceedings … was inherent at common law and is now vested in the superior courts of this state"].)

The case management nature of an order staying a case suggests that a court can grant, deny, lift, or reimpose a stay based on good cause. Good cause might include new law. The court GRANTS the motion to reconsider the merit of the stay based on new developments in the law. (🚩 Le Francois v. Goel (2005) 35 Cal.4th 1094, 1096.)

### GENERAL PRINCIPLES - PAGA, PAGA STANDING, AND ==ARBITRATION==

 **\*2**  The law is evolving on the interaction between and among (1) the statutory nature of a claim under the PAGA on behalf of the LWDA; (2) the statutory standing of an employee under PAGA to prosecute claims as agent and proxy of the LWDA; (3) the contractual obligation of an employee to pursue individual claims in ==arbitration==; and (4) the statutory effect of the FAA on the enforceability of ==arbitration== agreements.

First, the statutory nature of a claim under the PAGA on behalf of the LWDA is clear. Under settled California law, under the PAGA, a private plaintiff brings an action as proxy or agent of the LWDA. "An employee plaintiff suing … under the [PAGA] does so as the proxy or agent of the state's labor law enforcement agencies." (🚩 Kim v. Reins International California, Inc. (2020) 9 Cal.5th 73, 81; 🚩 ZB, N.A. v. Superior Court of San Diego County (2019) 8 Cal.5th 175, 185; 🚩 Iskanian v. CLS Transp. Los Angeles, LLC (2014) 59 Cal.4th 348, 381.) (See also ==Adolph== v. ==Uber== Technologies (2023) 14 Cal.5th 1104, 1116.)

Every PAGA action is "a dispute between an employer and the state." (🚩 Iskanian v. CLS Transp. Los Angeles, LLC (2014) 59 Cal.4th 348, 386; LaFace v. Ralphs Grocery Co. (2022) 75 Cal.App.5th 388, 397; 🚩 Moniz v. Adecco USA, Inc. (2021) 72 Cal.App.5th 56, 74.)

As a general principle, when the state brings an action, the state brings the action on behalf of all the people in the state. "The prosecutor speaks not solely for the victim, or the police, or those who support them, but for all the People. That body of 'The People' includes the defendant and his family and those who care about him. It also includes the vast majority of citizens who know nothing about a particular case, but who give over to the prosecutor the authority to seek a just result in their name." 🚩 People v. Seumanu (2015) 61 Cal.4th 1293, 1344-1345; 🚩 People v. Eubanks (1996)14 Cal.4th 580, 589-590.) The law in other states is similar. (See State ex rel. Romley v. Superior Court In and For County of Maricopa (Ct. App. Az. 1995) 181 Ariz. 378, 382, 891 P.2d 246, 250.)

If a private plaintiff is representing the LWDA, then the plaintiff is presumably representing the LWDA on the claim as a whole. The plaintiff is not representing the victimized employees. This is similar to the situation where a District Attorney recovers

restitution on behalf of a victim of a crime. (Penal Code 1202.4(f)(3), (i).) The District Attorney does not represent the victim. (People v. Seumanu (2015) 61 Cal.4th 1293, 1344-1345; People v. Eubanks (1996) 14 Cal.4th 580, 589-590.) A settlement by the District Attorney of the claims of The People is not a settlement of the potential civil claims of the victims. (Vigilant Ins. Co. v. Chiu (2009) 175 Cal.App.4th 438, 442-443.) If the victim files a civil case against the defendant, then the defendant can assert that any victim compensation payment in the criminal case is an offset in the civil case. (Penal Code 1202.4(j).)

There is recent uncertainty about the nature of a claim on behalf of the LWDA. In Viking River Cruises, Inc. v. Moriana (2022) 142 S.Ct. 1906, the United States Supreme Court expressly recognized that claims under the PAGA are claims on behalf of the LWDA (142 S.Ct. at 1915) and acknowledged the California law that "[t]here is no individual component to a PAGA action" (142 S.Ct. at 1916). Viking River then somewhat incongruously held that a California claim on behalf of a California public prosecutor has an individual component. Viking River interpreted Californina law and held that a claim on behalf of the LWDA could be separated into an "individual PAGA claims" and a "non-individual PAGA claim." (142 S.Ct. at 1917.) The court is "not bound by the United States Supreme Court's interpretation of PAGA and its standing requirements." (Gregg, 89 Cal.App.5th at 802.)

**\*3** In Gavriiloglou v. Prime Healthcare Management, Inc. (2022) 83 Cal.App.5th 595, 605, the California Court of Appeal rejected the Viking River concept of "individual PAGA claims," stating "This is mere wordplay. What the Supreme Court called, as shorthand, an "individual PAGA claim" is not actually a PAGA claim at all. It would exist even if PAGA had never been enacted. It is what we are calling, more accurately, an individual Labor Code claim."

In **Adolph**, the California Supreme Court restates the settled law that "A PAGA claim for civil penalties is fundamentally a law enforcement action. … The government entity on whose behalf the plaintiff files suit is … the real party in interest." (**Adolph**, 14 Cal 5th at 688.) **Adolph** then accepted the Viking River concept that there are "individual PAGA claims" and "non-individual PAGA claims" but made no effort to reconcile that concept with its multiple prior holdings in Kim, in Z.B., and in Iskanian that under the PAGA an employee acts as agent and proxy for the LWDA.

This trial court chooses to follow the California Supreme Court authority in **Adolph**, in Kim, in Z.B., and in Iskanian that under the PAGA an employee acts as agent and proxy for the LWDA. This means that there is no such thing as an "individual PAGA claim." This is consistent with Gavriiloglou, 83 Cal.App.5th at 605, which is the only California appellate authority to address the peculiarity in the Viking River that a California claim on behalf of a California public prosecutor has an individual component. The court is "not bound by the United States Supreme Court's interpretation of PAGA and its standing requirements." (Gregg, 89 Cal.App.5th at 802.) On matter of California law, the court is bound by California appellate authority. (Auto Equity Sales, Inc. v. Superior Court of Santa Clara County (1962) 57 Cal.2d 450, 455.)

Second, the statutory standing of an employee under PAGA to prosecute claims as agent and proxy of the LWDA is clear. Under the PAGA "an "aggrieved employee" is an individual who worked for the alleged violator and personally sustained at least one Labor Code violation." (**Adolph**, 14 Cal.5th at 695.) An aggrieved employer must comply with the PAGA's notice requirements before an aggrieved employee is deputized to act as agent and proxy for the LWDA, and the scope of the representation "is limited in scope to the specific facts and theories stated in the notice." (Accurso v. In-N-Out Burgers (8/29/2023) 2023 WL 5543525 at *6.)

Third, the contractual obligation of an employee to pursue individual claims in **arbitration** is specific to the terms of the agreement in any particular case. The enforceability of any given **arbitration** agreement is determined under California contract law and the California **Arbitration** Act (CCP 1280 et seq).

Fourth, the statutory effect of the FAA on the enforceability of **arbitration** agreements includes whether the FAA applies to an **arbitration** agreement and how the FAA applies to the specific terms of an agreement. Viking River holds, consistent with Iskanian, that if the FAA applies and if an individual is required to **arbitrate** their individual claims, then the individual in their capacity as an individual must **arbitrate** their individual Labor Code claims and the individual in their capacity as agent or proxy for the LWDA can pursue the LWDA's claims for penalties in a civil action. Viking River presumes the existence of an "individual PAGA claim" and holds that an individual in some hybrid individual/LWDA capacity must **arbitrate** any "individual PAGA claim."

## GENERAL PRINCIPLES – STAY OF LWDA'S CLAIMS IN A CIVIL ACTION WHILE EMPLOYEES PURSUES INDIVIDUAL CLAIMS IN **ARBITRATION**

**\*4**  The court may stay a case in the interest of justice. (C.C.P. 187; Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 758 ["The case management tools available to trial courts [includes] the inherent authority to stay an action when appropriate"]; Bailey v. Fosca Oil Co., (1963) 216 Cal.App.2d 813, 817 ["the power of a court to stay proceedings … was inherent at common law and is now vested in the superior courts of this state"].)

Under the California **Arbitration** Act, the court may sever the claims of the individual from the claims of the LWDA and permit the claims of the LWDA to proceed while the claims of the individual are resolved in **arbitration**. (CCP 1281.4.) The Federal **Arbitration** Act's procedural provision on a stay of proceedings does not apply in state court. (9 USC 3; Los Angeles Unified School Dist. v. Safety National Casualty Corp. (2017) 13 Cal.App.5th 471, 480-481.)

California law before Viking River is clear that under CCP 1281.4 a trial court may exercise its discretion in deciding to stay a PAGA claim on behalf of the LWDA pending the **arbitration** of the individual claims of the person who is asserting the claims of the LWDA under the PAGA as agent and proxy of the LWDA. (Jarboe v. Hanlees Auto Group (2020) 53 Cal.App.5th 539, 555-556.)

California law after Viking River is also clear that under CCP 1281.4 a trial court may exercise its discretion in deciding to stay a PAGA claim on behalf of the LWDA pending resolution of the employee's "individual PAGA claim" in **arbitration**. **Adolph** states that "[CCP 1281.4] makes clear that the cause remains one action, parts of which may be stayed pending completion of the **arbitration**." (14 Cal.5th at 1125) **Adolph** also states: "When an action includes **arbitrable** and nonarbitrable components, the resulting bifurcated proceedings are not severed from one another; rather, the court may "stay the trial of the action until such **arbitration** has been had in accordance with the terms of the agreement."" (14 Cal.5th at 1125.) **Adolph's** use of the word "may" indicates that the trial court may exercise its discretion in deciding whether to stay part of a case while another part is resolved in **arbitration**.

Leenay v. Superior Court (2022) 81 Cal.App.5th 553, is very relevant. Leenay focused on the fact that the dispute between the plaintiff as an individual and the defendant and the dispute between the plaintiff as a representative of the LWDA and the defendant are two separate and distinct controversies. Leenay confirmed that under CCP 1281.2 and 1281.4 the court has the discretion, but not the obligation, to stay the LWDA's claims in court while the individual's claims proceed in **arbitration**.

Leenay also considered and distinguished two cases that defendant relied on in oral argument - Franco v. Arakelian Enterprises, Inc. (2015) 234 Cal.App.4th 947, and Heritage Provider Network, Inc. v. Superior Court (2008) 158 Cal.App.4th 1146. This court has also considered those cases and, like Leenay, finds them distinguishable.

The central theme that runs through the case law is unchanged since Iskanian. On the one hand, when a private party files a claim seeking relief for themselves, then they are bound by an **arbitration** agreement and the court must stay the individual's related claims under CCP 1281.4. On the other hand, when a private party files a claim seeking relief as agent or proxy of the LWDA under the PAGA, then the LWDA is not bound by the individual's **arbitration** agreement and the **arbitration** of the private party's individual's claims does not require the court to stay the LWDA's claims under CCP 1281.4, but the court has the discretion to stay the LWDA's claims under the court's case management authority.

### THE MOTION TO STAY THE LWDA'S CLAIMS IN THIS CIVIL ACTION

**\*5**  Defendant argues that the court should stay the claims that plaintiff asserts as agent and proxy of the LWDA under the PAGA because if plaintiff cannot prove his individual claims in **arbitration** then (1) principles of issue preclusion mean that the employee cannot prove his individual claims in the civil action, (2) the employee is not an "aggrieved employee," (3) the employee has no standing to represent the LWDA, and (4) the court must dismiss the claims of the LWDA as asserted by plaintiff under the PAGA. Defendant reasons that the court should stay the case until the **arbitration** is completed because the court will be required to dismiss the LWDA's claims if the defendant prevails on the plaintiff's individual claims in **arbitration**.

First off, there is substantial disagreement at the Court of Appeal on related issues. On matters of law, Rocha v. U-Haul Co. of California (2023) 88 Cal.App.5th 65, 80, states that it disagrees with Gavriiloglou v. Prime Healthcare Management, Inc. (2022) 83 Cal.App.5th 595, 602-603. On matters of contract interpretation, Gregg v. **Uber** Technologies, Inc. (3/24/2023) 89 Cal.App.5th 786, 806 (review granted 6/14/2023), states that it disagrees with Olabi v. Neutron Holdings, Inc. (2020) 50 Cal.App.5th 1017.

This court is focused on the issues of law. If opinions of the Court of Appeal are in conflict, then a trial court can follow the analysis that it thinks is most persuasive. (Auto Equity Sales, Inc. v. Superior Court of Santa Clara County (1962) 57 Cal.2d 450, 456.)

First, "under California law, an alleged "aggrieved employee" … is not stripped of standing to assert non-individual PAGA claims in court simply because he or she has been compelled to **arbitrate** his or her individual PAGA claim." (Gregg, 89 Cal.App.5th at 804.) "[U]nless and until there is a finding on the merits regarding the alleged violation, allegations of a Labor Code violation by an alleged employee or former employee are alone sufficient to establish PAGA standing." (Rocha, 88 Cal.App.5th at 77.)

Second, the court if a plaintiff cannot prove his individual claims in **arbitration** then principles of issue preclusion do not compel the conclusion that the employee cannot act as agent or proxy for the LWDA under the PAGA in the civil action.

The court starts with the principle that there is a distinction between the claims of the individual plaintiff and the claims of the LWDA. This has been discussed extensively in case law. The real party in interest is different (private litigant or public entity). (Gavriiloglou v. Prime Healthcare Management, Inc. (2022) 83 Cal.App.5th 595, 602-603.) The nature of the relief is different (damages or penalties). (Z.B., 8 Cal.5th 185.)

*Cano v. Infinite Velocity Automotive, Inc., 2023 WL 7475841 (2023)*

The court considers that claim preclusion and issue preclusion apply only when there was the opportunity to full affair opportunity to litigate the matter in the first proceeding. The court is not prepared to hold in the abstract that an employee's resolution of individual claims in **arbitration** has given the LWDA's representative a full and fair opportunity to litigate those claims as a preliminary step to the claim on behalf of the LWDA. ( DKN Holdings LLC v. Faerber (2015) 61 Cal.4th 813, 826 ["full and fair opportunity to litigate"]; Nein v. HostPro, Inc. (2009) 174 Cal.App.4th 833, 845 [same].) The court also notes that the amount at issue in the individual's **arbitration** is different from the amount at issue in the LWDA's civil action, which affects the motive to litigate the matter as thoroughly. ( Vella v. Hudgins (1977) 20 Cal.3d 251, 255 [result in summary unlawful detainer proceeding did not have issue preclusion effect in claim regarding title to property].) A decision in the **arbitration** forum against a private plaintiff might not have issue preclusion or claim preclusion effect on a claim asserted by the LWDA in a civil action.

**\*6**  In **Adolph**, the court sets out plaintiff's argument and in that context states: "**Adolph** explains that his PAGA action could proceed in the following manner if he were ordered to **arbitrate** his individual PAGA claim: … If the **arbitrator** determines that [the employee] is not an aggrieved employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and [the employee] could no longer prosecute his non-individual claims due to lack of standing." (**Adolph**, 14 Cal.5th at 1123-1124.) **Adolph's** recitation of plaintiff's argument is not a holding of the court.

Third, the law remains unclear on whether an employee who has lost on the merits of an individual claim in **arbitration** loses "aggrieved employee" status and loses standing to represent the LWDA. This is the conflict between Rocha v. U-Haul Co. of California (2023) 88 Cal.App.5th 65, 80, and Gavriiloglou v. Prime Healthcare Management, Inc. (2022) 83 Cal.App.5th 595, 602-603. The court finds the analysis in Gavriiloglou to be more compelling. The court finds that the Gavriiloglou analysis more consistent with the holding in **Adolph**, 14 Cal.5th at 1123, that a PAGA plaintiff does not lose standing to litigate the LWDA's claims in court when the plaintiff's individual claims are subject to **arbitration**.

The court exercises its discretion and decides that it will not stay the LWDA's claims in this civil action while the plaintiff pursues their individual claims in **arbitration**.

First, a delay in the prosecution of the LWDA's claims is contrary to the legislative purpose of the PAGA to increase enforcement of the Labor Code. Claims on behalf of the LWDA under the PAGA are law enforcement actions on behalf of the state. "When an employee chooses to forgo individual claims and brings a PAGA action on behalf of the state, the employer should not be able [to] dictate how … the representative action proceeds by capitalizing on another employee's decision to bring **arbitrable** claims. … That result would create an unwarranted obstacle to the effective prosecution of representative PAGA actions and undermine the Legislature's objective to augment the limited enforcement capability of the state." (Leenay v. Superior Court (2022) 81 Cal.App.5th 553, 572.)

Second the court cannot determine at this stage whether the **arbitration** will have claim or issue preclusion effect. "[The preclusive effect of a prior judgment is determined by the court in which it is asserted, not the court that rendered it." (In re Fireside Bank Cases (2010) 187 Cal.App.4th 1120, 1131.) The court must await the outcome of the **arbitration**. The court will not pre-judge the outcome or effect of the **arbitration**.

Third, the court is skeptical of defendant's assertion that if this particular employee cannot prevail on their individual Labor Code claims then there will be no "aggrieved employee" who can act as agent or proxy for the LWDA. If one employee lacks standing to represent the LWDA, then a new and different employee may substitute into the case to represent the LWDA. ( Hutcheson v. Superior Court (2022) 74 Cal.App.5th 932, 945 [substitution of representative plaintiff is possible when claims in amended PAGA complaint are same general set of facts, involve same injury, and refer to same instrumentality as claims in original

complaint].) The court cannot determine in the abstract whether a hypothetical new plaintiff could represent the LWDA on the claims that the LWDA asserts in this case. (Hargrove v. Legacy Healthcare, Inc. (2022) 80 Cal.App.5th 782, 791-792.)

Fourth, the court ordered the parties to **arbitration** on 1/20/23 and the **arbitration** arguably should have been completed over the past eight months. Defendant presumably intended the **arbitration** to be "speedy" and "avoid delays incident to a civil action." ( Vaughn v. Tesla, Inc. (2023) 87 Cal.App.5th 208, 218.) There is no evidence about the status of the **arbitration** or that defendant has diligently pursued **arbitration**. The court is not inclined to stay the civil action that the plaintiff is asserting on behalf of the LWDA if the defendant is not diligently prosecuting the **arbitration** against the plaintiff.

## CONCLUSION

 **\*7** The motion to stay the claim on behalf of the LWDA in this civil action is DENIED. The court finds on the facts of this case that the order directing the plaintiff to **arbitrate** their individual claims (including any "individual PAGA claims") is not good cause stay the prosecution of the LWDA's claims that plaintiff asserts as agent and proxy of the LWDA.

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated: 10/04/2023

<<signature>>

Evelio Grillo / Judge

---

**End of Document**          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT 21

1   David M. Greeley, Esq. (SBN 198520)
2   GREELEY LAW, APC
    1350 Columbia Street, Suite 403
3   San Diego, California 92101
    Telephone: (619) 658-0462
4   david@greeley.law

5   MITCHELL SANDLER LLC
    Arielle Stephenson (SBN 336434)
6   1120 20th Street, NW
    Washington, DC 20036
7   Telephone: (202) 886-5267
8   astephenson@mitchellsandler.com

9   *Attorneys for Defendant NEXA Mortgage LLC*

10

11                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12            **FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY**

13  DAMIAN DIAZ, individually, and on behalf of all     Case No. 37-2022-00031816-CU-OE-NC
    others similarly situated,
14                                                      **DEFENDANT'S NOTICE OF**
                          Plaintiff,                    **DISASSOCIATION OF COUNSEL AND**
15                                                      **ASSOCIATION OF COUNSEL**
    v.
16                                                      Hon. Earl Maas, III
    NEXA MORTGAGE, LLC, et al.                          Department N-28
17
                          Defendants.                   Complaint Filed: August 3. 2022
18                                                      Amended Complaint Filed: October 31, 2022
                                                        Trial Date: None Set
19

20

21          **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

22          David M. Greeley of Greeley Thompson LLP, along with Arielle Stephenson of Mitchell Sandler

23  LLC have been attorneys of record for Defendant NEXA MORTGAGE, LLC in this action.

24          **PLEASE TAKE NOTICE** that David M. Greeley is now an attorney at the law firm Greeley

25  Law, APC, and is no longer with Greeley Thompson LLP.

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**11/29/2023** at 11:03:00 AM
Clerk of the Superior Court
By Rosio Vielma,Deputy Clerk

1     David M. Greeley, Esq.'s new contact information is as follows:

2         David M. Greeley
           Greeley Law, APC
3        1350 Columbia Street, Suite 403
           San Diego, CA 92101
4        (619) 658-0462
           david@greeley.law

Dated:  November 29, 2023          Respectfully submitted,

GREELEY LAW, APC

              _____*/s David M. Greeley*_____
David M. Greeley (SBN 198520)
Counsel for Defendant, *NEXA Mortgage, LLC*

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

# EXHIBIT 22

1   David M. Greeley, Esq. (SBN 198520)
2   GREELEY LAW, APC
    1350 Columbia Street, Suite 403
3   San Diego, California 92101
    Telephone: (619) 658-0462
4   david@greeley.law

5   MITCHELL SANDLER LLC
    Arielle Stephenson (SBN 336434)
6   1120 20th Street, NW
    Washington, DC 20036
7   Telephone: (202) 886-5267
8   astephenson@mitchellsandler.com

9   *Attorneys for Defendant NEXA Mortgage LLC*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

11/29/2023 at 11:03:00 AM

Clerk of the Superior Court
By Rosio Vielma, Deputy Clerk

10
11                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                  **FOR THE COUNTY OF SAN DIEGO**

13  DAMIAN DIAZ, individually, and on behalf of all      Case No. 37-2022-00031816-CU-OE-NC
    others similarly situated,
14                                                       **PROOF OF SERVICE**
                     Plaintiff,
15
    v.
16
    NEXA MORTGAGE, LLC, et al.
17
18                   Defendants.

19
20      I, Stephanie Kostic, declare as follows:

21      I am employed with the law firm of GREELEY LAW, APC whose address is 1350 Columbia

22  Street, Suite 403, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23  My email address is stephanie@greeley.law.

24      On November 29, 2023, I caused to be served true copies of the following document(s) described

25  as:

26      • **DEFENDANT'S   NOTICE   OF   DISASSOCIATION   OF   COUNSEL   AND
          ASSOCIATION OF COUNSEL**
27
28  on the interested parties in this action as follows:

---

_____ **BY MAIL:** I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection and mailing, following our firm's ordinary business practices. I am readily familiar with Greeley Thompson LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope was placed in the mail at San Diego, California.

_____ **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally delivered on defendants through their counsel of record as set forth on the attached service list.

  XXX   **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served electronically via One Legal, at the time this document was filed I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

by serving:

| | |
|---|---|
| MILLER LAW FIRM<br>Matthew R. Miller (SBN 194647)<br>Historic Louis Bank of Commerce Building<br>835 Fifth Ave, Suite 301<br>San Diego, CA 92101<br>Telephone: (619) 687-0143<br>Facsimile: (619) 687-0136<br>matt@mrmlawfirm.com<br><br>Brian C. Dawson (SBN 183251)<br>DAWSON & OZANNE<br>5755 Oberlin Dr., Suite 301<br>San Diego, CA 92131<br>Telephone: (619) 988-2135<br>brian@dawson-ozanne.com | Attorneys for Plaintiffs and all others similarly situated. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 29, 2023, at San Diego, California.

_/s/ Stephanie Kostic_____
Stephanie Kostic

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

# EXHIBIT 23

1   David M. Greeley, Esq. (SBN 198520)
2   GREELEY LAW, APC
    1350 Columbia Street, Suite 403
3   San Diego, California 92101
    Telephone: (619) 658-0462
4   dave@greeley.law

5   MITCHELL SANDLER LLC
    Arielle Stephenson (SBN 336434)
6   1120 20th Street NW, Suite 725
    Washington, DC 20036
7   Telephone: (202) 886-5267
8   astephenson@mitchellsandler.com

9   *Attorneys for Defendant NEXA Mortgage LLC*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
**12/01/2023** at 05:22:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12          **FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY**

13   DAMIAN DIAZ, individually, and on behalf of all    Case No. 37-2022-00031816-CU-OE-NC
     others similarly situated,
14                                                      **DEFENDANT'S REPLY IN SUPPORT OF**
                              Plaintiff,                **ITS MOTION TO COMPEL PLAINTIFF'S**
15                                                      **CLAIMS TO ARBITRATION & STAY THE**
     v.                                                 **CASE**
16
     NEXA MORTGAGE, LLC, et al.                         Date: December 8, 2023
17                                                      Time: 1:30 p.m.
                              Defendants.               **Reservation Number: 3011415**
18                                                      Hon. Earl Maas, III
                                                        Department N-28
19
20                                                      Complaint Filed: August 3. 2022
                                                        Amended Complaint Filed: October 31, 2022
21                                                      Trial Date: None Set
22

23   **I.      INTRODUCTION**

24          Pursuant to The Federal Arbitration Act ("FAA"), a court need only answer two questions to

25   grant Defendant's Motion to Compel Arbitration ("Motion"): 1) whether there is a valid agreement to

26   arbitrate; and 2) whether the agreement covers the dispute. Here, both questions are satisfied. Plaintiff

27   Damian Diaz's ("Plaintiff") Outside Loan Officer Retention Agreement ("Agreement") included a

28

---

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION
& STAY THE CASE
Case No. 37-2022-00031816-CU-OE-NC

binding arbitration clause, which requires him to arbitrate any claims arising out of his employment with NEXA Mortgage, LLC ("NEXA" or "Defendant"). Plaintiff does not argue that his dispute is not covered by the arbitration clause and his meritless claims of unconscionability should be rejected. Thus, this Court should compel arbitration of his individual and PAGA claims and stay the case pending the outcome of arbitration as to the remaining PAGA claims.

## II.    ARGUMENT

Under the FAA, the initial inquiry in deciding a motion to compel arbitration is limited to determining whether (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue. *Storms v. Paychex, Inc.*, No. LA CV21-01534 JAK (JEM), 2022 WL 2160414, at *9 (C.D. Cal. Jan. 14, 2022). If these conditions are met, the FAA requires the court to compel arbitration. *Id.* The FAA strongly favors arbitration agreements and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language [] or a [] defense to arbitrability." *Id.*

The connection to interstate commerce is established; NEXA sells loan products, which have a substantial effect on interstate commerce, and Diaz was involved in such interstate transactions completed via telephone and the internet. Decl. of Mile Kortas, ¶10-26.[1] Thus, the FAA clearly applies, which Plaintiff has not disputed, and unless he can prove unconscionability, the Court must grant NEXA's Motion. *Lane v. Francis Capital Mgmt. LLC* (2014) 224 Cal. App. 4th 676, 689 ("The party resisting arbitration bears the burden of proving unconscionability").

### A.  NEXA Has Plainly Followed Diaz's Employment Agreement and Has Not Waived Any Right to Arbitration.

Diaz's Outside Loan Officer Agreement contains a clause providing that: "[i]n the event that any litigation needs to be brought to obtain temporary injunctive relief . . . the parties agree that any litigation between the parties may only be brought in Federal District Court in Arizona, or [] in an Arizona Court of competent jurisdiction." Agreement at § VII.[2] Because of the "strong federal policy favoring

---

[1] Attached as Exhibit A to Defendant's Motion.
[2] A copy of the Agreement was attached as Exhibit A to the Declaration of Mike Kortas filed in support

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION & STAY THE CASE

Case No. 37-2022-00031816-CU-OE-NC

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

enforcement of arbitration agreements," the Ninth Circuit has cautioned that "any party arguing waiver of arbitration bears a heavy burden of proof." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016), 2016 WL 3924381, at *5 (quoting *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Moreover, the filing of a separate lawsuit does not waive one's right to arbitrate:

> Plaintiff's mention of [defendant] filing a separate lawsuit in Arkansas against [Plaintiff] is inadequate to demonstrate conduct inconsistent with defendant's arbitral right for purposes of the claims [Plaintiff] brings in this suit. The Arkansas proceeding is, at least at this point, separate from this case, and Plaintiff asserts (rightly or wrongly) that the arbitration agreement would not cover that dispute. [citation] More importantly, neither party has expressed any apparent interest in arbitrating those claims.

*DDC Logistics, Inc. v. Airways Freight Corp.*, No. 8:16-CV-00903-JLS (KES), 2016 U.S. Dist. LEXIS 194309, at *15 (C.D. Cal. Sep. 7, 2016) (holding "Plaintiff has not satisfied its 'heavy burden' of demonstrating [defendants'] conduct is inconsistent with its right to arbitrate."); *see also Kihagi v. Umpqua Bank*, No. CV 19-04284-CJC (MRWx), 2019 U.S. Dist. LEXIS 204624, at *12 (C.D. Cal. Aug. 15, 2019) ("A party does not act inconsistently with its right to arbitrate solely by litigating separate claims in a separate forum.") (citations omitted).

The mere filing of a separate lawsuit in Arizona state court does not waive NEXA's right to arbitrate in this matter. *See DDC Logistics*, 016 U.S. Dist. LEXIS 194309, at *15; *Kihagi*, 2019 U.S. Dist. LEXIS 204624, at *12. The Arizona matter is "separate from this case" and moreover, was not covered by the arbitration provision because Section VII of the Agreement permits either party to seek temporary injunctive relief, relief which is not afforded by arbitration. Dawson Decl. at Ex. E, ¶ 6; page 10; *Kihagi*, 2019 U.S. Dist. LEXIS 204624, at *12 (no waiver by filing separate lawsuit seeking receiver because appointment of a receiver is not a power given to arbitrators).[3] Just as importantly, the docket

---

of Defendant's Motion.

[3] Moreover, the Agreement also provides that "No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any party hereto." Agreement at Miscellaneous (C). Thus, in addition to the fact that NEXA did not breach the Agreement by seeking Temporary Injunctive Relief, per the terms of the Contract no prior breach of the Arbitration provisions would enable either party to rely upon such breach as a waiver of the subsequent enforcement of the Arbitration provisions. *Fageol Truck & Coach Co. v. Pac. Indem. Co.* (1941) 18 Cal. 2d 748, 756-57

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

3

of the Arizona lawsuit and Complaint itself reflect that NEXA only sought and received temporary injunctive relief from the Arizona court as permitted by Section VII against Diaz.[4] *See generally* Docket, attached as Ex. 1 to NEXA's Request for Judicial Notice filed herewith  in support of this Reply Brief. Therefore, NEXA did not act inconsistent with the right to arbitrate. And, similar to *DDC Logistics*, Diaz never requested that the claim be arbitrated. *See generally* Docket, attached as Ex. 1 to Request for Judicial Notice filed herewith.

It is also important to recognize that the clause providing for a lawsuit to obtain temporary injunctive relief applies equally to both parties, of which Diaz could avail himself. Agreement at § VII. Thus, this case is markedly different than the case of *Brown v. Dillard's*, 430 F.3d 1004, 1010, (9th Cir. 2005), cited by Plaintiff, because there the employee initiated an arbitration in which Dillard's refused to participate, and thereafter that Court held Dillard's could not compel arbitration once the lawsuit was filed. In this case, Diaz did not initiate any arbitration in which NEXA refused to participate, nor was NEXA in material breach of any agreement. *See id.*

**B.      The Agreement is Not Procedurally Unconscionable.**

The Agreement is not procedurally unconscionable because no part of it is unclear or deceptive. Rather, Plaintiff was plainly offered the option to accept or reject the arbitration clause and was provided multiple days to review the Clause. In fact, even after he signed the Agreement, he was given another 30 days to reconsider it and opt-out of the arbitration provision without affecting any other terms of the agreement. So, after signing the Agreement, he could have remained employed and then notified NEXA of his desire to change his mind and opt out of arbitration. He would have remained employed without any impact to the other terms of his employment.

Procedural unconscionability focuses on surprise and oppression, neither of which are found here. "Surprise is when a prolix printed form conceals the arbitration provision. Oppression, on the other

---

(finding non-waiver clause was a binding covenant). Accordingly, NEXA's Motion should be granted.
[4] Decl. of Brian Dawson, Ex. E at Count 1.

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION & STAY THE CASE

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

hand, occurs when there is a lack of negotiation and meaningful choice." *Torrecillas v. Fitness Int'l, LLC*, 52 Cal. App. 5th 485, 493 (2020). It is the Plaintiff's burden to prove the Agreement was unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1296 (9th Cir. 2006) (under the FAA, the party challenging the arbitration agreement bears the burden to prove unconscionability by a preponderance of the evidence). He cannot do so – a point demonstrated by the obviously desperate nature of his arguments.

The clause here is a little over a half page and is set forth under capitalized heading that unambiguously reads "ARBITRATION/GOVERNING LAW/CONSENT TO JURISDICTION." Agreement, §VIII. Aside from the lack of surprise, Plaintiff has acknowledged that he had "sufficient time and opportunity to review, consider, and obtain advice in connection with the execution of this Agreement." *Id.* at § IX. Beyond this, he had another 30 days to specifically reconsider and reevaluate the Arbitration clause and could have opted out of it without changing any other aspect of the Agreement. Courts have rejected arguments of procedural unconscionability and a finding that the contract is one of adhesion where a party was given a meaningful opportunity to opt out. *Eastburn v. CVS Pharm. Inc.*, No. SACV2001961DOCJDEX, 2021 WL 4712713, at *4 (C.D. Cal. Mar. 15, 2021) (no procedural unconscionability where opt-out provision, including ability to send a letter within 30 days was offered); *Trout v. Comcast Cable Communs., LLC*, No. 17-CV-01912-RS, 2018 WL 4638705, at *5 (N.D. Cal. Mar. 15, 2018) ("the opt-out opportunity means it was not [a contract of adhesion]."); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (plaintiff was "not presented with a contract of adhesion because he was given the opportunity to opt out of the Circuit City arbitration program by mailing in a simple one-page form."). Here, the Agreement contained a clear opt-out provision describing the ability of Plaintiff to strike out the arbitration clause *or* utilize a 30-day period *after signing* to send a simple note to the Company reflecting his decision to opt out.

Plaintiff's assertions of unconscionability can be rejected out of hand. For instance, the assertion

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

5

that Docusign – a process routinely utilized to sign all types of agreements containing arbitration provisions – renders a contract unconscionable ignores the fact that if he did not want to agree to the clause, *he did not need to sign the Agreement*. And, a simple handwritten note sent after he signed the Agreement effectively could have removed the arbitration provision, thus negating any need to seriously consider this Argument. Similarly, the fact that the Agreement was provided with other onboarding documents does not render it unconscionable – no case law requires that an arbitration agreement must be a standalone document sent without any other documents. In fact, any such requirement would run afoul of the FAA. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 247 (2017) (made very clear that a state rule that interferes with arbitration by discriminating against arbitration on its face or "covertly accomplishes the same objective by disfavoring contracts that have the defining features of arbitration agreements" was invalid as the FAA cannot be "rendered helpless to prevent even the most blatant discrimination against arbitration"). Furthermore, Plaintiff had ample opportunity to review the documents and/or send them to counsel after they were signed -- a fact not present in the cases cited by Plaintiff. *Cf*, *Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021) (finding support for procedural unconscionability where clause was in the middle of 31 numbered paragraphs with no heading to call attention to the clause).

Additionally, the fact that NEXA did not attach the JAMS rules does not render the Agreement unconscionable. *Baltazar v. Forever 21, Inc.* (2016)  62 Cal. 4th 1237, 367 P.3d 6, 13 (2016) ("failure to attach the AAA rules . . . does not affect our consideration of [] claims of substantive unconscionability."); *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 428 (N.D. Cal. 2018) (failure to provide Plaintiff with the AAA rules did not affect procedural unconscionability analysis). Moreover, there can be no surprise when the arbitration rules are easily accessible online. *See Lane v. Francis Cap. Mgmt. LLC* (2014) 224 Cal. App. 4th 676, 691. The JAMS Rules are accessible via the Internet and may be easily located by a simple Google search. This is particularly true given Plaintiff had a month after he

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION & STAY THE CASE

signed it to look up or request the rules.

And, the fact that the JAMS rules were updated during Diaz's term of employment does not render the Agreement unconscionable. Indeed, the fact that JAMS may update its rules has an equal effect on both parties; both parties contract for the risk that an update may benefit one party. And, in this case we do not know whether the totality of rule changes benefitted one side or the other – it is entirely possible the changes benefit Plaintiff. Similarly, the fact that the Agreement does not specify which rules apply is simple-minded. A quick review of JAMS' rules openly state "The JAMS Employment Arbitration Rules and Procedures ("Rules") govern binding Arbitrations of disputes or claims … [if] the disputes or claims are employment-related, unless other Rules are prescribed." Declaration of Brian Dawson at Ex. A. Thus, the Agreement is not procedurally unconscionable.

## C.      The Agreement is Not Substantively Unconscionable.

The forum selection, choice of law, and fee provisions do not render the Agreement substantively unconscionable, and even if they did, the Court can and should sever the offending clause. Under California law, forum selection clauses ("FSCs") "are valid and should be given effect unless enforcement of the clause would be unreasonable." *Intershop Commc'ns v. Sup. Ct.* (2002) 104 Cal. App. 4th 191, 196. A Plaintiff must show that the arbitration venue is "unduly oppressive," or has the effect of shielding the stronger party from liability. *Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, No. 11-CV-858 JLS WMC, 2012 WL 928412, at *10 (S.D. Cal. Mar. 19, 2012). In *Captain Bounce*, an FSC choosing North Carolina as the forum state was not unexpected because the defendant was headquartered there, and the clause did not shield the defendant from liability. *Id*. Here too, Arizona is NEXA's primary place of business (Decl. of Mike Kortas at ¶ 8), such that its selection as the forum state is expected and there is no evidence that selecting Arizona shields NEXA from liability. Further, since JAMS offers virtual and hybrid dispute resolution options, Plaintiff cannot show that Arizona as a forum will be inconvenient or costly.

1      Plaintiff also assumes that he will be required to pay arbitration costs. JAMS' default rules of

2   arbitration applicable to employment cases provide that the employer typically pays all costs. JAMS

3   Policy on Emp't Arbitration, attached as Ex. B ("[t]he only fee that an employee may be required to pay

4   is the initial JAMS Case Management Fee. All other costs must be borne by the company, including any

5   additional JAMS Case Management Fees and all professional fees for the arbitrator's services."). 

6   Plaintiff's assertion that this provision will not apply to him assumes multiple levels of hypotheticals,

7   including that NEXA will seek to argue that such provision does not apply to Diaz, and that JAMS will

8   agree and order Diaz to pay shared costs. And, it is inconsistent with Plaintiff's position that he was

9   never provided an opportunity to opt-out. Further, the Agreement itself incorporates cost-sharing

10  provisions such that any statutory provisions shifting fees will be adhered to. Agreement at § VIII.

11  Notably, Plaintiff's claims incorporate cost-shifting statutes, meaning that even if JAMS did not follow

12  its standard rules, if Plaintiff is successful, the cost-shifting provisions allow him to recover his costs.

13  The Agreement also provides that NEXA, at its discretion, can cover all arbitration costs. Agreement,

14  §VIII. Thus, the cost-sharing provision does not render this Agreement unconscionable because the

15  JAMS rules explicitly address that costs are shared for employment-related disputes.

16      Next, choice-of-law provisions are legal in California, and California has "a strong policy

17  favoring" their enforcement. *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 465. In

18  addition, "parties may expressly agree on what law shall govern their contract" and "[a]lthough the form

19  may be characterized as a contract of adhesion [citation], the choice-of-law provision contained in such

20  a contract is usually respected." *Windsor Mills, Inc. v. Collins & Aikman Corp.* (1972) 25 Cal. App. 3d

21  987, 995 n. 6. Even if the Court were to conclude the choice-of-law or forum selection terms were

22  unenforceable, the presence of these clauses does not render the Arbitration Provisions unenforceable.

23  *See Bos Material Handling, Inc. v. Crown Controls Corp.* (1982) 137 Cal. App. 3d 99, 108 (concluding

24  an arbitration clause was enforceable even though the choice-of-law and forum-selection terms contained

25  therein might not have been enforceable).

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

Diaz also raises the argument that the provisions provided for temporary injunctive relief to be sought in court and for the employee referral program are "one sided." Opposition at 12. As discussed in Section II(A) above, provisions that permit litigation for powers not afforded to an arbitrator are valid, and moreover, the clauses complained of apply equally to both NEXA and Diaz.

Finally, a court has discretion to sever an unconscionable provision from an agreement and continue to enforce it; it need not refuse to enforce the entire agreement. *Ingle v. Circuit City Stores, Inc.*, 328 F.2d 1165, 1180 (9th Cir. 2003); *Buchsbaum v. Dig. Intelligence Sys., LLC*, No. 20-cv-00706-BAS-AGS, 2020 WL 7059515, at * 8-9 (S.D. Cal. Dec. 2, 2020) (severing choice of law, forum selection, and provision exempting defendant from arbitrating certain claims, finding in light of liberal policy favoring arbitration, the agreement was not "permeated with unconscionability.").[5]

**D.    Plaintiff's Non-PAGA and Individual PAGA Claims Are Properly Subject to Arbitration.**

As demonstrated above, the arbitration clause is valid, enforceable, and thus Plaintiff's non-PAGA claims should be compelled to arbitration. In addition, Plaintiff's individual PAGA claims are subject to arbitration under *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), which Plaintiff does not dispute.

**III.    A Stay is Proper.**

It is not disputed that the Court has the discretion to stay Plaintiff's representative PAGA claims pending his individual claims in arbitration. The Court should exercise its discretion to stay, identified in *Adolph v. Uber Techs.*, Inc. (2023) 14 Cal. 5th 1104, and pursuant to Code of Civil Procedure section 1281.4. Plaintiff relies on the trial court opinion of *Cano* to support its position that a stay is not warranted. However, *Cano* identifies that there is a split in authority between whether an arbitrator's decision that Plaintiff is *not* an aggrieved employee prevents Plaintiff from having standing to prosecute his non-individual claims. *See* Decl. of Dawson at Ex. G, *Cano v. Infinite Velocity Automotive, Inc.*,

---

[5] *See also Galvan v. Michael Kors USA Holdings, Inc.*, No. 16-07379-BRO (AFMx), 2017 U.S. Dist. LEXIS 9059, *26 (C.D. Cal. Jan. 19, 2017) (same) (*citing* Cal Civ Code § 1670.5(a)); *Lang*, 347 F.Supp. at 431 (same).

9

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

1   2023 WL 7475841, October 4, 2023 (citing *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th

2   65, 76–82 [304 Cal. Rptr. 3d 587] and *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83

3   Cal.App.5th 595, 602–603 [299 Cal. Rptr. 3d 34]). Not only is *Rocha* more recent, but it also expressly

4   considered *Gavriiloglou* and determined it disagreed. *Rocha*, 88 Cal.App.5th at 80 ("We disagree

5   with *Gavriiloglou, supra*, 83 Cal.App.5th 595 that the doctrine of issue preclusion applies differently

6   when considering the effect of an adjudication regarding a plaintiff's individual Labor Code claim on

7   that plaintiff's ability to establish PAGA standing.)   Accordingly, the reasoning in *Rocha* supports

8   Defendant's request for a stay which will preserve the status quo.

9   **IV.   CONCLUSION**

10       For the foregoing, Defendant respectfully requests that the Court grant its Motion to Compel

11   Plaintiff's Complaint to Arbitration and Stay the Action.[6]

12

13   Dated: December 1, 2023                    Respectfully submitted,

14                                              MITCHELL SANDLER LLC
                                                */s/ Arielle Stephenson*
15                                              Arielle Stephenson (SBN 336434)
                                                1120 20th Street NW, Suite 725
16                                              Washington, DC 20036
                                                Telephone: (202) 886-5267
17                                              astephenson@mitchellsandler.com

18
                                                Counsel for Defendant, *NEXA Mortgage, LLC*
19

20

21

22

23

24

25

26

27

28   [6] Plaintiff has also submitted a request for judicial notice, which Defendant does not oppose.

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

10

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S CLAIMS TO ARBITRATION &
STAY THE CASE

Case No. 37-2022-00031816-CU-OE-NC

EXHIBIT 24

1    David M. Greeley, Esq. (SBN 198520)
2    GREELEY LAW, APC
     1350 Columbia Street, Suite 403
3    San Diego, California 92101
     Telephone: (619) 658-0462
4    dave@greeley.law

5    MITCHELL SANDLER PLLC
6    Arielle Stephenson (SBN 336434)
     1120 20th Street NW, Suite 725
7    Washington, DC 20036
     Telephone: (202) 886-5267
8    astephenson@mitchellsandler.com

9    *Attorneys for Defendant NEXA Mortgage LLC*

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12          **FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY**

13                                              Case No. 37-2022-00031816-CU-OE-NC

14   DAMIAN DIAZ, individually, and            **DEFENDANT'S REQUEST FOR JUDICIAL**
     on behalf of all others similarly situated, **NOTICE IN SUPPORT OF DEFENDANT'S**
15                                              **REPLY BRIEF FOR MOTION TO**
                                                **COMPEL ARBITRATION AND STAY**
16                Plaintiff,                    **CASE**

17   v.                                         Date: December 8, 2023
                                                Time: 1:30 p.m.
18   NEXA MORTGAGE, LLC, et al.                 **Reservation Number: 3011415**
                                                Hon. Earl Maas, III
19                Defendants.                   Department N-28

20                                              Complaint Filed: August 3. 2022
21                                              Amended Complaint Filed: October 31, 2022
                                                Trial Date: None Set
22

23          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24          Defendant NEXA Mortgage LLC ("Defendant" or "NEXA") respectfully requests, pursuant to

25   California Evidence Code sections 451 and 452, that this Court take judicial notice of the following case

26   docket in support of Defendants' Reply in Support of its Motion to Compel Arbitration and Stay the

27   Case ("Reply"), of which a true and correct copy is attached hereto as exhibit 1. Specifically, Defendant

28   requests that the Court take judicial notice of the case docket attached hereto as Exhibit 1 pursuant to

---

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/01/2023** at 05:22:00 PM

Clerk of the Superior Court
By E- Filing,Deputy Clerk

GREELEY LAW, APC
1350 COLUMBIA STREET, SUITE 403
SAN DIEGO, CALIFORNIA 92101

1  Evidence Code section 452(d), as the attached case docket is part of the records of a court in the State of

2  Arizona.

| Exhibit | Description |
|---------|-------------|
| 1 | 11/30/2023 Docket of NEXA v. Diaz, Arizona Superior Court, Case No. CV2022-001931 |

Dated:  December 1, 2023                    GREELEY LAW, APC

By:  _____
          David M. Greeley, Esq.
          Attorneys for Plaintiffs

# EXHIBIT 1


Select Language ∨
Powered by Google Translate

# Civil Court Case Information – Case History

## Case Information
Case Number: CV2022-001931
File Date: 2/16/2022
Case Type: Civil
Judge: Astrowsky, Brad
Location: Downtown

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Nexa Mortgage L L C | Plaintiff | | Jeffrey Matura |
| Damian Diaz | Defendant | Male | Pro Per |
| Groves Capital Inc | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 3/24/2022 | 021 - ME: Nunc Pro Tunc Order | 3/24/2022 | |
| 3/18/2022 | 042 - ME: Case Dismissed - Full | 3/18/2022 | |
| 3/8/2022 | NDI - Notice Of Dismissal | 3/12/2022 | |
| NOTE: PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE | | | |
| 3/3/2022 | 056 - ME: Hearing Set | 3/3/2022 | |
| 3/1/2022 | ORD - Order | 3/9/2022 | |
| NOTE: GRANTING TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION | | | |
| 2/28/2022 | AFS - Affidavit Of Service | 3/4/2022 | |
| NOTE: DAMIAN DIAZ | | | |
| 2/24/2022 | AFS - Affidavit Of Service | 3/1/2022 | |
| NOTE: GROVES CAPITAL INC | | | |
| 2/17/2022 | OSC - Order To Show Cause | 2/19/2022 | |
| NOTE: REGARDING PLAINTIFFS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION | | | |
| 2/16/2022 | COM - Complaint | 2/16/2022 | |
| NOTE: Verified Complaint with Exhibits | | | |
| 2/16/2022 | APL - Application | 2/16/2022 | |
| NOTE: Application for Temporary Restraining Order with Exhibits | | | |
| 2/16/2022 | CSH - Coversheet | 2/16/2022 | |
| NOTE: Civil Cover Sheet | | | |
| 2/16/2022 | CCN - Cert Arbitration - Not Subject | 2/16/2022 | |
| NOTE: Certificate Of Compulsory Arbitration - Is Not Subject To | | | |
| 2/16/2022 | SUM - Summons | 2/16/2022 | |
| NOTE: Summons | | | |
| 2/16/2022 | SUM - Summons | 2/16/2022 | |
| NOTE: Summons | | | |

## Case Calendar

| Date | Time | Event |
|---|---|---|
| 3/1/2022 | 8:45 | Order To Show Cause |
| 3/25/2022 | 13:30 | Order To Show Cause |

## Judgments
**There are no judgments on file**

# EXHIBIT 25

RA-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>NAME:  David M. Greeley, Esq.<br>FIRM NAME:  Greeley Law, APC<br>STREET ADDRESS:  1350 Columbia Street, Suite 403<br>CITY:  San Diego      STATE:  CA      ZIP CODE:  92101<br>TELEPHONE NO.:  (619) 658-0462      FAX NO.:<br>EMAIL ADDRESS:  david@greeley.law<br>ATTORNEY FOR (name):  Defendant Nexa Mortgage, LLC | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**12/01/2023** at 05:22:00 PM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |

STATE BAR NUMBER:  198520

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**
STREET ADDRESS:  325 South Melrose Drive
MAILING ADDRESS:  325 South Melrose Drive
CITY AND ZIP CODE:  Vista, Ca 92081
BRANCH NAME:  North County

PLAINTIFF/PETITIONER: Damian Diaz
DEFENDANT/RESPONDENT: Nexa Mortgage, LLC, et al.
OTHER CASE NAME:

| **NOTICE OF REMOTE APPEARANCE** | CASE NUMBER:<br>37-2022-00031816-CU-OE-NC |
|---|---|

You must use this form to tell the court you intend to appear remotely in a civil case, unless the court's website describes an online process for giving notice. You may also use it to give the required notice to all other parties in the case. (Do not use this form in a juvenile dependency proceeding.)

Check the court's website for information about how to appear remotely, including the departments and types of cases or proceedings that allow remote appearances and ways to appear remotely in their departments for such appearances.

See page 3 of this form for more information, including deadlines for giving notice and for opposing a remote appearance if this notice is for an evidentiary hearing or trial.

**A person appearing remotely should conduct themselves as though appearing in court in person.**

1.  The person who intends to appear remotely is *(check and complete all that apply):*
    - ☐ Plaintiff/Petitioner *(name):*
    - ☐ Attorney for Plaintiff/Petitioner *(name):*
    - ☐ Defendant/Respondent *(name):*
    - ☒ Attorney for Defendant/Respondent *(name):*  Arielle Stephenson, Esq., with co-counsel Mitchell Sandler, LLC
    - ☐ Other *(name and role in case):*

2.  The person or persons in 1 intends to appear remotely *(check one):*
    a.  ☐ Throughout the case.
    b.  ☒ At the proceeding described below, including on any later dates if the proceeding is continued *(describe):*
        Type of proceeding: Motion to Compel Arbitration and Stay the Case
        Set on *(date):* December 8, 2023      at *(time):* 1:30 p.m.      in *(department):* N-28
        Before *(name of judicial officer, if known):* Hon. Earl Maas III

3.  The person intends to appear by *(check court's website for method that may be used):*
    - ☒ Videoconference      ☐ Audio only (including telephone)

4.  ☐ For evidentiary hearing or trial only (where testimony may be given): the party requests the following additional aspects of the proceeding be conducted remotely*(describe what the party wants to be done remotely and why; attach form MC-25 if more space is needed):*

---

Form Adopted for Mandatory Use
Judicial Council of California
RA-010 [New January 1, 2022]

**NOTICE OF REMOTE APPEARANCE**

Page 1 of 3

Code of Civil Procedure, § 367.75;
Cal. Rules of Court, rule 3.672
*www.courts.ca.gov*

RA-010

| PLAINTIFF: Damian Diaz | CASE NUMBER: |
|---|---|
| DEFENDANT: Nexa Mortgage, LLC, et al. | 37-2022-00031816-CU-OE-NC |

5. ☒ I agree to keep the proceeding confidential to the same extent as would be required if I were appearing in person.

Date: December 1, 2023

Arielle Stephenson
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE)

### Notice to Other Parties

Anyone intending to appear remotely must provide notice to all other parties by the deadlines stated in Cal. Rules of Court, rule 3.672, and described on the next page. Notice may be provided orally, electronically, or by giving the other parties this form in a way to ensure it is received by the applicable deadline. The party must tell the court this was done either by filing a proof of service (this may be done on forms POS-040 or POS-050 for electronic service) or by completing and signing the declaration below.

### Declaration of Notice

I gave notice that I intend to appear remotely to the other parties or persons entitled to receive notice in this case as stated below. *Complete one item below for each person notice was given to, and enter one of the following options for "Method of notice" in c.*

- **Mail**: By mailing them a copy of this form (write the mailing address in d.)
- **Overnight delivery**: By having a copy of this form delivered overnight (write the delivery address in d.)
- **Electronic notice**: By e-mail or text message (write the e-mail or phone number in d.)
- **Phone**: By telling them over the telephone or leaving them voice mail (write the phone number in d.), or
- **In person**: By giving them a copy of this form in person, or by telling them orally in person (write the address in d.)

1. ☒ Plaintiff/Petitioner
   a. Name: Damian Diaz
   b. Date of notice:
   c. Method of notice: Eservice via One Legal
   d. Address (mailing, in-person, or email) or phone number:

2. ☒ Attorney for: Damian Diaz
   a. Name: Matthew R. Miller
   b. Date of notice:
   c. Method of notice: Eservice via One Legal
   d. Address (mailing, in-person, or email) or phone number: matt@mrmlawfirm.com

3. ☒ Defendant/Respondent
   a. Name: Nexa Mortgage, LLC
   b. Date of notice:
   c. Method of notice: Eservice via One Legal
   d. Address (mailing, in-person, or email) or phone number:

4. ☒ Attorney for: Damian Diaz
   a. Name: Brian C. Dawson
   b. Date of notice:
   c. Method of notice: Eservice via One Legal
   d. Address (mailing, in-person, or email) phone number: brian@dawson-ozanne.com

5. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

6. ☐ Attorney for:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) phone number:

7. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

7. ☐ Other *(specify)*:
   a. Name:
   b. Date of notice:
   c. Method of notice:
   d. Address (mailing, in-person, or email) or phone number:

☐ If more people were given notice, check here, attach form MC-025, titled as Attachment Notice, and add the information about how and when notice was given to each person.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 1, 2023

Stephanie Kostic
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE)

RA-010 [New January 1, 2022]          **NOTICE OF REMOTE APPEARANCE**          Page 2 of 3
[page 3 need not be filed]

# EXHIBIT 26

1  David M. Greeley, Esq. (SBN 198520)
2  GREELEY LAW, APC
   1350 Columbia Street, Suite 403
3  San Diego, California 92101
   Telephone: (619) 658-0462
4  david@greeley.law

5  MITCHELL SANDLER LLC
   Arielle Stephenson (SBN 336434)
6  1120 20th Street, NW
   Washington, DC 20036
7  Telephone: (202) 886-5267
8  astephenson@mitchellsandler.com

9  *Attorneys for Defendant NEXA Mortgage LLC*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
12/01/2023 at 05:22:00 PM
Clerk of the Superior Court
By E- Filing,Deputy Clerk

10

11 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 **FOR THE COUNTY OF SAN DIEGO**

13 DAMIAN DIAZ, individually, and on behalf of all
   others similarly situated,          Case No. 37-2022-00031816-CU-OE-NC

14                                       **PROOF OF SERVICE**
                    Plaintiff,
15
   v.
16
17 NEXA MORTGAGE, LLC, et al.
18                    Defendants.

19

20     I, Stephanie Kostic, declare as follows:

21     I am employed with the law firm of GREELEY LAW, APC, whose address is 1350 Columbia

22 Street, Suite 403, San Diego, California 92101.  I am over 18 years of age and not a party to this action.

23 My email address is stephanie@greeley.law.

24     On December 1, 2023, I caused to be served true copies of the following document(s) described

25 as:

26     • **DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**
         **DEFENDANT'S REPLY BRIEF FOR MOTION TO COMPEL ARBITRATION AND**
27       **STAY CASE; and**

28
   ─────────────────────────────────────────────
                    PROOF OF SERVICE

1  • **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
2     PLAINTIFF'S CLAIMS TO ARBITRATION & STAY THE CASE**

3  on the interested parties in this action as follows

4  _____  **BY MAIL:**  I enclosed the document(s) in sealed envelope(s) or package(s) addressed to the
5  person(s) at the address(es) listed in the Service List and placed the envelope(s) for collection
   and mailing, following our firm's ordinary business practices. I am readily familiar with
6  Greeley Thompson LLP's practice for collecting and processing correspondence for mailing.
   On the same day that correspondence is placed for collection and mailing, it is deposited in
7  the ordinary course of business with the United States Postal Service, in a sealed envelope
   with postage fully prepaid. I am a resident of or employed in the county where the mailing
8  occurred. The envelope was placed in the mail at San Diego, California.

9  _____  **BY PERSONAL DELIVERY:** I caused the document(s) listed above to be personally
10 delivered on defendants through their counsel of record as set forth on the attached service
   list.

11
   _XXX_  **BY ELECTRONIC SERVICE - VIA ONE LEGAL:** I caused the document(s) to be served
12 electronically via One Legal, at the time this document was filed I did not receive, within a
   reasonable time after the transmission, any electronic message or other indication that the
13 transmission was unsuccessful.

14
       by serving:
15

16 | MILLER LAW FIRM | Attorneys for Plaintiffs and all others |
   | Matthew R. Miller (SBN 194647) | similarly situated. |
17 | 6790 Embarcadero Lane, No. 100 | |
   | Carlsbad, CA 92011 | |
18 | Telephone: (619) 261-1151 | |
   | matt@mrmlawfirm.com | |
19 | | |
   | | |
20 | Brian C. Dawson (SBN 183251) | |
   | DAWSON & OZANNE | |
21 | 5755 Oberlin Dr., Suite 301 | |
   | San Diego, CA 92131 | |
22 | Telephone: (619) 988-2135 | |
   | brian@dawson-ozanne.com | |
23

24      I declare under penalty of perjury under the laws of the State of California that the foregoing is
25 true and correct.

       Executed on December 1, 2023, at San Diego, California.
26

27
             _/s/ Stephanie Kostic_____
28              Stephanie Kostic

                                                    2
                                         PROOF OF SERVICE

GREELEY LAW, APC
1351 COLUMBIA STREET, SUITE 403
SAN DIEGO, CA 92101

# EXHIBIT 27

**SUPERIOR COURT OF CALIFORNIA,**

COUNTY OF SAN DIEGO

SOUTH BUILDING

TENTATIVE RULINGS -  December 07, 2023

EVENT DATE:  12/08/2023          EVENT TIME:  01:30:00 PM          DEPT.: N-28

JUDICIAL OFFICER:Earl H. Maas III

CASE NO.:     37-2022-00031816-CU-OE-NC

CASE TITLE:  DIAZ VS NEXA MORTGAGE LLC [IMAGED]

CASE CATEGORY:  Civil - Unlimited          CASE TYPE:  Other employment

EVENT TYPE:  Motion Hearing (Civil)
CAUSAL DOCUMENT/DATE FILED: Motion - Other, 08/21/2023

---

Defendant NEXA Mortgage, LLC's ("Defendant") motion to compel arbitration and to stay the action (ROA # 13) is granted in part and denied in part.

### *Factual Background*

On July 13, 2020, Plaintiff Damian Diaz ("Plaintiff") was hired as a loan officer by Defendant. (Kortas Decl., ¶ 15.) Plaintiff's job duties included the sale of mortgage loan products to customers remotely from his home office in California. (Diaz Decl., ¶ 11.) Plaintiff alleges he was paid "according to a commission structure that [he] never really full understood, nor was [he] given a breakdown of how [his] commissions were calculated on a per sale basis." (Diaz Decl., ¶ 11.)

On the same day as his hire, that is July 13, 2020, as part of the onboarding process Plaintiff electronically executed, via DocuSign, a document entitled "NEXA Mortgage LLC Outside Loan Officer Employment Agreement" (the "Employment Agreement"). (Kortas Decl., ¶ 15, Ex. A.) Plaintiff does not dispute he electronically executed the Employment Agreement. (See Diaz Decl., ¶ 7.) The Employment Agreement was also electronically executed by two representatives of Defendant around the time of Plaintiff's hire. (See Kortas Decl., ¶ 15, Ex. A.)

The Employment Agreement contains an arbitration provision which states, in part, that "any dispute between the parties concerning or arising out of their employment relationship...shall be resolved through binding arbitration in accordance with the rules of JAMS Arbitration..." (See Kortas Decl., ¶ 15, Ex. A, § VIII.) The same sentence goes on to waive Plaintiff's ability to bring a class claim stating, "...notwithstanding any rules in JAMS to the contrary, [Plaintiff's] claims may not be joined with the claims of any other person or Employee and there will be no allowance for Employee to pursue or participate in relief on a class or collective action basis against the Company arising out of the employment relationship or this agreement." (Kortas Decl., ¶ 15, Ex. A, § VIII.) The type and scope of allowable discovery is not discussed.

The arbitration provision also states, in part, that the Employment Agreement is "made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona" and that "the parties will share equally in the cost of such Arbitration." (Kortas Decl., ¶ 15, Ex. A, § VIII.)

Included in the arbitration provision were opt-out instructions for employees who sought to

---

CASE TITLE: DIAZ VS NEXA MORTGAGE LLC CASE NUMBER: 37-2022-00031816-CU-OE-NC
[IMAGED]

relieve both parties of the obligations contained therein by: (1) sending a notarized letter to the attention of the employee's immediate supervisor, while copying the Human Resources department, both sent via Certified Mail within 30 days of the execution of the Employment Agreement expressly opting out of the arbitration provision; or (2) striking the entirety of the arbitration provision and initialing thereafter. (Kortas Decl., ¶ 15, Ex. A, § VIII.) While Plaintiff takes issue with the pragmatic ability to undertake the preceding, there appears to be no dispute that, at the time Plaintiff executed the Employment Agreement, he took no affirmative steps to attempt to opt out of the arbitration provision. (See Diaz Decl., ¶¶ 7-10.)

### Procedural History

On August 3, 2022, Plaintiff filed a Complaint alleging eight causes of action against the Defendant. (Complaint, ROA # 1.) On October 31, 2022, Plaintiff filed a First Amended Complaint ("FAC") adding a cause of action seeking civil penalties for various alleged *Labor Code* violations under the Private Attorneys General Act ("PAGA"). (ROA # 6.)

On December 1, 2022, Defendant filed a notice of removal of case in the United States District Court, Southern District of California. (ROA # 7.) On July 10, 2023, the District Court granted Plaintiff's motion to remand the subject action to this Court on the grounds the District Court lacked jurisdiction over the case. (See ROA # 10.)

Upon the return to this court, on August 21, 2023, Defendant promptly filed the subject motion to compel Plaintiff's claims to arbitration and stay the remainder of the case. (ROA # 13.) Plaintiff opposes Defendant's motion on multiple grounds including waiver, unconscionability, and more. (ROA # 22.)

### Existence of an Agreement to Arbitrate

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the [parties] to arbitrate the controversy if it determines that an agreement to arbitrate exists..." (*Code Civ. Proc.* § 1281.2.) The party moving to compel arbitration bears the initial burden of proving, by a preponderance of the evidence, an agreement to arbitrate exists. (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842.)

Here, based on the evidence presented by the Defendant, the Court finds that an agreement to arbitrate exists between Plaintiff and Defendant.

### Choice of Law/Forum Provisions

As noted above, the arbitration section of the Employment Agreement contains a provision which states the agreement is "made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona." Plaintiff opposes the application of Arizona law and argues *Lab. Code* § 925 mandates that California law be applied when considering the relevant issues of this motion. This Court agrees.

*Lab. Code* § 925 states in relevant part:

(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

(1) Require the employee to <u>adjudicate outside of California a claim arising in California.</u>

(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

CASE TITLE: DIAZ   VS   NEXA   MORTGAGE   LLC CASE NUMBER:   37-2022-00031816-CU-OE-NC
[IMAGED]

**(b) Any provision of a contract that violates subdivision (a) is <u>voidable by the employee</u>, and if a provision is rendered void at the request of the employee, the matter <u>shall</u> be adjudicated in California and California law shall govern the dispute.**

**[Emphasis added.]**

**Here, it appears undisputed to this Court that Plaintiff: (a) was an employee of Defendant; (b) is a California citizen; and (c) worked for Defendant solely within the geographical bounds of California. Thus, the Court finds *Lab. Code* § 925 applies to the Employment Agreement entered into between the parties. As a result, the Arizona choice of law/forum clauses are void and stricken by this Court. (The Employment Agreement contains a severability clause.) California law applies.**

### *Waiver*

**Plaintiff seeks to prevent arbitration by arguing Defendant waived its right to arbitrate by initiating a lawsuit against Plaintiff in Arizona state court.**

**Given the strong public policy favoring arbitration, claims of waiver are subject to "close judicial scrutiny," and the "party seeking to establish a waiver bears a heavy burden" with all doubts resolved in favor of arbitration. (*Saint Agnes Medical Center v. PacifiCare of Cal.* (2003) 31 Cal.4th 1187, 1195-1196; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443.)**

**While there is no rigid test for determining what constitutes a waiver of arbitration, this Court is directed to consider the following six factors: "(1) [W]hether the party's action are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into the preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled or prejudiced the opposing party." (*Saint Agnes Medical Center, supra,* 31 Cal.4th at p. 1196.)**

**Here, the *St. Agnes* factors weigh heavily against a finding of waiver. While Defendant did initiate a lawsuit against Plaintiff, the Court finds the mere filing of a separate lawsuit does not result in the complete waiver of Defendant's ability to invoke the arbitration provision of the Employment Agreement. The Court is satisfied that the filing of the Arizona state court matter was done for the primary purpose of obtaining temporary injunctive relief. The length of the active status of the Arizona state court matter (only 30 days) reflects this finding.**

**Other than arguing the filing of the Arizona state court case was "inconsistent with the right to arbitrate," Plaintiff fails to make any argument or showing regarding the remainder of the *Saint Agnes* factors. Indeed, the parties were not well into this action at the time Plaintiff was notified of Defendant's intent to arbitrate. Defendant had not taken intervening steps, such as conducting discovery, before seeking to arbitrate. Defendant has not filed a counterclaim in this action. Most critically, Defendant has not delayed in seeking to arbitrate this matter. Approximately one month after this matter was remanded to this Court, Defendant promptly filed the subject motion. The Court finds Defendant has not waived its right to invoke the arbitration provision of the Employment Agreement.**

### *Unconscionability*

**Plaintiff also challenges the subject contract as unconscionable. Unconscionability has both a**

TENTATIVE RULINGS
Page: 3

CASE TITLE: DIAZ   VS   NEXA   MORTGAGE   LLC CASE NUMBER:   37-2022-00031816-CU-OE-NC
[IMAGED]

procedural and substantive element. Both elements must be present for a court to refuse to enforce a contract, but they are evaluated on a "sliding scale" and "need not be present in the same degree." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) The more substantively oppressive the contract term, the less procedural unconscionability is required to conclude that the term in unconscionable, and vice versa. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 689.)

**If a court, as a matter of law, "finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Civ. Code* § 1670.5(a).)**

<u>**Procedural Unconscionability**</u>

**Procedural unconscionability requires "oppression" or "surprise." (*Lane, supra,* 224 Cal.App.4th at p. 689.) "Oppression occurs where a contract involves a lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." (*Ibid.*) "Surprise" covers "a variety of deceptive practices and tactics, including hiding a clause in a mass of fine print or phrasing a clause in language that is incomprehensible to a layperson." (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 216.)**

**Procedural unconscionability can exist where a stronger party drafts the contract and presents it to the weaker party on a take-it-or-leave-it basis. While an adhesion contract is not automatically unenforceable as unconscionable if the contractual terms fall "outside the reasonable expectations of the weaker party" it may be unenforceable. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179.)**

**Plaintiff argues the subject contract is procedurally unconscionable because Defendant failed to provide a copy of the applicable arbitration rules at the time of contract execution and because the opt-out provision of the arbitration clause was "carefully hidden" and "almost impossible to elect."**

**After careful consideration of the totality of circumstances present, the Court finds the arbitration section of the Employment Agreement contains a very low level of procedural unconscionability. Despite Plaintiff's arguments regarding the practicality of opting out of the arbitration provision, the fact remains employees did have a 30-day window to opt out of the arbitration provision. Plaintiff puts forth no evidence or argument that he sought to unsuccessfully attempt to opt out of the arbitration provision during this time.**

<u>**Substantive Unconscionability**</u>

**Substantive unconscionability focuses on "overly harsh" or "one-sided" terms or results. (*A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486-487.) In *Armendariz*, the California Supreme Court adopted five "minimum requirements" for the "lawful arbitration" of statutory workplace rights. (*Armendariz, supra,* 24 Cal.4th at p. 102.) An agreement is lawful if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Ibid.*) Our Court of Appeal has subsequently held the "[e]limination of or interference with any of these basic provisions makes an arbitration agreement substantively unconscionable." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248.)**

**Plaintiff argues the arbitration provision of the Employment Agreement is substantively**

CASE TITLE: DIAZ  VS  NEXA  MORGAGE  LLC CASE NUMBER:  37-2022-00031816-CU-OE-NC
[IMAGED]

unconscionable because it (a) requires Plaintiff and Defendant to split arbitration fees and costs with Defendant, (b) includes an improper choice of law clause, (c) contains an improper choice of forum clause, and (d) includes contractual provisions which exempt Defendant from arbitrating claims it is likely to bring.

**After careful consideration of the totality of circumstances present, the Court finds the arbitration provision of the Employment Agreement contains a low/moderate level of substantive unconscionability. As the Court addresses above, the Arizona choice of law/forum clauses are improper and are hereby stricken pursuant to *Lab. Code* § 925. California law applies to the totality of the Employment Agreement. Additionally, under *Armendariz*, an arbitration agreement is lawful only if it does not require employees to "pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Armendariz, supra,* 24 Cal.4th at p. 102.) Absent the foregoing, the Court finds the remainder of the arbitration section of the Employment Agreement is not substantively unconscionable.**

### *Severability of Unconscionable Provisions*

**The Employment Agreement contains a severability clause which states, "[t]he Parties agree that this Agreement shall be severable, meaning that if any provision is held to be unenforceable, it shall not affect the validity or enforceability of the remainder of the terms and provisions of this Agreement."**

**Moreover, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Code Civ. Proc.* § 1670.5(a).)**

**_Code Civ. Proc._ § 1670.5 gives a trial court "discretion as to whether to sever or restrict the unconscionable provision" or, if the agreement is "permeated" with unconscionability, to refuse to enforce it entirely. (*Armendariz, supra,* 24 Cal.4th at p. 122.) An arbitration agreement is permeated with unconscionability if it contains "more than one unlawful provision," which indicates a "systemic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.)**

**The Court finds the arbitration section, and the totality of the Employment Agreement, are not "permeated" with unconscionability and elects to sever the offending unconscionable provisions in its ruling below.**

### *Stay of Representative PAGA Action*

**In addition to requesting Plaintiff's action be compelled to arbitration, Defendant requests this Court stay the remainder of the case (i.e., Plaintiff's representative PAGA claims) while the arbitration is pending.**

**Both parties tacitly acknowledge a current split in authority between in several of California's Courts of Appeal. (See *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65; *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595.) Defendant urges this Court to follow *Rocha*, a Second District Court of Appeal decision because of the effect an adjudication in Plaintiff's arbitration may have on Plaintiff's ability to establish standing in his representative PAGA action.**

**Despite Defendant's argument, and while *Rocha* may be more recent and in direct contrast to *Gavriiloglou*, *Gavriiloglou* is a decision of <u>our</u> Court of Appeal and this Court elects to follow it**

CASE TITLE: DIAZ   VS   NEXA   MORTGAGE   LLC CASE NUMBER:   37-2022-00031816-CU-OE-NC
[IMAGED]

for that reason. This Court does not find *Gavriiloglou* to be at odds with the more recent California Supreme Court holding of *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104.

**The Court declines to stay Plaintiff's representative PAGA claims in this civil action while the remainder of Plaintiff's claims are pursued in arbitration.**

### *Ruling*

**In sum, Plaintiff's non-PAGA and individual PAGA claims are hereby ordered to arbitration pursuant to the rules of JAMS Arbitration. The Court declines to stay Plaintiff's representative PAGA claims during the pendency of the arbitration and that claim may proceed in this Court.**

**All choice of law/forum provisions contained in the Employment Agreement as hereby stricken as improper under *Lab. Code* § 925. The Employment Agreement, including the arbitration section contained therein, shall be governed exclusively by California law.**

**The cost sharing provision contained in the arbitration provision of the Employment Agreement (§ VIII) is hereby stricken as unconscionable. Defendant shall bear the full responsibility for payment of the arbitration fees, costs, expenses, and filing fee. Plaintiff shall be responsible for payment of only a one-time JAMS case management fee and nothing further.**

# EXHIBIT 28

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
## NORTH COUNTY

## MINUTE ORDER

DATE: 12/08/2023        TIME: 01:30:00 PM     DEPT: N-28

JUDICIAL OFFICER PRESIDING: Earl H. Maas, III
CLERK: Noreen McKinley
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: L. Thompson

CASE NO: **37-2022-00031816-CU-OE-NC**    CASE INIT.DATE: 08/03/2022
CASE TITLE: **Diaz vs Nexa Mortgage LLC [IMAGED]**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Other employment

---

**EVENT TYPE**: Motion Hearing (Civil)
MOVING PARTY: Nexa Mortgage LLC
CAUSAL DOCUMENT/DATE FILED: Motion - Other 12/8/2023, 08/21/2023

---

**APPEARANCES**
Brian C Dawson, counsel, present for Plaintiff(s).
Matt Miller, specially appearing for counsel Carlos Americano, present for Plaintiff(s).
Arielle Stephenson, counsel, present for Defendant(s) via remote video conference.

The Court hears oral argument and CONFIRMS the tentative ruling as follows:**Defendant NEXA Mortgage, LLC's ("Defendant") motion to compel arbitration and to stay the action (ROA # 13) is granted in part and denied in part.**

### _Factual Background_

**On July 13, 2020, Plaintiff Damian Diaz ("Plaintiff") was hired as a loan officer by Defendant. (Kortas Decl., ¶ 15.) Plaintiff's job duties included the sale of mortgage loan products to customers remotely from his home office in California. (Diaz Decl., ¶ 11.) Plaintiff alleges he was paid "according to a commission structure that [he] never really full understood, nor was [he] given a breakdown of how [his] commissions were calculated on a per sale basis." (Diaz Decl., ¶ 11.)**

**On the same day as his hire, that is July 13, 2020, as part of the onboarding process Plaintiff electronically executed, via DocuSign, a document entitled "NEXA Mortgage LLC Outside Loan Officer Employment Agreement" (the "Employment Agreement"). (Kortas Decl., ¶ 15, Ex. A.) Plaintiff does not dispute he electronically executed the Employment Agreement. (See Diaz Decl., ¶ 7.) The Employment Agreement was also electronically executed by two representatives of Defendant around the time of Plaintiff's hire. (See Kortas Decl., ¶ 15, Ex. A.)**

**The Employment Agreement contains an arbitration provision which states, in part, that "any dispute between the parties concerning or arising out of their employment relationship...shall be resolved through binding arbitration in accordance with the rules of JAMS Arbitration..." (See**

---

CASE TITLE: Diaz vs Nexa Mortgage LLC [IMAGED]          CASE NO: **37-2022-00031816-CU-OE-NC**

---

Kortas Decl., ¶ 15, Ex. A, § VIII.) The same sentence goes on to waive Plaintiff's ability to bring a class claim stating, "...notwithstanding any rules in JAMS to the contrary, [Plaintiff's] claims may not be joined with the claims of any other person or Employee and there will be no allowance for Employee to pursue or participate in relief on a class or collective action basis against the Company arising out of the employment relationship or this agreement." (Kortas Decl., ¶ 15, Ex. A, § VIII.) The type and scope of allowable discovery is not discussed.

**The arbitration provision also states, in part, that the Employment Agreement is "made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona" and that "the parties will share equally in the cost of such Arbitration." (Kortas Decl., ¶ 15, Ex. A, § VIII.)**

**Included in the arbitration provision were opt-out instructions for employees who sought to relieve both parties of the obligations contained therein by: (1) sending a notarized letter to the attention of the employee's immediate supervisor, while copying the Human Resources department, both sent via Certified Mail within 30 days of the execution of the Employment Agreement expressly opting out of the arbitration provision; or (2) striking the entirety of the arbitration provision and initialing thereafter. (Kortas Decl., ¶ 15, Ex. A, § VIII.) While Plaintiff takes issue with the pragmatic ability to undertake the preceding, there appears to be no dispute that, at the time Plaintiff executed the Employment Agreement, he took no affirmative steps to attempt to opt out of the arbitration provision. (See Diaz Decl., ¶¶ 7-10.)**

### *Procedural History*

**On August 3, 2022, Plaintiff filed a Complaint alleging eight causes of action against the Defendant. (Complaint, ROA # 1.) On October 31, 2022, Plaintiff filed a First Amended Complaint ("FAC") adding a cause of action seeking civil penalties for various alleged *Labor Code* violations under the Private Attorneys General Act ("PAGA"). (ROA # 6.)**

**On December 1, 2022, Defendant filed a notice of removal of case in the United States District Court, Southern District of California. (ROA # 7.) On July 10, 2023, the District Court granted Plaintiff's motion to remand the subject action to this Court on the grounds the District Court lacked jurisdiction over the case. (See ROA # 10.)**

**Upon the return to this court, on August 21, 2023, Defendant promptly filed the subject motion to compel Plaintiff's claims to arbitration and stay the remainder of the case. (ROA # 13.) Plaintiff opposes Defendant's motion on multiple grounds including waiver, unconscionability, and more. (ROA # 22.)**

### *Existence of an Agreement to Arbitrate*

**"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the [parties] to arbitrate the controversy if it determines that an agreement to arbitrate exists..." (*Code Civ. Proc.* § 1281.2.) The party moving to compel arbitration bears the initial burden of proving, by a preponderance of the evidence, an agreement to arbitrate exists. (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842.)**

**Here, based on the evidence presented by the Defendant, the Court finds that an agreement to**

---

CASE TITLE: Diaz vs Nexa Mortgage LLC [IMAGED]          CASE NO: **37-2022-00031816-CU-OE-NC**

arbitrate exists between Plaintiff and Defendant.

### _Choice of Law/Forum Provisions_

As noted above, the arbitration section of the Employment Agreement contains a provision which states the agreement is "made and entered into in the State of Arizona and interpreted under the laws of construction applicable in Arizona." Plaintiff opposes the application of Arizona law and argues _Lab. Code_ § 925 mandates that California law be applied when considering the relevant issues of this motion. This Court agrees.

_Lab. Code_ § 925 states in relevant part:

(a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:

(1) Require the employee to <u>adjudicate outside of California a claim arising in California.</u>

(2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

(b) Any provision of a contract that violates subdivision (a) is <u>voidable by the employee</u>, and if a provision is rendered void at the request of the employee, the matter <u>shall</u> be adjudicated in California and California law shall govern the dispute.

[Emphasis added.]

Here, it appears undisputed to this Court that Plaintiff: (a) was an employee of Defendant; (b) is a California citizen; and (c) worked for Defendant solely within the geographical bounds of California. Thus, the Court finds _Lab. Code_ § 925 applies to the Employment Agreement entered into between the parties. As a result, the Arizona choice of law/forum clauses are void and stricken by this Court. (The Employment Agreement contains a severability clause.) California law applies.

### _Waiver_

Plaintiff seeks to prevent arbitration by arguing Defendant waived its right to arbitrate by initiating a lawsuit against Plaintiff in Arizona state court.

Given the strong public policy favoring arbitration, claims of waiver are subject to "close judicial scrutiny," and the "party seeking to establish a waiver bears a heavy burden" with all doubts resolved in favor of arbitration. (_Saint Agnes Medical Center v. PacifiCare of Cal._ (2003) 31 Cal.4th 1187, 1195-1196; _Lewis v. Fletcher Jones Motor Cars, Inc._ (2012) 205 Cal.App.4th 436, 443.)

While there is no rigid test for determining what constitutes a waiver of arbitration, this Court is directed to consider the following six factors: "(1) [W]hether the party's action are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into the preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant

---

seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled or prejudiced the opposing party." (*Saint Agnes Medical Center, supra,* 31 Cal.4th at p. 1196.)

Here, the *St. Agnes* factors weigh heavily against a finding of waiver. While Defendant did initiate a lawsuit against Plaintiff, the Court finds the mere filing of a separate lawsuit does not result in the complete waiver of Defendant's ability to invoke the arbitration provision of the Employment Agreement. The Court is satisfied that the filing of the Arizona state court matter was done for the primary purpose of obtaining temporary injunctive relief. The length of the active status of the Arizona state court matter (only 30 days) reflects this finding.

Other than arguing the filing of the Arizona state court case was "inconsistent with the right to arbitrate," Plaintiff fails to make any argument or showing regarding the remainder of the *Saint Agnes* factors. Indeed, the parties were not well into this action at the time Plaintiff was notified of Defendant's intent to arbitrate. Defendant had not taken intervening steps, such as conducting discovery, before seeking to arbitrate. Defendant has not filed a counterclaim in this action. Most critically, Defendant has not delayed in seeking to arbitrate this matter. Approximately one month after this matter was remanded to this Court, Defendant promptly filed the subject motion. The Court finds Defendant has not waived its right to invoke the arbitration provision of the Employment Agreement.

### *Unconscionability*

Plaintiff also challenges the subject contract as unconscionable. Unconscionability has both a procedural and substantive element. Both elements must be present for a court to refuse to enforce a contract, but they are evaluated on a "sliding scale" and "need not be present in the same degree." (***Armendariz v. Foundation Health Psychcare Services, Inc.*** (2000) 24 Cal.4th 83, 114.) The more substantively oppressive the contract term, the less procedural unconscionability is required to conclude that the term in unconscionable, and vice versa. (***Lane v. Francis Capital Management LLC*** (2014) 224 Cal.App.4th 676, 689.)

If a court, as a matter of law, "finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (***Civ. Code*** § 1670.5(a).)

### Procedural Unconscionability

Procedural unconscionability requires "oppression" or "surprise." (***Lane, supra,*** 224 Cal.App.4th at p. 689.) "Oppression occurs where a contract involves a lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." (*Ibid.*) "Surprise" covers "a variety of deceptive practices and tactics, including hiding a clause in a mass of fine print or phrasing a clause in language that is incomprehensible to a layperson." (***Penilla v. Westmont Corp.*** (2016) 3 Cal.App.5th 205, 216.)

Procedural unconscionability can exist where a stronger party drafts the contract and presents it to the weaker party on a take-it-or-leave-it basis. While an adhesion contract is not automatically

unenforceable as unconscionable if the contractual terms fall "outside the reasonable expectations of the weaker party" it may be unenforceable. (See *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 179.)

**Plaintiff argues the subject contract is procedurally unconscionable because Defendant failed to provide a copy of the applicable arbitration rules at the time of contract execution and because the opt-out provision of the arbitration clause was "carefully hidden" and "almost impossible to elect."**

**After careful consideration of the totality of circumstances present, the Court finds the arbitration section of the Employment Agreement contains a very low level of procedural unconscionability. Despite Plaintiff's arguments regarding the practicality of opting out of the arbitration provision, the fact remains employees did have a 30-day window to opt out of the arbitration provision. Plaintiff puts forth no evidence or argument that he sought to unsuccessfully attempt to opt out of the arbitration provision during this time.**

<u>Substantive Unconscionability</u>

**Substantive unconscionability focuses on "overly harsh" or "one-sided" terms or results. (*A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486-487.) In *Armendariz*, the California Supreme Court adopted five "minimum requirements" for the "lawful arbitration" of statutory workplace rights. (*Armendariz, supra,* 24 Cal.4th at p. 102.) An agreement is lawful if it: "(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Ibid.*) Our Court of Appeal has subsequently held the "[e]limination of or interference with any of these basic provisions makes an arbitration agreement substantively unconscionable." (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248.)**

**Plaintiff argues the arbitration provision of the Employment Agreement is substantively unconscionable because it (a) requires Plaintiff and Defendant to split arbitration fees and costs with Defendant, (b) includes an improper choice of law clause, (c) contains an improper choice of forum clause, and (d) includes contractual provisions which exempt Defendant from arbitrating claims it is likely to bring.**

**After careful consideration of the totality of circumstances present, the Court finds the arbitration provision of the Employment Agreement contains a low/moderate level of substantive unconscionability. As the Court addresses above, the Arizona choice of law/forum clauses are improper and are hereby stricken pursuant to *Lab. Code* § 925. California law applies to the totality of the Employment Agreement. Additionally, under *Armendariz*, an arbitration agreement is lawful only if it does not require employees to "pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." (*Armendariz, supra,* 24 Cal.4th at p. 102.) Absent the foregoing, the Court finds the remainder of the arbitration section of the Employment Agreement is not substantively unconscionable.**

<u>***Severability of Unconscionable Provisions***</u>

**The Employment Agreement contains a severability clause which states, "[t]he Parties agree that**

---

CASE TITLE: Diaz vs Nexa Mortgage LLC [IMAGED]          CASE NO: **37-2022-00031816-CU-OE-NC**

---

this Agreement shall be severable, meaning that if any provision is held to be unenforceable, it shall not affect the validity or enforceability of the remainder of the terms and provisions of this Agreement."

Moreover, "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (*Code Civ. Proc.* § 1670.5(a).)

*Code Civ. Proc.* § 1670.5 gives a trial court "discretion as to whether to sever or restrict the unconscionable provision" or, if the agreement is "permeated" with unconscionability, to refuse to enforce it entirely. (*Armendariz, supra,* 24 Cal.4th at p. 122.) An arbitration agreement is permeated with unconscionability if it contains "more than one unlawful provision," which indicates a "systemic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra,* 24 Cal.4th at p. 124.)

The Court finds the arbitration section, and the totality of the Employment Agreement, are not "permeated" with unconscionability and elects to sever the offending unconscionable provisions in its ruling below.

### *Stay of Representative PAGA Action*

In addition to requesting Plaintiff's action be compelled to arbitration, Defendant requests this Court stay the remainder of the case (i.e., Plaintiff's representative PAGA claims) while the arbitration is pending.

Both parties tacitly acknowledge a current split in authority between in several of California's Courts of Appeal. (See *Rocha v. U-Haul Co. of California* (2023) 88 Cal.App.5th 65; *Gavriiloglou v. Prime Healthcare Management, Inc.* (2022) 83 Cal.App.5th 595.) Defendant urges this Court to follow *Rocha*, a Second District Court of Appeal decision because of the effect an adjudication in Plaintiff's arbitration may have on Plaintiff's ability to establish standing in his representative PAGA action.

Despite Defendant's argument, and while *Rocha* may be more recent and in direct contrast to *Gavriiloglou, Gavriiloglou* is a decision of <u>our</u> Court of Appeal and this Court elects to follow it for that reason. This Court does not find *Gavriiloglou* to be at odds with the more recent California Supreme Court holding of *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104.

The Court declines to stay Plaintiff's representative PAGA claims in this civil action while the remainder of Plaintiff's claims are pursued in arbitration.

### *Ruling*

In sum, Plaintiff's non-PAGA and individual PAGA claims are hereby ordered to arbitration pursuant to the rules of JAMS Arbitration. The Court declines to stay Plaintiff's representative PAGA claims during the pendency of the arbitration and that claim may proceed in this Court.

All choice of law/forum provisions contained in the Employment Agreement as hereby stricken

---

CASE TITLE: Diaz vs Nexa Mortgage LLC [IMAGED]          CASE NO: **37-2022-00031816-CU-OE-NC**

as improper under *Lab. Code* § 925. The Employment Agreement, including the arbitration section contained therein, shall be governed exclusively by California law.

**The cost sharing provision contained in the arbitration provision of the Employment Agreement (§ VIII) is hereby stricken as unconscionable. Defendant shall bear the full responsibility for payment of the arbitration fees, costs, expenses, and filing fee. Plaintiff shall be responsible for payment of only a one-time JAMS case management fee and nothing further.**

**The Court sets this matter for a Case Management Conference for 3/8/24 at 10:00am.**

The Civil Case Management Conference is scheduled for 03/08/2024 at 10:00AM before Judge Earl H. Maas, III.

IT IS SO ORDERED.

_____
   Judge Earl H. Maas, III